UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
                ::

GMA ACCESSORIES, INC.,           :

                :

           Plaintiff,     :   07 Civ. 3219 (LTS)(DCF)

                :

      - against -      :   ECF Case

                :

BOP, LLC, GIRLSHOP, INC.,       :   <u>ORAL ARGUMENT REQUESTED</u>

SHOWROOM SEVEN STUDIOS, INC.,  :

JONATHAN SOLNICKI,        :

BELMONDO and EMINENT, INC.,    :

                :

         Defendants.   :

----------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT BOP, LLC'S MOTION TO WITHDRAW, VACATE OR MODIFY BOP'S OFFER OF JUDGMENT AND THE RESULTING JUDGMENT

FRIEDMAN KAPLAN SEILER &
  ADELMAN LLP
Robert J. Lack
Jeffrey R. Wang
1633 Broadway
New York, NY 10019-6708
(212) 833-1100

Attorneys for Defendant Bop, LLC

October 19, 2007

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ............................................................................ ii

PRELIMINARY STATEMENT ......................................................................1

FACTUAL BACKGROUND ...........................................................................2

    A.   The Allegations in the Complaint ...............................................2

    B.   This Court's Default Judgment Against the
        Non-Answering Defendants; Bop's Response..........................4

    C.   Bop's Offer of Judgment..............................................................5

    D.   Settlement Discussions Between Plaintiff and
        Bop; Plaintiff Purports to Accept the Offer of
        Judgment ...................................................................................6

    E.   Bop Discovers the Parties' Divergent
        Interpretations of the Offer of Judgment ..................................7

    F.   Plaintiff Requests the Court to Enter Judgment
        Notwithstanding the Parties' Dispute ........................................8

ARGUMENT   ....................................................................................................9

    I.     WHERE, AS HERE, THE CONTRACT LANGUAGE IS SUSCEPTIBLE
        TO MULTIPLE INTERPRETATIONS, COURTS EXAMINE PAROL
        EVIDENCE TO DETERMINE WHETHER A CONTRACT WAS
        FORMED ..................................................................................9

    II.    THERE WAS NO MUTUAL ASSENT TO THE INTERPRETATION OF
        THE OFFER OF JUDGMENT NOW ADVANCED BY PLAINTIFF,
        AND THE OFFER OF JUDGMENT AND RESULTING JUDGMENT
        THUS SHOULD BE WITHDRAWN OR VACATED.........................14

CONCLUSION ..........................................................................................17

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Page(s)*

*Benicorp Ins. Co. v. Nat'l Med. Health Card Sys.,*
447 F. Supp. 2d 329 (S.D.N.Y. 2006)......................................................................... 15, 16

*Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co.,*
145 F.3d 481 (2d Cir. 1998)...................................................................................... 9, 13

*Chambers v. Manning,*
169 F.R.D. 5 (D. Conn. 1996)......................................................................................... 15

*Christian v. R. Wood Motors, Inc.,*
No. 91-CV-1348, 1995 WL 238981 (N.D.N.Y. Apr. 21, 1995)...................................... 14

*Coca-Cola Bottling Co. of Memphis, Tenn., Inc. v. Joseph E. Seagram & Sons,*
526 F.2d 556 (CCPA 1975) ............................................................................................ 11

*Dittman v. Dyno Nobel, Inc.,*
No. 97-CV-1724, 2000 WL 151950 (N.D.N.Y. Feb. 10, 2000) ...................................... 15

*Foster v. Kings Park Cent. Sch. Dist.,*
174 F.R.D. 19 (E.D.N.Y. 1997) ...................................................................................... 15

*Gardner v. Catering by Henry Smith, Inc.,*
205 F. Supp. 2d 49 (E.D.N.Y. 2002) .............................................................................. 16

*Genesco Inc. v. Martz,*
66 U.S.P.Q.2s 1260 (TTAB 2003).................................................................................. 10

*In re Corning Glass Works,*
229 U.S.P.Q. 65 (TTAB 1985) ........................................................................................ 12

*In re Cosvetic Labs.,*
202 U.S.P.Q. 842 (TTAB 1979) ......................................................................... 10, 12, 13

*In re Hearst Corp.,*
982 F.2d 493, 25 U.S.P.Q.2d 1238 (Fed. Cir. 1992) ....................................................... 10

*In re U.S. Shoe Corp.,*
229 U.S.P.Q. 707 (TTAB 1985) ...................................................................................... 12

*Info. Superhighway, Inc. v. Talk America, Inc.,*
274 F. Supp. 2d 466 (S.D.N.Y. 2003)............................................................................... 9

*Page(s)*

*Kapoor v. Rosenthal,*
269 F. Supp. 2d 408 (S.D.N.Y. 2003)........................................................... 16

*Kyreakakis v. Paternoster,*
732 F. Supp. 1287 (D.N.J. 1990) .................................................................. 14

*Lemelson v. Ideal Toy Corp.,*
408 F.2d 860 (2d Cir. 1969)............................................................................ 9

*Lilly Pulitzer, Inc. v. Lilli Ann Corp.,*
376 F.2d 324 (CCPA 1967) .......................................................................... 12

*Marshall Field & Co. v. Mrs. Fields Cookies,*
25 U.S.P.Q.2d 1321 (TTAB 1992) ............................................................... 11

*McGraw-Hill Cos. v. Vanguard Index Trust,*
139 F. Supp. 2d 544 (S.D.N.Y. 2001)............................................................. 9

*O'Neil v. Retirement Plan for Salaried Employees of RKO Gen., Inc.,*
37 F.3d 55 (2d Cir. 1994) ................................................................................ 9

*Paul Sachs Originals Co. v. Sachs,*
325 F.2d 212 (9th Cir. 1963) ........................................................................ 11

*Radecki v. Amoco Oil Co.,*
858 F.2d 397 (8th Cir. 1988) ........................................................................ 14

*Rob Roy Co. v. Thurman Mfg. Co.,*
173 U.S.P.Q. 31 (CCPA 1972) ..................................................................... 11

*Robert Hall Clothes, Inc. v. Studds,*
128 U.S.P.Q. 542 (CCPA 1961) ................................................................... 11

*Sas v. Trintex,*
709 F. Supp. 455 (S.D.N.Y. 1989)................................................................ 15

*Scosche Indus. v. Visor Gear Inc.,*
121 F.3d 675 (Fed. Cir. 1997)................................................................... 9, 14

*Shapiro v. Credit Protection Ass'n I, Inc.,*
53 F. Supp. 2d 626 (S.D.N.Y. 1999)............................................................. 15

*Stern-Slegman-Prins Co. v. Independent Retailers Syndicate,*
126 U.S.P.Q. 26 (TTAB 1960) ................................................................ 10, 11

*Stewart v. Professional Computer Centers, Inc.,*
148 F.3d 937 (8th Cir. 1998) .................................................................... 9, 14

*Page(s)*

*Teachers Ins. & Annuity Ass'n v. Ocwen Fin. Corp.,*
    No. 98 Civ. 7137 (BSJ), 2002 WL 237836 (S.D.N.Y. Feb. 19, 2002) ............................ 17

## **Other Authorities**

Fed. R. Civ. P. 68 advisory committee's note ............................................................................18

13 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE 3d
    §§ 68.04[6], 68.05[3], 68.09 ..............................................................................................14

RESTATEMENT (SECOND) OF CONTRACTS § 20 (1981) ...................................................................17

12 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL
    PRACTICE AND PROCEDURE: CIVIL 2d § 3005 (2d ed. 1997)............................................16

## PRELIMINARY STATEMENT

Defendant Bop, LLC ("Bop") submits this motion to prevent plaintiff GMA Accessories, Inc. ("GMA") from exploiting an ambiguity in the injunctive language of Bop's offer of judgment, and the resulting judgment entered by this Court, to argue that they impose, upon pain of contempt, restrictions that the parties *never* intended, that were *never* agreed upon, and that go well beyond any relief that plaintiff could have recovered in this litigation. To prevent the offer of judgment and resulting judgment from fomenting additional litigation that Rule 68 of the Federal Rules of Civil Procedure was designed to avoid, Bop requests that it be permitted to withdraw the offer, notwithstanding GMA's purported acceptance of it, and that the offer and resulting judgment be vacated or modified.

This litigation was, from the outset, limited to the alleged infringement of plaintiff's CHARLOTTE mark by the brand CHARLOTTE SOLNICKI. Accordingly, when Bop made its offer of judgment, it intended and believed that the injunctive language of its offer – pursuant to which Bop agreed not to use "the mark CHARLOTTE or any marks similar to or substantially indistinguishable therefrom, including the mark CHARLOTTE SOLNICKI" – resolved only Bop's ability to sell products bearing the CHARLOTTE and CHARLOTTE SOLNICKI marks, and did not imply that Bop would be enjoined from selling any product simply because it contained the word "Charlotte" in its name, such as Charlotte Ronson. Immediately after it purported to accept the offer of judgment, however, GMA began asserting that the language of the offer of judgment would have precisely that effect, and threatened not only to sue Bop for trademark infringement, but also to seek contempt sanctions, if Bop continued to sell Charlotte Ronson products.

In light of the fact that the CHARLOTTE SOLNICKI mark was the only subject of this litigation – no other marks (including CHARLOTTE RONSON) were ever identified as targets – plaintiff's tactics border on sharp practice. Bop is confident that under governing case law, which requires a fact-based, case-by-case analysis of the similarity of marks, CHARLOTTE RONSON would not be found to be "similar to or substantially indistinguishable" from the CHARLOTTE mark. Nevertheless, Bop should not be burdened with having to defend meritless contempt motions based on ambiguous language, especially when plaintiff clearly knew or should have known (but Bop did not) that the two sides attached different meanings to the wording of the offer of judgment at the time GMA purported to accept it.

Because the language of the injunction is ambiguous, well-settled principles of contract law require examination of parol evidence in assessing the validity of the contract. That evidence firmly establishes that the parties lacked the requisite "meeting of the minds" when the contract was purportedly formed, and thus the offer of judgment should be withdrawn or vacated.

Plaintiff, for its part, will suffer no prejudice if the offer of judgment is withdrawn and the resulting judgment vacated. GMA would remain free to bring a trademark infringement action directed at Charlotte Ronson if it so desires. On the other hand, because the injunctive language is susceptible to more than one interpretation, allowing the injunction in the offer of judgment to stand would only increase litigation between the parties. In order to avoid this undesirable and unfair result, Bop's motion to withdraw, vacate, or modify the offer of judgment and resulting judgment should be granted.

## FACTUAL BACKGROUND

A.    The Allegations in the Complaint

The genesis of this litigation – at least vis-à-vis Bop – began in July 2006, when plaintiff's counsel notified Bop by letter that it believed items were being sold using plaintiff's

trademark CHARLOTTE.  (Affidavit of Jeffrey R. Wang, sworn to Oct. 19, 2007 ("Wang Aff."),

Ex. A.)  At that time, certain items from Charlotte Solnicki were offered for sale on Bop's Web

site without the Solnicki identifier, one of which was identified in plaintiff's counsel's letter.  In

response to that letter, Bop's trademark agent advised plaintiff's counsel that although Bop was

not admitting it had done anything wrong, it would change the allegedly infringing product titles

to their full and correct name, CHARLOTTE SOLNICKI.  (*Id*. Ex. B.)  From that time until this

lawsuit was initiated, plaintiff never contacted Bop again.

    After filing an original complaint on April 20, 2007, plaintiff filed an amended

complaint (the "Complaint") on May 7, 2007.  (Document 9,[1] Wang Aff. Ex. C.)  The lawsuit

named Bop and other retailers, such as Eminent, Inc. and Belmondo, as well as the companies

allegedly responsible for manufacturing and distributing CHARLOTTE SOLNICKI products,

such as Jonathan Solnicki, Showroom Seven Studios, Inc. ("Showroom Seven"), and Girlshop,

Inc. ("Girlshop").  Plaintiff's Complaint asserted that the defendants had infringed plaintiff's

trademark CHARLOTTE in conjunction with the sale of CHARLOTTE SOLNICKI products.

The Complaint did *not* name as defendants any clothing designers, manufacturers, or distributors

other than Charlotte Solnicki.  Indeed, the Complaint contained no allegations whatsoever

regarding any such entity, even though items by other designers – such as Charlotte Ronson –

had been offered for sale on at least Bop's Web site.  Presumably, this was because – unlike the

CHARLOTTE SOLNICKI items – those other items (such as Charlotte Ronson) had never been

offered simply as "Charlotte," and thus were distinct from the dispute regarding the

CHARLOTTE SOLNICKI items (which had previously been offered without the Solnicki

---

[1] The reference to "Document __" is to the number of the document as entered on the
Court's docket sheet.

identifier). Indeed, in its prayer for relief, plaintiff requested an injunction against the use of "CHARLOTTE and/or CHARLOTTE SOLNICKI" and requested that the Web site www.charlottesolnicki.com be removed from the World Wide Web (*see id.* at 12-13), but plaintiff's prayer made no mention of any other items or of any other Web site, even though such Web sites were in operation well before the time of the Complaint.[2]

**B.    This Court's Default Judgment Against the
         Non-Answering Defendants; Bop's Response**

Defendants Jonathan Solnicki, Showroom Seven, and Girlshop (together, the "Solnicki Defendants") – who are, according to the Complaint, the manufacturers or distributors of the CHARLOTTE SOLNICKI items – failed to respond to the Complaint. Plaintiff then moved for a default judgment against the Solnicki Defendants. On August 29, 2007, this Court entered judgment, including an injunction, against those defendants. (Document 61, Wang Aff. Ex. D.) The language of the injunction, which was based in relevant part on language contained in plaintiff's proposed form of default judgment (Documents 34-15 and 46-12, Wang Aff. Ex. E), provided:

> Defendants Girlshop, Showroom 7 and Solnicki, their owners, agents, employees and all those acting in concert or active participation with them who receive actual notice of this Order … are hereby permanently enjoined from using the word mark CHARLOTTE or any marks similar to or substantially indistinguishable therefrom, including the mark CHARLOTTE SOLNICKI, in connection with the sale, purchase, offering for sale, display, transfer, marketing, advertising or distribution of unauthorized clothing and related merchandise.

(Document 61, Wang Aff. Ex. D, at 5.)

On September 4, 2007, following this Court's order, Bop and Eminent wrote to this Court regarding the order. (Wang Aff. Ex. F.) Because Bop and Eminent had not been

---

[2] For example, the Charlotte Ronson Web site was in operation from at least as early as February 2006. *See, e.g.,* http://web.archive.org/web/*/http://www.charlotteronson.com.

served with the default motion (*see* Wang Aff. Ex. G) and were mere end-sellers of products containing the allegedly infringing mark, they believed they were not "acting in concert or active participation with" the defaulted defendants, and they did not believe this Court intended the order to apply to Bop or Eminent.  However, to avoid any suggestion that they might be violating the order by continuing to sell what they in good faith believed were non-infringing items, they requested that this Court modify the order to clarify that it was not intended to apply to Eminent or Bop or to Bop's parent, Amazon.com, Inc.  (Wang Aff. Ex. F at 1.)  Importantly, Bop and Eminent advised this Court and plaintiff that, in the interim, in an abundance of caution, Bop and Eminent had removed the allegedly infringing items from their respective Web sites pending clarification of the order.  (*Id*.)  In accordance with that undertaking, Bop removed all CHARLOTTE SOLNICKI items from its Web site but took no action with regard to other items that simply included the word "Charlotte" as part of a larger name (such as Charlotte Ronson), because Bop believed that the language of the default injunction did not extend – nor did it believe the Court intended it to extend – to all such items.  (Wang Aff. ¶ 3.)  Thus, plaintiff was made aware, as of no later than September 4, that Bop interpreted the language of this Court's order – which, as set forth below, is echoed in Bop's offer of judgment – to apply to CHARLOTTE SOLNICKI items but *not* to items such as Charlotte Ronson.

## C.    <u>Bop's Offer of Judgment</u>

Because Bop (a) believed that its exposure in this action was limited – among other things, it believed that its actions plainly did not constitute infringement and that even if they did, its gross profit from the CHARLOTTE SOLNICKI items subsequent to July 2006 was roughly $50,000 (with considerably lower net profits); (b) did not want to expend substantial resources litigating whether CHARLOTTE SOLNICKI was an infringing mark; and (c) was

willing to remove the underperforming CHARLOTTE SOLNICKI items from its Web site in exchange for a resolution of the matter, on September 7, 2007 Jeffrey Wang, counsel for Bop, telephoned Adrienne Raps, counsel for plaintiff, to offer $15,000 in settlement of the action and explained the rationale for this offer.  (Wang Aff. ¶ 5.)  Shortly thereafter, Bop served an offer of judgment pursuant to Rule 68, in the amount of a monetary payment of $15,000 (inclusive of costs) plus an injunction.  (*Id.* Ex. H.)  Consistent with Bop's belief that the default judgment entered by this Court against the Solnicki Defendants did not extend beyond the CHARLOTTE and CHARLOTTE SOLNICKI marks actually at issue in this litigation, the injunctive language in Bop's offer of judgment – namely, an injunction from "using the mark CHARLOTTE or any marks similar to or substantially indistinguishable therefrom, including the mark CHARLOTTE SOLNICKI" – matched the injunctive language in this Court's default judgment.

**D.    Settlement Discussions Between Plaintiff and Bop;**
**<u>Plaintiff Purports to Accept the Offer of Judgment</u>**

Following receipt of the offer of judgment, John Bostany, counsel for plaintiff, telephoned Mr. Wang (Bop's counsel) early the following week to discuss settlement.  (Wang Aff. ¶ 7.)  Mr. Bostany asked whether Bop would be willing to pay $75,000 in settlement of the action.  (*Id.* ¶ 8.)  Mr. Bostany reiterated this offer in a settlement conversation on Friday, September 14.  (*Id.*)  On both occasions, Mr. Wang informed Mr. Bostany that he would check with his client, which he did.  (*Id.*)  On Monday, September 17, Mr. Wang informed Mr. Bostany that Bop believed its exposure was far less than $75,000, and offered a payment in the amount of $22,000.  (*Id.* ¶ 9.)  Mr. Bostany replied that he would check with his client as to whether that payment would be acceptable, and asked whether the injunction offered would be the same as in the offer of judgment.  Mr. Wang raised the possible alternative of accomplishing the settlement by way of a duly-executed settlement agreement, but said that if Mr. Bostany wanted a court-

ordered injunction, Mr. Wang would check with his client to confirm if that would be acceptable. (*Id*. ¶ 10.) Rather than waiting for an answer to that question or even responding to the settlement offer, and even though Bop's offer of judgment did not expire for four more days, plaintiff's counsel promptly purported to accept the offer of judgment at the lower amount of $15,000, *even though a settlement offer of $22,000 had been made*. (*Id*. ¶ 11.)[3] At no point during any of these settlement discussions did any of plaintiff's attorneys ever mention that they would want Bop to remove any product other than Charlotte Solnicki from Bop's Web site as part of any settlement, nor did they ever mention that they viewed the language in this Court's order (or Bop's offer of judgment) to include any items other than Charlotte Solnicki. (*Id*. ¶ 12.)

**E.**     **Bop Discovers the Parties' Divergent Interpretations of the Offer of Judgment**

Within hours of plaintiff's purported amended acceptance of Bop's offer of judgment, Mr. Wang received a call from counsel for Eminent, who informed him that plaintiff's counsel had now taken the position that Charlotte Ronson items – which were *never* the subject of this lawsuit (even though they were known to plaintiff at the initiation of this action) – were covered by the injunctive language in Bop's offer of judgment. (Wang Aff. ¶ 13.) Mr. Wang then called Andrew Sweeney, counsel for plaintiff, and informed him that the injunction in Bop's offer of judgment was never intended to (nor did Bop believe it did) include all items with the mere word "Charlotte" in them. Mr. Sweeney responded that plaintiff did not share that interpretation of the language. (*Id*. ¶ 14.)

Upon confirming that plaintiff had adopted this different interpretation of the injunctive language in the offer of judgment, Bop wrote to the Court on September 19, the day

---

[3] On the evening of September 17, plaintiff served a purported acceptance of offer of judgment, but added costs in its acceptance. (Document 66, Wang Aff. Ex. I.) Because the offer of judgment was inclusive of costs, on the morning of September 18 plaintiff filed a purported amended acceptance, which simply accepted Bop's offer. (Document 67, Wang Aff. Ex. J.)

after the purported acceptance, to request that the offer of judgment be withdrawn or vacated. (Document 68, Wang Aff. Ex. K.)  In an endorsement to the letter, this Court referred the parties to Magistrate Judge Freeman "to seek to resolve their differences as to the scope of the injunction and, failing that, to devise a schedule for briefing on the motion to withdraw the Rule 68 offer."  (*Id.*)  During the conference with Judge Freeman, Judge Freeman set a briefing schedule for Bop's motion, with Bop's moving papers due on October 19, plaintiff's opposition due on October 26, and Bop's reply due on October 30.  (Wang Aff. ¶ 16.)

**F.    Plaintiff Requests the Court to Enter Judgment
        Notwithstanding the Parties' Dispute**

        Notwithstanding the Court's reference of the matter to Judge Freeman, on September 28, plaintiff's counsel sent a letter to this Court requesting that because the judgment was "effectively in force as of the date of the plaintiff's acceptance," Rule 68 required the Court to enter judgment before judicial resolution of the dispute.  (Wang Aff. Ex. L.)  On October 1, Bop's counsel replied by letter to this Court, and asked that this request be denied, both because it was plainly an attempt to circumvent the Court's reference of the matter to Judge Freeman, and because plaintiff's request lacked a legal basis, inasmuch as the law is clear that offers of judgment that include injunctive components are not effectively in force as of the date of plaintiff's acceptance.  (Wang Aff. Ex. M.)  Bop requested that the Court deny the request and, in the alternative, requested an opportunity to brief the issue before the Court.  (*Id.*)  On October 17, plaintiff's counsel again wrote to the Court and reiterated its request that the Court enter judgment, notwithstanding the pendency of the dispute and the fact that briefing on Bop's motion was scheduled to begin only two days later.  (Wang Aff. Ex. N.)  On October 18, this Court signed the Order and Judgment as to Bop, LLC, which was filed on October 19. (Document 79, Wang Aff. Ex. O.)

## ARGUMENT

I.    **WHERE, AS HERE, THE CONTRACT LANGUAGE IS SUSCEPTIBLE TO MULTIPLE INTERPRETATIONS, COURTS EXAMINE PAROL EVIDENCE TO DETERMINE WHETHER A CONTRACT WAS FORMED**

Offers of judgment, like all other contracts, are analyzed under principles of contract law. *Stewart v. Professional Computer Centers, Inc.*, 148 F.3d 937, 939 (8th Cir. 1998); *Scosche Indus. v. Visor Gear Inc.*, 121 F.3d 675, 678 (Fed. Cir. 1997); 13 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE 3d §§ 68.04[6], 68.05[3] (3d ed. 2007).  Well-established principles of contract law require that where the language of a contract is ambiguous, courts should look to extrinsic evidence to determine whether a contract has in fact been formed.  *See, e.g., Lemelson v. Ideal Toy Corp.*, 408 F.2d 860, 864 (2d Cir. 1969) ("Where, as here, the contract is ambiguous on its face, extrinsic evidence may be introduced to show what the parties intended at the time they entered into the contract.").  Language is ambiguous "if it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement."  *Info. Superhighway, Inc. v. Talk America, Inc.*, 274 F. Supp. 2d 466, 470 (S.D.N.Y. 2003) (finding language of parties' agreement to be capable of more than one meaning and thus ambiguous) (citations omitted); *see also Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co.,* 145 F.3d 481, 489 (2d Cir. 1998) (finding that "[a]part from the fact that the language of the [contract provision] does not compel [plaintiff's] interpretation, there is also good reason to regard that construction as improbable" and finding the language "sufficiently unclear on its face to justify consideration of extrinsic evidence"); *O'Neil v. Retirement Plan for Salaried Employees of RKO Gen., Inc.*, 37 F.3d 55, 58-59 (2d Cir. 1994) (affirming finding by district court that scope of contract language was ambiguous); *McGraw-Hill Cos. v. Vanguard Index Trust*, 139 F. Supp. 2d 544, 553 (S.D.N.Y.

2001) (finding scope of contract language ambiguous and examining parol evidence to interpret scope narrowly).

Here, the language of the injunction – "the mark CHARLOTTE or any marks similar to or substantially indistinguishable therefrom" – is inherently ambiguous, and the ambiguity is not cured, but in fact made worse, by the addition of the phrase, "including the mark CHARLOTTE SOLNICKI." The case law makes clear that the question of whether two marks are similar is highly fact-dependent. *See In re Hearst Corp.*, 982 F.2d 493, 25 U.S.P.Q.2d 1238, 1239 n.2 (Fed. Cir. 1992) (citing the "fact-dependency" of such determinations); *In re Cosvetic Labs.*, 202 U.S.P.Q. 842, 844 (TTAB 1979) ("it is axiomatic that each case must be decided on its own particular facts"). Furthermore, it is error to isolate one part of a mark in making a determination of similarity. As the U.S. Patent and Trademark Office Trademark Trial and Appeal Board ("TTAB") stated in *Genesco Inc. v. Martz*, 66 U.S.P.Q.2s 1260, 1269 (TTAB 2003) (citations omitted):

> [I]t is well settled that marks must be considered in their entireties, not dissected or split into component parts and each part compared with other parts. This is so because it is the entire mark which is perceived by the purchasing public, and therefore, it is the entire mark that must be compared to any other mark. It is the impression created by the involved marks, each considered as a whole, that is important.

*Accord Hearst*, 25 U.S.P.Q.2d at 1239 ("all components [of marks] must be given appropriate weight") (citation omitted).

Most importantly for the instant case, no rule can be set forth as to whether the addition of a word to a mark will or will not result in a mark that is legally "similar." The cases include many examples of situations in which marks that share a common word have been found to be dissimilar. For example, in *Stern-Slegman-Prins Co. v. Independent Retailers Syndicate*, 126 U.S.P.Q. 26 (TTAB 1960), a case with facts similar to those here, the registrant of the mark

DEBBY ROSE for ladies' coats and suits opposed the registration of the mark A DEBBIE YOUNG EXCLUSIVE for women's apparel. The TTAB rejected the argument that the use of a common first name (like Charlotte here) rendered the two marks similar:

> The primary resemblance between the marks of the parties lies in the names "DEBBIE" and "DEBBY". Considering, however, that these names are commonplace first names, purchasers would be likely to rely upon the marks here involved in their entireties in identifying and distinguishing the products sold thereunder; and the differences between applicant's mark comprising the notation "A DEBBIE YOUNG EXCLUSIVE" and "DEBBY ROSE" are sufficient to obviate any likelihood of confusion, mistake or deception of purchasers.

*Id.* at 27. *See Rob Roy Co. v. Thurman Mfg. Co.*, 173 U.S.P.Q. 31, 31 (CCPA 1972) (finding ROB SCOT not to be similar to ROB ROY); *Robert Hall Clothes, Inc. v. Studds*, 128 U.S.P.Q. 542, 543 (CCPA 1961) (rejecting similarity based on common surname; ROSE HALL not similar to ROBERT HALL); *see also Paul Sachs Originals Co. v. Sachs*, 325 F.2d 212, 215 (9th Cir. 1963) (SACHS OF CALIFORNIA not similar to PAUL SACHS ORIGINAL or DON SACHS ORIGINAL); *Marshall Field & Co. v. Mrs. Fields Cookies*, 25 U.S.P.Q.2d 1321, 1331-32 (TTAB 1992) (MRS. FIELDS not similar to MARSHALL FIELD'S; "purchasers are accustomed to distinguishing between such common surnames by whatever slight differences may exist in the marks as a whole").

Indeed, in the memorandum of law plaintiff submitted in support of a default judgment against defendants Girlshop and Showroom Seven – a brief GMA did not serve on Bop (*see* Wang Aff. Ex. G) – plaintiff argued only that "adding another word or name to a single word mark is *not sufficient* to overcome a likelihood of confusion between two separate marks" (Document 35, Wang Aff. Ex. P, at 4 (emphasis added)), not that sharing a common word necessarily renders two marks similar. Cases GMA cited in its brief (*id.*) made only this limited point. *See Coca-Cola Bottling Co. of Memphis, Tenn., Inc. v. Joseph E. Seagram & Sons*, 526

F.2d 556, 557 (CCPA 1975) (inclusion of an additional element into a composite mark "does not

necessarily preclude" similarity); *Cosvetic Labs.*, 202 U.S.P.Q. at 845 (noting that the foregoing

"is not an inflexible rule" and that "in each case consideration must be given to '* * * the effect

of the entire mark including any term in addition to that which closely resembles the opposing

mark'") (citation omitted).[4]

 The existence of ambiguity is especially strong in this case because the TTAB

recently observed, in denying summary judgment to GMA in a proceeding between GMA and

the owner of the CHARLOTTE RONSON mark:

> [G]enuine issues of material fact exist as to the similarity or dissimilarity of the
> commercial impressions of the marks at issue and the strength of opposer's
> [GMA's] pleaded marks and applicant's [Charlotte Ronson's] applied-for marks.
> In addition, applicant's evidence of third-party registrations that share a common
> name in the fashion industry raises a genuine issue of material fact regarding the
> perception of prospective consumers of applicant's and opposer's marks.

*GMA Accessories, Inc. v. Sanei Charlotte Ronson, LLC*, Nos. 91167353, 91168148, 91172117,

at 7-9 (TTAB Nov. 6, 2006) (Wang Aff. Ex. Q) (footnote omitted).

 Because there is no rule that two marks that share a common word are necessarily

similar, it is understandable that the words "the mark CHARLOTTE or any marks similar to or

substantially indistinguishable therefrom" might have been regarded as insufficient to ensure that

the CHARLOTTE SOLNICKI mark was in fact covered by the injunction, and the words

"including the mark CHARLOTTE SOLNICKI" therefore added to preclude the possibility that

CHARLOTTE SOLNICKI might be determined to be outside the injunction's scope.  From the

---

 [4] Other cases cited by GMA in its unresponded-to brief are clearly distinguishable, in that
they involved a situation where the defendant, instead of adding a word to a one-word mark,
subtracted a word from a two-word or three-word mark.  *See Lilly Pulitzer, Inc. v. Lilli Ann
Corp.*, 376 F.2d 324 (CCPA 1967) (THE LILLY similar to LILLI ANN); *In re Corning Glass
Works*, 229 U.S.P.Q. 65 (TTAB 1985) (CONFIRM similar to CONFIRMCELLS); *In re U.S.
Shoe Corp.*, 229 U.S.P.Q. 707 (TTAB 1985) (CAREER IMAGE similar to CREST CAREER
IMAGES).

case law, this certainly appears to be the most likely meaning of the inclusion of the phrase, "including the mark CHARLOTTE SOLNICKI."

Plaintiff, on the other hand, may argue that the words "including the mark CHARLOTTE SOLNICKI" were instead intended to indicate that CHARLOTTE SOLNICKI was an example of the type of mark that was "similar to or substantially indistinguishable" from CHARLOTTE, and that such an example gives rise to the implication that other two-word marks that include "Charlotte" as one of the words would also be deemed similar. However, the fact that one mark is agreed to be similar does not resolve the question of the similarity of another mark. As stated in *Cosvetic Labs.*, "[w]hile prior decisions in cases involving different marks may be pertinent . . . , they are not controlling in our determination of the issues of likelihood of confusion." 202 U.S.P.Q. at 843-44.

For the purpose of this motion, the Court need not resolve which interpretation of the phrase "including the mark CHARLOTTE SOLNICKI" is correct, or whether CHARLOTTE RONSON is similar to CHARLOTTE. It is sufficient to recognize that the existence of these two interpretations creates an ambiguity that makes resort to extrinsic evidence necessary in determining whether there was a meeting of the minds on the meaning of the offer of judgment. *See Boosey & Hawkes,* 145 F.3d at 489. Accordingly, this Court should look to parol evidence surrounding the formation of the agreement. Examination of that evidence plainly demonstrates that the parties lacked a meeting of the minds with regard to the scope of the injunction when the offer of judgment was purportedly accepted.

## II.    THERE WAS NO MUTUAL ASSENT TO THE INTERPRETATION OF THE OFFER OF JUDGMENT NOW ADVANCED BY PLAINTIFF, AND THE OFFER OF JUDGMENT AND RESULTING JUDGMENT THUS SHOULD BE WITHDRAWN OR VACATED

As previously discussed, offers of judgment are analyzed under contract law principles to test whether there has been a valid offer and acceptance.  *See Stewart*, 148 F.3d at 939; *Scosche Indus*, 121 F.3d at 678; 13 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE 3d [hereafter, "MOORE"] §§ 68.04[6], 68.05[3].  As with any contract, where there is no "meeting of the minds," an offer of judgment is invalid.  *See Stewart*, 148 F.3d at 939 (vacating offer of judgment because parties lacked a "meeting of the minds"); *accord Radecki v. Amoco Oil Co.*, 858 F.2d 397, 400 (8th Cir. 1988) (reversing entry of offer of judgment); *Kyreakakis v. Paternoster*, 732 F. Supp. 1287, 1292 (D.N.J. 1990) (modifying Rule 68 judgment where language did not reflect agreement the parties intended); *Christian v. R. Wood Motors, Inc.*, No. 91-CV-1348, 1995 WL 238981, at *10 (N.D.N.Y. Apr. 21, 1995) ("[A] Rule 68 offer, as with any contract, requires a meeting of the minds, which was obviously lacking here. . . .  [T]hus, the court refuses to enforce this Rule 68 Offer.").  Post-judgment relief pursuant to Rule 60(b) is warranted where, as here, "the parties' interpretations of an ambiguous offer show that there was no mutual assent to the same terms."  13 MOORE § 68.09; *see Stewart*, 148 F.3d at 940 ("Since there was no valid offer and acceptance under Rule 68, exceptional circumstances justify relief from the judgment under Rule 60(b) and the motion to vacate should have been granted.").

Whether there was a meeting of the minds "can be inferred from external indications reflecting thoughts and intentions of the parties."  *Stewart*, 148 F.3d at 939 (citing 1 CORBIN ON CONTRACTS § 4.13 (rev. ed.1993)).  "There is no binding agreement if 'the parties attach materially different meanings to their manifestations and . . . neither party knows or has reason to know the meaning attached by the other.'"  *Id*. (quoting RESTATEMENT (SECOND) OF

CONTRACTS § 20(1)(a) (1981)); *see also Dittman v. Dyno Nobel, Inc.*, No. 97-CV-1724, 2000 WL 151950, at *2-3 (N.D.N.Y. Feb. 10, 2000) ("Where the offeror, using ambiguous language, reasonably means one thing and the offeree reasonably understands differently, there is no contract."); *Benicorp Ins. Co. v. Nat'l Med. Health Card Sys.*, 447 F. Supp. 2d 329, 338-39 (S.D.N.Y. 2006) (citing *Dittman* and recommending denial of motion to enforce ambiguous purported settlement agreement).[5]

Here, the external indications reflecting the thoughts and intentions of the parties demonstrate that, at the time of plaintiff's purported acceptance of the offer, there was *no* mutual assent to the meaning plaintiff now attributes to the language.  Bop's actions – including but not limited to when it removed the Charlotte Solnicki (but not the Charlotte Ronson) items from its Web site in response to this Court's default judgment against the Solnicki Defendants, which contained the same language as in the offer of judgment – manifested Bop's unequivocal belief that the injunctive language in the offer included the Charlotte Solnicki items but did not include all items that merely contained the word "Charlotte" in them, such as Charlotte Ronson. Plaintiff, for its part, may have shared Bop's view of the meaning of the injunctive language when plaintiff's counsel made a settlement demand of $75,000 following the receipt of the offer of judgment.  *See* Wang Aff. ¶ 8.  But its abrupt change of position – exemplified by its rush to accept an offer of judgment, in an amount *$60,000 lower* than its prior demand, four days before

_____

[5] The cases previously cited by plaintiff in correspondence to this Court are distinguishable on their particular facts.  *See Sas v. Trintex*, 709 F. Supp. 455, 458 (S.D.N.Y. 1989) (decision based primarily on fact that, in civil rights case, where attorneys' fees are included as costs, offer must state that it is inclusive of costs in order to avoid additional award of attorneys' fees); *Foster v. Kings Park Cent. Sch. Dist.*, 174 F.R.D. 19, 24-25 (E.D.N.Y. 1997) (same); *Chambers v. Manning*, 169 F.R.D. 5, 8 (D. Conn. 1996) (attorneys' fees should have been specifically included in offer); *Shapiro v. Credit Protection Ass'n I, Inc.*, 53 F. Supp. 2d 626, 628 (S.D.N.Y. 1999) (because attorneys know difference between costs and fees, inclusion of "costs" in offer did not include fees).

it was required to do so, and lower than the last settlement amount offered by Bop (*see id.* ¶ 11) –

manifested plaintiff's belief, at the time of acceptance, that the language meant something quite

different, and that plaintiff desired to accept the offer precisely to attempt to exploit a perceived

difference in the parties' understandings of the meaning of the injunctive language.  Under these

circumstances, since the parties lacked a meeting of the minds, the offer of judgment and

resulting judgment should be withdrawn or vacated.

   Withdrawal or vacatur of the offer of judgment and resulting judgment would not

harm either party – it merely would place the parties in the same litigation position they would

have been in had the offer of judgment never been made.[6]  Indeed, plaintiff cannot reasonably

claim that it would suffer any harm in having to litigate a case that it presumably believes was

meritorious (and that it is presently litigating against several other defendants anyway).  And

Bop, for its part, will still have to demonstrate that it is not liable for any alleged trademark

infringement.

*  *  *

   In the event this Court does not find that the parties completely lacked a meeting

of the minds, principles of contract construction favor modification of the offer of judgment and

resulting judgment to make explicit the meaning attached by Bop.  The law is clear that where

---

[6] Plaintiff has also previously argued that Bop's offer of judgment cannot be withdrawn here because the judgment is final and in effect upon plaintiff's purported acceptance.  This is plainly wrong.  Where, as here, the proposed offer of judgment includes an injunction, the law is well settled that "the decision whether to enter any injunction is ultimately within the court's discretion."  *See, e.g.,* 12 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d § 3005 (2d ed. 1997).  The two cases that plaintiff has previously identified in support of the proposition that an accepted offer of judgment is final – *Kapoor v. Rosenthal*, 269 F. Supp. 2d 408 (S.D.N.Y. 2003), and *Gardner v. Catering by Henry Smith, Inc.*, 205 F. Supp. 2d 49 (E.D.N.Y. 2002) – are thus inapposite, because neither case involved an offer of judgment that included injunctive relief.  *See Kapoor*, 269 F. Supp. 2d at 411 (offer of $1,000 plus reasonable attorneys' fees); *Gardner*, 205 F. Supp. 2d at 50 (offer of $3,200).

the parties dispute the meaning of a term in an agreement but one party (here, plaintiff) had reason to know of the other party's (here, Bop's) different understanding, then "the disputed meaning is to be interpreted in accordance with the meaning attached by [that] party [here, Bop] if, at the time the agreement was made, that party did not know or had no reason to know of any different meaning attached by the other." *Teachers Ins. & Annuity Ass'n v. Ocwen Fin. Corp.*, No. 98 Civ. 7137 (BSJ), 2002 WL 237836, at *9 (S.D.N.Y. Feb. 19, 2002).  As explained in the RESTATEMENT (SECOND) OF CONTRACTS § 20 (1981):

> The manifestations of the parties are operative in accordance with the meaning attached to them by one of the parties if (a) that party does not know of any different meaning attached by the other, and the other knows the meaning attached by the first party; or (b) that party has no reason to know of any different meaning attached by the other, and the other has reason to know the meaning attached by the first party.

The events described above – such as plaintiff's inconsistent conduct during settlement discussions and plaintiff's counsel's rush to accept the offer of judgment days before the deadline for doing so – demonstrate that plaintiff knew or had reason to know that Bop attached a different meaning to the terms of the offer, and that Bop had no reason to know likewise.  Thus, to the extent this Court does not find the absence of a meeting of the minds – in which case the purported acceptance of the offer of judgment should be invalidated – then the offer and resulting judgment must be interpreted in accordance with Bop's understanding.

## CONCLUSION

This motion presents the questions (a) whether the offer of judgment and resulting judgment are ambiguous, and (b) if so, whether they should therefore be withdrawn or vacated due to the absence of a meeting of the minds or, in light of the parties' respective knowledge at the time of the purported contract formation, modified to reflect Bop's interpretation of the language.  Without this Court's intervention, the consequence of the parties' absence of mutual

assent will be future satellite litigation, an outcome that is plainly contrary to the core purpose of

Rule 68 to "*avoid* protracted litigation."  *See* Fed. R. Civ. P. 68 advisory committee's note

(emphasis added).  Accordingly, Bop requests that this Court permit Bop to withdraw the offer

of judgment, or in the alternative vacate or modify the order of judgment and resulting judgment.

Dated:   New York, New York
              October 19, 2007

                                                      Respectfully submitted,

                                                      FRIEDMAN KAPLAN SEILER &
                                                        ADELMAN LLP


                                                      s/ Robert J. Lack
                                                      Robert J. Lack
                                                      Jeffrey R. Wang
                                                      1633 Broadway
                                                      New York, NY 10019-6708
                                                      (212) 833-1100

                                                      Attorneys for Defendant Bop, LLC