Ira S. Sacks
Robert J. Grand
DREIER LLP
499 Park Avenue
New York, New York 10022
(212) 328-6100

*Attorneys for Defendant Jonathan Solnicki*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x

|  |  |
|---|---|
| GMA ACCESSORIES, INC.,<br><br>                Plaintiff,<br><br>   v.<br><br>EMINENT, INC., SAKS FIFTH AVENUE, INC., INTERMIX, INC., WINK NYC, INC., LISA KLINE, INC., GIRLSHOP, INC., SHOWROOM SEVEN STUDIOS, INC., JONATHAN SINGER, LEWIS TIERNEY and JONATHAN SOLNICKI,<br><br>                Defendants, | **DECLARATION OF JONATHAN SOLNICKI IN SUPPORT OF MOTION TO VACATE DEFAULT JUDGMENT AND PERMANENT INJUNCTION**<br><br>07 CV 3219 (LTS) |

------------------------------------------------------------- x

       Jonathan Solnicki, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury as follows:

       1.      I am one of the named defendants in this action. I submit this declaration in support of the motion to vacate the default judgment and order of permanent injunction entered by this Court on August 29, 2007 (the "Default"). Other than as expressly set forth, I have personal knowledge of all facts set forth herein.

       2.      I am aware that the Court has issued a default judgment and a permanent injunction in this case. The Default should be vacated because, among other reasons, my

failure to respond to the Amended Complaint was not willful and because I have several meritorious defenses to the claims asserted by GMA.

3.     I am 27 years old and, although I maintain dual United States and Argentine citizenship, I live year-round in Buenos Aires. I attended Yeshiva University in New York City from 1999 through 2003. I worked in New York for a year or so after finishing college, but returned to Argentina in 2004 and have lived there full time ever since.

4.     In 2002, I formed a company with my sisters Melina Solnicki ("Melina") and Jessica Solnicki ("Jessica") called Charlotte B., LLC ("Charlotte B"). At that time, we began selling original clothing designs using the mark CHARLOTTE BAREGMAN. Thereafter, we changed the brand name first to CHARLOTTE B and then to CHARLOTTE SOLNICKI.

5.     CHARLOTTE SOLNICKI clothing and related accessories are sold in numerous retail locations across the United States and around the world and through many retail websites. Charlotte B's sales of CHARLOTTE SOLNICKI product in the United States since 2002 were approximately $4 million and were approximately $794,000 between August 2006 and August 2007 alone.

6.     Approximately three years ago, I leased an apartment for my sister Melina at 108 West 15th Street, Apartment 6C, in Manhattan, New York (the "Apartment"). Melina is not a United States citizen and it was difficult for her to find a suitable apartment to rent in New York City, so I agreed to lease the apartment for her use. I do not now, and at no time in the past three years did I ever, live in the Apartment. It certainly was not my "dwelling place" or my "usual place of abode."

7. At the very end of May 2007, my sister Melina told me that some legal papers addressed to me were delivered to her at the Apartment. Melina told me that she had not read the papers. At that time, I was having a dispute with the landlord of the Apartment. The landlord had learned that I was not living in the apartment and sought to terminate the lease on that basis. The lease for the Apartment was to be terminated on May 31, 2007. In view of my ongoing dispute with the landlord and the timing of the delivery of legal papers, I believed that the legal papers delivered to my sister at the Apartment concerned the dispute that I was having with the landlord.

8. I understand that Melina was traveling to Europe the day she received the legal papers; thus, she was unable to bring the documents to Federal Express to send to me. Instead, I am told that she gave the documents to someone in Charlotte B's showroom and asked that they deliver the documents to me as a favor when they mail other packages to me. Unfortunately, since the showroom has a number of designers and Melina asked them to send the documents in an informal way, the documents were never received by me.

9. Although I was alerted by certain retailers this past summer that a lawyer representing GMA Accessories had sent letters demanding that the retailers refrain from displaying or selling CHARLOTTE SOLNICKI merchandise, I did not learn about this lawsuit, and in particular the default judgment and permanent injunction, until sometime in the middle or end of August 2007, when one of the attorneys for Defendant Bop, LLC, made me aware of the case. Since that time I have tried to contact GMA's attorney, John Bostany, numerous times; however, most of my calls went unanswered. I did speak to Mr. Bostany once, however. During that conversation Mr. Bostany threatened that he was going to sue me (but failed to mention that he had already sued me), tried to bargain

for money and asked if he could come to Argentina to meet with me as I was not going to be in the United States for some time. I agreed and when I tried to call him back to arrange this, he failed to return my calls. As a result, I began to investigate how I could raise the money to pay for the legal fees as most of Charlotte B's orders were canceled and I was having financial difficulty.

10. Had I been properly served with the papers, or had I even received timely notice that the Amended Complaint was filed, I would have retained counsel and filed a timely response. My failure to timely respond to the Amended Complaint was not in any way willful or undertaken in bad faith. Indeed, as soon as I learned about the lawsuit, default and permanent injunction, I began speaking with counsel and retained the Dreier firm to represent me and the Charlotte B interests.

11. I have never been involved in a lawsuit of any kind before this case.

12. Furthermore, I was not aware of GMA Accessories, Inc. ("GMA") or its products until early June 2007 when I learned that GMA attempted to interfere with Charlotte B's business relationships by contacting its retail customers and threatening them with legal action if they continued to sell CHARLOTTE SOLNICKI brand goods.

13. Although I have been heavily involved in the fashion industry since 2002, I was not aware of the GMA trademarks prior to learning about this lawsuit. In addition, despite the widespread use of the CHARLOTTE SOLNICKI mark, I am not aware of any instances of confusion between the CHARLOTTE SOLNICKI brand and GMA. For example, I have never received any inquiries or communications that were mistakenly directed to me instead of GMA, and no one has ever contacted me or anyone else at Charlotte B looking for GMA products.

14. To this day, although I am now aware of GMA's allegation that it sells various products using the CHARLOTTE mark, I have never seen any of GMA's products.

15. It is very common in the fashion industry for designers to have the same first or last names as other designers, and to use those names as trademarks. For instance, Christian Dior, Christian Lacroix and Christian Louboutin are all trademarks that are used in the fashion industry, as are Tommy Hilfiger and Tommy Bahama. Ralph Lauren, Sage Lauren, Dena Lauren, and Lauren Scott also coexist in the fashion marketplace, as do the marks Giorgio Armani, Giorgio Kauten, Giorgio Ferraro and Giorgio Bissoni, as well as Rebecca Beeson and Rebecca Taylor. Similarly, Calvin Klein and Anne Klein both use the same last name as part of their trademarks. Additionally, Emilio Pucci and Emilio Cavallini are famous designers that share the same first name, as do Cynthia Steffe and Cynthia Rowley and Kai Kuhne and Kai Milla. Moreover, designers such as Brian Reyes coexist in the fashion marketplace with Reyes. Numerous other designers have the same first or last names in addition to the examples named herein.

16. I am also aware of other uses of the first name, CHARLOTTE, in the fashion industry that are used as part of a trademark. For example, Charlotte Russe, Charlotte Tarantola, and Charlotte Ronson sell apparel and jewelry, among other products. In fact, when we decided to use the name CHARLOTTE in 2002, we searched the use of the name CHARLOTTE and found that numerous federal trademark registrations for the mark CHARLOTTE existed (and still exist) and were in fact registered prior to GMA's Marks. For instance, CHARLOTTE RUSSE owned (and still owns) several U.S. federal trademark registrations for the mark CHARLOTTE RUSSE. Moreover, there was (and still is) a federal registration for CHARLOTTE HORNETS for

5

clothing. Based on these and numerous other uses of CHARLOTTE in the fashion industry, we believed (and still believe) that GMA does not have the exclusive right to use the mark CHARLOTTE.

17. My sisters and I have worked extremely hard to develop the business since it started in 2002. This lawsuit is causing severe financial harm to the business and without an opportunity to defend against these baseless allegations on the merits, the company will be irreparably harmed.

18. Accordingly, the Default should be vacated.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 25, 2007
       New York, New York

                                               _s/ Jonathan Solnicki_____
                                               Jonathan Solnicki