UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
                                                               :
GMA ACCESSORIES, INC.,                                         :
                                                               :
                              Plaintiff,                       :
                                                               :
            v.                                                 :
                                                               :
EMINENT, INC., SAKS FIFTH AVENUE, INC.,   :
INTERMIX, INC., WINK NYC, INC.,                         :         07 CV 3219 (LTS)
LISA KLINE, INC., GIRLSHOP, INC.,                       :
SHOWROOM SEVEN STUDIOS, INC.,                    :
JONATHAN SINGER, LEWIS TIERNEY and      :
JONATHAN SOLNICKI,                                            :
                                                               :
                              Defendants,                      :
                                                               :
-------------------------------------------------------------- x


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JONATHAN SOLNICKI'S
MOTION TO VACATE DEFAULT JUDGMENT AND PERMANENT INJUNCTION**

Ira S. Sacks
Robert J. Grand
DREIER LLP
499 Park Avenue
New York, New York 10022
(212) 328-6100
*Attorneys for Defendant*
*Jonathan Solnicki*

**TABLE OF CONTENTS**

<u>**PAGE**</u>

A.    Plaintiff Failed to Properly Serve the Amended Complaint on Solnicki ........................... 3

B.    Solnicki's Default Was Not Willful ................................................................................ 4

C.    The CHARLOTTE SOLNICKI Brand ........................................................................... 5

D.    The Lack of Likely Confusion in the Marketplace ......................................................... 6

I.    THE DEFAULT JUDGMENT ENTERED AGAINST SOLNICKI
      SHOULD BE VACATED ................................................................................................ 7

A.    Solnicki's Failure to Respond to the Amended Complaint was not Willful ..................... 8

B.    Plaintiff Will Suffer No Unfair Prejudice If the Default is Vacated ............................... 10

C.    Solnicki Has Meritorious Defenses to the Claims Asserted Against Him by Plaintiff .... 10

      1.    Service of the Amended Complaint Was Defective and Invalid ......................... 11

      2.    Solnicki is Not The Proper Defendant to Plaintiff's Claims .............................. 12

      3.    Solnicki Has Meritorious Defenses to the Trademark Infringement and Unfair
            Competition Claims ........................................................................................ 12

            a.    CHARLOTTE is an Extremely Weak Mark ......................................... 13

            b.    The Marks Are Not Similar ................................................................. 14

            c and d.  Proximity of the Products and the Likelihood GMA will
            Bridge the Gap .................................................................................... 15

            e.    There Have Been no Instances of Actual Confusion ............................ 15

            f.    Sophistication of the Consumers ......................................................... 16

            g.    Solnicki Did not Adopt the Mark in Bad Faith .................................... 17

            h.    The Quality of the Defendant's Products ............................................. 17

3.    Solnicki Has Meritorious Defenses to the Trademark Dilution, Cybersquatting, and
      Trademark Counterfeiting Claims .................................................................................. 17

            a.    GMA's Trademark Dilution Claim Has No Merit ................................ 17

b.      GMA's Cybersquatting Claim Has No Merit........................................ 18

c.      GMA's Trademark Counterfeiting Claim Has No Merit ...................... 18

CONCLUSION ............................................................................................................ 20

## TABLE OF AUTHORITIES

**PAGE**

### FEDERAL CASES

*A&H Sportswear Inc. v. Victoria's Secret Stores Inc.*,
237 F.3d 198 (3d Cir. 2000) ................................................................................................16

*American Alliance Ins. Co. v. Eagle Ins. Co.*,
92 F.3d 57 (2d Cir. 1996) ...............................................................................................8, 10

*Brennan's, Inc. v. Brennan's Restaurant, L.L.C.*,
360 F.3d 125 (2d Cir. 2004) ...............................................................................................14

*Cody v. Mello*,
59 F.3d 13 (2d Cir. 1995) .....................................................................................................7

*Davis v. Musler*,
713 F.2d 907 (2d Cir. 1983) ...............................................................................................10

*Enron Oil Corp. v. Diakuhara*,
10 F.3d 90 (2d Cir. 1993) ............................................................................................7, 8, 9

*Gruner + Jahr USA Publ'g v. Meredith Corp.*,
991 F.2d 1072 (2d Cir. 1993) .............................................................................................12

*Gucci America, Inc. v. Gold Center Jewelry*,
158 F.3d 631 (2d Cir. 1998) .................................................................................................8

*Hasbro, Inc. v. Lanard Toys, Ltd.*,
858 F.2d 70 (2d Cir. 1988) .................................................................................................15

*Montblanc-Simplo GmbH v. Aurora Due S.r.L.*,
363 F.Supp.2d 467 (E.D.N.Y. 2005) ..................................................................................17

*N.Y. Stock Exch. v. N.Y., N.Y. Hotel, LLC*,
293 F.3d 550 (2d Cir. 2002) ...............................................................................................17

*New York v. Green*,
420 F.2d 99 (2d Cir. 2005) ...................................................................................................8

*Paco Sport Ltd. v. Paco Rabanne Parfums*,
86 F.Supp.2d 305 (S.D.N.Y. 2000) ....................................................................................16

*Pecarsky v. Galaxiworld.com, Ltd*,
249 F.3d 167 (2d Cir. 2001) .................................................................................................8

*Playtex Prods. v. Georgia-Pacific Corp.*,
    390 F.3d 158 (2d Cir. 2004) ...................................................................................12

*Plus Prods. v. Plus Disc. Foods, Inc.*,
    722 F.2d 999 (2d Cir. 1983) ............................................................................13, 16

*Polaroid Corp. v. Polarad Elecs. Corp.*,
    287 F.2d 492 (2d Cir.), *cert. denied*, 368 U.S. 820 (1961) ...................................13

*Powerserve Int'l, Inc. v. Lavi*,
    239 F.3d 508 (2d Cir. 2001) ...................................................................................8

*Professional Sound Services Inc. v. Guzzi*,
    349 F.Supp.2d 722 (S.D.N.Y. 2004) ......................................................................15

*Roberts v. Keith*,
    2007 WL 2712853 (S.D.N.Y. Sept. 18, 2007)........................................................8

*SEC v. McNulty*,
    137 F.3d 732 (2d Cir. 1998) ............................................................................8, 10

*Sports Authority, Inc. v. Prime Hospitality Corp.*,
    89 F.3d 955 (2d Cir. 1996) ...................................................................................14

*Star Indus., Inc. v. Bacardi & Co.*,
    412 F.3d 373 (2d Cir. 2005) .................................................................................13

*Streetwise Maps Inc. v. VanDam Inc.*,
    159 F.3d 739 (2d Cir. 1998) .................................................................................13

*Trustees of Columbia University in the City of New York v. Columbia/HCA Healthcare Corp.*,
    964 F.Supp. 733 (S.D.N.Y. 1997) ........................................................................13

*We Media Inc. v. General Elec. Co.*,
    218 F.Supp.2d 463 (S.D.N.Y. 2002) ....................................................................13

*Windsor Inc. v. Intravco Travel Centers Inc.*,
    799 F.Supp. 1513 (S.D.N.Y. 1992) ......................................................................16

*Zeballos v. Tan*,
    2006 WL 1975995 (S.D.N.Y. July 10, 2006) ......................................................12

## STATE STATUTES

N.Y. Gen. Bus. § 360-1. ............................................................................................17

## FEDERAL STATUTES

15 U.S.C. §1125(d)....................................................................................................18

## <u>FEDERAL RULES</u>

Fed. R. Civ. P. 4(e)(2) .................................................................................................11

Fed. R. Civ. P. 55(c) .................................................................................................1, 8

Fed. R. Civ. P. 60(b).................................................................................................1, 8

## <u>SECONDARY SOURCES</u>

2-5 Gilson on Trademarks § 5.19 ...............................................................................19

2-7A Gilson on Trademarks § 7A.06..........................................................................18

4 J. McCarthy Trademarks and Unfair Competition § 25:10 (4 ed. 2003)..................19

Defendant Jonathan Solnicki ("Solnicki") respectfully submits this Memorandum of Law in support of his application, pursuant to Rules 55(c) and 60(b) of the Federal Rules of Civil Procedure, for issuance of an Order vacating the default judgment and order of permanent injunction issued by this Court dated August 29, 2007.

The default judgment and permanent injunction rendered by this Court pursuant to an Order dated August 29, 2007 (the "Default Judgment") must be vacated. Solnicki never received the Amended Complaint (or the original Complaint), and also did not receive notice of its filing until after the Default Judgment was entered. Solnicki has lived in Argentina, not New York, for the past several years. As a result, the purported service on Solnicki was totally insufficient.

Plaintiff's motion for a default judgment was granted based on Solnicki's failure to respond to Plaintiff's Amended Complaint, as well as his alleged failure to respond to the default judgment motion papers. The Amended Complaint contains claims for, *inter alia,* trademark infringement based on Plaintiff's allegations that defendants manufacture, market, distribute, display and/or sell clothing using the mark CHARLOTTE and/or CHARLOTTE SOLNICKI which purportedly infringe Plaintiff's trademarks. As set forth more fully below, the Default Judgment should be vacated because: (1) the default was not willful; (2) vacating the Default Judgment will not unfairly prejudice Plaintiff in any way; and (3) Solnicki has several meritorious defenses to the claims asserted against him in this action.

There can be no question that the default was not willful or in bad faith. As the accompanying declarations indicate, Solnicki did not know of the lawsuit until after the Default Judgment was entered. Accordingly, there can be no showing that Solnicki's failure to respond to the Amended Complaint was in any way willful or in bad faith.

{00298479.DOC;4}

Moreover, vacating the Default Judgment will not unfairly prejudice Plaintiff in any way. Plaintiff recently filed a Second Amended Complaint dated September 28, 2007, adding six new defendants to this action, bringing the total number of defendants that will be litigating this action to at least nine. The responses of several of the newly added defendants to the action are not yet due as of the date of this motion and no discovery has taken place. Litigating this case on the merits against Solnicki cannot, therefore, result in any prejudice to Plaintiff because it will be actively engaged in the litigation of the action against the other defendants and there will be no delay at all in proceeding through the discovery stage.

The Default should also be vacated because Solnicki has several meritorious defenses to the claims asserted against him. First, Plaintiff failed to properly serve Solnicki with the Summons and Amended Complaint under applicable law, because Plaintiff attempted to serve him at a residence in New York that Plaintiff admits was **not** Solnicki's "dwelling house or usual place of abode." Plaintiff has acknowledged that Solnicki resides in Argentina, not New York. Furthermore, even assuming (contrary to fact) that Plaintiff served Solnicki at the proper address by leaving the papers with an individual of suitable age and discretion, Plaintiff did not follow the delivery of the Summons and Amended Complaint with a mailing as required by applicable state law.

Furthermore, Plaintiff's trademark infringement claims are misdirected at Solnicki. Solnicki is an individual and does not manufacture, sell or distribute products bearing the name CHARLOTTE SOLNICKI. Rather, Solnicki is just one of three individual members of an entity known as Charlotte B, LLC ("Charlotte B"). It is that corporate entity, not Solnicki individually, that is engaged in the manufacture, sale and distribution of clothing and accessories under the

name CHARLOTTE SOLNICKI. It is that corporate entity, not Solnicki individually, that is the proper target of Plaintiff's trademark infringement allegations.

In addition, and perhaps most important, as shown more fully below, Plaintiff's trademark infringement (and other) claims are meritless because there is simply no chance of confusion at all in the marketplace, much less a likelihood of confusion, between the relatively high priced, high quality CHARLOTTE SOLNICKI clothing and related accessories which are sold in numerous high end retail locations across the United States and around the world, and GMA's products, which primarily consist of inexpensive accessories such as hair ornaments, socks, slippers, and flip flops.

Accordingly, in view of the foregoing and in view of this Circuit's repeated pronouncements that default judgments are disfavored and that a clear preference exists for cases to be adjudicated on the merits, the Default Judgment should be vacated.

A.    **Plaintiff Failed to Properly Serve the Amended Complaint on Solnicki**

Plaintiff filed a Complaint on April 20, 2007, which Solnicki never received and for which no summons was executed. Plaintiff subsequently filed an Amended Complaint on May 7, 2007 (the "Amended Complaint"). Paragraph 6 of the Amended Complaint states: "Defendant SOLNICKI is an individual residing at Martin Lezica 3098 - B1642GJB San Isidro - Buenos Aires, Argentina." Despite its acknowledgment that Solnicki resides in Argentina, not New York, on or about May 29, 2007, Plaintiff attempted to serve Solnicki with the Amended Complaint at 108 West 15th Street in Manhattan, New York (the "Apartment"). Although Jonathan Solnicki was the target, Plaintiff's attempted service of process missed the mark. According to the Affidavit of Service, the Amended Complaint was delivered to a Melina Solnicki at the Apartment. Melina Solnicki is the sister of Jonathan Solnicki and is one of the

three members of Charlotte B. Melina Solnicki, not Jonathan Solnicki, resides at the Apartment on May 29, 2007. M. Solnicki Decl., ¶ 11. Thus, Plaintiff attempted to serve Jonathan Solnicki with the Amended Complaint at a residence where Plaintiff knew Solnicki did not reside. J. Solnicki Decl., ¶ 6. Plaintiff was well aware that the Apartment was never Solnicki's "dwelling place" or "usual place of abode."

**B.    Solnicki's Default Was Not Willful**

For much of the past year, Solnicki was engaged in a dispute with the landlord at the Apartment because Solnicki, the tenant named on the lease, did not reside there. J. Solnicki Decl. ¶ 7. For this very reason, the landlord refused to extend the lease beyond May 31, 2007. J. Solnicki Decl., ¶ 7. Melina was well aware of the dispute that her brother was having with the landlord. M. Solnicki Decl., ¶ 11. Thus, when she was handed legal papers on May 29, 2007 she believed that the papers related to the dispute that her brother was having with the landlord and did not know that they related to the business of Charlotte B. M. Solnicki Decl., ¶ 11. Melina did not read the papers. M. Solnicki Decl., ¶ 11.

Upon receiving the papers, Melina sought to contact her brother and advise him that papers had been delivered in connection with the dispute with the landlord. M. Solnicki Decl., ¶ 12. Melina forwarded the papers to Solnicki in Argentina, but it is clear that Solnicki never received them. M. Solnicki Decl., ¶ 12; J. Solnicki Decl., ¶ 8. Had Solnicki been properly served with the papers, or had he had timely notice that the Amended Complaint had been filed, he would have retained counsel and submitted a timely response. J. Solnicki Decl., ¶ 10. Indeed, almost immediately upon learning of the Default, Solnicki consulted with counsel and ultimately retained the Dreier firm to represent his interests and those of Charlotte B in the

litigation.  J. Solnicki Decl., ¶10.  Solnicki's failure to respond to the Amended Complaint thus was not willful or undertaken in bad faith.

On or about September 28, 2007, Plaintiff filed a Second Amended Complaint, adding six new defendants to this litigation.  The answers of several of those defendants are not yet due.

## C.    The CHARLOTTE SOLNICKI Brand

In 2002, siblings Jonathan, Melina and Jessica Solnicki formed Charlotte B and began selling original clothing designs using the mark CHARLOTTE BAREGMAN.  J. Solnicki Decl., ¶ 4; M. Solnicki Decl., ¶ 5.  The brand name was changed to CHARLOTTE B and then to CHARLOTTE SOLNICKI.  J. Solnicki Decl., ¶ 4; M. Solnicki Decl., ¶ 5.

CHARLOTTE SOLNICKI clothing and related accessories are sold in numerous retail locations across the United States and around the world and through many retail websites. M. Solnicki Decl., ¶ 6.  Charlotte B's sales of CHARLOTTE SOLNICKI product in the United States since 2002 were approximately $4 million. CHARLOTTE SOLNICKI clothing and related accessories are sold in numerous high end retail locations across the United States and around the world and through many retail websites.  M. Solnicki Decl., ¶ 6; J. Solnicki Decl., ¶ 5.

CHARLOTTE SOLNICKI products are manufactured with top quality materials and workmanship and are sold at a relatively high price point. M. Solnicki Decl., ¶ 7.

The CHARLOTTE SOLNICKI brand is well-known in the fashion industry, and the brand has obtained a great deal of unsolicited press coverage since at least as early as 2004 in numerous renowned publications, including Entertainment Weekly, Esquire, Elle, Cosmopolitan, In Touch Weekly, In Style, Star, US Weekly, W, Vogue, Shape, Self, People, the New York Times, the New York Post, the New York Daily News, and Lucky.  M. Solnicki Decl., ¶ 8.

CHARLOTTE SOLNICKI clothing and accessories have been worn by numerous well-known celebrities, including Jessica Simpson, Paris Hilton, Eva Longoria, Lindsay Lohan, Jennifer Lopez, Cate Blanchett, Brandy, Tara Reid, Paz Vega, Brook Hogan, and Lauren Conrad, further bolstering the brand's fame and popularity.  M. Solnicki Decl., ¶ 9.

**D.    The Lack of Likely Confusion in the Marketplace**

Solnicki was not aware of GMA Accessories, Inc. ("GMA") or its products until this past summer when he learned that GMA attempted to interfere with Charlotte B's business relationships by contacting its retail customers and threatening them with legal action if they continued to sell CHARLOTTE SOLNICKI brand goods.  J. Solnicki Decl., ¶ 12; M. Solnicki Decl., ¶ 16.

In addition, despite the widespread use of the CHARLOTTE SOLNICKI mark, Solnicki is not aware of any instances of confusion between the CHARLOTTE SOLNICKI brand and GMA.  Solnicki has never received any inquiries or communications that were mistakenly directed to him or to Charlotte B instead of GMA, and no one has ever contacted Solnicki, Charlotte B or Charlotte B's showroom looking for GMA products.  To this day, Solnicki has never seen any of GMA's products and neither Solnicki nor anyone at Charlotte B has ever copied any of GMA's designs or tried to pass their products off as GMA products.  J. Solnicki Decl., ¶ 14; M. Solnicki Decl., ¶ 17.

It is very common in the fashion industry for designers to have the same first or last names as other designers, and to use those names as trademarks.  For instance, Christian Dior, Christian Lacroix and Christian Louboutin are all trademarks that are used in the fashion industry, as are Tommy Hilfiger and Tommy Bahama.  Ralph Lauren, Sage Lauren, Dena Lauren, and Lauren Scott also coexist in the fashion marketplace, as do the marks Giorgio

Armani, Giorgio Kauten, Giorgio Ferraro and Giorgio Bissoni, as well as Rebecca Beeson and Rebecca Taylor. Similarly, Calvin Klein and Anne Klein both use the same last name as part of their trademarks. Additionally, Emilio Pucci and Emilio Cavallini are famous designers that share the same first name, as do Cynthia Steffe and Cynthia Rowley and Kai Kuhne and Kai Milla. Moreover, designers such as Brian Reyes coexist in the fashion marketplace with Reyes. Numerous other designers have the same first or last names in addition to the examples named herein. M. Solnicki Decl., ¶ 19.

There are many other uses of the first name, CHARLOTTE, in the fashion industry that are used as part of a trademark. For example, Charlotte Russe, Charlotte Tarantola, and Charlotte Ronson sell apparel and jewelry, among other products. Grieco Decl., ¶¶ 4-8; M. Solnicki Decl., ¶ 18; J. Solnicki Decl., ¶ 16.

As detailed more fully below, these facts weigh heavily in favor of Solnicki's argument that he has meritorious defenses to the claims asserted against him by Plaintiff.

As we more fully set forth below, the Default Judgment should be vacated.

## I.

### THE DEFAULT JUDGMENT ENTERED AGAINST SOLNICKI SHOULD BE VACATED

It is well established in this Circuit that default judgments are disfavored and that a clear preference exists for resolving disputes on the merits. *See Cody v. Mello,* 59 F.3d 13, 15 (2d Cir. 1995) (holding that a default judgment is "the most severe sanction which the court may apply"); *see also Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 92, 95 (2d Cir. 1993) (holding that a refusal to grant relief from default was abuse of discretion because a default should be reserved by a trial court as a final, not a first, sanction imposed on a litigant). "Accordingly, in ruling on a motion to vacate a default judgment, all doubts must be resolved in favor of the party seeking relief from

the judgment in order to ensure that to the extent possible, disputes are resolved on the merits." *New York v. Green,* 420 F.3d 99, 104 (2d Cir. 2005); *accord Powerserve Int'l, Inc. v. Lavi,* 239 F.3d 508, 514 (2d Cir. 2001).

 The Second Circuit has established three criteria that must be assessed in determining whether to relieve a party from a default judgment under Rules 55(c) and 60(b):  (1) whether the default was willful; (2) whether setting aside the default would prejudice the non-defaulting party; and (3) whether the defaulting party has presented a meritorious defense.  *See, Enron Oil Co.,* 10 F.3d at 96; *American Alliance Ins. Co. v. Eagle Ins. Co.,* 92 F.3d 57, 59 (2d Cir. 1996); *Roberts v. Keith,* 2007 WL 2712853, at *2 (S.D.N.Y. Sept., 2007).  The Second Circuit has also stated that "other relevant equitable factors may also be considered," such as "whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result."  *Enron Oil,* 10 F.3d, at 96; *accord Pecarsky v. Galaxiworld.com, Ltd,* 249 F.3d 167, 171 (2d Cir. 2001).

 Here, as set forth more fully below, Solnicki has met each of these criteria and therefore the Default Judgment must be vacated.

**A.** **Solnicki's Failure to Respond to the Amended Complaint was not Willful**

 Solnicki's failure to respond to the Amended Complaint was not willful.  Rather, it was because he was not served.  The Second Circuit has interpreted "willfulness" in the context of a default, to refer to conduct that is "more than merely negligent or careless."  *SEC v. McNulty,* 137 F.3d 732, 738 (2d Cir. 1998).  Thus, to find that a default was willful, it must be clear that the defaulting party engaged in deliberate or egregious conduct.  *See Gucci America, Inc. v. Gold Center Jewelry,* 158 F.3d 631, 634-635 (2d Cir. 1998); *American Alliance Ins. Co.,* 92 F.3d, at 61.

Here, Solnicki's failure to respond to the Amended Complaint was not willful because he did not receive the Amended Complaint or notice of its filing until after the Default Judgment had been entered. J. Solnicki Decl. ¶ 9. As set forth above and in the J. Solnicki Declaration, Plaintiff attempted to serve Solnicki with the Amended Complaint at an address in Manhattan, New York. J. Solnicki Decl. ¶ 7. Plaintiff was well aware, however, and indeed has acknowledged, that Solnicki lives in Argentina, not New York. (Amended Complaint, ¶ 6). Thus, Plaintiff knowingly attempted to effect service of the Amended Complaint on Solnicki by serving him at a residence that was not his "dwelling house or usual place of abode."

Not surprisingly, Solnicki was not at the apartment when Plaintiff's process server arrived to deliver the Amended Complaint. Instead, the Amended Complaint was left with Solnicki's sister, Melina. Melina was traveling to Europe the day she received the legal papers; thus, she was unable to bring the documents to Federal Express to send to Solnicki. Instead, she gave the documents to someone in Charlotte B's showroom and asked that they deliver the documents to Solnicki as a favor when they mail other packages to him. Unfortunately, the documents were never received by Solnicki. J. Solnicki Decl. ¶ 8. Consequently, Solnicki did not receive notice of the Amended Complaint until after the Default Judgment had been entered. Upon learning of the Default Judgment, Solnicki took action immediately by contacting counsel and ultimately retained the Dreier firm to protect his interests, as well as the interests of Charlotte B in this litigation. J. Solnicki Decl. ¶ 10.

In view of the foregoing, there is simply no evidence that Solnicki engaged in any deliberate or egregious conduct in failing to respond to the Amended Complaint. As a result, he did not willfully default. *See Enron Oil Co.,* 10 F.3d at 98 ("assuming that [defendant] did not receive the second amended complaint, there could be no "willfulness" in his failure to answer

that pleading. When he finally received a copy of this pleading, along with Enron's motion for default, he responded immediately, making clear that he was not willing to forfeit his rights.").

**B.      Plaintiff Will Suffer No Unfair
         Prejudice If the Default is Vacated**

Setting aside the Default Judgment will not prejudice Plaintiff. Plaintiff recently filed a Second Amended Complaint, dated September 28, 2007, adding six new defendants to this action, bringing the total number of defendants that will be litigating this action to at least nine. The responses of several of the newly added defendants to the action are not yet due as of the date of this motion. Consequently, no meaningful discovery has taken place. Litigating this case on the merits against Solnicki cannot, therefore, result in any prejudice to Plaintiff, because Plaintiff will be actively engaged in the litigation of the action against the other defendants whether or not Solnicki is permitted to rejoin the case. Furthermore, because the litigation is still in its pre-answer stage as to several defendants, there will be no delay at all in proceeding through discovery. Thus, Plaintiff will not be prejudiced if the Default Judgment is vacated. *See Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983) (to establish prejudice a plaintiff must demonstrate that the delay will result in the loss of evidence, create increased difficulties in discovery, or provide greater opportunity for fraud and collusion).

**C.      Solnicki Has Meritorious Defenses to
         the Claims Asserted Against Him by Plaintiff**

The final factor to weigh in deciding whether to vacate the entry of a default judgment is whether the defendant has presented a meritorious defense. In order to satisfy the criterion of a meritorious defense, a defendant "need not establish his defense conclusively, but must present evidence of facts that, if proven at trial, would constitute a complete defense." *SEC v. McNulty*, 137 F.3d at 740; *see also American Alliance Ins. Co.*, 92 F.3d at 59 (holding that the defense

does not have to be ultimately persuasive, but merely present the factfinder with some determination to make).

Here, Solnicki has established several meritorious defenses to the claims asserted against him.

**1.    Service of the Amended Complaint Was Defective and Invalid**

First, Plaintiff failed to properly effect service of the Amended Complaint under applicable law.  Federal Rule of Civil Procedure Rule 4(e)(2) provides that service may be effected:

> by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.

Here, Plaintiff attempted to serve Solnicki at a residence in New York that Plaintiff admittedly knew was not Solnicki's "dwelling house or usual place of abode."  Plaintiff has acknowledged on the face of its Amended Complaint that Solnicki resides in Argentina, not New York.  Despite this acknowledgment, Plaintiff attempted service of the Amended Complaint on Solnicki by delivering the Amended Complaint to Solnicki's sister, Melina, at an apartment in Manhattan, New York.  However, it is clear that Solnicki does not now, and at no time in the past did he ever, live in that apartment.  Instead, Solnicki leased the apartment for his sister Melina, who is not a United States citizen and had encountered some difficulty in renting an apartment herself.  J. Solnicki Decl. ¶ 6.  There can be no argument that the Apartment where Plaintiff attempted to effect service of the Amended Complaint was not Solnicki's "dwelling

11

place" or his "usual place of abode."[1]  For this reason alone, the Default Judgment must be vacated.

**2.     Solnicki is Not The Proper Defendant to Plaintiff's Claims**

Plaintiff's trademark infringement claims are misdirected at Solnicki.  Solnicki is a member of Charlotte B, but he does not manufacture or sell the clothing and accessories that are the subject of this lawsuit.  It is the corporate entity, Charlotte B, not Solnicki individually, that is engaged in the manufacture, sale and distribution of clothing and accessories under the name CHARLOTTE SOLNICKI.  Charlotte B is the owner of the CHARLOTTE SOLNICKI brand, and, as such, is the legal entity that is ultimately affected by any final disposition in this action. It is that corporate entity, not Solnicki individually, that is the proper target of Plaintiff's trademark infringement allegations.

**3.     Solnicki Has Meritorious Defenses to the
Trademark Infringement and Unfair Competition Claims**

Counts I, III, and IV of the Amended Complaint are all predicated upon the allegation of trademark infringement by Solnicki.  Solnicki is not infringing GMA's trademarks and Solnicki has a meritorious defense to those claims.

In order to prove its trademark infringement and unfair competition claims, GMA must prove that it owns valid trademarks and that Solnicki's use of a similar mark is likely to cause confusion.  *Gruner + Jahr USA Publ'g v. Meredith Corp*., 991 F.2d 1072, 1075 (2d Cir. 1993). The main factor in whether a mark is entitled to trademark protection is whether the mark is distinctive, and this is also a factor in determining likelihood of confusion.  *Playtex Prods. v. Georgia-Pacific Corp.,* 390 F.3d 158, 161 (2d Cir. 2004).  In evaluating whether there is a

---

[1] Plaintiff's attempted service on Solnicki is deficient under New York State law as well because Plaintiff did not serve Solnicki at the proper address and Plaintiff did not follow the delivery of the Summons and Amended Complaint with a mailing.  *See Zeballos v. Tan,* 2006 WL 1975995, at *2-4 (S.D.N.Y. July 10, 2006).

12

likelihood of confusion between two marks, courts apply the multi-factor "*Polaroid* test" set forth by Judge Friendly in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir.), *cert. denied*, 368 U.S. 820 (1961). The *Polaroid* test calls for the balancing of the following non-exhaustive list of factors: i) the strength of the plaintiff's mark; ii) the degree of similarity between the two marks; iii) the proximity of the products; iv) the likelihood that the plaintiff will bridge the gap; v) actual confusion; vi) sophistication of the consumers; vii) bad faith; and viii) the quality of the defendant's products. *Polaroid Corp.*, 287 F.2d at 495. A likelihood of confusion analysis considers all the *Polaroid* factors, but the "ultimate question" is "whether, looking at the products in their totality, consumers are likely to be confused." *Star Indus., Inc. v. Bacardi & Co.,* 412 F.3d 373, 374 (2d Cir. 2005).

Below is a brief summary discussion of these relevant factors, which clearly illustrates that there is not likely to be evidence to support a likelihood of confusion, and therefore, Solnicki certainly has a meritorious defense to the infringement and unfair competition claims.

> **a.    CHARLOTTE is an Extremely Weak Mark**

The CHARLOTTE mark is a very weak mark, and GMA does not have the ability to prevent the widespread use of CHARLOTTE by others. It is well-settled that extensive third-party uses of the same or similar marks dilute the strength of a plaintiff's mark as a source identifier. *See, e.g. Streetwise Maps Inc. v. VanDam Inc.* 159 F.3d 739, 743-744 (2d Cir. 1998*); Plus Prods. v. Plus Disc. Foods, Inc.* , 722 F.2d 999, 1005 (2d Cir. 1983); *We Media Inc. v. Gen. Electric Co.,* 218 F.Supp.2d 463 (S.D.N.Y. 2002); *Trustees of Columbia University in the City of New York v. Columbia/HCA Healthcare Corp.*, 964 F.Supp. 733 (S.D.N.Y. 1997).

There are countless other uses of the first name CHARLOTTE in the fashion industry. For example, Charlotte Russe and Charlotte Tarantola sell apparel and jewelry, among other

products, and both of these marks were used PRIOR to GMA's alleged date of first use of its marks. In addition, Charlotte Ronson has been selling apparel and related items for several years using the CHARLOTTE RONSON mark. *See* Grieco Decl., ¶ 4. There are also numerous other third-party uses of the name CHARLOTTE for clothing, shoes, handbags and jewelry. Grieco Decl., ¶¶ 5-8. As a result, the extensive third-party use of CHARLOTTE in the fashion industry significantly reduces any trademark significance GMA alleges it may have in its CHARLOTTE marks.

       **b.**     **The Marks Are Not Similar**

The only similarity between the CHARLOTTE SOLNICKI mark and the GMA Marks is that they share a word – CHARLOTTE – which is a common first name for a woman and, as shown above, is used by countless other entities in the fashion industry. Mere similarities between components of marks do not automatically create a likelihood of confusion as marks must be considered in their entireties as they would be encountered in the marketplace and not dissected into component parts. *Sports Authority, Inc. v. Prime Hospitality Corp.,* 89 F.3d 955, 962 (2d Cir. 1996); *Brennan's, Inc. v. Brennan's Restaurant, L.L.C.,* 360 F.3d 125, 133 (2d Cir. 2004).

An examination of the CHARLOTTE SOLNICKI mark and the GMA Marks illustrates that the marks do not create the same commercial impression. Indeed, the marks at issue are encountered in the marketplace quite differently. GMA's CHARLOTTE Marks consist of only a common first name, CHARLOTTE, while Solnicki's mark, on the other hand, consists of an entire woman's name, CHARLOTTE SOLNICKI. As discussed above, consumers are accustomed to seeing marks containing common names in the fashion industry, and thus, are capable of distinguishing between them.

     **c and d.**       **Proximity of the Products and the**
                              **Likelihood GMA will Bridge the Gap**

These factors examine "whether, due to the commercial proximity of the competitive products, consumers may be confused as to their source." *Hasbro, Inc. v. Lanard Toys, Ltd.,* 858 F.2d 70, 77 (2d Cir. 1988). Some of the factors for a court to consider in assessing the commercial proximity of the products are price, style, intended uses, target clientele, and channels of distribution. *Professional Sound Services Inc. v. Guzzi,* 349 F.Supp.2d 722 (S.D.N.Y. 2004).

Evaluating the proximity of the products in this matter is premature since there has been no discovery. However, from a simple review of CHARLOTTE SOLNICKI products and the products pictured on the GMA website, it is clear that these products are sold at much different price points to different clientele through different channels of distribution. Namely, Charlotte B is a high quality fashion company that sells a full line of high end women's clothing to exclusive retailers. *See*, M. Solnicki Decl., ¶ 7. GMA's products, on the other hand, appear to be of low quality and are likely sold to lower end retailers. Indeed, from a review of GMA's website, it is clear that GMA is not a fashion company in the sense that Charlotte B is a fashion company, because GMA does not sell a full line of apparel. GMA sells primarily inexpensive accessories such as hair ornaments, socks, slippers, and flip flops. The only items of "clothing" GMA purports to sell are robes and sleepwear. Further, from a review of this website, it is impossible to ascertain which of these products is sold using the "Charlotte" mark as opposed to GMA's numerous other "brands."

     **e.**       **There Have Been no Instances of Actual Confusion**

Although no evidence of actual confusion is necessary to prove a likelihood of confusion, the court may infer from the lack of such evidence that consumer confusion is unlikely to occur.

*See, e.g., Plus Products v. Plus Discount Foods, Inc.,* 722 F.2d 999 (2d Cir. 1983); *Windsor Inc. v. Intravco Travel Centers Inc.*, 799 F.Supp. 1513 (S.D.N.Y. 1992) (No evidence of actual confusion during the three years that the parties co-existed is a strong indicator that there is no likelihood of confusion).

Despite the fact that CHARLOTTE SOLNICKI products have existed in the marketplace for many years and have obtained significant press coverage and other notoriety, there have been no instances of actual confusion.  M. Solnicki Decl., ¶ 16; J. Solnicki Decl., ¶ 13.  To date, consumers have been able to distinguish between the CHARLOTTE SOLNICKI Marks and the GMA Marks, despite the fact that both exist in the marketplace (with a plethora of other CHARLOTTE marks).

     **f.**     **Sophistication of the Consumers**

Clothing purchasers tend to be brand conscious and are thus sophisticated consumers. *Paco Sport Ltd. v. Paco Rabanne Parfums*, 86 F.Supp.2d 305 (S.D.N.Y. 2000); *A&H Sportswear Inc. v. Victoria's Secret Stores Inc*., 237 F.3d 198 (3d Cir. 2000).  Accordingly, it is likely that purchasers would not perceive the high end CHARLOTTE SOLNICKI merchandise to have any affiliation with GMA's CHARLOTTE accessories (or with CHARLOTTE RUSSE, CHARLOTTE TARANTOLA, CHARLOTTE RONSON, or the plethora of other "Charlottes" in the fashion marketplace).

**g.    Solnicki Did not Adopt the Mark in Bad Faith**

Solnicki did not adopt the CHARLOTTE SOLNICKI mark in bad faith or to cause consumers to believe that its products were affiliated with GMA for the very obvious reason that neither he nor his sisters had ever seen or heard of the GMA Marks prior to adopting their mark. J. Solnicki Decl., ¶ 13; M. Solnicki Decl., ¶ 16.  In fact, Solnicki had never heard of GMA's products until this lawsuit. J. Solnicki Decl. ¶ 12.

**h.    The Quality of the Defendant's Products**

GMA has made no allegations that the quality of Solnicki's products is injuring GMA's alleged goodwill in its marks.  As set forth above, Solnicki's products are very high quality, and GMA's products appear to be of a much lesser quality.  Indeed, from a review of GMA's website, it appears that GMA sells primarily inexpensive accessories such as hair ornaments, socks, slippers, and flip flops.  The only items of "clothing" GMA purports to sell are robes and sleepwear.

In view of the foregoing analysis, it is clear that Solnicki has meritorious defenses to the trademark infringement claims asserted against him by Plaintiff.

**3.    Solnicki Has Meritorious Defenses to the Trademark Dilution, Cybersquatting, and Trademark Counterfeiting Claims**

**a.    GMA's Trademark Dilution Claim Has No Merit**

To establish a claim for trademark dilution under New York's General Business Law, a plaintiff must show: (1) ownership of a distinctive mark; and (2) a likelihood of dilution of the mark.  *See* N.Y. Gen. Bus. § 360-l; *N.Y. Stock Exch. v. N.Y., N.Y. Hotel, LLC*, 293 F.3d 550, 557-58 (2d Cir. 2002); *Montblanc-Simplo GmbH v. Aurora Due S.r.L.,* 363 F.Supp.2d 467 (E.D.N.Y. 2005).

17

GMA's purported dilution claim under New York state law (Count II) merely re-alleges its trademark infringement allegations. GMA fails to allege that Solnicki's actions are likely to dilute its marks. Even if GMA had properly pleaded such a claim, Solnicki has a meritorious defense to the claim because GMA will not be able to prove that its mark is "distinctive" for the reasons set forth above.

### b.    GMA's Cybersquatting Claim Has No Merit

Count V of GMA's Amended Complaint purports to state a claim under 15 U.S.C. §1125(d). This section, also known as the Anticybersquatting Consumer Protection Act ("ACPA") was enacted to provide trademark owners with protection against those who obtain domain names with a bad faith intent to profit from the notoriety of the trademark owner's mark.

There are two main elements GMA would have to prove in order to prevail in its cybersquatting claim: 1) GMA must prove that Solnicki had a bad faith intent to profit from GMA's trademark; and 2) GMA must prove that Solnicki trafficked in or used a domain name that is identical or confusingly similar to its *distinctive* trademark. 2-7A Gilson on Trademarks § 7A.06. For the reasons outlined above, Solnicki has a meritorious defense to this claim because Solnicki did not act in bad faith, and GMA's Marks are not distinctive.

### c.    GMA's Trademark Counterfeiting Claim Has No Merit

Solnicki also has a meritorious defense to GMA's trademark counterfeiting claim (Count VI). Quite simply, this is clearly not an action of trademark counterfeiting. As stated by a leading commentator:

> Counterfeiting is the act of producing or selling a product with a sham trademark that is an intentional and calculated reproduction of the genuine trademark. A "counterfeit mark" is a false mark that is identical with, or substantially indistinguishable from, the genuine mark.

18

4 J. McCarthy Trademarks and Unfair Competition § 25:10, p. 25-15 (4 ed. 2003). *See also*, 2-5 Gilson on Trademarks § 5.19 ("Commercial counterfeiting is the practice of placing a false trademark on a product, often of inferior quality, in order to make the product superficially indistinguishable from the genuine article. It is an imitation made with the intention of deceiving consumers as to its source.").

Under no stretch of the imagination can it be said that Solnicki is selling "counterfeits" of GMA's products. The mark CHARLOTTE SOLNICKI is not substantially indistinguishable form the mark CHARLOTTE. Thus, Solnicki has a meritorious defense to this claim.

In sum, the Default Judgment should be vacated because Solnicki's failure to respond to the Amended Complaint was not willful, Plaintiff will not suffer any prejudice if the Default Judgment is vacated and Solnicki has several meritorious defenses to the claims asserted against him in this action.

19

## **CONCLUSION**

For all of the foregoing reasons, Defendant respectfully requests entry of an Order (i) vacating the Default Judgment and permanent injunction entered in this Court against Solnicki, dated August 29, 2007, (ii) permitting Solnicki to file the proposed Answer in the form annexed as Exhibit L to the accompanying Declaration of Mary L. Grieco, and (iii) such other and further relief the court deems equitable and just.

Dated: New York, New York
      October 25, 2007

                      DREIER LLP

                      By:  /s/ Ira S. Sacks
                              Ira S. Sacks
                              Robert J. Grand
                              499 Park Avenue
                              New York, New York  10022
                              Tel.:  (212) 328-6100
                              Fax:  (212) 328-6101

                              *Attorneys for Defendant Jonathan Solnicki*

20