# EXHIBIT A

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

Mark: CHARLOTTE RONSON
Serial Nos. 78507242, 78507236 and 78507248
------------------------------------------------------------x

GMA ACCESSORIES, INC.,

      Opposer,    : CONSOLIDATED:
              : Opposition No. 91167353
              : Opposition No. 91168148
C. RONSON, INC.,        : Opposition No. 91172177

      Applicant.

------------------------------------------------------------x

**APPLICANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS OPPOSITION
TO OPPOSER'S MOTION FOR RECONSIDERATION**

Applicant, C. Ronson, Inc. ("Ronson")[1] submits this memorandum of law in opposition to Opposer, GMA Accessories, Inc.'s ("GMA") Motion for Reconsideration (the "Motion"). Ronson respectfully requests that the Board deny GMA's Motion in its entirety because GMA has failed to illustrate that the Board erred in reaching its decision, and the Motion is both procedurally and substantively improper. As the Board decided in its November 6, 2006 Order (the "November 6 Order"), at a minimum, genuine issues of material fact exist as to the similarity or dissimilarity of the commercial impressions of the marks at issue and the strength of GMA's CHARLOTTE and CHARLOTTE AND FRIENDS Marks (the "GMA Marks") and Ronson's CHARLOTTE RONSON Marks (the "Ronson Marks" or the "CHARLOTTE RONSON Marks").[2]

Contrary to GMA's assertions, the Board did not erroneously rely on any "fashion industry exception" in reaching its decision. Instead, the Board properly applied the factors set

---

[1] The CHARLOTTE RONSON Marks have been assigned to Sanei Charlotte Ronson, LLC and the assignments were properly recorded with the USPTO on April 14, 2006.

[2] In fact, Applicant believes that summary judgment would be appropriate for Applicant on the likelihood of confusion issue and intends to make its own Motion for Summary Judgment.

forth in *In re E.I. DuPont DeNemours & Co.*, 476 F.2d 1357, 1361, 177 USPQ 563 (CCPA 1973) in making its determination, factors which include whether the commercial impressions of the marks at issue are similar or dissimilar, as well as the strength of the marks. In evaluating how marks will be encountered by the public in the marketplace, an analysis of the industry in which the marks will be used is necessary. Indeed, the Board properly analyzed the relevant *DuPont* factors and in doing so looked to the fact that, in the fashion industry, the public is used to seeing trademarks containing common names of fashion designers, and can thus distinguish between them.

In addition, GMA's Motion should be denied because it is improper. The Motion claims to be made pursuant to 37 CFR § 2.129(c) and TBMP §543, which state that "Any request for rehearing or reconsideration or modification of a decision issued after **final hearing**..." (emphasis added), instead of pursuant to 37 CFR §2.127(b), which states that "Any request for reconsideration or modification of an order or decision issued **on a motion** ..." (emphasis added). The Motion also fails to meet the requirements of a Motion for Reconsideration because it attempts to introduce additional evidence and is otherwise simply a reargument of the points presented in GMA's brief on the original motion.

Thus, GMA's Motion must be denied.

I. **THE BOARD DID NOT ERRONEOUSLY RELY ON A "FASHION INDUSTRY EXCEPTION"**

Contrary to GMA's assertions, the Board did not erroneously rely on a fashion industry exception in deciding GMA's summary judgment motion. The Board correctly applied the relevant factors which were enumerated by the *DuPont* Court. *DuPont*, 476 F.2d at 1361. Specifically, the Board analyzed whether the commercial impressions of the marks at issue are similar or dissimilar, as well as the strength of the marks.

The Board held that "[a]t a minimum, genuine issues of material fact exist as to the similarity or dissimilarity of the commercial impressions of the marks at issue and the strength of [the marks]... a sufficient number of third party registrations ... [exist] to create a genuine issue of material fact regarding the strength of the name CHARLOTTE in relation to the parties' goods ..." See November 6 Order, at 7 and 7 n.17. The Board explained further that "**[i]n addition**, applicant's evidence of third-party registrations that share a common name in the fashion industry raises a genuine issue of material fact regarding the perception of prospective consumers of applicant's and opposer's marks." See November 6 Order, at 7-9 (emphasis added).

A review of the November 6 Order clearly illustrates that the Board did not carve out an "exception" for the fashion industry as GMA contends. Rather, the Board applied the applicable *DuPont* factors, and in so doing, looked to the customs of the relevant industry in which the marks are used. In evaluating a likelihood of confusion, the Board will often look at the overall customs and practices of the particular industry at issue. *See, e.g., In re N.V. Organon*, 79 USPQ2d 1639, 1649 (TTAB 2006); *In re Westlake Plastics Co.*, 79 USPQ2d 1151, 1152 (TTAB 2006); *Carefirst of Maryland Inc. v. FirstHealth of the Carolinas, Inc.*, 72 USPQ2d 1492, 1503 (TTAB 2005); and *In re Opus One, Inc.*, 60 USPQ2d 1812, 1816-17 (TTAB 2001).

The marks at issue deal with goods in the fashion industry; thus, it is not surprising that the marks that were cited against the GMA Marks, and that the Board considered in its decision to help determine the commercial impressions of the marks, were marks used on goods in the fashion industry, including fashion designers who use the name Charlotte. Similarly, the Board's evaluation of how trademarks are used in the fashion industry as a whole was both proper and necessary.

### A. The Board Correctly Determined That There is at Least a Triable Issue of Fact as to Whether the Commercial Impressions of the Marks Are Similar or Dissimilar

The Board correctly determined that there is at least a triable issue of fact as to whether the commercial impressions of the marks at issue are similar or dissimilar. As previously stated in Ronson's Opposition to the summary judgment motion, the only similarity between the Ronson Marks and the GMA Marks is that they share a word – CHARLOTTE – which is a common first name for a woman. Mere similarities between components of marks do not automatically create a likelihood of confusion as **marks must be considered in their entireties as they would be encountered in the marketplace and not dissected into component parts.** *Genesco, Inc. v. Martz,* 66 USPQ2d 1260 (TTAB 2003); *In re Hearst Corp.,* 25 U.S.P.Q.2d 1238, 1239 (Fed.Cir. 1992).

GMA incorrectly argues that adding another word or name to a single word mark is not sufficient to overcome a likelihood of confusion. GMA bases its argument on inaccurate information, and both the law and a review of the USPTO website illustrate GMA's inaccuracies. Indeed, it is well recognized that consumers are accustomed to seeing marks containing common names, and thus, are capable of distinguishing between them. *Marshall Field & Co. v. Mrs. Fields Cookies,* 25 USPQ2d 1321, 1331-1332 (TTAB 1992) (no confusion between MARSHALL FIELD and MRS. FIELDS as "Field" is a common name); *Stern-Slegman-Prins Company v. Independent Retailers Syndicate, Inc.,* 126 USPQ 26 (CCPA 1960) (no confusion between DEBBY ROSE and DEBBIE YOUNG EXCLUSIVE for clothing); *Robert Hall Clothes, Inc. v. Studds,* 128 USPQ 542 (CCPA 1961) (no confusion between ROBERT HALL and ROSE HALL for clothing); *Rob Roy Co. v. Thurman Mfg. Co.,* 173 USPQ 31 (CCPA 1972) (no confusion between ROB ROY and ROB SCOTT for clothing).

Moreover, GMA falsely states that "neither Applicant nor the Board raises the legitimate concern of likelihood of confusion between a designer who uses a one-word name and another designer who uses the same one-word name with the addition of a last name or extra word." *See* GMA's Motion, at 2. **This is incorrect.** In the Declaration of Mary Grieco, dated July 31, 2006 and submitted in support of Ronson's Opposition to the summary judgment motion (the "Grieco Decl."), Ronson set forth numerous designers who have trademarks in their first names and other designers who have marks using the same first name in addition to their last name.

For instance, (i) LAUREN exists in the same market as LAUREN SCOTT, DENA LAUREN, JENNIFER LAUREN, SAGE LAUREN, LAUREN LEE, LAUREN SARA, LAUREN GUINOT, LAUREN-SPENCER and LAUREN G. ADAMS; (ii) GIORGIO exists in the same market as GIORGIO ARMANI, GIANO-GIORGIO, GIORGIO VISCONTI, GIORGIO MORETTO, GIORGIO KAUTEN, GIORGIO FERRARO, GIORGIO COSANI, GIORGIO BY GIORGIO COSANI, GIORGIO BISSONI, GIORGIO EBENNI, GIORGI SANETTI, GIORGIO REGGIANI, GIORGIO BRUTINI and GIORGIO ZILLIONI; (iii) LIZ exists in the same market as LIZ THOMAS, LIZ CORD, LIZ GATTA, LIZ SOTO, LIZ PALACIOS, LIZ LANGE, LIZ & ME, LIZ PHILLIPS and LIZ BAKER; (iv) CARLA exists in the same market as CARLA CARINI; CARLA FRACCI, CARLA CONTI, CA CARLA AMORIM; (v) GIO exists in the same market as GIO MORETTI, GIO CILLINI, GIO BRASSERO and GIO MONACO; and (vi) TOMMY exists in the same market as TOMMY BAHAMA, TOMMY BOY, TOMMY-ATO, TOMMY NUTTER, TOMMY TUCKER T-SHIRTS and TOMMY & OSCAR. *See* Grieco Decl. ¶ 5.

GMA also incorrectly states that "[t]raditionally, single name marks such as AGATHA, GUCCI, ARMANI and BRIONI in the fashion industry have been and are entitled to protection against other designers who use the one word registered mark even when used as the complete

5

name of the newcomer." *See* GMA's Motion, at 3. GMA even cites to an office action for a trademark application for GEMMA GUCCI to support its argument. This office action is distinguishable from the case at hand.

First, unlike the common first name CHARLOTTE, **uncommon last names** such as GUCCI, ARMANI and BRIONI are extremely famous marks, which have been protected for decades. Moreover, even as to those famous marks, similar marks may exist in the market place without causing confusion. For instance numerous registrations exist for PUCCI and COOGI, both of which are similar in sound to GUCCI. Additionally, the first name AGATHA is a relatively uncommon first name (unlike "Charlotte"), but even this rare name is not alone in its field. In addition to the AGATHA marks owned by Agatha Brown, which GMA presumably refers to in its Motion, the following similar marks are registered with the USPTO, with additional marks pending: (i) the mark AGATHA is also registered in class 14 (which is a similar market to those at issue in these oppositions), Registration No. 1686293, owned by Agatha Diffusion; (ii) the mark AGATHA NEW YORK CITY CUSTOM LEATHER is registered in class 25, Registration No. 1989381, owned by Agatha Blois d/b/a New York City Custom Leather; and (iii) AGATHA RUIZ DE LA PRADA is registered in class 18, Registration No. 2240229, owned by Agatha Ruiz. In addition, submitted herewith are a few examples of common law uses of AGATHA for clothing and related merchandise. *See* Anand Decl., Ex. A.[3]

Rather than applying a unique fashion industry exception, the Board correctly reviewed all the relevant facts to determine if the commercial impressions of the marks were similar. The Board properly looked to the fact that the public is used to seeing trademarks containing common names of fashion designers in its analysis as this is an important factor in determining commercial impressions. The Board correctly held that there was at least a triable issue of fact

---

3   References to the "Anand Decl." refer to the Declaration of Safia Anand, dated December 19, 2006 and submitted herewith.

as to whether the public would be able to distinguish between the CHARLOTTE RONSON Marks and the GMA Marks. Based on the foregoing, GMA's Motion should be denied.

      **B.    The Board Correctly Determined That There is at Least a Triable Issue of Fact as to Whether CHARLOTTE Is a Strong Mark**

The Board correctly determined that there is at least a triable issue of fact as to whether CHARLOTTE is a strong mark. GMA incorrectly argues that the fact that CHARLOTTE exists in a crowded field of marks is erroneous considering that GMA has aggressively policed the mark from its inception. Despite GMA's assertions, the law is clear that third party uses and registrations of the same or similar makes are relevant to demonstrate that a mark is commonly used, in which case the public will look to other elements to distinguish the source of the goods or services. *AMF Inc. v. American Leisure Products, Inc.*, 177 USPQ 268, 269-270 (CCPA 1973); *Plus Products v. Star-Kist Foods, Inc.*, 220 USPQ 541, 544 (TTAB 1983).

As Ronson set forth in its opposition to the summary judgment motion and as the Board considered in making its determination, numerous third-party registrations for marks incorporating the name "Charlotte" coexist on the principal register for the same or highly related goods. Grieco Decl., Ex. C. For example, Charlotte Russe and Charlotte Tarantola sell apparel and jewelry, among other products and are currently being used in commerce. Grieco Decl. ¶ 6, Ex. B. GMA's contention that it aggressively polices the mark is of no consequence. The fact remains that CHARLOTTE exists in a crowded field, which illustrates that there is no likelihood of confusion — or at least a triable issue of fact as to whether any confusion exists — between GMA's Marks and the Ronson Marks because CHARLOTTE is a weak mark.

In its Motion, GMA submitted a chart setting forth the alleged status of other proceedings; however, this chart is misleading. For instance, GMA would have the Board believe that there were judgments on the merits entered in its favor in a number of the proceedings. Instead, a review of the TTAB website illustrates that there have been no

judgments in GMA's favor on the merits as the following oppositions seem to have been settled or resolved by way of default: 1) CHARLOTTE JUMPER CLASSICS, Opp. No. 91167274; 2) JOIE DE CHARLOTTE, Opp. No. 92045994; and 3) PRINCESS CHARLOTTE, Opp. No. 92045997. Second, although Charlotte Tillbury, Opp. No. 91171089 is still pending, GMA's motion for summary judgment was recently denied on December 8, 2006.

Moreover, as set forth in more detail above, while improperly attempting to submit new evidence, GMA states - for the first time and directly contrary to its previous assertions - that "CHARLOTTE RUSSE is a service mark of a store in California with whom GMA has had a co-existence agreement for **many years**." *See* GMA's Motion, at 4 (emphasis added). This is curious considering that in its summary judgment reply, GMA failed to mention this years-old agreement and instead claimed that: "Charlotte Russe is a mark that was the subject of an intent to use application filed in the year 2000 ... GMA has not yet formally sought cancellation of the Charlotte Russe registrations as they are upon information and belief not being used and there was only *de minimus* (*sic*) use for a short time if at all." *See* Bostany Decl., dated August 18, 2005. This "new evidence" is troublesome from a number of perspectives and shows, at best, that GMA has not properly researched the veracity of its claims before making them, or at worst, that GMA is intentionally or negligently attempting to mislead the Board.

Further, GMA's allegation that the CHARLOTTE RUSSE mark is not in use or was only used in a *de minimis* manner is belied by the facts - facts which GMA could have easily ascertained for itself had it bothered to check. From a simple review of the Charlotte Russe website, GMA would have learned that not only has CHARLOTTE RUSSE been used consistently since at least 1975, but the company is even publicly traded on NASDAQ. In addition, the company has about 360 CHARLOTTE RUSSE retail stores throughout the United States. *See* Anand Decl., Ex. B.

Additionally, contrary to GMA's assertion that there was only one CHARLOTTE RUSSE mark filed as an intent to use in 2000, a simple search of the PTO website shows *numerous* CHARLOTTE RUSSE registrations that were filed as early as 1987, which is well-before GMA filed any of its CHARLOTTE applications. Even the later-filed CHARLOTTE RUSSE applications (filed in 1998) pre-date GMA's CHARLOTTE applications, and the alleged dates of first use of the CHARLOTTE RUSSE marks (1975 to 1991) pre-date many of GMA's alleged dates of first use for its CHARLOTTE marks. Again, this shows that GMA is either intentionally or negligently attempting to mislead the Board. GMA's flagrant violation of the rules and willingness to distort and color the facts cannot be allowed.

Despite GMA's continued attempts to persuade the Board of its efforts to police the CHARLOTTE mark, this does not change the fact that the word **CHARLOTTE exists in a crowded field of marks.** *Puma-Sportschuhfabriken Rudolf Dassler K.G. v. Superga S.p.A.*, 210 USPQ 316 (TTAB 1980). As stated by the Ninth Circuit:

> In a "'crowded' field of similar marks, each member of the crowd is relatively 'weak' in its ability to prevent use by others in the crowd." 1 J. McCarthy, *Trademarks & Unfair Competition*, §11:26, at 511 (2 ed. 1984). Simply put, "a mark which is hemmed in on all sides by similar marks on similar goods cannot be very 'distinctive.' It is merely one of a crowd of marks. In such a crowd, customers will not likely be confused between any two of the crowd and may have learned to carefully pick out one from the other."

*Miss World (UK) Ltd. v. Mrs. America Pageants, Inc.*, 856 F2d 1445 (9th Cir. 1988); *see also National Yellow Pages Services Ass'n. v. O'Connor Agency, Inc.*, 9 USPQ2d 1516 (C.D.Cal. 1988). Thus, regardless of how much GMA attempts to stop the use of other CHARLOTTE marks, the addition of the word RONSON in the CHARLOTTE RONSON Marks is more than sufficient to distinguish it from the GMA Marks, and the Board's determination that there is at least at triable issue of fact as to this issue is not in error.

Based on the foregoing, it is clear that the Board did not err in deciding that there is at least a triable issue of fact as to whether a likelihood of confusion exists — indeed, there is none. Thus, GMA's Motion should be denied in its entirety.

## II. GMA'S MOTION IS IMPROPER

GMA's Motion is an improper Motion for Reconsideration and should be denied on that basis alone. First, GMA's Motion was incorrectly made pursuant to 37 CFR § 2.129(c) and TBMP §543, which state that "Any request for rehearing or reconsideration or modification of a decision issued after **final hearing**…" 37 CFR §2.129(c); TMBP §543 (emphasis added). GMA should have moved pursuant to 37 CFR §2.127(b), which states that "Any request for reconsideration or modification of an order or decision issued **on a motion** …" 37 CFR §2.127(b); TMBP §518 (emphasis added).

Second, GMA has failed to meet the requirements of a Motion for Reconsideration. "Generally, the premise underlying a motion for reconsideration … is that, based on the facts before it and the prevailing authorities, the Board erred in reaching the order or decision it issued. Such a motion may not properly be used to introduce additional evidence, nor should it be devoted simply to a reargument of the points presented in a brief on the original motion." *See* TBMP § 518. Here, GMA is merely rearguing the points presented in its original motion.

Moreover, GMA improperly attempts to introduce new evidence by mentioning a co-existence agreement regarding CHARLOTTE RUSSE, despite the fact that this alleged agreement is "many years" old and was not even alluded to in GMA's motion for summary judgment papers. GMA even acknowledges that " . . . it is not appropriate on a motion to reconsider to introduce new evidence." *See* GMA's Motion, at 4. This new evidence was not produced by GMA during discovery (even though several requests clearly called for the

production of same) or in its summary judgment papers, and Ronson has never had an opportunity to cross-examine GMA on this new evidence.

GMA's Motion should be denied based on GMA's failure to follow the Board's rules as they pertain to Motions for Reconsideration.

## CONCLUSION

Based on the foregoing Ronson respectfully requests that GMA's Motion be denied in its entirety.

Dated: New York, New York
December 19, 2006

                                    DREIER LLP

                                    By: _____
                                        Mary L. Greco, Esq.
                                        Safia A. Anand, Esq.
                                        499 Park Avenue
                                        New York, New York 10022
                                        (212) 328-6100

                                        *Attorneys for Applicant*

CERTIFICATE OF SERVICE

I hereby certify that on this day, December 19, 2006, a true and correct copy of the foregoing document, entitled

**APPLICANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS OPPOSITION TO OPPOSER'S MOTION FOR RECONSIDERATION**

were served upon Opposer by prepaid, first class U.S. mail, addressed as follows:

> John P. Bostany
> The Bostany Law Firm
> 40 Wall Street, 61st Floor
> New York, NY 10005

Safia A. Anand