IN THE UNITED STATES PATENT AND TRADEMARKS OFFICE
BEFORE THE TRADEMARKS TRIAL AND APPEAL BOARD
-----------------------------------------------------------------x
GMA ACCESSORIES, INC.,

                              Plaintiff-Opposer,

                                                              **Opposition No. 91168132**

- against –

DAILY SPARKLE, LLC.


                              Defendant-Applicant.
-----------------------------------------------------------------x
Applicant's Mark: CHARLOTTE TARANTOLA
Serial No.: 78-532-984
Filing Date: December 15, 2004
Class: 25

## BRIEF IN SUPPORT OF
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### Statement of Facts

Defendant-Applicant, DAILY SPARKLE, LLC seeks to register CHARLOTTE TARANTOLA as a trademark while the opposer owns the brand CHARLOTTE in the same class that is the subject of the application.

### ARGUMENT

    I.    **Summary Judgment Standard**

Motions for summary judgment in the Trademark Trial and Appeal Board are governed by Fed. R. Civ. P. 56. See 37 CFR § 2.127. Under Rule 56(c), a motion for summary judgment is to be used as a pretrial device to dispose of cases in which "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

1

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Paramount Pictures Corp. v. White, 31 U.S.P.Q.2d 1768 (T.T.A.B. 1994), Sweats Fashions Inc. v. Pannill Knitting Co., Inc., 833 F.2d 1560, 4 U.S.P.Q.2d 1793 (Fed. Cir. 1987), Pure Gold, Inc. v. Syntex (U.S.A.), Inc., 739 F.2d 624, 222 U.S.P.Q. 741 (Fed. Cir. 1984).

II.  **There is Likelihood of Confusion between Applicant's and Opposer's Marks.**

GMA's registration to the mark CHARLOTTE in Class 25 has been deemed incontestable under to Section 15 of the Lanham Act in the same class of goods trafficked as CHARLOTTE by defendants. GMA's incontestable registration is "conclusive evidence" of GMA's exclusive right to the CHARLOTTE trademark. 15 U.S.C. §1115(b); *24 Hour Fitness USA, Inc. v. 24/7 Tribeca Fitness, LLC*, 277 F.Supp.2d 356, 361 (S.D.N.Y. 2003). The right to exclusive use extends to all goods contained in the registration certificate. *Savin Corp. v. Savin Group*, 391 F.3d 439, 456 (2d Cir. 2004). See *GMA Accessories, Inc. v. BOP, LLC*, 2007 WL 2483507 (S.D.N.Y. 2007). (GMA's use of CHARLOTTE in Class 25 precludes Charlotte Solnicki from using mark on trendy clothing.)

Oftentimes, the Court may base its decision on such dispositive factors as the similarity of the marks and the relatedness of the goods. Han Beauty, inc. v. Alberto-Culver Co., 236 F.3d 1333, 1336 (Fed Cir. 2001) (citing Dixie Restaurants, Inc., 105 F.3d 1405, 1406-1407 (Fed. Cir. 1997). Based on the plaintiff's incontestable registration, the similarity of the marks and relatedness of

2

the goods as determined by a learned U.S. District Judge, in *GMA v. BOP, supra* it is respectfully requested that plaintiff's motion be granted.

It is well-settled that adding another word or name to a single word mark is not sufficient to overcome a likelihood of confusion between two separate marks under Section (d) of the Lanham Act. See e.g. *Coca Cola Bottling Co. v. Joseph E. Eagram & Sons, Inc.,* 526 F.2d 556, 188 USPQ 105 (C.C.P.A 1975) ("BENGAL" and "BENGAL LANCER"); *Lilly Pulitzer, Inc. v. Lilli Ann Corp.,* 376 F.2d 324, 153 USPQ 406 (C.C.P.A 1967)("THE LILY" and "LILY ANN"); *In re El Torito Restaurants Inc.,* 9 USPQ2d 2002 (TTAB 1988) ("MACHO" and "MACHO COMBOS"); *In re United States Shoe Corp.,* 229 USPQ 707 (TTAB 1985) ("CAREER IMAGE" and "CREST CAREER IMAGES"); *In re Corning Glass Works,* 229 USPQ 65 (TTAB 1985) ("CONFIRM" and "CONFIRMCELLS"); *In re Riddle,* 225 USPQ 630 (TTAB 1985) ("ACCUTUNE" and "RICHARD PETTY's ACCU TUNE"); *In re Cosvetic Laboratories, Inc.,* 202 USPQ 842 (TTAB 1979) ("HEAD START" and "HEAD START COSVETIC"). TMEP Section 1207.01(b)(iii). In re Denisis, 225 U.S.P.Q. 624 (TTAB 1985); CFM Majestic, Inc. v. NHC, Inc., 93 F.Supp.2d 942 (N.D. Ind. 2000); Trident Seafoods Corp. v. Triton Fisheries, LLC., 2000 WL 33675750 at *6 (D. Alaska June 30, 2000); Physicians Formula Cosmetic, Inc v West Cabot Cosmetics 857 F.2d 80, 82 (2d Cir. 1988); Wynn Oil Company v. Thomas, 239 F.2d 1183 (6th Cir. 1988); 3 McCarthy on Trademarks §§ 23:55-23:56 at 23-164 through 23-169.

To be sure, designers have been enjoined from using their own name as a trademark where it is the same name as trademarked goods. See e.g. *Gucci v.*

3

*Gucci Shops, Inc.*, 7 U.S.P.Q. 2d 1833, 1842 (S.D.N.Y. 1988) (defendant need not own the trademark "to use his name to identify himself as the designer of products sold under a separate trademark").

### A. Charlotte Possesses a Strong, Famous Mark

Famous marks are accorded more protection because they are more likely to be recalled and associated in the public mind than a weaker mark. Recot, Inc., 214 F.3d at 1327 (citing Kenner Parker Toys, Inc. v. Rose Art Indus., Inc., 963 F.2d 350, 352 (Fed. Cir. 1992). However, in the likelihood of confusion calculus, fame is not an amorphous concept that is to be analyzed according to consumer's idiosyncratic opinions. In sharp contrast, there are practical indicia of fame, such as sales, advertising and the length of the use of the mark. Packard Press, Inc., 227 F.3d at 1360 (citing DuPont, 476 F.2d at 1361). This means that the fame of a mark is customarily proven by evidence reflecting the volume of sales, the extent of advertising of the goods bearing the mark, and the length of time that those indicia of consumer awareness have been present. Shen Mfg. Co., Inc. v. Ritz Hotel, Ltd., 393 F.3d 1238, 1241-1242 (Fed. Cir. 2004). In particular, the TTAB has looked favorably upon a trademark owner's efforts to widely disseminate and market its products. See Starbucks U.S. Brands, LLC and Starbucks Corp. v. Ruben, 78 U.S.P.Q. 1741 (TTAB 2006) (favorably reviewing advertising dollars and sales volume in assessing the STARBUCKS marks).

4

In this case, GMA has aggressively and widely marketed its products. See Maloof Declaration. GMA's CHARLOTTE mark is advertised and distributed in numerous boutiques, specialty stores and department stores. See Requests for Admissions annexed. Clearly, GMA's mark is widely visible and accessible in the marketplace, thus indicating that it is a strong mark. *GMA v. BOP*, 2007 WL 2483507 (S.D.N.Y. 2007).

### B. Applicant's and Opposer's Goods May be Categorized as "Impulse" Buys."

When goods are relatively inexpensive and subject to impulse buying, the risk of likelihood of confusion is increased because consumers are held to a lesser standard of care in purchasing. Recot, 214 F.3d at 1328.

Here, we are not dealing with goods that require a great deal of consumer deliberation when they are purchased. Clothing and related accessories are often purchased on the spur of the moment, based on a consumer's often-changing tastes. The matter at bar should be contrasted with other cases that have come before the TTAB where the goods involved were complex and expensive. See Teledyne Technologies, Inc. v. Western Skyways, Inc., 208 Fed. Appx. 886, 889 (Fed. Cir. 2006) (citing the sophisticated nature of consumers when the goods at issue were aircraft engines and aircraft engine parts). See also, PC Club v. Primex Technologies, Inc., 32 Fed. Appx. 576, 579 (Fed. Cir. 2002) (stating the higher degree of care involved in purchasing when the products involved were electrical power supply systems for transportation vehicles and computers and computer parts). The cases in which a "careful, studied consideration and sophistication" was applied should be compared to

5

cases in which the goods involved are subject to impulsive purchasing, the latter of which furthers the finding of a likelihood of confusion. <u>Majestic Distilling</u>, 315 F.3d at 1316.

In <u>Majestic</u>, the Federal Circuit affirmed the TTAB's finding that tequila and malt liquor were subject to impulse buys. <u>Id.</u>  <u>See</u> also, <u>Conopco, Inc. v. May Dept Stores Co.</u>, 46 F.3d 1556, 1572 (affirming trial court's assessment that skin care lotions are products that do not exact precise, in-depth consumer perception and may be purchased upon impulse); <u>Recot</u>, 214 F.3d at 1329 (stating that hasty purchasing may lead to confusion between FRITO-LAY human snacks and FIDO LAY dog food snacks).

Here, both GMA's and defendant's products are trendy clothing and related accessories—items which are subject to cursory review prior to purchasing. A consumer will usually purchase such items without careful, studied examination. This will inevitably lead to confusion as to source, thus causing irreparable harm to GMA's CHARLOTTE marks.

### C. Third Party Uses

The sixth <u>DuPont</u> factor involves an examination of the number and nature of similar marks in use on similar goods. <u>DuPont</u>, 476 F.2d at 1361. GMA has not only policed the mark aggressively via numerous cease and desist letters but GMA has also opposed those seeking to register CHARLOTTE or a version thereof, as outlined in the following table (<u>See</u> Requests for Admissions annexed):

| MARK | TTAB No. | STATUS |
|---|---|---|

6

| Charlotte Jumper Classics | 91167274 | Judgment for GMA |
|---|---|---|
| Joie De Charlotte | 92045994 | Judgment for GMA |
| Charlotte Corday | 92046002 | Applicant in Default |
| Eau De Charlotte | 92046003 | Pending |
| Princess Charlotte | 92045997 | Judgment for GMA |
| Charlotte Lynggaard | 91158541 | Consent Abandonment of the Mark |
| Charlotte Ronson | 91167353 91168148 91172177 | Pending |
| Charlotte Tillbury | 91171089 | Pending |
| Good Charlotte | 91171219 | Judgment for GMA |

Nevertheless, the existence of third party registrations is not evidence of what occurs in the marketplace (i.e. if the marks are in conflict in the marketplace), nor is it evidence that customers are actually familiar with them. Old Tyme Foods, Inc. v. Roundy's, Inc., 961 F.2d 200, 204 (Fed. Cir. 1992). (citing AMF Inc. v. American Leisure Prods., Inc., 474 F.2d 1403, 1406 (CCPA 1973). See also, American Hosp. Supply Corp. v. Air Products and Chemicals, Inc., 194 U.S.P.Q. 340, 343 (TTAB 1997).

### D. The Extent for Potential Confusion is Substantial

The extent for potential confusion in this case is great given that GMA markets and sells a wide variety of clothing and accessories world-wide. See www.capellinewyork.com. Also, it is undisputed that the convergence between the applicant's and opposer's products is great as both of them sell clothing for young, trend-conscious women. See *GMA v. BOP*, 2007 WL 2483507 (S.D.N.Y. 2007).

7

Although the right to use one's name as the manufacturer of a product is recognized, it is an entirely different matter to allow goods to be branded with a trademark already registered to another. *See e.g. Gucci v. Gucci Shops, Inc.*, 7 U.S.P.Q. 2d 1833, 1842 (S.D.N.Y. 1988) (Paolo Gucci enjoined from using his name as brand of goods, but can use another mark and indicate manufactured by Paolo Gucci on package). Here, Applicant owns other marks that it may use as brand names (See e.g. Lacquer, Registration Number: 2837058; Lacquette, Serial Number: 78948435; Camellia, Registration Number: 3228597 and Parfait, Registration Number: 2882506) but we respectfully submit that it should not be awarded the registration for Charlotte Tarantola in Class 25.

## CONCLUSION

For all of the foregoing reasons, it is respectfully requested that the Board grant summary judgment to the Opposer.

Dated:   New York, New York
        September 27, 2007

THE BOSTANY LAW FIRM

By: _____
    Andrew T. Sweeney
40 Wall Street
New York, New York 10005
(212) 530-4400
Attorney for Plaintiff-Opposer