## WINK'S COUNTERCLAIMS

### JURISDICTION

115. This Court has jurisdiction over this matter pursuant to the Lanham Act (15 U.S.C. § 1051 *et seq.*); 28 U.S.C. §§ 1331, 1338 and 1367, and related claims under the common law of the State of New York. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendant resides within this judicial district.

### FACTS

**CHARLOTTE IS A WEAK MARK**

116. Charlotte, standing alone, is a commonly-used style designation in the apparel and jewelry industry because it is a popular female first name and because it has geographic significance as the capital of the state of North Carolina, the 20th largest city in the United States, and as the site of a large campus, the University of North Carolina.

117. In addition to CHARLOTTE SOLNICKI, several other designers use the name CHARLOTTE in connection with their apparel and accessories' lines, including, but not limited to, CHARLOTTE RUSSE, CHARLOTTE TARANTOLA, CHARLOTTE RONSON and CHARLOTTE CORDAY.

118. Charlotte Russe owns several federal trademark registrations for the mark CHARLOTTE RUSSE. Specifically, CHARLOTTE RUSSE's numerous trademark registrations on the USPTO include Registration No. 2,416,273 in Class 25 for clothing; Registration No. 2,416,270 in Class 26 for hair ornaments; Registration No. 2,416,269 in Class 14 for costume jewelry; Registration No. 2,416,268 in Class 18 for handbags and other related goods; Registration Nos. 2,414,477 and 1,485,692 in Class 42 for retail store services specializing in women's apparel and accessories; and Registration No. 2,451,427

in Class 3 for cosmetics. Moreover, Charlotte Russe's use of CHARLOTTE is prior to, and senior to, GMA's use.

119. Ehringer-Schwarz GMBH & Co. KG owns the trademark registration for CHARLOTTE in Class 14, U.S. Registration No. 2,117,619, which was issued on December 2, 1997. The Section 8&15 was filed for this mark on April 14, 2003 and acknowledged on July 12, 2003.

120. Additionally, at the time GMA obtained its CHARLOTTE registrations, CHARLOTTE FORD had a registration for CHARLOTTE FORD in Class 25. That mark has since expired.

121. Moreover, despite the fact that CHARLOTTE TARANTOLA has prior rights to the name CHARLOTTE based on common law use, GMA has instituted an opposition against CHARLOTTE TARANTOLA's federal trademark application and refuses to enter into a co-existence agreement.

122. The use of CHARLOTTE in the apparel and accessories' business is so widespread that Wink is aware of at least 49 companies using CHARLOTTE as a style designation for their various fashion products.

123. Because of the name and geographic significance of "Charlotte" and the widespread use of "Charlotte" as a style designation in the apparel and jewelry industries, "Charlotte" has little or no significance as a source or association identifier and does not serve to identify a single apparel, handbag or jewelry source, much less serve to identify GMA as the exclusive source of "Charlotte" products.

124. The apparel produced by CHARLOTTE SOLNICKI is high-end and is not competitive with GMA's products.

**THE GMA CHARLOTTE MARKS**

125.     On January 12, 1999, U.S. Registration No. 2,217,341 for the mark CHARLOTTE was registered to GMA in International Class 18 for the following goods: sacks and bags, namely, handbags made of textiles and beads. On November 26, 2004, GMA's counsel filed a Section 8 & 15 Declaration, wherein he declared in relevant part that "[t]he owner is using or is using through a related company or licensee the mark in commerce on or in connection with the goods/services identified above, as evidenced by the attached specimen(s) showing the mark as used in commerce. The mark has been in continuous use in commerce for five consecutive years after the date of registration, or the date of publication under Section 12(c), and is **still in use in commerce on or in connection with all goods and/or services as identified above.....**" (Emphasis added). (Such a declaration is hereinafter referred to as an "8&15 Declaration".)

126.     On January 5, 1999, U.S. Registration No. 2,216,405 for the mark CHARLOTTE was registered to GMA in International Class 26 for the following goods: Hair accessories, namely, hair clips, scrunchees, ribbons and braids. On November 24, 2004, GMA's counsel filed an 8&15 Declaration.

127.     On February 5, 2002, U.S. Registration No. 2,535,454 for the mark CHARLOTTE was registered to GMA in International Class 25 for the following goods: clothing, footwear and headgear, namely hats, scarves, gloves and socks. On February 14, 2007, GMA filed an 8&15 Declaration.

128.     On April 16, 2002, U.S. Registration No. 2,561,025 for the mark CHARLOTTE was registered to GMA in International Class 9 for the following goods: sunglasses. On May 22, 2007, GMA filed an 8&15 Declaration

129. On May 15, 2007, U.S. Registration No. 3,242,358 for the mark CHARLOTTE was registered to GMA in International Class 22 for the following goods: Bags for securing valuables; Bands for wrapping or binding; Belts, not of metal, for handling loads; Fabric and polyester mesh net used for storing toys and other household items; Garment bags for storage; Mesh bags for storage; Multi-purpose cloth bags; Packaging bags of textile material; Rice straw bags (kamasu); Shoe bags for storage; String. On July 22, 2006, GMA filed this application as an actual use application, claiming a first use date of November 1, 1996 on all the goods listed in the application.

### FIRST COUNTERCLAIM
### (CANCELLATION OF THE GMA MARKS BASED ON TRADEMARK MISUSE)

130. Wink repeats and realleges the allegations set forth in paragraphs 115 through 129 above as if fully set forth herein.

131. The GMA CHARLOTTE Marks lack significance as single source identifiers. Nevertheless, GMA has continued to sue companies who use the word CHARLOTTE in connection with other words and continues to sue retailers for selling said goods. Those suits and threatened suits are objectively and subjectively baseless and interposed by GMA with bad faith and the intent to directly injure and harass Wink's business relationships through the use of governmental process as an anticompetitive weapon. As a result, Wink has been injured by GMA's actions.

132. Accordingly, Wink seeks an order, pursuant to 15 U.S.C. §1119, directing cancellation of the GMA CHARLOTTE Marks.

## SECOND COUNTERCLAIM
### (CANCELLATION OF THE GMA MARKS BASED ON FRAUD)

133.    Wink repeats and realleges the allegations set forth in paragraphs 115 through 132 above as if fully set forth herein.

134.    In GMA's 8&15 Declarations, GMA declared that it was aware "that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements and the like may jeopardize the validity of this document" and stated unequivocally that "all statements made of his/her own knowledge are true and that all statements made on information and belief are believed to be true."

135.    GMA, as of the dates of the Statements of Use and/or the Section 8&15 Declarations for the various CHAROTTE Marks, was not using the marks in connection with all the goods listed in the applications/registrations. Moreover, the dates of first use set forth in the applications for GMA's CHARLOTTE Marks are fraudulent.

136.    The aforesaid acts of GMA constitute fraud on the USPTO. Accordingly, Wink seeks an order from the Court directing cancellation of the GMA CHARLOTTE Marks pursuant to 15 U.S.C. §1119 and civil damages pursuant to 15 U.S.C. §1120.

## THIRD COUNTERCLAIM
### (CANCELLATION OF THE GMA MARKS BASED ON FRAUD)

137.    Wink repeats and realleges the allegations set forth in paragraphs 115 through 136 above as if fully set forth herein.

138.    GMA has sued many retailers claiming that their use of CHARLOTTE SOLNICKI infringes upon its CHARLOTTE Marks.

139. As stated above, Charlotte Russe, Charlotte Tarantola and Charlotte Ford, among others, had prior use to GMA's use of CHARLOTTE.

140. GMA knew, or should have known, of the existence of these prior uses.

141. As part of its applications which led to the CHARLOTTE Registrations, GMA swore to the USPTO that no one else had the right to use a mark that was likely to cause confusion with its applied for mark.

142. The aforesaid acts of GMA constitute fraud on the USPTO. Accordingly, Wink seeks an order from the Court directing cancellation of the GMA CHARLOTTE Marks pursuant to 15 U.S.C. §1119 and civil damages pursuant to 15 U.S.C. §1120.

WHEREFORE, Defendant Wink, demands judgment as follows:

(a) Dismissing the Complaint with prejudice;

(b) On the First Counterclaim, directing the Commissioner of the U.S. Patent and Trademark Office to cancel GMA's CHARLOTTE Registrations, based on trademark misuse;

(c) On the Second Counterclaim, directing the Commissioner of the U.S. Patent and Trademark Office to cancel GMA's CHARLOTTE Registrations based on fraud;

(d) On the Third Counterclaim, directing the Commissioner of the U.S. Patent and Trademark Office to cancel GMA's CHARLOTTE Registrations based on fraud;

(e) On the Second and Third Counterclaims, an award of damages to Wink as a consequence of GMA's acts of false declarations and/or fraud in

obtaining and maintaining trademark registrations in an amount to be determined at trial or such other sum as this Court shall decide;

(f) For its costs and disbursements in this action, including its reasonable attorneys' fees; and

(g) Granting such other and further relief as the Court deems just, equitable and proper.

Dated: New York, New York
October 24, 2007

DREIER LLP

By: /s/ Ira S. Sacks
Ira S. Sacks
Robert J. Grand
499 Park Avenue
New York, New York 10022
(212) 328-6100
*Attorneys for
Defendant/Counterclaim Plaintiff
Wink NYC, Inc.*