Ira S. Sacks
Robert J. Grand
DREIER LLP
499 Park Avenue
New York, New York 10022
(212) 328-6100

*Attorneys for Defendant Jonathan Solnicki*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x

| | | |
|---|---|---|
| GMA ACCESSORIES, INC., | : | |
| | : | |
| Plaintiff, | : | **REPLY DECLARATION** |
| | : | **OF JONATHAN** |
| v. | : | **SOLNICKI IN FURTHER** |
| | : | **SUPPORT OF MOTION** |
| EMINENT, INC., SAKS FIFTH AVENUE, INC., | : | **TO VACATE DEFAULT** |
| INTERMIX, INC., WINK NYC, INC., | : | **JUDGMENT AND** |
| LISA KLINE, INC., GIRLSHOP, INC., | : | **PERMANENT** |
| SHOWROOM SEVEN STUDIOS, INC., | : | <u>**INJUNCTION**</u> |
| JONATHAN SINGER, LEWIS TIERNEY and | : | |
| JONATHAN SOLNICKI, | : | 07 CV 3219 (LTS) |
| | : | |
| Defendants, | : | |
| | : | |

------------------------------------------------------------- x

Jonathan Solnicki, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury under the laws of the United States as follows:

1. I am one of the named defendants in this action. I submit this reply declaration in further support of the motion to vacate the default judgment and order of permanent injunction entered by this Court on August 29, 2007 (the "Default Judgment"). Other than as expressly set forth, I have personal knowledge of all facts set forth herein.

2. Plaintiff, GMA Accessories, Inc. has made numerous false factual arguments in opposition to the motion to vacate the Default Judgment.

3. GMA first states that I was served with the Complaint on May 29, 2007, "by service upon my sister and partner." *See* paragraph 3 of the Declaration of Andrew T. Sweeney, dated November 7, 2007 (referred to hereinafter as "Sweeney Decl. ¶_"). As set forth in my moving Declaration, I never received the papers that were delivered to my sister. *See* ¶¶ 7 - 8 of the Declaration of Jonathan Solnicki, dated October 25, 2007.

4. Furthermore, as set forth in the moving Memorandum of Law and in the accompanying Memorandum of Law, I am informed that service of the Amended Complaint upon my sister at her apartment in New York City is not effective service of process on me. I do not live in New York now and did not live in New York at the time the Amended Complaint was allegedly served, or at any time during which the allegedly wrongful conduct complained of in GMA's pleading took place. I live, and at all relevant times have lived, in Argentina. Moreover, as set forth in the accompanying Reply Memorandum of Law, service of process on my business partner at her home cannot, in any way, be deemed effective service of process on me in my capacity as an individual defendant in this case.

5. GMA also wrongly asserts that I have somehow admitted in paragraph 7 of my moving Declaration that even though I was aware of "legal papers" being delivered in May 2007, I thereafter "decided not to take them seriously." *See* Memorandum of Law in Opposition to Defendant's Motion to Vacate the Default Judgment, p. 4 (referred to hereafter as "GMA Brief, p. _"). Nothing could be further from the truth and there simply is no language in paragraph 7 of my Declaration that could be deemed such an admission. As stated in my moving Declaration, I believed the papers served on my sister in May 2007 related to a dispute I was having with the landlord of my sister's building. In fact, the landlord had sought to terminate the lease and evict my sister from

the apartment on the grounds that I was the tenant on the lease and was not living in the apartment, and my sister was not permitted to live there.  Shortly thereafter, I resolved the issues with the landlord and my sister moved out of the apartment at the end of May 2007, just a few days after the Amended Complaint was delivered to her there.  Thus, neither she, nor I, lived in that apartment after May 31, 2007.  Accordingly, Plaintiff's suggestion that I did not take the "legal papers" seriously is totally false.

6. Plaintiff also states that on June 28, 2007, it submitted a letter to the Court seeking permission to file a motion for a default judgment and that it copied me on that letter.  Sweeney Decl., ¶ 5.  I never received a copy of that letter and have not received or seen a copy of that letter to this day.  I do not know where Plaintiff's counsel sent that letter in its alleged effort to serve it upon me, but if it was to the apartment on West 15th Street in New York, as set forth above, I lived in Argentina at the time and my sister moved out of that apartment as of May 31, 2007.

7. Similarly, Plaintiff states that on July 10, 2007 the Court issued an Order granting it permission to file a motion for a default judgment and that it served me with a copy of that Order as directed by the Court.  Sweeney Decl., ¶ 6.  I never received a copy of the July 10 Order.  The Affidavit of Service relating to Plaintiff's service of the July 10 Order states that Plaintiff's counsel mailed a copy of that Order to me at the West 15th Street apartment and to an address in Buenos Aires, Argentina.  *See* Exhibit A hereto.  Again, as set forth above, I never lived at the West 15th Street apartment and my sister had moved out of that apartment on May 31, 2007, long before Plaintiff allegedly attempted to serve me there with a copy of the July 10 Order.

8. The Buenos Aires address described in the Affidavit of Service is not my home address in Argentina and is also not the business address of Charlotte B in

3

Argentina. The address described by Plaintiff in the Affidavit of Service is the address for Showroom BA, a showroom in Argentina used by Charlotte B and other designers. The fact that this address is not the business address for our company is readily apparent from Exhibit 8 attached to the Sweeney Declaration, which appears to be a printout of a page taken from the CHARLOTTE SOLNICKI website on or about April 3, 2007. That exhibit plainly shows that the corporate office in Argentina for our company is located on Alsina Street in Buenos Aires.[1] None of the employees or management of Showroom BA ever informed me that it received a copy of the July 10 Order. As I stated above, I never received a copy of the July 10 Order or notice that it had even been issued.

9. Plaintiff next states that it filed its motion for a default judgment on July 20, 2007. Sweeney Decl., ¶ 7. Again, the Affidavit of Service relating to Plaintiff's service of the motion for a default judgment states that Plaintiff's counsel mailed a copy of the motion papers to me at the West 15th Street apartment and to the same address for Showroom BA in Buenos Aires, Argentina mentioned above. *See* Exhibit C. I never received a copy of that default judgment motion. Again, I never lived at the West 15th Street apartment and my sister moved out on May 31 2007, long before Plaintiff allegedly mailed the papers to me at that address. And, for precisely the same reasons set forth in paragraph 8 above, I never received a copy of the papers that Plaintiff mailed to me at the address in Argentina for Showroom BA.

10. Plaintiff then states that the Court entered a default judgment and permanent injunction against me by Order dated August 29, 2007. *See* Sweeney Decl., ¶ 8. Once again, I never received a copy of this Order. Indeed, I do not know if Plaintiff

---

[1] I have attached a copy of Exhibit 8 to the Sweeney Declaration hereto as Exhibit B for the Court's reference.

attempted to serve this Order on me at the West 15th Street address or at the address for Showroom BA in Argentina, but either way, I never received a copy of this Order and did not learn of its entry until informed of its existence by one of Charlotte B's retailer customers in September 2007.

11.     Plaintiff also falsely mischaracterizes a letter that I wrote to several retailers in June 2007.  Citing the June 2007 letter, in paragraph 13 of the Sweeney Declaration, Plaintiff states that "while declining to himself answer the complaint," I directed my "co-defendants to continue to infringe."  However, even a casual review of the June 2007 letter reveals quite clearly that there is no mention of the Complaint whatsoever.  That is because at the time I wrote this letter, I had never seen the Complaint, had not been served with it, and had not received notice of its existence.  Rather, as is plain from the language of my letter, I learned that Plaintiff had sent letters to several of my retail customers accusing those customers of trademark infringement by reason of their display and sale of CHARLOTTE SOLNICKI merchandise.  In my letter I was informing my retail customers that our company did not believe that the CHARLOTTE SOLNICKI brand violated any of Plaintiff's rights and that we intended to vigorously fight Plaintiff's allegations of wrongful conduct by our company.

12.     I understand too that Plaintiff attempted to serve a subpoena commanding my appearance at a deposition by mailing a copy of the subpoena to my attorneys.  I was never personally served with this subpoena and I am advised that service of the subpoena on my attorneys is improper under the relevant law.

13.     I am advised that Plaintiff similarly attempted to serve a subpoena commanding the appearance of Charlotte B, LLC at a deposition, but that service upon Charlotte B was likewise improper.  I have not been served with a copy of that subpoena.

14.     Once again, had I been properly served with the aforementioned papers, or had I even received timely notice their existence, I would have retained counsel and filed a timely response thereto.  My failure to timely respond to the Amended Complaint or to the motion for a default judgment was not in any way willful or undertaken in bad faith.  Indeed, as soon as I learned about the lawsuit, default and permanent injunction, I began speaking with counsel and retained the Dreier firm to represent me and the Charlotte B interests.

15.     Plaintiff has also tried to make much of the fact that Charlotte B, LLC is not licensed to do business in New York.  I am told that as a legal matter, this in no way impacts my ability or Charlotte B's ability to defend itself against the baseless allegations asserted herein by Plaintiff.  Nevertheless, I have instructed my counsel to rectify this inadvertent oversight immediately.

16.     Lastly, the telephone conversation with Plaintiff's counsel that I referred to in my moving Declaration was with a person named Andrew.  I understand there is a lawyer named Andrew who is employed by the law firm that represents Plaintiff in this case.

17.     It bears repeating that although I have been heavily involved in the fashion industry since 2002, and despite the widespread use of the CHARLOTTE SOLNICKI mark, I am not aware of any instances of confusion between the CHARLOTTE SOLNICKI brand and GMA.  I have never received any inquiries or communications that were mistakenly directed to me instead of GMA, and no one has ever contacted me or anyone else at Charlotte B looking for GMA products.  To this day, although I am now aware of GMA's allegation that it sells various products using the CHARLOTTE mark, I have never seen any of GMA's products.

18.     Accordingly, for the reasons set forth in the submitted declarations and the Memoranda of Law, the Default should be vacated.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: November 16, 2007
       Buenos Aires, Argentina

                                                                    s/ Jonathan Solnicki
                                                                    Jonathan Solnicki