UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

GMA ACCESSORIES, INC.,

                         Plaintiff,

      v.

EMINENT, INC., SAKS FIFTH AVENUE, INC.,          07 CV 3219 (LTS)
INTERMIX, INC., WINK NYC, INC.,
LISA KLINE, INC., GIRLSHOP, INC.,
SHOWROOM SEVEN STUDIOS, INC.,
JONATHAN SINGER, LEWIS TIERNEY and
JONATHAN SOLNICKI,

                     Defendants,

------------------------------------------------------------ x

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S
## MOTION TO DISMISS COUNTERCLAIMS AND AFFIRMATIVE DEFENSES

Ira S. Sacks
Robert J. Grand
DREIER LLP
499 Park Avenue
New York, New York 10022
(212) 328-6100
*Attorneys for the Retailer Defendants*
*Saks Fifth Avenue, Inc., Intermix,*
*Inc., Wink NYC, Inc., Lisa Kline,*
*Inc., Jonathan Singer, and Lewis*
*Tierney*

## TABLE OF CONTENTS

**PAGE**

BACKGROUND ..................................................................................................................2

I.   THE RETAILER DEFENDANT'S COUNTERCLAIM
     FOR CANCELLATION BASED ON TRADEMARK MISUSE IS VALID ..........................3

     A.   The Retailer Defendants' First Counterclaim is Adequately Pled .....................................4

     B.   The Retailer Defendants Are Not Asserting An Antitrust Violation ................................6

II.  PLAINTIFFS MOTION TO STRIKE THE AFFIRMATIVE
     DEFENSE OF TRADEMARK MISUSE SHOULD BE DENIED.........................................6

     A.   The Defense of Trademark Misuse is
          Not Restricted to Antitrust Cases.....................................................................................7

     B.   The Retailer Defendants Have Adequately
          Plead Trademark Misuse As An Affirmative Defense ......................................................8

     C.   There Are Serious Doubts Regarding Plaintiff's
          Ability to Enforce its Rights to the Charlotte Mark.........................................................9

III. THE RETAILER DEFENDANTS' SECOND AND THIRD
     COUNTERCLAIMS MEET THE REQUIREMENTS OF RULE 9(b).................................12

IV.  THE RETAILER DEFENDANTS WERE NOT REQUIRED TO SPECIFICALLY PLEAD
     DAMAGES FOR THEIR FRAUD COUNTERCLAIMS.....................................................14

CONCLUSION..................................................................................................................15

## **TABLE OF AUTHORITIES**

**PAGE**

### **FEDERAL CASES**

*Acito v. IMCERA Group, Inc.*,
   47 F.3d 47 (2d Cir. 1995)......................................................................................12

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
   999 F.Supp. 725 (S.D.N.Y. 1998) .........................................................................12

*Bell Atlantic Corp v. Twombly*,
   127 S.Ct. 1955 (2007)..............................................................................................4

*Cleveland v. Caplaw Enter.*,
   448 F.3d 518 (2d Cir. 2006)......................................................................................4

*Critical-Vac Filtration Corp. v. Minuteman Int'l, Inc.*,
   233 F.3d 697 (2d Cir. 2000)......................................................................................5

*Conopco, Inc. v. Campbell Soup Co.*,
   95 F.3d 187 (2d Cir. 1996).....................................................................................10

*Deere & Co. v. MTD Holdings Inc.*,
   2004 WL 1794507 (S.D.N.Y. Aug. 11, 2004).........................................................7

*Devaney v. A.P. Chester*,
   813 F.2d 566 (2d Cir. 1987)....................................................................................14

*Dunn Computer Corp. v. Loudcloud, Inc.*,
   133 F.Supp.2d 823 (E.D. Va. 2001) .........................................................................4

*GMA Accessories, Inc. v. BOP LLC*,
   507 F.Supp.2d 361 (S.D.N.Y. 2007)......................................................................10

*GMA Accessories, Inc. v. Croscill, Inc*,
   2007 WL 766294 (S.D.N.Y. March 13, 2007) .......................................................10

*Icos Vision Systems Corp., N.V. v. Scanner Technologies Corp.*,
   2006 WL 838990 (S.D.N.Y. Mar. 29, 2006) ...........................................................8

*In re Scottish Re Group Securities Litigation*,
   2007 WL 3256660 (S.D.N.Y. Nov. 2, 2007)............................................................4

*Juno Online Services, L.P., v. Juno Lighting, Inc.*,
   979 F.Supp. 684 (N.D. Ill. 1997) .............................................................................5

*Marchon Eyewear, Inc. v. Tura LP*,
  2002 WL 31253199 (E.D.N.Y. Sept. 30, 2002), .....................................................5

*McGuire v. Regents of Univ. of Mi.*,
  2000 WL 1459435 (S.D. Ohio Sept. 21, 2000) ......................................................5

*Microsoft Corp. v. PTI*,
  2003 WL 21406291 (E.D.N.Y. Mar. 14, 2003) .......................................................7

*Microsoft Corp. v. Worth*,
  2007 WL 1975574 (N.D. Tex. Jul. 5, 2007) .......................................................7, 8

*New York Jets LLC v. Cablevision Systems Corp*,
  2005 WL 3454652 (S.D.N.Y. Dec. 19, 2005) ........................................................8

*Northwestern Corp. v. Gabriel Manufacturing Co.*,
  48 U.S.P.Q.2d 1902 (N.D. Ill. 1998) .................................................................8

*Pioneer Comm. Funding Corp. v. United Airlines, Inc.*,
  122 B.R. 871 (S.D.N.Y. 1991) .........................................................................6

*Plus Prods. v. Plus Disc. Foods, Inc.*,
  722 F.2d 999 (2d Cir. 1983) .........................................................................11

*Polaroid Corp. v. Polarad Elecs. Corp.*,
  287 F.2d 492, 495 (2d Cir. 1961) .....................................................................9

*Streetwise Maps Inc. v. VanDam Inc.*,
  159 F.3d 739 (2d Cir. 1998) .........................................................................11

*Trustees of Columbia University in the City of New York v. Columbia/HCA Healthcare Corp.*,
  964 F.Supp. 733 (S.D.N.Y. 1997) ...................................................................11

*Trustees of the Plumbers and Pipefitter's Nat'l Pension Fund v. Transworld Mechanical, Inc.*,
  886 F.Supp. 1134 (S.D.N.Y. 1995) .................................................................12

*We Media Inc. v. Gen. Electric Co.*,
  218 F.Supp.2d 463 (S.D.N.Y. 2002)................................................................11

*Whitney Information Network, Inc. v. Gagnon*,
  353 F.Supp.2d 1208 (M.D. Florida 2005) .......................................................4, 5

## FEDERAL STATUTES

15 U.S.C. §1119...................................................................................4, 5, 6

15 U.S.C. § 1057 .......................................................................................3

15 U.S.C. § 1064.....................................................................................2, 14

37 C.F.R. §§ 2.111(b) ...............................................................................................................2, 14

## FEDERAL RULES

Fed. R. Civ. P. 9(b) ........................................................................................2, 3, 12, 13, 14

Fed. R. Civ. P. 12(f) ...............................................................................................................6, 7

## SECONDARY SOURCES

TTMB § 303.01 .........................................................................................................................2, 14

TTMB § 309.03(b) .....................................................................................................................2, 14

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S**
**MOTION TO DISMISS COUNTERCLAIMS AND AFFIRMATIVE DEFENSES**

Defendants Saks Fifth Avenue, Inc. ("Saks"), Intermix, Inc. ("Intermix"), Wink NYC,

Inc. ("Wink"), Lisa Kline, Inc. ("Lisa Kline"), Jonathan Singer ("Singer"), and Lewis Tierney

("Tierney") (collectively the "Retailer Defendants" or "Counterclaim Plaintiffs") respectfully

submit this Memorandum of Law in opposition to Plaintiff GMA Accessories, Inc.'s ("GMA")

motion to dismiss their counterclaims and strike certain affirmative defenses (the "Motion").

The Motion is baseless and – as with most of GMA's litigation tactics – interposed solely

to increase the burden on the Retailer Defendants.  *First*, GMA's assertion of objectively and

subjectively baseless trademark claims against the Retailer Defendants is a violation of law.  It

constitutes gross and flagrant misuse of the exclusive rights granted to GMA by the US Patent

and Trademark Office ("USPTO") in issuing several trademark registrations to GMA (the "GMA

Marks").  As set forth more fully below, contrary to the arguments advanced by GMA in its

motion papers, that trademark misuse is cognizable as a defense to GMA's claims and also as a

counterclaim to cancel the GMA Marks.

*Second*, GMA wrongly suggests that its registered marks are somehow immune from

attack and cannot be challenged and cancelled for fraud.  That is wrong.  Despite the fact that the

Retailer Defendants do not know all of the details of GMA's fraud – details which are known

only to GMA at this pre-discovery stage – the counterclaims plead numerous details of the

material facts knowingly withheld from the USPTO  by GMA and other misrepresentations

made to the USPTO.  These misrepresentations include the false statements that the GMA Marks

were used on products on which they were not used; and false statements that no one else besides

GMA had the right to use a mark that was likely to cause confusion with its applied for marks

when GMA knew that others – including Charlotte Russe, Charlotte Tarantola and Charlotte

1

Ford, among others – had senior use of such marks.  GMA cannot hide behind its own misconduct in suggesting that the fraud counterclaims should be dismissed.  They plainly meet the requirements of Rule 9(b).

*Finally*, a cancellation claim under 15 U.S.C. §1119 does not require an allegation or proof of monetary damages from the fraud on the USPTO, although there were such damages here.  Rather, a party has standing to petition to cancel a mark if that party believes that he is or will be damaged by the registration of a mark on the principal register. 15 U.S.C. § 1064, 37 C.F.R. §§ 2.111(b), and §§ 303.01, 309.03(b) of the Trademark Trial and Appeal Board Manual of Procedure ("TMBP"). Thus, when seeking cancellation of a mark, the party seeking cancellation does not need to plead monetary damages.  Claiming – as is asserted here – that the Retailer Defendants are being sued and damaged as a result of the wrongful registration of the GMA Marks is sufficient.

As a result, the Motion should be denied in all respects.

## BACKGROUND

Plaintiff commenced this trademark infringement action in April 2007, and has since amended its complaint twice, most recently in late September 2007, adding six new defendants – the Retailer Defendants – to the case.  Despite the amendments to the Complaint and the addition of multiple defendants, GMA's claims remain meritless.  They are predicated on a weak mark that is limited to the word Charlotte alone and cannot legitimately be asserted against any combination of Charlotte and another name or surname.  Indeed, if that were not the case, GMA would not have any mark at all since Charlotte Russe was registered and used on the same types of goods as GMA long before GMA – dating back to use as early as 1975 (*see* Registration No. 1,485,692) compared to GMA's earliest priority of 1996 (*see* Registration No. 2,5353,454).

2

In response to Plaintiff's baseless claims, the Retailer Defendants asserted counterclaims for fraud and trademark misuse, and numerous affirmative defenses, including an affirmative defense of trademark misuse. Plaintiff now moves to dismiss the Retailer Defendants' counterclaims, as well as to dismiss (sic) the affirmative defense of trademark misuse. Plaintiff contends that the Retailer Defendants' counterclaim and affirmative defense for trademark misuse should be dismissed because trademark misuse is not a cognizable claim or defense. Plaintiff further contends that the counterclaims for fraud should be dismissed because they are not pled with the requisite particularity under Rule 9(b) and fail to plead damages.

The Motion is totally without merit. As demonstrated more fully below, all of the counterclaims and defenses are well pled. Plaintiff's wasteful and ultimately frivolous Motion should be denied.

## I.

### THE RETAILER DEFENDANTS' COUNTERCLAIM <br> FOR CANCELLATION BASED ON TRADEMARK MISUSE IS VALID

The Retailer Defendants' first counterclaim for cancellation based on trademark misuse is valid and properly pled. GMA received an exclusive right to use the GMA Marks from the USPTO. *See* 15 U.S.C. § 1057 (b) ("A certificate of registration of a mark upon the principal register provided by this chapter shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate, subject to any conditions or limitations stated in the certificate"). GMA has abused that exclusive grant, and is subject to cancellation and damages as a result. It does not get a free ride.

3

**A.**   **The Retailer Defendants' First Counterclaim Is Adequately Pled**

As this Court is well aware, in considering a motion to dismiss, the court "must accept as true the complaint's factual allegations and draw all inferences in the plaintiff's favor." *See Cleveland v. Caplaw Enter.*, 448 F.3d 518, 521 (2d Cir. 2006).  To survive a motion to dismiss, a plaintiff must allege facts to state a claim to relief that is plausible on its face.  *Bell Atlantic Corp v. Twombly*, 127 S.Ct. 1955 (2007); *In re Scottish Re Group Securities Litigation*, 2007 WL 3256660, at *6 (S.D.N.Y. Nov. 2, 2007) (complaint must only meet standard of plausibility). Here, the Retailer Defendants have alleged:

> The GMA CHARLOTTE Marks lack significance as single source identifiers.
> Nevertheless, GMA has continued to sue companies who use the word CHARLOTTE in
> connection with other words and continues to sue retailers for selling said goods.  Those
> suits and threatened suits are objectively and subjectively baseless and interposed by
> GMA with bad faith and the intent to directly injure and harass Tierney's business
> relationships through the use of governmental process as an anticompetitive weapon.  As
> a result, Singer has been injured by GMA's actions.  (*E.g*., Kline Answer, ¶ 132)

These allegations are more than sufficient to state a claim for cancellation based on trademark misuse.

Nevertheless, Plaintiff – citing decisions from federal district courts in Michigan, Virginia and Florida (none of which are controlling here) – argues that "trademark misuse" is not a cognizable affirmative claim.  Plaintiff is wrong.  In fact, *Whitney Information Network, Inc. v. Gagnon*, 353 F.Supp.2d 1208 (M.D. Florida 2005), cited by Plaintiff, actually supports the Retailer Defendants' counterclaim here.[1]

In *Whitney*, the defendant asserted a counterclaim under 15 U.S.C. § 1119, seeking a declaration that plaintiff's service marks were invalid and unenforceable and for cancellation of

---

[1] *Dunn Computer Corp. v. Loudcloud, Inc*., 133 F.Supp.2d 823 (E.D. Va. 2001), relied upon by Plaintiff, is inapposite.  There, the Court held that plaintiff's claim for trademark misuse under 15 U.S.C. § 1119 failed because the defendant did not have a registered trademark, which is a requirement for a federal court to exercise jurisdiction to cancel a registration.  That is not the case here.

4

plaintiff's trademark applications.  Plaintiff moved to dismiss because 15 U.S.C. § 1119 only

allows a court to cancel a <u>registered</u> mark, not an application for a mark.  The Court agreed and

held that the counterclaim for trademark misuse and cancellation under § 1119 could not lie

**without a registered mark**.  *Id. at* 1211.  Importantly, the Court went on to hold – contrary to

Plaintiff's position here – that the defendant would indeed be allowed to include the

counterclaim for cancellation based on trademark misuse in an amended counterclaim if they

could plead the existence of a registered service mark.  *Id. at* 1211-12.

Here, there is no dispute that Plaintiff has numerous registered marks.  Accordingly, the

Retailer Defendants' counterclaim for cancellation based on trademark misuse is valid.  *See Juno*

*Online Services, L.P., v. Juno Lighting, Inc.*, 979 F.Supp. 684, 690 (N.D. Ill. 1997) (a claim for

trademark misuse may be viable in a situation where the mark holder attempts to "destroy its

competitors through the use of its mark"); *McGuire v. Regents of Univ. of Mi.*,  2000 WL

1459435, at *6 (S.D. Ohio Sept. 21, 2000) ("an affirmative claim for trademark misuse is indeed

a novel theory" but refraining from finding that Plaintiff "could prove no set of facts that would

support his claim for relief under the theory").

Trademark misuse under the circumstances here makes strong policy sense as well.

Courts in the Second Circuit have recognized the viability of claims for patent misuse.  *See*

*Critical-Vac Filtration Corp. v. Minuteman Int'l, Inc.*, 233 F.3d 697, 703 (2d Cir. 2000)

(recognizing patent misuse as a valid cause of action); *Marchon Eyewear, Inc. v. Tura LP*, 2002

WL 31253199, at *9 (E.D.N.Y. Sept. 30, 2002) (same).  A trademark holder, like a patent holder,

has certain exclusive intellectual property rights.  The law has recognized that patent holders

who misuse and abuse this exclusive right may be penalized. As a policy matter, there is no

logical reason why a trademark holder should be allowed to threaten and file frivolous lawsuits based upon federally issued trademarks without facing consequences for its action.

**B.    The Retailer Defendants Are Not Asserting An Antitrust Violation**

The Retailer Defendants are not asserting an antitrust violation, and that does not affect the viability of the trademark misuse counterclaim one whit.  Whether the Retailer Defendants' First Counterclaim is labeled "trademark misuse," "unfair competition" or some other label, the label attached to the claim is irrelevant so long as the facts alleged make out a cognizable claim for the relief requested.  *See Pioneer Comm. Funding Corp. v. United Airlines, Inc*., 122 B.R. 871, 887 (S.D.N.Y. 1991) (noting that the "Federal Rules of Civil Procedure only require the pleading of a claim and the specific label given to a cause of action is unimportant").  The real issue is "whether the facts alleged create a claim upon which relief can be granted."  *Id*.  Here, the Retailer Defendants have alleged that Plaintiff's lawsuit is objectively baseless and that GMA is using its mark in bad faith and for an unlawful purpose, specifically injuring the Retailer Defendants and damaging their relationships with their business partners.  Those allegations are sufficient to support a claim for cancellation of Plaintiff's registered marks under 15 U.S.C. § 1119.

## II.

### PLAINTIFF'S MOTION TO STRIKE THE AFFIRMATIVE DEFENSE OF TRADEMARK MISUSE SHOULD BE DENIED

The Retailer Defendants also assert that GMA is barred from enforcing its registered marks because of trademark misuse.  Plaintiff seeks to dismiss (sic) the Retailer Defendants' affirmative defense of trademark misuse.  Again, that is without merit.

That motion to dismiss the affirmative defense is actually a motion to strike.  Motions to strike under Rule 12(f) are disfavored, and an affirmative defense will not be stricken if there is

"a connection between the claims and the [affirmative] defense." *See Microsoft Corp. v. Worth*, 2007 WL 1975574, at *2 (N.D. Tex. Jul. 5, 2007). Rule 12(f) is not designed to be "an absolute determination of the efficacy of the defense on the merits." *Id.* In general, "[m]otions to strike affirmative defenses are not favored and will be granted only if: (1) there is no question of fact that might allow the defense to succeed; (2) there is no substantial question of law, the resolution of which would allow the defense to succeed and (3) plaintiff shows prejudice if the defense is allowed to stand." *Microsoft Corp. v. PTI*, 2003 WL 21406291, at *1 (E.D.N.Y. Mar. 14, 2003).

Here, Plaintiff cannot satisfy these criteria: there are questions of fact that might allow the defense of trademark misuse to succeed; there are also substantial questions of law the resolution of which would allow the defense to succeed, as the ability to use trademark misuse as an affirmative defense has been recognized in certain instances and not in others; and, finally, Plaintiff cannot show any prejudice if the affirmative defense of trademark misuse is allowed to be asserted.

## A.    The Defense of Trademark Misuse is Not Restricted to Antitrust Cases

Plaintiff first argues that the trademark misuse can only used as an affirmative defense in an antitrust action where "sham litigation" is successfully pleaded. This is false. *See Deere & Co. v. MTD Holdings Inc.*, 2004 WL 1794507, at * 3 (S.D.N.Y. Aug. 11, 2004) (recognizing trademark misuse as an affirmative defense where the defendant "has made misrepresentations to the public in an attempt to increases the scope of its marks")[2]; *Microsoft Corp.*, 2007 WL

---

[2]  Plaintiff cites to *Deere* to support its argument that the affirmative defense of trademark misuse cannot stand. The defense failed in *Deere* based on the specific facts in that case. The court in *Deere* found that defendant had not adequately alleged claims of trademark misuse because the plaintiff in *Deere* already had been successful in a trademark infringement lawsuit, thereby rebutting any claim that defendant had engaged in sham litigation. That is not the case here.

1975574, at *3 (same).[3]    What is more, the Retailer Defendants have adequately pleaded that

GMA has engaged in "sham litigation."

### B.  The Retailer Defendants Have Adequately Pled Trademark Misuse As An Affirmative Defense

The Retailer Defendants have more than adequately pled trademark misuse as an

affirmative defense.  The pleading requirements for an affirmative defense are the same as for

affirmative relief, requiring only a short and plain statement of the claim.  *See Microsoft Corp. v.*

*Worth*, 2007 WL 1975574, at *2 (N.D. Tex. Jul. 5, 2007).  The affirmative defense of trademark

misuse can be pled based upon "sham litigation" involving the registered marks.

The essential elements of "sham litigation" are (i) that the suit was "objectively baseless

in the sense that no reasonable litigation could realistically expect success on the merits," and (ii)

"the litigation must conceal an attempt to interfere directly with the business relationships of a

competitor."  *New York Jets LLC v. Cablevision Systems Corp.*, 2005 WL 3454652, at * 2

(S.D.N.Y. Dec. 19, 2005); *Icos Vision Systems Corp., N.V. v. Scanner Technologies Corp.*, 2006

WL 838990, at * 4 (S.D.N.Y. Mar. 29, 2006).

Here, each Defendant pled the following in their Answer and Counterclaims:

The GMA CHARLOTTE Marks lack significance as single source identifiers.
Nevertheless, GMA has continued to sue companies who use the word CHARLOTTE in
connection with other words and continues to sue retailers for selling said goods.  Those
suits and threatened suits are objectively and subjectively baseless and interposed by
GMA with bad faith and the intent to directly injure and harass Kline's business
relationships through the use of governmental process as an anticompetitive weapon.  As
a result, Kline has been injured by GMA's actions.  (*E.g.*, Kline Answer and
Counterclaims, ¶ 132)

---

[3]  *Northwestern Corp. v. Gabriel Manufacturing Co.*, 48 U.S.P.Q.2d 1902 (N.D. Ill. 1998), relied on by GMA for
the proposition that "the defense of trademark misuse is a phantom defense," ignores the central holding in that case.
The court in *Northwestern* recognized the ability of defendants in trademark infringement suits to use trademark
misuse as a defense where – as here – the trademark holder has made misrepresentations.

Plainly, this allegation satisfies the pleading criteria for "sham litigation". Therefore the trademark misuse affirmative defense was properly pled and asserted.

Undaunted, Plaintiff argues that, because the Retailer Defendants assert in their pleadings that "Charlotte Solnicki" products are not competitive with Plaintiff's products, the Retailer Defendants should not be permitted to assert a "sham litigation" affirmative defense because the third criteria for "sham litigation" – *i.e.,* that "the litigation must conceal an attempt to interfere directly with the business relationships of a ***competitor***" – cannot be satisfied. That argument turns this case on its head. GMA alleges in the Second Amended Complaint that the Retailer Defendants are engaged in unfair competition. (*See, e.g*., Count III for Unfair Competition under New York Common Law). Indeed, for GMA to prevail on its assertion that there is likelihood of confusion among consumers as to the source of its products and those using the Charlotte Solnicki brand, GMA will assert that its products are competitive with the Retailer Defendants' products. *Polaroid Corp. v. Polarad Elecs. Corp*., 287 F.2d 492, 495 (2d Cir. 1961)(factors include proximity of the products).

To be sure, at trial GMA may – and indeed will – lose in its claim that there is likely confusion. But until that time, it is clear that GMA believes that its goods are competitive with the Retailer Defendants' goods – which is the entire reason why this suit even exists. Thus, at the pleading stage, GMA's allegation that the goods are competitive is sufficient to sustain the Retailer Defendants' "sham litigation" defense.

## C.     There Are Serious Doubts Regarding Plaintiff's Ability to Enforce its Rights to the <u>Charlotte Mark</u>

Plaintiff argues that the trademark misuse defense should also be dismissed because "it cannot be seriously disputed that GMA has 'probable cause' to enforce its rights to the CHARLOTTE mark against CHARLOTTE SOLNICKI and those in the distribution chain of

these products." (Def. Br., p. 6).   Again, Plaintiff is wrong.  In fact, there is a serious dispute for

trial as to whether GMA has probable cause to enforce its rights, given the weakness of its mark,

its continuous abuse of its trademark, and its attempt to achieve a monopoly over the word

Charlotte.

GMA's citation to this Court's decision in *GMA Accessories, Inc. v. BOP LLC*, 507

F.Supp.2d 361 (S.D.N.Y. 2007) is misleading.  As this Court knows, that opinion was reached on

an unopposed record.  Far more persuasive on this issue is the decision on a contested record by

Judge Lynch in *GMA Accessories, Inc. v. Croscill, Inc*, 2007 WL 766294 (S.D.N.Y. March 13,

2007), where Judge Lynch observed that "GMA had presented no evidence regarding consumer

recognition of the mark as indicating origin of the goods" (at *2), an essential element of

trademark protection.  The Court also noted the total failure of evidence of actual confusion or

any survey evidence on the motion for summary judgment.  *Id*. at *3.

Importantly, Judge Lynch rejected GMA's effort to dismiss the counterclaims seeking

recovery of fees for defense of the action.  The Court found that "the Second Circuit has

explicitly held that defendants may be awarded attorney's fees under the Lanham Act …in cases

where the action has been brought in bad faith, and a court's inherent equitable powers.

*Conopco, Inc. v. Campbell Soup Co*., 95 F.3d 187, 194-95 (2d Cir. 1996)."  *Id*. at *4.  The Court

denied the motion to dismiss the counterclaims, finding that whether the lawsuit was brought in

bad faith was a factual issue for trial.  *Id*.  That same result should accrue here.

The weakness of GMA's mark raises a significant question of GMA's right to enforce its

right to the Charlotte mark.  The Charlotte mark is a very weak mark, as demonstrated by

extensive use of the word Charlotte in the fashion industry.  It is well-settled that extensive third-

party uses of the same or similar marks dilute the strength of a plaintiff's mark as a source

identifier.  *See, e.g.*, *Streetwise Maps Inc. v. VanDam Inc.* 159 F.3d 739, 743-744 (2d Cir. 1998*);

Plus Prods. v. Plus Disc. Foods, Inc.* , 722 F.2d 999, 1005 (2d Cir. 1983); *We Media Inc. v. Gen.

Electric Co.,* 218 F.Supp.2d 463 (S.D.N.Y. 2002); *Trustees of Columbia University in the City of

New York v. Columbia/HCA Healthcare Corp.*, 964 F.Supp. 733 (S.D.N.Y. 1997).

As the counterclaims allege:

116.    Charlotte, standing alone, is a commonly-used style designation in the apparel and jewelry industry because it is a popular female first name and because it has geographic significance as the capital of the state of North Carolina, the 20th largest city in the United States, and as the site of a large campus, the University of North Carolina.

117.    In addition to CHARLOTTE SOLNICKI, several other designers use the name CHARLOTTE in connection with their apparel and accessories' lines, including, but not limited to, CHARLOTTE RUSSE, CHARLOTTE TARANTOLA, CHARLOTTE RONSON and CHARLOTTE CORDAY.

118.    Charlotte Russe owns several federal trademark registrations for the mark CHARLOTTE RUSSE.  Specifically, CHARLOTTE RUSSE's numerous trademark registrations on the USPTO include Registration No. 2,416,273 in Class 25 for clothing; Registration No. 2,416,270 in Class 26 for hair ornaments; Registration No. 2,416,269 in Class 14 for costume jewelry; Registration No. 2,416,268 in Class 18 for handbags and other related goods; Registration Nos. 2,414,477 and 1,485,692 in Class 42 for retail store services specializing in women's apparel and accessories; and Registration No. 2,451,427 in Class 3 for cosmetics.  Moreover, Charlotte Russe's use of CHARLOTTE is prior to, and senior to, GMA's use.

119.    Ehringer-Schwarz GMBH & Co. KG owns the trademark registration for CHARLOTTE in Class 14, U.S. Registration No. 2,117,619, which was issued on December 2, 1997.  The Section 8&15 was filed for this mark on April 14, 2003 and acknowledged on July 12, 2003.

120.    Additionally, at the time GMA obtained its CHARLOTTE registrations, CHARLOTTE FORD had a registration for CHARLOTTE FORD in Class 25.  That mark has since expired.

121.    Moreover, despite the fact that CHARLOTTE TARANTOLA has prior rights to the name CHARLOTTE based on common law use, GMA has instituted an opposition against CHARLOTTE TARANTOLA's federal trademark application and refuses to enter into a co-existence agreement.

122.    The use of CHARLOTTE in the apparel and accessories' business is so widespread that Kline is aware of at least 49 companies using CHARLOTTE as a style designation for their various fashion products.

123.    Because of the name and geographic significance of "Charlotte" and the widespread use of "Charlotte" as a style designation in the apparel and jewelry industries, "Charlotte" has little or no significance as a source or association identifier and does not serve to identify a single apparel, handbag or jewelry source, much less serve to identify GMA as the exclusive source of "Charlotte" products. (*See, e.g.*, Kline Answer at ¶¶116-23).

Those allegations, when established, will make plain that GMA acted in bad faith, bringing objectively and subjectively baseless litigation.  There are, at the very least, issues of fact as to whether the Retailer Defendants will prevail on their trademark misuse defense.

### III.

### THE RETAILER DEFENDANTS' SECOND AND THIRD COUNTERCLAIMS MEET THE REQUIREMENTS OF RULE 9(b)

The Retailer Defendants' fraud counterclaims have been more than sufficiently pled under Rule 9(b).  To meet the requirements of Rule 9(b), "the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, and other condition of mind of a person may be averred generally." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 999 F.Supp. 725, 727 (S.D.N.Y. 1998).  The purpose of Rule 9(b) is to "provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from 'improvident charges of wrongdoing,' and to protect a defendant against the institution of a strike suit." *Id.* (citing *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir. 1995) (citations omitted)). "Rule 9's strictures are relaxed where the alleged fraud concerns facts 'peculiarly within the opposing party's knowledge.'" *Trustees of the Plumbers and Pipefitter's Nat'l Pension Fund v. Transworld Mechanical, Inc.*, 886 F.Supp. 1134, 1142 (S.D.N.Y. 1995) (internal citations omitted) (if greater particularity cannot be expected without discovery, the causes of action for

fraud should not be dismissed). Here, the Retailer Defendants complied fully with the

requirements of Rule 9(b).

The Retailer Defendants pled the following in their Second Counterclaim:

134.    In GMA's 8&15 Declarations, GMA declared that it was aware "that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements and the like may jeopardize the validity of this document" and stated unequivocally that "all statements made of his/her own knowledge are true and that all statements made on information and belief are believed to be true."

135.    GMA, as of the dates of the Statements of Use and/or the Section 8&15 Declarations for the various CHARLOTTE Marks, was not using the marks in connection with all the goods listed in the applications/registrations. Moreover, the dates of first use set forth in the applications for GMA's CHARLOTTE Marks are fraudulent. (*See, e.g.*, Kline Answer and Counterclaim, ¶¶ 134-35).

The Retailer Defendants pled the following in their Third Counterclaim:

138.    GMA has sued many retailers claiming that their use of CHARLOTTE SOLNICKI infringes upon its CHARLOTTE Marks.

139.    As stated above, Charlotte Russe, Charlotte Tarantola and Charlotte Ford, among others, had prior use to GMA's use of CHARLOTTE.

140.    GMA knew, or should have known, of the existence of these prior uses.

141.    As part of its applications which led to the CHARLOTTE Registrations, GMA swore to the USPTO that no one else had the right to use a mark that was likely to cause confusion with its applied for mark.

142.    The aforesaid acts of GMA constitute fraud on the USPTO…. (*See, e.g.*, Kline Answer and Counterclaim, ¶¶ 138-43).

Those allegations give more than sufficient notice to GMA of the nature of the fraud

alleged on the USPTO. All of the rest of the details are exclusively within the possession of

GMA. For this reason alone, it is clear that the Retailer Defendants' allegations meet the

particularity standards imposed by Rule 9(b).

In addition, Plaintiff falsely argues in its Memorandum of Law that the Retailer Defendants did not allege that any of the aforementioned "Charlotte" entities had a right to the Charlotte mark that was senior to Plaintiff's right. On the contrary, the Retailer Defendants specifically allege that, "Charlotte Russe, Charlotte Tarantola and Charlotte Ford had prior use to GMA's use of CHARLOTTE." *See, e.g.*, Kline Answer and Counterclaim, ¶ 139.

Finally, it bears noting that, despite the fact that the Retailer Defendants had sufficiently pled fraud in their Counterclaims, when Plaintiff complained about this purported deficiency in the Counterclaims, the Retailer Defendants offered to try to resolve the issue without motion practice by amending their pleadings. In fact, on October 26, 2007, the Retailer Defendants' attorneys sent a proposed revision of the counterclaims in question to the Plaintiff's attorneys via email and asked whether the changes would solve GMA's alleged issues. *See* Sacks Decl., Ex. A. This email went unanswered and this motion ensued. *See* Sacks Decl., ¶ 3. If the Court is inclined to grant Plaintiff's Rule 9(b) motion, the Retailer Defendants respectfully request leave to re-plead their Counterclaims in the form attached to the Sacks Declaration as Ex. B. *See Devaney v. A.P. Chester*, 813 F.2d 566, 569 (2d Cir. 1987).

## IV.

### THE RETAILER DEFENDANTS WERE NOT REQUIRED TO SPECIFICALLY PLEAD DAMAGES FOR THEIR FRAUD COUNTERCLAIMS

Contrary to GMA's argument, the Retailer Defendants were not required to plead that they were damaged to support their cancellation counterclaims. The Retailer Defendants have been injured by the registration of the GMA Marks and this resulting lawsuit. Pursuant to 15 U.S.C. § 1064, 37 CFR § 2.111(b) and §§ 303.01 and 309.03(b) of the TMBP, a party has standing to petition to cancel a mark if that party believes that he is or will be damaged by the registration of a mark on the principal register. Thus, when seeking cancellation of a mark, the

14

Petitioner does not need to plead monetary damages, and seeking cancellation of a mark asserted against the Petitioner – as the Retailer Defendants have done herein – is sufficient.[4]

## <u>CONCLUSION</u>

For all of the foregoing reasons, the Retailer Defendants respectfully request that this Court deny the Plaintiff's Motion in the entirety.

Dated: New York, New York
        November 29, 2007

                                    DREIER LLP

                                    By:  /s/ Ira S. Sacks
                                        Ira S. Sacks
                                        Robert J. Grand
                                        499 Park Avenue
                                        New York, New York 10022
                                        Tel.:  (212) 328-6100
                                        Fax:   (212) 328-6101

                                        *Attorneys for the Retailer Defendants
                                        Saks Fifth Avenue, Inc., Intermix, Inc.,
                                        Wink NYC, Inc., Lisa Kline, Inc.,
                                        Jonathan Singer, and Lewis Tierney*

---

[4] Nevertheless, Defendants have inserted a damages clause in the proposed Amended Counterclaims.