

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------X
GMA ACCESSORIES, INC,

                    PLAINTIFF,

        -against-

EMINENT, INC., SAKS FIFTH AVENUE, INC.,
INTERMIX, INC., WINK NYC, INC., LISA KLINE
INC., GIRLSHOP, INC., SHOWROOM SEVEN STUDIOS,
INC., JONATHAN SINGER, LEWIS TIERNEY and
JONATHAN SOLNICKI,

                    DEFENDANTS,
--------------------------------------------X

              DATE:  March 7, 2008

              TIME:  10:31 a.m.


        EXAMINATION BEFORE TRIAL of a

non-party witness, CHARLOTTE B, by a witness,

MELINA SOLNICKI, taken by the Plaintiff, GMA

ACCESSORIES, INC., pursuant to a Subpoena,

held at the offices of THE BOSTANY LAW FIRM, 40

Wall Street, New York, New York, before a

Registered Professional Reporter and Notary

Public of the State of New York.



## David Feldman
## W o r l d w i d e

From File to Trial™

California  |  New York  |  Texas
www.david-feldman.com

appearance page- solnicki

2

```
 1
 2          A P P E A R A N C E S:
 3
 4          THE BOSTANY LAW FIRM
                  Attorneys for the Plaintiff
 5                40 Wall Street, 61st floor
                  New York, New York 10022
 6                BY:   JOHN P. BOSTANY, ESQ.
                  E-mail: john@bozlaw.com
 7                      RONALD I. PALTROWITZ, ESQ.
 8
 9
            DREIER, LLP
10                Attorneys for the Defendants Saks
                  Fifth Avenue, Inc., Intermix, Inc.,
11                Wink NYC, Inc., Lisa Kline, Inc.,
                  Jonathan Singer, Lewis Tierney,
12                Jonathan Solnicki, and Charlotte B
                  499 Park Avenue
13                New York, New York 10022
                  BY:   ROBERT J. GRAND, ESQ.
14                E-mail:  rgrand@dreirllp.com
15
16
17          GARVEY SCHUBERT BARER
                  Attorneys for the Defendant
18                Eminent, Inc.
                  100 Wall Street, 20th floor
19                New York, New York 10005
                  BY:   (NO APPEARANCE)
20
21                    *           *           *
22
23
24
25
```

Page 1

3

1

2          FEDERAL STIPULATIONS

3

4

5          IT IS HEREBY STIPULATED AND AGREED

6      by and between the attorneys for the

7      respective parties herein, that filing and

8      sealing be and the same are hereby waived.

9

10

11          IT IS FURTHER STIPULATED AND AGREED

12      that all objections, except as to the form of

13      the question, shall be reserved to the time

14      of the trial.

15

16          IT IS FURTHER STIPULATED AND AGREED

17      that the within deposition may be sworn to

18      and signed before any officer authorized to

19      administer an oath, with the same force and

20      effect as if signed and sworn to before the

21      Court.

22

23

24

25

4

1

2      M E L I N A    S O L N I C K I, called as a

3      witness, having been first duly sworn by a

4      Notary Public of the State of New York, was

5      examined and testified as follows:

6      EXAMINATION BY

7      MR. BOSTANY:

8          Q.    Please state your name for the

9      record.

10         A.    Melina Solnicki.

11         Q.    Where do you reside?

12         A.    1789 Jose Hernandez, Buenos

13     Aires, Argentina.

14         Q.    We are here pursuant to order of

15     Judge Freeman enforcing a December 13, 2007

16     subpoena of Charlotte B, LLC.  Are you a

17     representative of Charlotte B, LLC?

18         A.    I am one of their main members,

19     yes.

20         Q.    Who are the other members?

21         A.    Jessica Solnicki and Jonathan

22     Solnicki.

23         Q.    Do any of you have titles?

24         A.    The three of us are the owners.

25     I don't recall each title.

5

                              SOLNICKI

1

2          Q.     Is there an agreement that sets

3    forth your titles?  Is there any type of

4    written document that sets forth your

5    titles?

6          A.     Not that I know of.

7          Q.     I have here a bunch of documents

8    that I just saw yesterday when I got back

9    from court, although they came in late the

10   night before.  So because they were ordered

11   to be produced a week before the deposition

12   during a February 7th conference call with

13   the judge and then that order was reiterated

14   during a February 21st conference call with

15   the judge making the deadline pursuant to

16   order February 29th, I may need some leeway.

17   Just having to digest these as we go

18   through.  I am looking at a document marked

19   number three.  Can you tell me what that is,

20   Charlotte-three?

21              MR. GRAND:  Objection to

22        foundation.  But you can answer the

23        question if you understand.

24        A.     Number three, this?

25              MR. GRAND:  He is saying number

6

1                         SOLNICKI

2          three.  I think he is referring to the

3          number of this document.

4          A.     This document --

5              MR. GRAND:  He just asked if you

6          know what that document is.

7          A.     I guess our purchases orders

8     from one of our retailers.

9          Q.     Who prepared that document?

10         A.     Our office.

11         Q.     How do you know that?

12         A.     Because I see here it says --

13             MR. BOSTANY:  For the record,

14         the witness was pointing to the Bates

15         stamp number presumably affixed by her

16         attorney and said, because it says

17         Charlotte here.

18         A.     So, then I don't know.

19             MR. GRAND:  Off the record.

20             MR. BOSTANY:  No, I don't want

21         to go off the record.  This is a very

22         sensitive area.

23             MR. GRAND:  It is?  Identifying

24         the Bates stamp number.

25             MR. BOSTANY:  I can do that on

7

SOLNICKI

1

2          the record.

3          Q.    I think you just heard me say,

4    Miss Solnicki, what the Bates stamp number

5    was at the bottom.  That was presumably

6    affixed by your attorney, these words

7    confidential.

8          A.    I didn't know.

9          Q.    I know you didn't know.  That's

10   why I am repeating it.  Because Mr. Grand

11   correctly points out it isn't something that

12   is worth repeating.

13              These words confidential

14   Charlotte and the number that comes to the

15   next of them, that comes to the right of

16   them?

17         A.    Yes.

18         Q.    Were not put on these documents

19   by you, were they?                        ʻ

20         A.    I don't think so.

21         Q.    Now, looking back at Charlotte

22   number three and, again, I am referring to

23   three because of this numerical number

24   that's been affixed to by someone else.

25              Do you have any way of telling

8

1                        SOLNICKI

2      who prepared this document or what it is

3      aside from the Bates stamp number?

4          A.    No, I don't know.

5          Q.    What about for document number

6      four, do you have any way of telling what

7      that is?

8          A.    It is a purchase order.

9          Q.    Do you know who prepared it, or

10     anything else about it, or where it came

11     from?

12              MR. GRAND:  Objection.  You can

13          answer.

14         A.    I guess showing that we

15     represent this.

16         Q.    Now, let me just give you a

17     couple of guidelines.  The testimony that

18     you are giving is under oath and it is

19     supposed to be based upon your own personal

20     knowledge.  So --

21         A.    But I work more on the creative

22     side.

23         Q.    Wait, Miss Solnicki.  I am not

24     at all correcting you or trying to criticize

25     you.  This is not at all a criticism.  These

9

                    SOLNICKI

1

2   are instructions.  We are at the outset of

3   the deposition.  I am trying to give you

4   guidelines because you have never had a

5   deposition of you before, have you?

6        A.    No.

7        Q.    So this is why it is more of an

8   outline of instructions rather than a

9   criticism at all.  When you are asked a

10  question, you answer based upon your own

11  personal knowledge.  If you're not sure, you

12  should say that.  It is perfectly acceptable

13  to say you're not sure.  If you have -- if

14  you want to guess, we can allow that, but we

15  want to know that you are guessing first.

16  So you can say, would you like me to guess,

17  or would you like me to tell you what I

18  think it is, although I really don't know

19  what it is.  That kind of thing would

20  protect you, I think, from testifying to

21  something that you are really not sure about

22  by clarifying the basis of your knowledge.

23            Also, if the basis of your

24  knowledge comes from someone else, from a

25  conversation with someone else, you can say

```
 1                      SOLNICKI
 2   that, also.  You should say that.  You
 3   should say, oh, I know the answer to that
 4   because I asked, because so and so told me
 5   and then --
 6               Have you reviewed any documents
 7   before coming here today?
 8       A.    No, not really.
 9       Q.    Did you speak to anybody --
10       A.    I saw them just briefly but I
11   didn't really review them.
12       Q.    You saw a bunch of documents?
13       A.    Yes, but I didn't look
14   specifically to.
15       Q.    Where did they come from, who
16   showed you that?
17       A.    They come from our office in
18   Buenos Aires, Fed Exed to the United States.
19   I didn't carry them myself.
20       Q.    Do you know who prepared them in
21   Buenos Aires?
22       A.    The office.  I don't know
23   exactly which person.
24       Q.    The Charlotte Solnicki office?
25       A.    Um-hum.
```

11

```
                      SOLNICKI

 1

 2             MR. GRAND:  Objection.

 3       Q.    Who is in charge of that office?

 4       A.    All of us are.

 5       Q.    When you say all of us, you mean

 6   you, Jonathan, and Jessica?

 7       A.    Yes.

 8       Q.    Anyone else?

 9       A.    No.

10       Q.    Do Jonathan and Jessica reside

11   in the United States?

12             MR. GRAND:  Objection.  You can

13       answer that question if you know.

14       A.    No.

15       Q.    Now, another thing I forgot to

16   tell you, I notice that a lot of your

17   answers you are nodding your head and

18   shaking your head and after a few moments go

19   by, when people are staring at you, you give

20   a verbal answer.  It is necessary that you

21   give a verbal answer even though I perfectly

22   understand when you shake your head back and

23   forth it means no and when you shake your

24   head up and down it means yes.  I understand

25   you perfectly.  The problem is that because
```

12

1                      SOLNICKI

2    Mr. Grand's partners, my client, Mr. Grand's

3    other clients, possibly the judge may want

4    to read what you have said here today and we

5    have a court reporter that is doing an

6    excellent job typing what you are saying.

7    The only way that can happen is if you --

8         A.    Speak.

9         Q.    Speak.  Exactly.

10        A.    Okay.

11        Q.    I will show you a document that

12   has been marked as number five.  Do you know

13   what this document is?

14        A.    I guess it is an invoice.

15        Q.    Is it from Charlotte Solnicki?

16              MR. GRAND:  Objection.

17        A.    I don't know.

18        Q.    It says on the upper left-hand

19   corner the word Solnicki-Baregman, B-A-R-E

20   G-M-A-N, do you know who those people are?

21        A.    Solnicki, it is my last name.

22   Baregman is a fantasy name.

23        Q.    It's who?

24        A.    Fantasy name, it doesn't exist.

25        Q.    It is not a person?

13

                              SOLNICKI

1

2       A.    No, it is not.  It is something

3    we just created.  Doesn't exist.

4       Q.    Now, when you say the word

5    Solnicki at the top is your last name, does

6    that mean that name is referring to you, or

7    your sister, or your brother?

8       A.    It is all of our last name, but

9    not referring to any of us.  Charlotte -- I

10   mean, we decided to put our last name there,

11   but it is not us.  I mean it is not

12   specifically me, or my sister, or my

13   brother.  It is just our last name.

14       Q.    Who decided to put these two

15   names on this piece of paper?

16              MR. GRAND:  Objection.  You

17         don't have to answer that question.

18         John, the questions about Charlotte

19         B's business are not within the scope

20         of today's deposition.  As you know,

21         this was an issue that was raised

22         during the conference call with Judge

23         Freeman and she limited this

24         deposition to information about the

25         sales from Charlotte B, LLC to the

14

1                    SOLNICKI

2        retailer defendants in this case, and

3        she limited the documents to be

4        produced pursuant to the subpoena to

5        those sales information which you are

6        reading from.

7            MR. BOSTANY:  Why don't we do

8        this, since the judge's order is

9        clear, it is written.  It says limited

10       to the claims or defenses in the case

11       and you produced a document, showing

12       the sale to Intermix, which is a

13       defendant in the case, and contains

14       information on it that I am asking the

15       witness about, why don't we do this.

16       Instead of arguing about this, we will

17       set this aside, since I absolutely

18       think this is a subject of which Judge

19       Freeman permitted us to answer and you

20       don't.  So we will leave this

21       question, I am going to ask the court

22       reporter to mark it for a ruling,

23       because I imagine there will be

24       others.  Rather than disturb Judge

25       Freeman over and over again, we can

15

```
1                    SOLNICKI

2       call her maybe one or two times and

3       say look, judge, Mr. Grand and I have

4       a disagreement.  This is the question

5       I would like to ask and Judge Freeman

6       will rule on all the questions that

7       you object to.

8            MR. GRAND:  That's fair.  I want

9       to be clear my objection is not to

10      questions regarding the sales

11      information and other information that

12      is on the document.  My objection is

13      to your question about the corporate

14      information regarding Charlotte B, and

15      that's a question you asked.

16           MR. BOSTANY:  Sir, the question

17      that you directed the witness not to

18      answer is not unclear.  The record is

19      not unclear and it is not unclear that

20      Judge Freeman will rule on whether or

21      not the witness has to answer that

22      question.

23      Q.    Moving on to document number

24      seven, let me ask you this:

25                You see at the top of this
```

16

```
                       SOLNICKI
 1
 2   document, it says vendor Charlotte Showroom
 3   Seven, do you see that?
 4        A.    Yes.
 5        Q.    What does that mean?
 6             MR. GRAND:  Objection to
 7        foundation.  You haven't asked the
 8        witness if she even knows what this
 9        is, or if she has seen it before.  So
10        I think you should establish that
11        before you ask questions about what is
12        on the document.
13             Do you want to repeat the
14        question?
15             MR. BOSTANY:  Do you need the
16        question repeated?
17             MR. GRAND:  I do.
18        A.    Do I have to answer, it says
19   vendor Charlotte and Showroom Seven.  It is
20   the showroom that represent us.
21        Q.    When you say represent us, you
22   mean you, your brother, and your sister?
23        A.    Yes, our brand.
24        Q.    Are there any other showrooms
25   that represent the three of you?
```

17

```
                        SOLNICKI
 1
 2       A.     No.
 3       Q.     Do you, your brother, and your
 4   sister have a bank account?
 5            MR. GRAND:  Objection.  Are you
 6       asking if they personally have a bank
 7       account, or asking if the company that
 8       they operate under has a bank account,
 9       because clearly her bank accounts are
10       not relevant to this case.
11            MR. BOSTANY:  Well, I don't know
12       if she operates the business out of
13       her personal banking account.
14            MR. GRAND:  So ask that question
15       first.
16            MR. BOSTANY:  Let's see.  She
17       seems like she is contemplating the
18       answer.  She has made no indication
19       that she has any difficultly with the
20       question.
21            MR. GRAND:  It is an
22       objectionable question.  It is not a
23       matter of whether she has difficultly
24       about it.  The Question is
25       objectionable.  It is not a proper
```

                    SOLNICKI

1

2       question.

3           MR. BOSTANY:  Are you directing

4       her not to answer?

5           MR. GRAND:  I am directing her

6       not to answer because it is not

7       clear --

8           MR. BOSTANY:  Okay, clear.  Mark

9       that --

10          MR GRAND:  I don't know whether

11      you are asking about the personal bank

12      account or corporate account.

13          MR. BOSTANY:  I understand that

14      the attorney --

15          MR. GRAND:  If you are asking

16      about -- excuse me, I am not finished.

17      If you are asking about her personal

18      bank account, it is objectionable.

19      I'm directing her not to answer.  If

20      you are asking about a company that

21      she is a member of, Charlotte B, which

22      she is the deponent here, then I

23      can -- then you should clarify that

24      and I have no problem with the witness

25      answering that question.  Actually, I

19

```
1                    SOLNICKI

2        will take that back.  I do have an

3        objection to that question.  It is

4        entirely -- it is just beyond the

5        scope of today's deposition.

6        Q.    The monies -- did you receive --

7    did you receive any monies --

8             MR. GRAND:  Objection.

9        Q.    -- for the sale of the goods to

10   Intermix?

11            MR. GRAND:  Objection.  Again,

12       it is not a clear question.  When you

13       say you, are you referring to the

14       witness personally or are you

15       referring to an entity that is the

16       subject of this deposition?

17            John, I am asking you to clarify

18       the record.  She's not going to answer

19       the question because I'm directing her

20       not to answer.

21            MR. BOSTANY:  Mark that for a

22       ruling.

23       Q.   Did Jonathan Solnicki receive

24   any monies from the sale of goods to

25   Intermix?
```

20

```
 1                    SOLNICKI

 2              MR. GRAND:  Objection.

 3              MR. BOSTANY:  Are you directing

 4         her not to answer?

 5              MR. GRAND:  No, if you have any

 6         idea if Jonathan Solnicki individually

 7         received the money, you can answer.

 8         Q.    Okay.  Just another instruction,

 9    Miss Solnicki, because I notice that when

10    Mr. Grand objects, there is silence.  I

11    think and then -- you know, you are required

12    to answer every question.  If he directs you

13    not to answer, I suggest that you follow his

14    direction.  But if he simply says objection,

15    you are required to answer the question.

16         A.    Okay.

17              MR. BOSTANY:  Please, read back

18         the question.

19              (Whereupon, the aforementioned

20         question was read back by the Court

21         Reporter.)

22         A.    I don't know.

23         Q.    Did Jessica Solnicki receive any

24    monies from the sale of goods to Intermix?

25              MR. GRAND:  Objection.
```

21

```
1                        SOLNICKI
2         A.    I don't know.
3         Q.    Who would know that?  Well, let
4    me ask you this:  Who would know if Jonathan
5    Solnicki received the money?
6         A.    I would ask him.
7              MR. GRAND:  Objection to the
8         form of the question.  You can answer
9         if you know.
10        A.    I would ask Jonathan Solnicki
11   would know.
12        Q.    Would that answer be the same
13   with respect to sales of Charlotte B goods
14   to -- sorry, would that answer be the same
15   with respect to Charlotte -- the Charlotte
16   goods that are contained in these documents
17   that were sold to all of the retailers in
18   this case, Saks Fifth Avenue, Lisa Kline,
19   Wink, Lewis Tierney and Jonathan Singer?
20             MR. GRAND:  Objection to the
21        question.  I am not even sure what the
22        question was.  But it is impossibly
23        vague.
24        Q.    Do you understand the question,
25   Miss Solnicki?
```

22

```
 1                    SOLNICKI

 2           MR. GRAND:  And compound.

 3      A.    It is confusing.

 4           MR. GRAND:  Can I have that

 5      question read back, please.

 6      Q.    I will repeat it.  Would your

 7  answer be the same, Miss Solnicki, that you

 8  don't know if Jonathan Solnicki received

 9  monies from the sales of goods, the goods

10  that are contained in these documents that

11  you produced?

12      A.    I don't handle the business side

13  of it.  So I don't know.

14      Q.    Who does handle the business

15  side of it?

16      A.    Jonathan.

17      Q.    You don't know if Jonathan

18  Solnicki has a personal bank account, a

19  business account, or where the money goes

20  from the sale of these goods?

21           MR. GRAND:  Objection.

22      Q.    Is that your testimony?

23           MR. GRAND:  I am directing you

24      not to answer that question.  Move on,

25      John.
```

23

SOLNICKI

1

2    MR. BOSTANY:  I would like to,

3    at this point, exclude the witness

4    because we are about to call the

5    judge, and I want to have a legal

6    issue decided.  If you wait outside,

7    Miss Solnicki.

8    MR. GRAND:  Before you call the

9    judge, I want to walk her outside.

10    MR. BOSTANY:  No, you can't take

11    her outside.

12    MR. GRAND:  Sure, there is no

13    question pending.

14    MR. BOSTANY:  There is a

15    question pending.  You directed the

16    witness not to answer, and I want her

17    to answer the question.

18    MR. GRAND:  You want her to

19    leave the room.

20    MR. BOSTANY:  Not you,

21    Mr. Grand.

22    MR. GRAND:  I understand that.

23    I can escort my witness.

24    MR. BOSTANY:  Wait here.  Wait

25    here.  Let's see what the judge says

24

```
 1              SOLNICKI

 2      and see if you can have a private

 3      conversation.

 4            MR. GRAND:  I'm not having a

 5      private conversation.  I'm just going

 6      to walk her out.

 7            MR. BOSTANY:  Let's see what the

 8      judge says.

 9            Miss Solnicki, please stay.

10            MR. GRAND:  You just directed

11      her to leave the room.

12            MR. BOSTANY:  Now I want her to

13      stay.  I want her to stay.  I want you

14      and the witness to stay.

15            Let the record reflect I asked

16      Mr. Grand to stay here while Miss

17      Solnicki left.  Mr. Grand got up and

18      was walking out with the witness.  So

19      now he wouldn't wait for the judge to

20      rule.  I just called the court.  I got

21      the judge's voice mail.  There is a

22      pending question.  There is a pending

23      question.  The rules are that the

24      witness is not allowed to speak to her

25      attorney during a pending question,
```

1                    SOLNICKI

2      and Judge Freeman may very well direct

3      this witness to answer the question

4      and if Mr. Grand will not let the

5      witness leave unless he takes her

6      outside and speaks to her also, then

7      we have no choice but to let the

8      witness stay.  We have no choice.

9            I think the rules require you,

10     Mr. Grand, to allow the witness to

11     leave without you going with her.  But

12     if you refuse to do that, let's wait

13     until we speak to the judge and see

14     what she decides.

15           MR. GRAND:  Do you have another

16     question or you going to call the

17     judge back?

18           MR. BOSTANY:  This is a critical

19     point because we need to get some

20     guidance to the judge as to whether,

21     in addition to violating her order to

22     produce the documents by

23     February 29th, you also violated her

24     order by producing a witness that

25     knows nothing, and you are also

26

1                    SOLNICKI

2    violating the rules of civil procedure

3    by directing this witness not to

4    answer critical questions.  So we need

5    to get rulings from the judge on a

6    whole host of things.

7         MR. GRAND:  I am happy to call

8    the judge on all of these issues.

9    Because I don't believe that Miss

10   Solnicki's presence here as a member

11   of Charlotte B in any way violates any

12   order of a judge or any rules of civil

13   procedure.  But we are sitting here

14   waiting, John.  I am not sure.  We can

15   go off the record.

16        MR. BOSTANY:  Off the record.

17        (Whereupon, an off-the-record

18   discussion was held.)

19        MR. BOSTANY:  Let the record

20   reflect that the witness is speaking

21   on the phone now, and I don't think

22   that is proper during a pending

23   question.

24        Miss Solnicki, why don't you

25   wait in here.

27

1                    SOLNICKI

2        Q.    Who were you speaking to on the

3   phone?

4              MR. GRAND:  Objection.  John,

5         you asked her to leave the room.  She

6         can make a personal call if she is out

7         of the room.

8              MR. BOSTANY:  I disagree.  Stop,

9         relax, Mr. Grand.  Relax.  You don't

10        have to get animated and get upset

11        with me.  My view, obviously, is

12        different than your view.  That when

13        the witness has a pending question to

14        her, she not only shouldn't be

15        speaking to you but she shouldn't be

16        making phone calls, and I think I have

17        the right to know who she was speaking

18        to on the phone because you have

19        directed her not to answer.  So let's

20        just add that.  You don't have to get

21        angry.  I won't ask her again.  You

22        directed her not to answer.  I am

23        civilized.  I will just add that to

24        the list of issues that we will have

25        Judge Freeman rule upon.  That's all.

28

1                     SOLNICKI

2           We are waiting to speak to the judge.

3               Off the record.

4               (Whereupon, an off-the-record

5           discussion was held.)

6           Q.    Miss Solnicki, where do you

7    currently reside?

8           A.    Buenos Aires, Argentina.

9           Q.    Do you have an apartment in New

10   York City?

11          A.    No.

12          Q.    When did you give up your

13   apartment in New York City?

14               MR. GRAND:  Objection.  Don't

15          answer it.

16          Q.    You at one time had an apartment

17   in New York City; is that not true?

18               MR. GRAND:  Objection.  You

19          don't have to answer the question.

20          Q.    Are you a United States citizen?

21               MR. GRAND:  Objection.  You

22          don't have to answer the question.

23          Q.    Have you met anybody from any of

24   the defendants in this case, and I will show

25   you a caption?

1                          SOLNICKI

2         A.    I see companies there, company

3    names, and I see my brother's name.

4         Q.    Okay.  So aside from meeting

5    your brother, have you met any other

6    individuals from any of the other company

7    names that you see there?

8         A.    But I see company names.  I

9    don't see names.

10              MR. BOSTANY:  Can you read back

11         the question to the witness.

12              Just pay attention to the

13         question.

14              (Whereupon, the aforementioned

15         question was read back by the Court

16         Reporter.)

17         A.    I see company names.  So they

18   all say Inc., Inc.  The only one I don't see

19   with Inc. is Jonathan Solnicki.

20         Q.    Right.  So do you understand the

21   question?  I'm asking you if you met any

22   persons that are connected with any of those

23   companies?

24         A.    Yes.

25         Q.    Who, what are their names?

30

                              SOLNICKI

1

2      A.    Lisa Kline.  Some of those

3   companies I know the people, but I don't

4   recall their exact names.

5      Q.    Okay.  So the only one you know

6   the name of is Lisa Kline?

7      A.    Yes.

8      Q.    Do you know the first names from

9   any --

10          MR. GRAND:  Objection.

11      Q.    -- from any of the people that

12   you met with?

13          MR. GRAND:  Objection.  You

14      don't have to answer that.

15          MR. BOSTANY:  Add that to the

16      list of questions that we will ask

17      Judge Freeman for a ruling on.

18      Q.    What are the names of the

19   companies, Miss Solnicki, that you met

20   people from, that you can't remember their

21   names?

22          MR. GRAND:  Objection.  You

23      don't have to answer that question.

24      It is beyond the scope of today's

25      deposition.

31

```
                      SOLNICKI
1
2          MR. BOSTANY:  Mark that for a
3      ruling.
4              Again, we are talking about the
5      companies.  Just for the record sake,
6      I know the witness and Mr. Grand
7      understand we are talking about the
8      companies that are in the caption that
9      the witness and Mr. Grand are both
10     looking at.
11         Q.    Miss Solnicki, you said you were
12     involved in the design of the company -- I
13     am sorry, strike that.
14             You said you were involved in
15     the design end.  What did you mean by that?
16         MR. GRAND:  Objection.  You
17     don't have to answer that question.
18         MR. BOSTANY:  Mark that for a
19     ruling.
20             Okay, at this point, we can't go
21     forward without speaking to Judge
22     Freeman.  So we will take a 30-minute
23     break because we have been waiting
24     around for a few minutes, and we will
25     resume.
```

32

1                    SOLNICKI

2            (Whereupon, an off-the-record

3       discussion was held.)

4            MR. GRAND:  Just to clarify

5       while we were off the record,

6       Mr. Bostany indicated that after a

7       ruling from the judge on the questions

8       that he has asked, he is not able to

9       go forward today and ask other

10      questions and that he has no more

11      questions today for the witness.

12           MR. BOSTANY:  That's not true,

13      Mr. Grand --

14           MR. GRAND:  Let me finish.

15           MR. BOSTANY:  Wait.  I have more

16      questions.  The first part of your

17      statement is correct, that I can't ask

18      them in the current disposition, which

19      is you directing the witness not to

20      answer.

21           And, therefore, since we tried

22      to reach the judge a few times and all

23      I got was voice mail and you pointed

24      out that it is possible the judge

25      isn't in today, I think that we should

33

SOLNICKI

1

2      take 30 minutes off the record and

3      make additional efforts to reach the

4      judge, since there are pending

5      questions that I don't think it is

6      appropriate to have looming while the

7      witness leaves or speaks to you

8      privately, I think it deserves a

9      30-minute period off the record.

10     Without us using that 30 minutes, Mr.

11     Grand, to argue on and off the record

12     about whether or not we should be

13     waiting the 30 minutes.

14          MR. GRAND:  What I was saying

15     before I was interrupted was that I

16     have not -- first of all, I have not

17     prevented Mr. Bostany from asking any

18     questions.  He is free to ask any

19     questions that he wants.  I have never

20     interrupted or stopped him from asking

21     any question.  So for Mr. Bostany to

22     say that I prevented him from asking

23     questions by directing the witness not

24     to answer is just not true.  I

25     directed the witness not to answer

34

                          SOLNICKI

1

2      where I believe, justifiably, that

3      Mr. Bostany's questions goes beyond

4      the scope of today's deposition.

5           Having said that, it is improper

6      to make the witness wait around for

7      30 minutes.  If Mr. Bostany has no

8      more questions and if he doesn't reach

9      the judge.

10          So while we are happy to spend

11     whatever time it takes to try to reach

12     the judge, I don't think a 30-minute

13     break to do nothing, but to wait for a

14     call back makes much sense.  So off

15     the record, we will try to resolve the

16     issue.  But on the record, I just want

17     to clarify that Mr. Bostany said to me

18     that if we do not get in touch with

19     the judge, that he has no more

20     questions that he is going to ask of

21     this witness today.

22          MR. BOSTANY:  Mr. Grand, what I

23     said is on the record.  Okay.  Don't

24     try to wiggle your way into relieving

25     yourself from complying with the

35

SOLNICKI

1

2      court's order.  Let's try to reach the

3      judge.  If we can't, I do have more

4      questions, and I will ask them if and

5      when we reach Judge Freeman to rule

6      upon your belief that you can prevent

7      most of the questions that I have

8      asked so far from being answered.  And

9      we can do this all day, Mr. Grand.  We

10     can have the court reporter sit here

11     for the next hour and you and I can

12     argue back and forth.  Judge Freeman

13     is not going to read this.  She'll

14     rule when we reach her.  So I will be

15     happy to make Feldman court reporting

16     rich and argue here with you for the

17     next hour or two hours, whatever you

18     want to do.  But your statements are

19     completely incorrect.  I do have more

20     questions for the witness.  You've

21     objected to almost every question I

22     have asked.  Most -- I would say most

23     of the questions you have directed the

24     witness not to answer, they have all

25     been relating to the claims of the

36

SOLNICKI

1

2    case.

3        In fact, I have been talking

4    about the very parties that are in the

5    caption and purposely, purposely,

6    Mr. Grand, pointing to the caption

7    while I ask the question, so that you

8    would be fully educated that the

9    question is related to the case.

10   Because you were staring at the

11   caption of the case when I was talking

12   about the names of the parties, in the

13   caption of the case, when I was asking

14   the witness questions about them,

15   before you directed the witness not to

16   answer them.

17       So no, I don't think the judge

18   is going to agree with you that the

19   questions went beyond the claims and

20   defenses of the case.  And I do think

21   that the judge is going to say that

22   the witness should have answered them,

23   and I do think the judge is going to

24   say that you should not have directed

25   the witness not to answer them.  I

37

SOLNICKI

1     think all of that is going to happen.

2     Including, I think the judge is going

3     say that it was inappropriate for you

4     to attempt to have a private

5     conversation with Miss Solnicki while

6     questions were pending that you

7     directed her not answer.  I also don't

8     think it is unreasonable to give Judge

9     Freeman 30 minutes.  She is probably

10    on the bench.  She was trying a case

11    this week.  So I disagree with

12    everything you have said.  And I don't

13    know why you want to have our

14    disagreements repeated on the record.

15    It is sufficient that the

16    disagreements are on the record once,

17    because they are recorded.  But again,

18    I can't stop you from repeating your

19    viewpoint, if it serves your purpose.

20    But then when you repeat your

21    viewpoint, I have to repeat my

22    disagreement with your viewpoint.

23         MR. GRAND:  Are you finished?

24         MR. BOSTANY:  Yes, if you would

38

SOLNICKI

1
2     like to, again, repeat something, go
3     ahead and I will repeat.  As I said,
4     this can go on.  We have spent now
5     12 minutes out of the 30 minutes that
6     you adamantly objected to waiting for
7     Judge Freeman.  You adamantly objected
8     to 30 minutes, and now we have spent
9     12 minutes of those 30 minutes on
10    nonsense arguing about something that
11    was already logged in the record.  So
12    we spent 12 minutes of the 30 minutes
13    repeating ourselves.
14          MR. GRAND:  John, I haven't said
15    a word.  You have been talking the
16    whole time.  Are you finished?
17          MR. BOSTANY:  Go ahead.
18          MR. GRAND:  I don't have
19    anything else to add.
20          MR. BOSTANY:  All right.
21          (Whereupon, an off-the-record
22    discussion was held.)
23    Q.    Miss Solnicki, I just left the
24    room along with Mr. Paltrowitz,
25    unfortunately, for a total of five minutes

39

                          SOLNICKI

1

2   and we came in and you were conferring with

3   your attorney; is that correct?

4            MR. GRAND:  Objection.  Don't

5       answer the question.  John, do you

6       have a question pending?  Do you have

7       a question to ask the witness?  You

8       came back --

9       A.    You said you would take a break.

10  That's what I understand, and a break has

11  nothing to do with this.

12           MR. BOSTANY:  I maintain my view

13      that if we are going try to preserve

14      the integrity of this deposition and

15      wait now, I proposed to be an

16      additional 15 minutes because we have

17      waited 15 minutes for Judge Freeman to

18      rule, that I don't think it is

19      appropriate for Mr. Grand to be

20      conferring with his client.  I

21      don't -- I think Mr. Grand, that your

22      attempt to obstruct this deposition by

23      repeatedly trying to have private

24      conversations with your client while

25      questions are pending is abominable.

40

                              SOLNICKI

1

2       Your attempt to go outside with the

3       witness and after I told you four

4       times to please not do that, you were

5       continuing to do that.

6            THE WITNESS:  He tried to escort

7       me.

8            MR. BOSTANY:  Excuse me.  And

9       now your actually conferring with the

10      witness is not right.  Look, if you

11      have to do it, if we adjourn today and

12      you find yourself tonight and

13      tomorrow, while we are waiting for the

14      deposition to be rescheduled,

15      compelled to go over these questions

16      with your client I can't stop you from

17      doing that.  I can't.  I can only tell

18      you that it is not right.  Let me show

19      you --

20           MR. GRAND:  Excuse me.

21           THE WITNESS:  You said we would

22      take a break.

23           MR. GRAND:  John, for the

24      record, I disagree that there is a

25      pending question.  There has been lots

41

SOLNICKI

1
2  of questions that have been asked,

3  lots of questions that have been

4  objected to, and lots of questions

5  that the witness has been directed not

6  to answer.  And many questions that

7  the witness has answered.  I disagree

8  with you entirely that there is a

9  pending question, and I disagree of

10  your view entirely that you will elect

11  to take a 30-minute break and during

12  that 30-minute break you shared the

13  view that there is a pending question,

14  so I am not entitled to talk my

15  witness about what has happened so far

16  or what is likely to happen when we

17  resume the deposition.  I disagree

18  with that view entirely.

19          THE WITNESS:  And you are also

20  talking with your partner.

21          MR. BOSTANY:  I was talking to

22  Mr. Paltrowitz?

23          THE WITNESS:  Yeah.

24          MR. BOSTANY:  You are right.

25          MR. GRAND:  John, do you have a

42

                        SOLNICKI

1

2      question?

3           MR. BOSTANY:  Yes.

4      Q.    Let me show you any -- do you

5  recognize any of these documents that you

6  produced to us, 1 through 339?

7           MR. GRAND:  Objection to the

8           form of the question.

9      Q.    Would you be able to tell me

10 about any of them?

11          MR. GRAND:  Are you asking her

12          to identify them?  What do you mean

13          tell you --- that is a very vague

14          question and I think it is

15          objectionable.  You want to ask her if

16          she has seen them before, you want to

17          ask her if she knows what they are,

18          where they came from.  Those are all

19          legitimate questions.

20          MR. BOSTANY:  Good, I adopt all

21          of those questions with respect to

22          these papers.  Please, Mr. Grand, you

23          don't have to repeat them.  I adopted

24          them.  She heard you.  You don't have

25          to counsel the client about them.  You

43

SOLNICKI

1

2      told me they were legitimate --

3           A.      They have been prepared in the

4      office in Argentina in Buenos Aires.

5           Q.      Which office?

6           A.      In Buenos Aires, in Argentina,

7      our main office.

8           Q.      Charlotte Solnicki's office?

9           A.      Charlotte B office, yeah

10     Charlotte Solnicki's office.

11          Q.      What do you mean Charlotte B,

12     yes, Charlotte Solnicki, what does that

13     mean?

14          A.      We are, I am here representing

15     Charlotte B, correct?

16          Q.      Well, I don't know.  I don't

17     know.

18          A.      Well, I do know.

19          Q.      Well, whose office did these

20     documents come from?  Are you saying they

21     must have come from Charlotte B's office

22     because you are here representing Charlotte

23     B; is that your answer?

24               MR. GRAND:  Objection.

25          Q.      Is there an office for Charlotte

44

```
 1                    SOLNICKI
 2    B in Buenos Aires, Argentina, Miss Solnicki?
 3         A.    There is a Charlotte Solnicki
 4    office in Buenos Aires in Argentina.
 5         Q.    Please read back -- wait.
 6              Other than telling me that these
 7    documents came from that office, is there
 8    any other question -- can you answer any of
 9    the other three questions that we have made
10    with regard to these documents?
11         A.    Maybe you can repeat them again.
12              MR. BOSTANY:  Sure.  Please
13         repeat Mr. Grand's questions that he
14         said.
15              MR. GRAND:  They weren't my
16         questions, just to be clear.  They
17         were suggestions to Mr. Bostany
18         because his question was unclear.  So
19         I gather from Mr. Bostany's adoption
20         of my suggestion, that Mr. Bostany
21         wants to ask the witness if she has
22         seen the documents before and if she
23         can identify them --
24              MR. BOSTANY:  Stop.  Mr. Grand,
25         stop.  The witness -- the court
```

45

SOLNICKI

1

2    reporter will repeat, she'll read back

3    what the questions were.  You don't

4    have to give your own now version of

5    what you think the questions are, and

6    educate the witness.  You don't have

7    to do that.  You don't have to coach

8    the witness.  The questions are being

9    read back.  Why are you speaking?  Why

10   are you speaking?  I understand you

11   objected to my saying they were your

12   questions.  I take that back.  They

13   are my questions.  Let them be read

14   back.  Stop trying to re-ask them.  If

15   they are not your questions, why are

16   you asking them?  They are my

17   questions, and I am asking the court

18   reporter to re-read them to the

19   witness as the witness requested.

20   That does not call for you to speak at

21   that point when the court reporter is

22   reading something back to the witness.

23          Please read back the questions.

24          (Whereupon, the aforementioned

25   question was read back by the Court·

46

1                    SOLNICKI

2        Reporter.)

3        A.    I have seem them before vaguely.

4   Like I said, I don't work in the business

5   side of it.  So, I mean, I have never

6   studied them.  I saw them vaguely, like I

7   have.

8        Q.    Anything further in response to

9   those three questions, Miss Solnicki?  Would

10  you like to have them read back then so that

11  your answer is complete?

12       A.    Okay.

13       MR. BOSTANY:  One more time,

14  please.

15       (Whereupon, the aforementioned

16  question was read back by the Court

17  Reporter.)

18       MR. GRAND:  I will object as

19  asked and answered.

20       MR. BOSTANY:  Okay.  So there

21  were two questions.  The court

22  reporter correctly pointed out that

23  Mr. Grand repeated the same one twice,

24  and I wasn't paying as careful

25  attention as I should have been.

47

                              SOLNICKI

1

2        A.      Okay.

3        Q.      So is there anything else you

4   want to add to the answer to those two

5   questions?

6        A.      No.

7        Q.      Can you identify any of these

8   documents?

9                MR. GRAND:   Objection.

10       A.      Identify?  I don't know, like

11  there is a lot of documents.

12       Q.      Right.  Can you identify --

13       A.      I said I have seem them vaguely,

14  identify as what?

15       Q.      Can you tell me the name of

16  them, what they are called, any of them,

17  there are 339 documents, you want to take

18  your time and go through them and if you

19  find one that you can tell me what it is

20  called or testify as to any --

21       A.      I can read what they are.  I

22  don't recall what -- I have never studied

23  them so I don't specifically know what they

24  are about.  If you would tell me to read

25  them, I can read them to you.

48

                              SOLNICKI

1

2    Q.    Yes.

3    A.    But I don't --

4    Q.    Yes, read them and if you can

5    find one that you can explain to me, pull it

6    out and we will ask to you do that.  If you

7    can't explain any of them based on your own

8    personal knowledge, then tell me that also?

9         MR. GRAND:  Objection.  You are

10        asking the witness to read 339 pages

11        of documents right now?  Is that what

12        you are asking her to do?

13        MR. BOSTANY:  It shouldn't take

14        long because about 200 of them are a

15        form that I showed her, Mr. Grand, and

16        she looked at it like it came from

17        Mars.  So she can exclude probably

18        those, and the other 80 or 90 are

19        another form that she had no knowledge

20        whatsoever about, so it is possible,

21        very possible, she can quickly go

22        through this and tell me that, no, she

23        can't tell me anything about any of

24        them.  But, it is also possible that

25        she'll find a couple real quick, that

49

SOLNICKI

2  she can tell me based on her own

3  personal knowledge.  So I can,

4  Mr. Grand, pull each one out, call it

5  out by number and ask her that same

6  question.  But I think it would be

7  quicker if she just went through it.

8  Yes, that is what I am asking her to

9  do.  So please, do that.

10      MR. GRAND:  I'm going to object

11  to that.  Is a completely improper

12  question, and I object to

13  characterizations of the witness'

14  answers, from reference to Mars and

15  whatever else that you said was

16  completely inappropriate.  It is not

17  the witness' job to go through the

18  entire list of documents.

19      MR. BOSTANY:  Okay.  You're not

20  letting her do that?

21      MR. GRAND:  No.  If you have a

22  question about a document that you

23  would like to ask her, feel free to

24  ask her that question.  If you believe

25  that there are 80 documents that are

50

SOLNICKI

the same and she answers one way about

one of those documents and you feel

her answers will be the same for 80 of

those documents, I would suggest that

you don't need to go through that

exercise because she has given you an

answer that you are apparently not

satisfied with.  But the answer is

what it is.

          MR. BOSTANY:  I don't know if I

am satisfied or not satisfied.  Maybe

Judge Freeman won't be satisfied.

Maybe she'll tell you, what do you

mean.  You produced a witness, you

produced documents, and the witness

that knew nothing about the documents.

Okay.  So let's do this:

     Q.    How about documents 10 through

16, can you, based on your own personal

knowledge, Miss Solnicki, tell me what they

are, anything about them?

          MR. GRAND:  Objection to the

form of the question.  But you can

answer.  Tell him what you know about

51

                              SOLNICKI

1

2      them.

3             MR. BOSTANY:  I object to

4      Mr. Grand asking his own question.

5      Q.    Miss Solnicki, I want my

6  question answered, not Mr. Grand's question.

7             MR. BOSTANY:  I object to

8      Mr. Grand continuing to ask a question

9      after I have asked a question.  You

10     will have an opportunity, Mr. Grand,

11     to cross-examine your own witness, but

12     it is improper for you to ask the

13     witness a question that I have already

14     asked, but caging it slightly

15     differently because it might have a

16     different meaning.

17            Since it is my deposition, and I

18     am asking the questions, you can

19     object and direct the witness not to

20     answer, as you are very good at, but

21     you can't re-ask the question.

22            MR. GRAND:  I didn't.

23            MR. BOSTANY:  Yes, you did.  The

24     record will reflect that you did.

25            MR. GRAND:  It might have been

52

SOLNICKI

1

2      the first legitimate question you

3      asked today, and I allowed the witness

4      to answer.

5             MR. BOSTANY:  No, you did more

6      than that.  You asked yourself in a

7      different way.

8      A.     There are documents that, from

9  what I read, is billed to ship to

10  Merchantwise.

11      Q.     So you have no personal

12  knowledge out of any of these documents that

13  I just showed you?

14      A.     Like I said, I don't work on the

15  business side of --

16      Q.     I understand.  I am doing this,

17  Miss Solnicki, not because I am trying to

18  give you a hard time, but because there are

19  a whole bunch of documents here.  And I

20  wanted to -- you saw what I wanted to do.

21  What I wanted to do was handle things a

22  little differently, but Mr. Grand is not

23  letting me do that.

24             So I will now show you documents

25  16 through 35, and ask you if you can tell

53

                    SOLNICKI

1

2   me anything about these documents from your

3   own personal knowledge?

4        MR. BOSTANY:  Let the record

5        reflect that Mr. Grand is looking

6        through the documents.

7        A.    They are the same type of

8   documents.

9        Q.    Okay.  So your answer is the

10  same, you don't have any personal knowledge

11  with respect to any of them, ma'am?

12        I will show you documents 36 to

13  62.  So the answer is the same with respect

14  to these?

15        A.    Yes.

16        Q.    I will show you documents 36

17  through 62.  Is the answer the same with

18  respect to those, Miss Solnicki?

19        A.    This is all business end of it,

20  like paperwork.

21        Q.    So your answer is the same?

22        A.    Yeah.

23        Q.    63 to 100, is your answer the

24  same with respect to these, Miss Solnicki?

25        MR. BOSTANY:  Mr. Grand, I would

54

SOLNICKI

1

2    appreciate if the witness looked

3    through them, and you can look on

4    rather than the other way around.

5         MR. GRAND:  I am glad to know

6    what you appreciate, but I am entitled

7    to look at the documents along with my

8    client.

9         MR. BOSTANY:  Yes, you are but I

10   don't think it is appropriate for you

11   to be the one that is evaluating --

12        MR. GRAND:  John, I am not

13   evaluating anything.  I haven't said a

14   word and if you -- ordinarily would

15   have given me my own set of the

16   documents, I wouldn't have to share

17   the set with the witness.  But you

18   only have one set for the witness.

19   This is the only set of documents I

20   can look at.

21        MR. BOSTANY:  You gave me this

22   set yesterday.  You were ordered to

23   give this set to me on February 29th.

24   Maybe if you had given it to me

25   February 29th, and said John, I gave

55

SOLNICKI

1

2    you a set, can you make an extra set

3    of what I gave you and I will pay you

4    $0.10 a page, I would have been happy

5    to do that.  I don't know why you

6    would want me to do the photocopying

7    of your documents.

8        MR. GRAND:  John, these are

9    documents that you are asking the

10   witness about during a deposition.

11   The ordinary procedure is for you to

12   hand a copy of a document for the

13   witness and also have a copy of the

14   documents for counsel.  If Mr. Carino

15   (phonetic) was in the room, you would

16   have a set for him too.  You make

17   several sets of the documents that you

18   intend to use at deposition.  You

19   elected not to do that.  I understand

20   that the documents were produced two

21   days ago.  I certainly can think you

22   can make a copy set of the documents

23   within two days, if you wanted to

24   share a set with me.  But you didn't

25   do that.  So the only set I can use,

56

1                    SOLNICKI

2         to look at, to check to see what the

3         documents are that you are asking the

4         witness about are the ones that you

5         are handing to the witness, okay.

6             MR. BOSTANY:  I got them when I

7         came back from court yesterday.  They

8         were given to us late the night

9         before.  Possibly Judge Freeman had in

10        mind when she ordered you to give them

11        to me on February 29th, possibly she

12        had in mind that she was going to give

13        us some time to do what you just

14        suggested.  Possibly she didn't want

15        you to dump them on us the day before.

16        Possibly so you wouldn't be able to

17        object and reprimand me for not having

18        made you a copy in the few hours that

19        I had to do so.

20            MR. GRAND:  John, do you have a

21        question?

22            MR. BOSTANY:  And possibly also,

23        so that I would have had a chance to

24        review them, 339 documents that you

25        won't allow the witness to review, but

57

                              SOLNICKI

1

2        you didn't let me review them either.

3        Q.     The documents 101 to 144, is

4    your answer the same; is your answer the

5    same with respect to the batch that we just

6    showed you?

7        A.     Yes.

8        Q.     Documents 101 to 144; is your

9    answer the same?

10       A.     Yes.

11       Q.     With respect to documents 145 to

12   244, is your answer the same with respect to

13   these, Miss Solnicki?

14       A.     I am revising them for the first

15   time.  Like I don't know.  It is not my --

16       Q.     Take your time.

17       A.     They are all the same documents.

18       Q.     Is your answer the same with

19   respect to those?

20       A.     Can you repeat the question?

21       Q.     Is your answer the same with

22   respect to those documents?

23       A.     Yes, but I want to know, again,

24   the question.

25              MR. BOSTANY:  Read back the

58

```
 1                    SOLNICKI

 2      question and answer.

 3           (Whereupon, the aforementioned

 4      question and answer was read back by

 5      the Court Reporter.)

 6      Q.    Is your answer the same?

 7      A.    Yes.

 8      Q.    245 through 339?

 9      A.    I know who these people are and

10  I know we did business with them.  But I

11  don't know specifically these documents.  I

12  am now revising them for the first time.

13      Q.    Reviewing?

14      A.    Reviewing I mean.

15           MR. BOSTANY:  Mark Plaintiff's

16      Exhibit 1.

17           (Whereupon, the aforementioned

18      one-page document was marked as

19      Plaintiff's Exhibit 1 for

20      identification as of this date by the

21      Reporter.)

22      Q.    Is your answer the same with

23  respect to those?

24      A.    Yes.

25           THE COURT REPORTER:  Off the
```

1                          SOLNICKI

2         record.

3               (Whereupon, an off-the-record

4         discussion was held.)

5         Q.    Miss Solnicki, this is a

6    document that we have marked as Plaintiff's

7    Exhibit 1.  Is that from the Charlotte

8    Solnicki website?

9         A.    I am not sure.

10        Q.    What is Showroom Seven, you see

11   it says Showroom Seven on there?

12        A.    It is a showroom that represents

13   various designers.

14        Q.    Okay.  Does it have anything to

15   do with Charlotte Solnicki?

16        A.    It used to represent us.

17        Q.    It doesn't anymore?

18              MR. GRAND:  Objection to the

19        question.  I am directing the witness

20        not to answer.

21        Q.    Do you know anybody from

22   Showroom Seven, any individual's names?

23        A.    Yes.

24        Q.    Who?

25        A.    This person that's there.

60

1                          SOLNICKI

2          Q.     I can't see.

3          A.     Portia Summerville.

4          Q.     What about Michelle Liebman

5    (phonetic)?

6          A.     She works in Los Angeles, not in

7    New York.

8          Q.     She works for Showroom Seven in

9    Los Angeles; is that a yes or a no?

10         A.     Yes, in LA, not New York.

11         Q.     What about Karen Erickson?

12         A.     Yes, I know her.

13         Q.     Where does she work?

14         A.     In Showroom Seven.

15         Q.     How do you know her?

16         A.     Because she is the designer of

17   Erickson Beamon, that's another brand or

18   company, and she is part of Showroom Seven,

19   also.

20         Q.     Anybody else, do you know anyone

21   else's name from Showroom Seven?

22         A.     Well, there are a lot of people

23   that work there.

24         Q.     Can you give me five of the

25   names of the people that work there?

61

                              SOLNICKI

 1

 2             MR. GRAND:  Objection.

 3      Q.    If you know.

 4      A.    I know first names.  I don't

 5   know most of the last names.

 6      Q.    Do you know any of the last

 7   names?

 8      A.    I used to.  Most of the people I

 9   used to know very well left, so I don't

10   know.

11      Q.    What were their names?

12      A.    But they no longer work there.

13      Q.    I understand.

14      A.    Rachel Spring.  I don't know the

15   last names of the other people.  I know

16   first names.

17      Q.    What are the first names that

18   you know?

19      A.    Veronica, Beth, Jeremy, Jerome.

20      Q.    What about John Mark Black?

21      A.    He is part of Showroom Seven.

22      Q.    They sell Charlotte Solnicki

23   merchandise?

24      A.    Not now.

25      Q.    They used to?

62

SOLNICKI

1

2      A.      They used to.

3              MR. GRAND:  Objection to the

4      form of the question.

5      Q.      Why did they stop, do you know?

6              MR. GRAND:  Objection.  I direct

7      you not to answer the question.

8      Q.      Do you know that we sued

9      Showroom Seven in this case, Miss Solnicki?

10      A.      I have heard about it.

11      Q.      From whom?

12      A.      From my attorneys.

13      Q.      Did you speak to either Karen

14      Erickson or John Mark Black about it?

15              MR. GRAND:  Objection.  I direct

16      you not to answer.

17      Q.      Have you had any conversations

18      with anyone from Showroom Seven concerning

19      the accusation that Jonathan Solnicki or

20      Showroom Seven copied the -- I will withdraw

21      that.

22              Have you had any conversations,

23      Miss Solnicki, with anyone about the claims

24      in this case, that the defendants in this

25      case infringed on the Charlotte trademark?

63

                              SOLNICKI

1

2          MR. GRAND:  Objection.  I direct

3      the witness not to answer.

4          MR. BOSTANY:  Mark that for a

5      ruling.

6      Q.    Are you aware, Miss Solnicki,

7   that GMA accessories, the plaintiffs in this

8   case, has a registration to Charlotte in the

9   United States patent and trademark office?

10         MR. GRAND:  Objection.  I direct

11      the witness not to answer.

12     Q.    Do you and your brother,

13   Jonathan, own Charlotte Solnicki?

14         MR. GRAND:  Objection to the

15      form of the question.  And I direct

16      the witness not to answer.  For the

17      additional reason that the question

18      has been asked and answered.

19         MR. BOSTANY:  Mark all these

20      directions not to answer for rulings.

21     Q.    Do you and your brother Jonathan

22   have a partnership where you use the name

23   Charlotte Solnicki as the name of your

24   partnership?

25     A.    Not that I know of.

64

1                      SOLNICKI

2          Q.    Who would know the answer to

3     that question?

4          A.    Jonathan, probably.

5          Q.    Did you all start to sell

6     clothing and decide to call it Charlotte

7     Solnicki brand?

8              MR. GRAND:  Objection.  I direct

9          the witness not to answer.

10         Q.    Who decided to start calling

11    your clothing Charlotte Solnicki brand?

12             MR. GRAND:  Objection.  I direct

13         the witness not to answer.  Let me

14         state for the record as I have said

15         before, Charlotte B is not a party to

16         this case.  Charlotte B is a non-party

17         witness to this case.  The only issues

18         that Charlotte B is called here to

19         speak upon are the -- the only issues

20         relevant to Charlotte B at this point

21         in the case are the sales to the

22         retailer defendants and the profits

23         earned by those retailer defendants.

24         So this entire line of questioning --

25             MR. BOSTANY:  Let's exclude

1                    SOLNICKI

2    witness.  Let's exclude the witness.

3         MR. GRAND:  Can you let me

4    finish my observation --

5         MR. BOSTANY:  No, I think you

6    should exclude the witness while are

7    making your argument.  Because you are

8    obviously coaching the witness because

9    you have already stated your theories

10   over and over again on the record.

11        So the only possible purpose,

12   sir, for you to repeat your theories

13   would be to coach the witness.  If you

14   want to do that, let's exclude the

15   witness.  Let's exclude the witness.

16   If your purpose is something

17   legitimate and not to coach the

18   witness, then you should have no

19   objection to the witness waiting

20   outside while you effectuate your

21   purpose.

22        MR. GRAND:  That's fine.  You

23   can step out of the room.

24        (Whereupon, the witness has left

25   the room.)

66

1          SOLNICKI

2          MR. BOSTANY:  Now, again,

3     Mr. Grand, I think that your theories

4     have been repeated over and over.

5     But, again, if you are interested in

6     adding to the Feldman company's

7     revenue for the year, go right ahead

8     and repeat your theory.

9          MR. GRAND:  I am not interesting

10    in adding to your revenues but I wish

11    you well in having a successful year.

12         My point is that this entire

13    line of questioning is improper and

14    well beyond the scope of today's

15    deposition.  My purpose was not to

16    coach the witness in any way.  My

17    purpose was to advise you, that that's

18    what our position is today.  That's

19    what we believe the judge ruled, and

20    so to guide you in asking your

21    questions of this witness accordingly,

22    so that we can try not to spend more

23    time here today, on issues that are

24    irrelevant and improper, than

25    necessary.  That was my purpose.

67

                            SOLNICKI

1

2       MR. BOSTANY:  A little tip, if

3  you want to save time, say objection,

4  beyond the scope.  No need for a

5  speech.  No need to have this

6  interruption.  I will call the witness

7  back in.

8          Another advantage -- Miss

9  Solnicki is missing.  Another

10  advantage for you to not interrupt the

11  deposition like this would be so that

12  we wouldn't lose the witness like we

13  just did.

14       MR. GRAND:  I didn't ask the

15  witness to step out of the room, you

16  did.

17       MR. BOSTANY:  Because you didn't

18  simply object and say beyond the

19  scope.  You wanted to make a speech

20  and in the future, I will also ask the

21  witness, with your permission, to

22  please leave when you go into your

23  speeches, because it has been my

24  experience, having practiced in this

25  area, done depositions for almost

68

SOLNICKI

1

2    20 years, when lawyers make speeches

3    in front of clients that contain

4    information that is already in the

5    record, they do so to coach the

6    witness.  That's just been my

7    experience.  I am not saying that you

8    were 100 percent doing that.  But it

9    is a high percentage.

10        At this point we are going to

11    adjourn until we have a chance to get

12    rulings on our questions.  Since we

13    don't know where the witness went at

14    this point, and it is clear we are at

15    a point where our disagreement is not

16    allowing -- continuing to not allow

17    numerous questions to be asked and

18    answered.

19        (Whereupon, an off-the-record

20    discussion was held.)

21    Q.    Miss Solnicki, when was the last

22    time that you spoke to either Karen Erickson

23    or Portia Summerville?

24        MR. GRAND:  Objection.  I direct

25    the witness not to answer.  It is

69

SOLNICKI

2    beyond the scope.

3        MR. BOSTANY:  What we will do

4    is, it is 12:00.  We can take a lunch

5    break and come back at 1:00 and maybe

6    we will have reached Judge Freeman by

7    then or we can just -- how does that

8    sound?

9        MR. GRAND:  It doesn't sound

10   like a good idea at all.  We have been

11   calling the judge -- why don't we go

12   off the record?

13       MR. BOSTANY:  No, I want this on

14   the record.

15       MR. GRAND:  Fine, we can keep it

16   on the record.  We tried the judge

17   since 10:00 this morning and have not

18   been able to reach her.  I don't think

19   it is prudent or reasonable to take a

20   lunch break and wait for a ruling from

21   the judge.  We will be happy to abide

22   by whatever ruling the judge makes.

23   If Mr. Bostany wants to make an

24   application to have the witness be

25   compelled to answer the questions she

70

SOLNICKI

1
2  has been directed not to answer.  But
3  there is no reason to hang around and
4  wait for an hour for an answer that
5  might not come today.
6       So my suggestion is that if
7  Mr. Bostany has no further questions
8  and wants to wait for a ruling from
9  the court, that we adjourn for the day
10  and Mr. Bostany is then free to make
11  an application for the court for the
12  answers that he feels he is entitled
13  to answers.
14       MR. BOSTANY:  Well, I can't
15  force you to come back at 1:00.  I
16  will either see you or I won't.
17       Nice meeting you.
18       (Whereupon, an off-the-record
19  discussion was held.)
20       MR. BOSTANY:  Mr. Grand just
21  indicated that we shouldn't bother
22  waiting around for him because he is
23  definitely not going to be back at
24  1:00.
25       MR. GRAND:  That's what not what

71

                           SOLNICKI

1    I said.  I didn't tell him not to

2    bother.  What I had said was, is that

3    we have tried to reach the judge for

4    hours now.  It is apparent that the

5    judge is not in chambers and cannot

6    attend to our matters at the moment.

7    And Mr. Bostany has indicated he has

8    no further questions.

9            So because he has no further

10   questions of the witness and is merely

11   waiting for rulings from the judge on

12   the questions he asked, and since the

13   judge is not there, it makes no sense

14   to keep this witness here any longer

15   today to wait for these rulings.

16           So I do not think that it makes

17   sense to continue the deposition and

18   take a lunch break and come back for

19   an answer that we don't have.

20           MR. BOSTANY:  I am sorry for the

21   confusion.  I have further questions,

22   and I would like to ask them at 1:00.

23   Again, when I said I can't force you

24   to stay, what I meant was, is that the

                          SOLNICKI

1

2      court reporter and I are going to be

3      here at 1:00.  I can't physically

4      force you to be here at 1:00.  All I

5      can say is that at 1:00, we are going

6      to note your non-appearance.

7          MR. GRAND:  John, you just told

8      me you had no further questions.  Now

9      you are telling me you do have more

10     questions.  Please tell me what -- are

11     you going to be asking questions at

12     1:00?

13         MR. BOSTANY:  Everything I said

14     was on the record.

15         MR. GRAND:  And you contradicted

16     yourself.  So I am asking you to

17     clarify the record.

18         MR. BOSTANY:  Let's each order

19     the transcript.

20         MR. GRAND:  I don't want to

21     order the transcript.  I want to know

22     if you have questions of the witness

23     while she is here.  If you have

24     questions, we don't need to wait an

25     hour to take a lunch break.  We are

73

                    SOLNICKI

1

2     fine.  We'd rather plow right through

3     and get done with the testimony and

4     cover all the areas that you have and

5     be done for the day.

6           MR. BOSTANY:  I think what I

7     said was clear and it wasn't what you

8     say I said.  Thank you.

9           (Whereupon, a recess was taken.)

10          MR. BOSTANY:  The time is 1:00.

11    Mr. Paltrowitz and I are here.

12    Mr. Grand and the witness are not.  So

13    we have no choice but to adjourn.

14          (Whereupon, at 1:00 p.m. the

15    Examination of this Witness was

16    adjourned.)

17

18

19          _____

                      MELINA SOLNICKI
20

      Subscribed and sworn to before me
21    this _____ day of _____, 2008.

22    _____

              NOTARY PUBLIC
23

24

25

74

E X H I B I T S

PLAINTIFF'S EXHIBITS:


EXHIBIT EXHIBIT                          PAGE

NUMBER   DESCRIPTION


1        One page document              58



I N D E X


EXAMINATION BY                          PAGE


MR. BOSTANY                                4



QUESTIONS MARKED FOR RULINGS

        PAGE        LINE

        13          14

        17           3

        19           6

        19          23


(Continued on the following page.)

75

1

2          QUESTIONS MARKED FOR RULINGS

3

4              22        17

5              27         2

6              28        12

7              28        16

8              28        20

9              30         8

10             31        11

11             59        17

12             62         5

13             62        13

14             62        17

15             63        12

16             64         5

17             68        21

18

19

20

21

22

23

24

25

76

```
1
2                C E R T I F I C A T E
3
4    STATE OF NEW YORK        )
                              :  SS.:
5    COUNTY OF NASSAU         )
6
7         I, REBECCA SCHAUMLOFFEL, a Notary
8    Public for and within the State of New York,
9    do hereby certify:
10        That the witness whose examination
11   is hereinbefore set forth was duly sworn and
12   that such examination is a true record of the
13   testimony given by that witness.
14        I further certify that I am not
15   related to any of the parties to this action
16   by blood or by marriage and that I am in no
17   way interested in the outcome of this matter.
18        IN WITNESS WHEREOF, I have hereunto
19   set my hand this 11th day of March, 2008.
20
21
22
23   _____
24        REBECCA SCHAUMLOFFEL
25
```