UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
GMA ACCESSORIES, INC.

                Plaintiff                       Civil Action No.: 07CV3219 (LTS) (DCF)
   - against -

EMINENT, INC., SAKS FIFTH AVENUE, INC.,
INTERMIX, INC., WINK NYC, INC.,
LISA KLINE, INC., GIRLSHOP, INC.,
SHOWROOM SEVEN STUDIOS, INC.,
JONATHAN SINGER, LEWIS TIERNEY and
JONATHAN SOLNICKI,

                Defendants.
----------------------------------------------------------X

## REPLY DECLARATION IN SUPPORT OF
## PLAINTIFF'S MOTION TO COMPEL

     Ronald I. Paltrowitz, Esq., hereby declares, under penalty of perjury pursuant to 28 U.S.C. § 1746, as follows:

     1.    I am counsel to The Bostany Law Firm, attorneys for Plaintiff in this proceeding and respectively make this declaration based upon my review of the files maintained in the firm's offices as well as my personal participation in certain proceedings.

     2.    This Declaration is respectfully submitted in reply to the Declarations of Robert J. Grand, dated March 18, 2008 (the "Grand Declaration") and Melina Solnicki, dated March 18, 2008 (the "Solnicki Declaration"), and in further support of Plaintiff's application.

     3.    Based upon my review of the files and my presence at the deposition of Melina Solnicki on March 7, 2008, Declarant states as follows:

          a.    The Grand and Solnicki Declarations are merely the latest of many submissions made by the Dreier firm ("Dreier") in its global attempt to obstruct a

deposition of Charlotte B LLC ("Charlotte B) that was required both by *Subpoena* and the Orders of this Court (Copies of the *Subpoenas* and Court Order dated March 5, 2008 are attached as Exhibits "A" and "B", respectively.);

      b.    In October 2007, Dreier initially argued that the *Subpoena* was defective because it should not have been served on Charlotte B's registered agent in Delaware. When this argument failed to persuade the Court, Dreier quickly shifted its position to argue that the *Subpoena* violated the 100 mile rule because it called for the witness to be produced in New York City, which is more than 100 miles from the place of service in Dover, Delaware. The Court rejected the first argument but accepted the second. However, after reserving the *Subpoena* to provide for a deposition within the 100 mile radius (i.e., Philadelphia, PA), Dreier responded by asking that the deposition be held in New York City, the very location that Dreier objected to in its first application. It is respectfully submitted that this is a clear indication of Dreier's bad faith from the onset (See, February 11, 2008 e-mail from Dreier attached as Exhibit "C");

      c.    Following the service of the second *Subpoena*, Dreier again moved by letter dated December 31, 2008 to quash on various other technical grounds. As a result, neither a single document nor a designated witness was produced on January 4, 2008, the date stated in the *Subpoena*;

      d.    A telephone conference amongst the Court and counsel was held on February 7, 2008 to determine the Dreier's December 31st application to quash. On this occasion, the Court denied the motion to quash and directed that a designated witness testify about a specific subject matter, as designated by the Court, and that documents be produced one week before the deposition;

      e.    Pursuant to the directives set out by the Court on February 7, 2008, Dreier, set February 21, 2008 as the date for the Charlotte B deposition. (See, February 12, 2008 Dreier letter to Judge Freeman [emphasis added] attached as Exhibit "D".) Beginning one week prior to February 21 and continuing virtually everyday thereafter until a second telephone conference on February 21, 2008, Plaintiff's Counsel reminded Dreier that it was in continuing violation of the Court's February 7th directive by failing

to produce a single document. (See, February 20, 2008 Bostany letter to Judge Freedman attached as Exhibit "E");

   f. On February 21, 2008, after no witness had appeared and no documents had been received, the Court, in a second telephone conference amongst the Court and counsel, issued a second order directing that Dreier produce the documents required by the *Subpoena* by February 29, 2008, and a designated witness on March 7, 2008. (The Court's directives were memorialized in the March 5, 2008 written Order) February 29th came and went and still no documents were produced. Dreier now in its opposition to the instant motion shifts the blame by taking the preposterous position that Plaintiff's Counsel should not have taken the deposition on March 7th since the documents had not been produced until the evening of March 5 (See, March 5, 2008 letter from Dreier to Paltrowitz attached as Exhibit "F"). Of course, neither Charlotte B nor Dreier takes any responsibility for their blatant violations of the Court's Orders not to mention Dreier's failure to produce a designated witness with knowledge in violation of Rule 33(b)(c); and

   g. Contrary to Mr. Grand's ridiculous assertion in paragraph 18 of the Grand Declaration[1], it is respectfully submitted that the Transcript of the March 7th deposition of Melina Solnicki (hereinafter "Transcript" or "T") makes it abundantly clear that designated witness could not provide any information about the documents that had been produced except to say that she could read them to us (T-47, L21-25) and that she thinks the documents came from her office because the word "Charlotte" had been stamped on the bottom of the documents [as part of the Bates number] (T-6, L10-18 and T-7, L21 – T-8, L4). Furthermore, the witness repeatedly stated that she was on the design side of the business and that Jonathan Solnicki was the person who would know about the documents, sales [which the witness thought were made by Charlotte Solnicki and not Charlotte B (T-43, L8-25)] and other financial matters (T-8, L21-22; T-21, L3-25; T-22, L12-16; T-46, L4-7; T-52, L11-25; and T-53, L1-25).

---

[1] Mr. Grand's argument in paragraph 17 of the Grand Declaration regarding lack of particularity is equally disingenuous as this objection could have been raised at any of the three separate hearings on Dreier's motions to quash and, in any event, is made moot by the Court's specific designation of the subject matter.

4. Mr. Grand's next fallacious argument is that Jonathan Solnicki must be served with a separate *Subpoena*. First, Rule 30(b)(6) clearly places the burden on Dreier to designate and produce a witness with the requisite knowledge. Melina Solnicki clearly was not such a witness. Furthermore, Melina Solnicki specifically stated that Jonathan Solnicki is the person who has the requisite knowledge. Second, Jonathan Solnicki is a member of Charlotte B. (T-4, L20-25) As such, he is someone who can speak for, and bind, the limited liability company.

5. Finally, we come to Mr. Grand's and Ms. Solnicki's most blatant misrepresentations to the Court. Listed in the order in which they appear, these are:

  a. Mr. Grand and Ms Solnicki were most definitely not in Mr. Bostany's office at 1:00 p.m. In fact, while Mr. Grand states that he was in the Bostany office at "approximately 12:45" (Grand Declaration, ¶6), Ms Solnicki states that they did not even leave the restaurant where they were lunching until 12:45 (Solnicki Declaration, ¶5). Ms Solnicki then goes on to explain that she had lost her building pass thus requiring her to speak with the security desk to obtain another before walking to the elevators Solnicki Declaration, ¶5) Ms Solnicki did not even reach the security desk until 12:54 p.m. (See, Trump Building Security Request Information sheet attached as Exhibit "G" [emphasis added]). This proves that Mr. Grand's certification is false. The trip from the lobby to the 61st floor requires passing a security checkpoint, walking down a long corridor, and waiting for two separate elevators that make frequent passenger stops. Finally, at 1:00 p.m., I went to the reception area to see if the witness and counsel had returned and was not surprised to see that they had not as Mr. Grand had made it obvious before leaving that he had not intended to return. (T-69-73). Mr. Grand's proven misrepresentations to the Court in his mean spirited and malicious effort to harm another lawyer should not be taken lightly.

  b. Following Mr. Grand's and Ms Solnicki's departure from the Bostany office, a discussion was held with the court reporter concerning the need for her to stay until 1:00 p.m. Feeling certain that Mr. Grand and Ms Solnicki would not return, based upon Mr. Grand's statements, it was decided that she could leave. Furthermore, I

never stated that Mr. Bostany had no further questions. What I did say was that he would not have any further questions until the Court could issue rulings.

        c.    Finally, Mr. Grand's entire "sound bite" argument and his obvious lies about his time of arrival at 12:45, are nothing more than an unprofessional attempt to inject a red herring into the argument with hope that it will deflect the Court's attention from Mr. Grand's own misconduct in producing a witness with no knowledge, who was totally unprepared to answer any questions regarding sales or other financial matters, and then directing her not to answer those questions about which she may very well have had knowledge. Considering Mr. Grand's conduct during the morning session of the deposition, a continuation of the deposition at 1:00 p.m. would have been just as fruitless as it had been prior to 12:00 p.m. In fact, Mr. Grand specifically stated that it made no sense to continue absent rulings from the Court. (T-71, L10-20)

      6.    Based on the foregoing, it is respectfully submitted that the entire history of this *Subpoena* is littered with Dreier's attempts at obfuscation and delay and that Plaintiff's motion to compel should be granted and sanctions be awarded.

Dated: New York, New York
       March 19, 2008

Respectfully Submitted,

By: _____
    Ronald I. Paltrowitz (RP-2746)