UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
GMA ACCESSORIES, INC.

                Plaintiff                Civil Action No.: 07CV3219 (LTS) (DCF)

    - against -

EMINENT, INC., SAKS FIFTH AVENUE, INC.,
INTERMIX, INC., WINK NYC, INC.,
LISA KLINE, INC., GIRLSHOP, INC.,
SHOWROOM SEVEN STUDIOS, INC.,
JONATHAN SINGER, LEWIS TIERNEY and
JONATHAN SOLNICKI,

                Defendants.
------------------------------------------------------------X

**DECLARATION OF CRYSTAL S. A. SCOTT IN RESPONSE TO MOTION BY DREIER LLP TO WITHDRAW AS COUNSEL**

Crystal S. A. Scott, Esq., hereby declares, under penalty of perjury pursuant to 28 U.S.C. § 1746, as follows:

    1.    I am counsel to The Bostany Law Firm, attorneys for Plaintiff in this proceeding and respectively make this declaration based upon my review of the files maintained in the firm's offices.

    2.    This Declaration is respectfully submitted to clarify some of the misstatements made by Mr. Gursky in his Declaration seeking to withdraw as counsel based on his client's failure to pay fees. It is respectfully submitted that this issue warrants judicial examination pursuant to principles of equity and justice, i.e. where a law

firm runs up a bill on arguments without basis in law or fact, it cannot then seek judicial assistance for its client's refusal to pay the fees for those arguments.

3. First, the motion to intervene should never have been made because the argument that a company called Charlotte B LLC owns the CHARLOTTE SOLNICKI brand is a theory manufactured by the Dreier firm in a strategic effort to frustrate the judgment as to defendant Jonathan Solnicki.

(a) There is none of the typical support for this self-serving argument as would be expected, i.e. certificate of doing business, tax treatment of sales, bank records for the income for CHARLOTTE SOLNICKI sales, etc. <u>Indeed, by all indications, Charlotte B LLC is a shell company that never did any business and is as defunct today as it was when filed.</u>

(b) The CHARLOTTE SOLNICKI website makes no mention of the brand being owned by another company and lists a New York City phone number for the "Charlotte Solnicki Corporate Office USA." Copies of printouts from <u>www.charlottesolnicki.com</u> are respectfully attached as **Exhibit A**.

(c) There is no mention of Charlotte B LLC in numerous articles featuring CHARLOTTE SOLNICKI, all of which discuss ownership by the 3 siblings. Copies of a few articles are respectfully attached as **Exhibit B**.

(d) Communication to retailers comes from CHARLOTTE SOLNICKI and never mentions Charlotte B LLC. A copy of emails is attached as **Exhibit C**.

(e)     Jonathan Solnicki himself has held himself out as the "president" of Charlotte Solnicki, not Charlotte B, LLC.  A June 2007 letter from him addressed to various retailers is annexed as **Exhibit D**.

(f)     Contact for CHARLOTTESOLNICKI.COM is jsolnicki@hotmail.com. See **Exhibit E**.

4.      Second, Dreier repeatedly sought to prevent the deposition of Charlotte B LLC and quash the *Subpoenae* of Charlotte B LLC which was ultimately enforced during conferences on February 7 and February 21, and by written Order dated March 6.  Copies of the *Subpoenae* and March 6 Order are respectfully attached as **Exhibit F and Exhibit G**, respectively.  But the history of Dreier's recalcitrance spans 4 months:

(a)     In October 2007, Dreier initially argued that the *Subpoena* was defective because it should not have been served on Charlotte B LLC's registered agent in Delaware.  When this argument failed to persuade the Court, Dreier quickly shifted its position to argue that the *Subpoena* violated the 100 mile rule because it called for the witness to be produced in New York City, which is more than 100 miles from the place of service in Dover, Delaware.  All Dreier accomplished was further delay and cost because after the *Subpoena* was reserved to provide for a deposition within the 100 mile radius (i.e., Philadelphia, PA), Dreier responded by asking that the deposition be held in New York City, <u>the very location Dreier objected to in its first application</u>.  Respectfully attached is an email from Mr. Grand of February 11, 2008 as **Exhibit H**.  It is respectfully submitted that this is a clear indication of Dreier's bad faith from the outset.

(b)     Following service of the second *Subpoena*, Dreier again moved by letter

- 4 -

dated December 31, 2008 to quash on various other technical grounds. As a result, neither a single document nor a designated witness was produced on January 4, 2008, the date stated in the *Subpoena*.

At a telephone conference held on February 7, the court denied Dreier's December 31st motion to quash and directed that a designated witness testify about a specific subject matter, as designated by the Court, and that documents be produced one week before the deposition.

(c).   On March 7, when a witness was finally produced after a second Court Order, the Dreier firm, either knowingly produced a witness without knowledge or without informing the Court or counsel, forced GMA to conduct a largely fruitless deposition of the wrong witness, who repeatedly referred to Jonathan Solnicki as the individual with knowledge. A copy of the transcript is filed as document #140 on the docket.

(d)   Most significant are directions not to answer by the Dreier firm which is in blatant violation of Rule 30(b) (6) and the Court's Order. See pp 6 to 9 of Memorandum of Law In Support of Plaintiff's Motion to Compel dated March 17 annexed hereto as **Exhibit I**.

5. Accordingly, it is plain that the fees that Dreier is complaining were not paid by Charlotte B LLC are fees that should not have been charged to it in the first place.[1]

Dated: New York, New York
March 20, 2008

Respectfully Submitted,

By: _____
Crystal S. A. Scott (CS-5615)

---

[1] A major client of Dreier LLP's is SANEI Charlotte Ronson, who is an opponent of GMA's in a related case captioned *SANEI v. GMA* (07CV9578). The tactics employed here by Dreier functioned not to further any interests of Charlotte B LLC, but to harm GMA and escalate GMA's legal fees.