limited to matters relevant to any pending claim or defense asserted by any party currently named in this case."

As noted above, Counsel directed the Designated Witness not to no fewer than 18 questions. The following is a list of the questions and the reasons why they were within the scope of discovery as outlined by the Order:

    1.    11    Q. I will show you a document that
              12    has been marked as number five. Do you know
              13    what this document is?
              14    A. I guess it is an invoice.
              15    Q. Is it from Charlotte Solnicki?
              16    MR. GRAND: Objection.
              17    A. I don't know.
              18    Q. It says on the upper left-hand
              19    corner the word Solnicki-Baregman, B-A-R-E
              20    G-M-A-N, do you know who those people are?
              21    A. Solnicki, it is my last name.
              22    Baregman is a fantasy name. T-12

              14    Q. Who decided to put these two
              15    names on this piece of paper?
              16    MR. GRAND: Objection. You
              17    don't have to answer that question.
              18    John, the questions about Charlotte
              19    B's business are not within the scope
              20    of today's deposition. T-13

This question pertained specifically to the sales invoices produced by Charlotte B and is an attempt to determine who would have knowledge regarding these invoices, as the Designated Witness did not.

    2.    6.Q.    I will repeat it. Would your
              7    answer be the same, Miss Solnicki, that you
              8    don't know if Jonathan Solnicki received
              9    monies from the sales of goods, the goods
              10    that are contained in these documents that
              11    you produced?
              12    A. I don't handle the business side
              13    of it. So I don't know.
              14    Q. Who does handle the business
              15    side of it?
              16    A. Jonathan.

```
          17         Q.  You don't know if Jonathan
          18    Solnicki has a personal bank account, a
          19    business account, or where the money goes
          20    from the sale of these goods?
          21             MR. GRAND:  Objection.
          22         Q.  Is that your testimony?
          23             MR. GRAND:  I am directing you not to answer the questions. T-
22
```

Again, this question is an attempt to determine if Charlotte B received monies from sales to the retailer defendants in this action and, if so, who would know about such receipts.

```
3, 4, and 5.   6         Q.  Miss Solnicki, where do you
               7    currently reside?
               8         A.  Buenos Aires, Argentina.
               9         Q.  Do you have an apartment in New
              10    York City?
              11         A.  No.
              12         Q.  When did you give up your
              13    apartment in New York City?
              14             MR. GRAND:  Objection.  Don't
              15    answer it.
              16         Q.  You at one time had an apartment
              17    in New York City; is that not true?
              18             MR. GRAND:  Objection.  You
              19    don't have to answer the question.
              20         Q.  Are you a United States citizen?
              21             MR. GRAND:  Objection.  You
              22    don't have to answer the question. T-28
```

These questions were an attempt to determine the time period of the Designated Witnesses presence in New York as a foundation for questions regarding her contact with the retailer defendants, which, in turn, would serve as a foundation for questions regarding sales and profits.

```
6. and 7.      5         Q.  Okay.  So the only one you know
               6    the name of is Lisa Kline?
               7         A.  Yes.
               8         Q.  Do you know the first names from
               9    any --
              10             MR. GRAND:  Objection.
              11         Q.  -- from any of the people that
              12    you met with?
              13             MR. GRAND:  Objection.  You
```

```
          14       don't have to answer that.

          18       Q.  What are the names of the
          19   companies, Miss Solnicki, that you met
          20   people from, that you can't remember their
          21   names?
          22          MR. GRAND:  Objection.  You
          23   don't have to answer that question.
          24   It is beyond the scope of today's
          25   deposition. T-30
```

Again, these questions were an attempt to determine the Designated Witnesses relationships with the retailer defendants which would provide a foundation for questions regarding sales and profits.

```
8.        1       Q.  Miss Solnicki, you said you were
          12   involved in the design of the company -- I
          13   am sorry, strike that.
          14          You said you were involved in
          15   the design end.  What did you mean by that?
          16          MR. GRAND:  Objection.  You
          17   don't have to answer that question. T-31
```

This question was relevant in order to determine the Designated Witnesses areas of relevant knowledge, if any.

```
9. and 10. 12     A.  [Showroom 7] is a showroom that represents
           13   various designers.
           14     Q.  Okay.  Does it have anything to
           15   do with Charlotte Solnicki?
           16     A.  It used to represent us.
           17     Q.  It doesn't anymore?
           18          MR. GRAND:  Objection to the
           19   question.  I am directing the witness
           20   not to answer. T-59

           5      Q.  Why did they stop, do you know?
           6          MR. GRAND:  Objection.  I direct
           7   you not to answer the question. T-62
```

These questions clearly pertain to one of the retail defendants and the claims made in this matter by Plaintiff.

```
11., 12, and 13.     8      Q.  Do you know that we sued
```

- 8 -

```
9    Showroom Seven in this case, Miss Solnicki?
10     A.  I have heard about it.
11     Q.  From whom?
12     A.  From my attorneys.
13     Q.  Did you speak to either Karen
14   Erickson or John Mark Black about it?
15        MR. GRAND: Objection. I direct
16     you not to answer.

22        Have you had any conversations,
23   Miss Solnicki, with anyone about the claims
24   in this case, that the defendants in this
25   case infringed on the Charlotte trademark? T-62

2         MR. GRAND: Objection. I direct
3      the witness not to answer. T-63
```

These questions pertain specifically to the claims made in the litigation.

14., 15, 16 and 17
```
6    Q.  Are you aware, Miss Solnicki,
7   that GMA accessories, the plaintiffs in this
8   case, has a registration to Charlotte in the
9   United States patent and trademark office?
10        MR. GRAND: Objection. I direct
11     the witness not to answer.
12     Q.  Do you and your brother,
13   Jonathan, own Charlotte Solnicki?
14        MR. GRAND: Objection to the
15     form of the question. And I direct
16     the witness not to answer. T-63

5    Q.  Did you all start to sell
6   clothing and decide to call it Charlotte
7   Solnicki brand?
8        MR. GRAND: Objection. I direct
9     the witness not to answer.
10    Q.  Who decided to start calling
11   your clothing Charlotte Solnicki brand?
12        MR. GRAND: Objection. I direct
13     the witness not to answer. T-64
```

These questions pertain specifically to the claims made in the litigation.

18.
```
1    Q.  Miss Solnicki, when was the last
```