# EXHIBIT I

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
SANEI CHARLOTTE RONSON LLC,

              Plaintiff,

                                      Civil Action No.:  07CV9578 (CM)

    - against -

GMA ACCESSORIES, INC.,

              Defendant.
-----------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

### NATURE OF THE CASE

Sanei Charlotte Ronson, LLC (hereinafter "SANEI") is an applicant in the U.S.P.T.O. for the mark CHARLOTTE RONSON with respect to clothing, handbags and other goods.  GMA Accessories, Inc. has been the registered owner of the mark CHARLOTTE for many years also with respect to clothing, handbags and other goods.  GMA's CHARLOTTE mark has become incontestable with respect to the clothing and handbags and has been recognized as a strong mark with respect to clothing in a recent decision by Hon. Laura Taylor. Swain.  See *GMA v. BOP*, 507 F.Supp.2d 361 (S.D.N.Y. 2007) (the SOLNICKI case).

SANEI premises much of its complaint upon accusations of bad faith prosecution of the SOLNICKI case pending under docket number 07CV3219(LTS), yet SANEI did not mark this case as related.  Both GMA and SANEI have motions for summary judgment pending in the Trademark Trial and Appeal Board ("TTAB") where the parties are seeking a determination of the primary issue, i.e. does SANEI have the right to use CHARLOTTE RONSON.

## FACTS

For a summary of the facts and exhibits, the Court is respectfully referred to the accompanying declaration of Andrew T. Sweeney.

## POINT I

### SANEI has not set forth an actual and immediate threat of a lawsuit and therefore its first claim for Declaratory Judgment Should be Dismissed

Only where a plaintiff has been threatened with federal trademark infringement litigation and where there is a question as to the validity of the trademark registration, may a plaintiff file a federal lawsuit for declaratory judgment. *Moog Controls, Inc. v. Moog, Inc.,* 923 F.Supp. 427, 432 citing 4 J. Thomas McCarthy, McCarthy On Trademarks And Unfair Competition (3d. ed. 1995) Section 32.21(2) at 32-76. "The federal declaratory judgment is not a prize to the winner of a race to the courthouses". *Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 219 (2d Cir. 1978).

"The Second Circuit has held that the filing of an opposition in a trademark registration proceeding 'is not by itself a charge or warning of a future charge of infringement' and therefore does not, without more, create an actual controversy." *Progressive Apparel Group, Inc., v. Anheuser-Busch, Inc.,* 1996 WL 50277 (S.D.N.Y. 1996) (citing *Topp-Cola Co. v. Coca-Cola Co.,* 314 F.2d 124, 125-26 (2d Cir. 1963)).

Here the parties have been perfectly content to litigate in the TTAB where SANEI not too long ago filed a monstrous motion for summary judgment containing thousands of pages of exhibits which we were forced to oppose at great cost to GMA.

2

The SOLNICKI case cannot be viewed as a direct or indirect threat by GMA to SANEI. Indeed, CHARLOTTE SOLNICKI is an internationally known company whose use of the CHARLOTTE mark was widespread and highly publicized in Hollywood, on the internet and in the media. The fact that GMA will not grant permission for the defendants in the SOLNICKI case to sell CHARLOTTE RONSON goods cannot be viewed as a threat of imminent litigation upon SANEI.    *See Progressive Apparel Group, Inc., v. Anheuser-Busch, Inc., supra* (maintaining that there is confusion between two marks does not constitute immediate threat).

GMA should not be forced to duplicate its efforts in another proceeding where, as here, it has not placed SANEI in imminent jeopardy of being sued and the matter is fully briefed before the TTAB. This Court is afforded ample discretion in its decision of whether to exercise jurisdiction. *See e.g. Bausch & Lomb Inc. v. CIBA*, 39 F.Supp.2d 271, 274-75 (W.D.N.Y. 1999) (String Citing)("even if there is an actual controversy and thus jurisdiction, the exercise of that jurisdiction rests within the sound discretion of the district court").    Accordingly, it is respectfully requested that the Court decline to exercise declaratory jurisdiction here.

## POINT II

### "Trademark misuse" is not a cause of action and this claim should be dismissed

SANEI's second claim alleges "trademark misuse." However, courts that have addressed the issue have consistently held that "trademark misuse" is not a cognizable affirmative claim and should be dismissed. See e.g. *Ford Motor Co. v. Obsolete Ford Parts, Inc.*, 318 F.Supp.2d 516, 521 (E.D. Michigan 2004) ("the court declines to announce or create an independent cause of action for trademark misuse"); *Dunn Computer Corp. v. Loudcloud, Inc.*, 133 F.Supp.2d 823, 830 (E.D. Virginia 2001) ("plaintiff concedes that trademark misuse is only an affirmative defense, not an independent cause of action"); *Whitney Information Network, Inc. v. Gagnon,*

3

353 F.Supp.2d 1208 (M.D. Florida 2005) ("no authority in the Eleventh Circuit or elsewhere allowing trademark misuse as an independent unfair competition cause of action").

## POINT III

### The Third and Fourth Claims Should be Dismissed for Failing to Comply with virtually every aspect of Rule 9(b)

"When the complaint contains allegations of fraud, however, Fed.R.Civ.P. 9(b) requires that 'the circumstances constituting fraud ... be stated with particularity.' We have stated that 'the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Acito v. IMCERA Group, Inc.*, 47 F.3d 47 (2nd Cir. 1995). "Rule 9(b) is intended 'to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from 'improvident charges of wrongdoing,' and to protect a defendant against the institution of a strike suit". *Id. See also, O'Brien v. National Property Analysts Partners*, 936 F.2d 674 (2nd Cir. 1991) (Rule 9(b) is designed to "safeguard a defendant's reputation from 'improvident charges of wrongdoing,' and to protect a defendant against the institution of a strike suit").

In trademark cases, "Rule 9(b) requires that each allegedly fraudulent statement be identified with particularity, and that specific reference be made to the time, location, content and speaker of each statement. In addition, the party alleging fraud must specify in what respects each of the statements were false and misleading, and the factual basis for believing the defendant acted fraudulently and was responsible." *Great Lakes Mink Ass'n v. Furrari, Inc.*, 1987 WL 33592 (S.D.N.Y. 1987) (citing cases). See also *GMA Accessories, Inc. v. Idea Nuova, Inc.*, 157 F.Supp.2d 234, 243 (S.D.N.Y. 2000); *Kash 'N Gold, Ltd. v. Samhill Corp.*, 1990 WL

4

196089 (S.D.N.Y. 1990).

The conclusory allegations do not satisfy any of the requirements of Rule 9(b). SANEI refers to Charlotte Russe (who GMA had a brief dispute with which resulted in a co-existence agreement); Charlotte Tarantola (which does not hold a registration and which GMA has a proceeding against in the TTAB); Charlotte Corday (which defaulted in a TTAB proceeding brought by GMA); and Charlotte Ford (which registration was expired well before GMA's application though it was not officially cancelled until shortly thereafter).

However, SANEI does not (and cannot) allege that any of these parties had a "right" to the CHARLOTTE mark that was senior to GMA's and that GMA believe that this right was superior, both of which must be pled in order for plaintiff to properly allege that GMA committed fraud. See e.g. *King Size, Inc. v. Frank's King Size Clothes, Inc.*, 547 F.Supp. 1138 (S.D. Tex. 1982) (defendant must prove that trademark applicant itself believed that other's rights were superior and concealed those rights).

Accordingly both fraud claims should be dismissed.

## POINT IV

### The fraud claims would also fail because they do not allege injury

In addition, SANEI has failed to plead essential elements of their fraud claims – "causation and damages – at all, much less with particularity" which would itself be grounds for their dismissal. *GMA Accessories, Inc. v. Idea Nuova, Inc.*, 157 F.Supp.2d 234, 243 (S.D.N.Y. 2000). *See Kaye v. Grossman*, 202 F.3d 611, 614 (2nd Cir. 2000) (there must be a loss as a "direct , immediate and proximate result" of the alleged fraud). Here SANEI fails to allege how the fraud that it failed to plead caused injury to SANEI.

5

## POINT V

### Sanei's 2d, 3d and 4th claims would not be able to be brought in any event because they lack jurisdiction

"The court is without jurisdiction to hear a 15 U.S.C. Section 1119 claim when there is no other justiciable controversy between the parties involving the defendant's mark." *Thomas & Betts Corp.*, 48 F. Supp.2d 1088 (N.D. Ill. 1999). *See also Ditri v. Coldwell Banker Residential Affiliates, Inc.*, 954 F.2d 869, 874 (3d Cir. 1992) (Section 37 (15 U.S.C. 1119) is not intended "to provide a cancellation remedy in the absence of an underlying basis of jurisdiction.").

Judge Curtin from the Western District of New York had occasion to analyze a situation where a defendant had "neither filed nor threatened a federal lawsuit" based on a registered trademark but an action was nevertheless initiated against it for cancellation pursuant to 15 U.S.C. 1119. *Moog Controls, Inc. v. Moog, Inc.* 923 F.Supp. 427, 431 (W.D.N.Y. 1996). Even though the defendant in that case had a federally registered trademark which plaintiff sought to cancel pursuant to the statute, in dismissing for lack of subject matter jurisdiction, Judge Curtin noted,

> [T]he provisions of Section 1119 granting the Court authority to determine the right to registration and order cancellation assume a properly instituted and otherwise jurisdictionally supported action involving a registered trademark. Universal Sewing Machine Co. v. Standard Equipment Corp., 185 F.Supp. 257 (S.D.N.Y. 1960). In other words, when seeking cancellation offensively and relying solely upon that claim for federal jurisdiction would seem to be relegated to first exhausting his administrative remedies before resorting to the Courts. Such a situation, exemplified by the instant action, must be distinguished from the cases where there is present some independent basis of federal jurisdiction, and wherein the validity of a registered trademark is brought into issue, for example, by way of defense or counterclaim. Id. at 259.

*Moog Controls, Inc. v. Moog, Inc., supra.*

6

Here Sanei seeks to use 15 U.S.C. 1119 offensively in its second, third and fourth claims and as such they lack federal jurisdiction.

## POINT V

### SANEI has not set forth a claim for unfair competition

"The gravamen of a claim of unfair competition is a bad faith misappropriation of a commercial advantage belonging to another by infringement or dilution of trademark or trade name or by exploitation of proprietary information or trade secrets." *Frink America, Inc. v. Champion Road Machinery Limited,* 62 F.Supp.2d 679, 685 (N.D.N.Y. 1999). SANEI's sixth claim does not even allege that GMA infringed a trademark or trade name and therefore this claim should be dismissed.

## POINT VI

### The plaintiff's only remaining claim (fifth claim) lacks federal jurisdiction

The fifth claim is the only claim that is pled adequately in SANEI's complaint is one for relief under state law, i.e. tortious interference with prospective economic relations.[1] Inasmuch as diversity is lacking between the parties, this claim cannot survive.

Dismissal of pendant state claims pursuant to Fed.R.Civ.P. 12(b)(1) is proper where the claimant has no other grounds for federal jurisdiction. *United Mine Workers of America v. Gibbs,* 385 U.S. 715, 726, 86 S.Ct.. 1130, 16 L.Ed.2d 218 (1966); *In Re Merrill Lynch, Ltd. Partnerships Litigation,* 154 F.3d 56, 61 (2d Cir. 1998); *Keith v. Black Diamond Advisors, Inc.,* 48 F.Supp.2d 326, 335 (S.D.N.Y. 1999).

---

[1] This claim is patently frivolous because it wildly accuses GMA of suing retailers of CHARLOTTE SOLNICKI merchandise specifically in order to injure CHARLOTTE RONSON rather than to protect the CHARLOTTE mark.

7

## CONCLUSION

For the foregoing reasons, it is respectfully requested the first and fifth claims be dismissed for lack of jurisdiction; that the second, third, fourth and sixth claims be dismissed for failure to state a claim and lack of jurisdiction; and that the complaint herein be dismissed in its entirety.

Dated: New York, New York
November 19, 2007

Respectfully submitted,

THE BOSTANY LAW FIRM

By: _____
Andrew T. Sweeney (AS 0724)
Attorneys for Defendant
40 Wall Street, 61st Floor
New York, N.Y. 10005
(212) 530-4400

8

# EXHIBIT J

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
SANEI CHARLOTTE RONSON LLC,

             Plaintiff,

    - against -

GMA ACCESSORIES, INC.,

             Defendant.
------------------------------------------------------X

**DECLARATION IN SUPPORT
OF DEFENDANT'S MOTION TO
DISMISS**

Civil Action No.: 07CV9578 (CM)

ANDREW T. SWEENEY, hereby declares, under penalty of perjury pursuant to 28 U.S.C. § 1746, as follows:

1. I am an associate at The Bostany Law Firm, Defendant-Counterclaimant in this proceeding.

2. This declaration is submitted in support of defendant's motion to dismiss the complaint of the plaintiff.

3. There is presently an opposition proceeding taking place before the TTAB between the two parties with the defendant opposing the registration of Charlotte Ronson. Defendant recently filed a brief with the TTAB in opposition to the plaintiff's motion to suspend the TTAB proceedings. A copy is annexed as Exhibit A.

4. On November 29, 2006 GMA filed a motion to reconsider summary judgment in the TTAB based primarily on the fact that the TTAB was not comparing marks which adopted a registered mark in its entirety, i.e. Charlotte Ronson consumes

the mark CHARLOTTE. A copy of the motion to reargue is annexed as **Exhibit B**.

5. In conjunction with actively policing infringement of its CHARLOTTE mark, GMA commenced an action against sellers of "Charlotte Solnicki" goods. GMA Accessories, Inc. v. Eminent, Inc., et. al., Civil Action No.: 07cv3219 (LTS). See complaint annexed as **Exhibit C**.

6. Six of the defendants represented by the same firm representing SANEI, filed answers with identical boilerplate counterclaims. A representative copy of the counterclaims which contain the same "trademark misuse" and fraud claims that SANEI makes here, is annexed as **Exhibit D**. GMA filed a motion to dismiss these counterclaims on November 13, 2007. A copy of GMA's brief is respectfully annexed as **Exhibit E**.

7. A copy each of the pertinent portions of Sanei's complaint and civil cover sheet in this action are annexed as **Exhibits F and G** respectively.

8. In addition to filing 18 counterclaims, within days of each other, before different tribunals and judges, SANEI's law firm filed a motion to vacate a default judgment, a motion to intervene, a motion to suspend and the instant lawsuit.

For the reasons contained in the accompanying memorandum of law, we respectfully ask that the complaint be dismissed.

Dated: New York, New York
      November 19, 2007

Respectfully Submitted,

By

ANDREW T. SWEENEY (AS-0724)

# EXHIBIT K

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                 :

SANEI CHARLOTTE RONSON LLC,     :

           Plaintiff,           :

      -against-           :

GMA ACCESSORIES, INC.,         :

           Defendant.   :
------------------------------------------------------------x

Civil Action No.
07 CV 9578 (CM)

**PLAINTIFF'S REQUESTS TO ADMIT**

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, Plaintiff Sanei Charlotte Ronson LLC ("Ronson") hereby requests that defendant GMA Accessories, Inc. ("GMA" or "Defendant") admit or deny the following:

### DEFINITIONS

1.    "Russe" means Charlotte Russe Merchandising, Inc., its affiliates, agents, servants, employees, representatives, officers, directors, accountants, attorneys, persons or entities under its control or acting or purporting to act on its behalf.

2.    The terms "and" and "or" shall be construed both disjunctively and conjunctively as necessary to bring within the scope of the discovery requests and information or documents which might otherwise be construed to be outside its scope.

3.    "GMA's Charlotte Marks" means the registered trademarks and trademark applications referred to in paragraph 18 of the Complaint, as well as any registered or common law rights in the mark Charlotte in which GMA claims a right.

4.    The "GMA Registered Marks" means the registered trademarks referred to in paragraph 18 of the Complaint.

1

5.      The "GMA Applications" means the trademark applications referred to in paragraph 18 of the Complaint.

6.      "GMA Goods" means any merchandise bearing one or more of the GMA Charlotte Marks that originate from or on behalf of GMA and/or its affiliates.

7.      The "CHARLOTTE RUSSE Marks" mean the trademark registrations referred to in paragraph 31 of the Complaint, as well as any common law rights Charlotte Russe has in the CHARLOTTE RUSSE trademarks.

8.      "Russe Goods" means any merchandise bearing the CHARLOTTE RUSSE Marks that originate from or on behalf of Charlotte Russe, its predecessors and/or its affiliates.

## REQUESTS TO ADMIT

1.      On or about March 9, 2001, a cease-and-desist letter was sent from John Bostany ("Bostany"), on behalf of GMA, to Russe regarding CHARLOTTE'S ROOM (the "March 9 Letter").

2.      In the March 9 Letter, Bostany stated that GMA was the owner of the trademark CHARLOTTE®.

3.      In the March 9 Letter, GMA and/or its counsel demanded that Russe immediately withdraw its trademark applications for this mark and provide Bostany with confirmation that Russe had ceased and desisted using the name.

4.      In the March 9 Letter, GMA and/or its counsel claimed that Russe's failure to comply with the demands in the March 9 Letter would subject Russe to a lawsuit for an injunction and damages, including attorney's fees and statutory damages.

2

5.    On or about March 19, 2001, an attorney from Cooley Godward LLP ("Cooley") responded to Bostany on behalf of Russe (the "March 19 Letter").

6.    In the March 19 Letter, Cooley stated that it was responding to the March 9 Letter wherein Bostany claimed that Russe's use of its CHARLOTTE'S ROOM mark may create a likelihood of confusion with GMA's Mark.

7.    In the March 19 Letter, Cooley asserted that Russe had been using its CHARLOTTE RUSSE marks in connection with retail store services in the field of women's clothing and accessories since 1975, which was long before GMA's use of any CHARLOTTE-based mark.

8.    Russe has been using its CHARLOTTE RUSSE marks in connection with retail store services in the field of women's clothing and accessories since 1975, which was long before GMA's use of any CHARLOTTE-based mark.

9.    The March 19 Letter listed the four GMA CHARLOTTE Marks that were registered at that time, namely in classes 9, 18, 25 and 25, all with first use dates in November 1996.

10.    The March 19 Letter listed the five CHARLOTTE RUSSE Marks that were registered in classes 42, 18, 25 and 26.

11.    The CHARLOTTE RUSSE Mark and the CHARLOTTE RUSSE (Stylized) mark in Class 42, both have first use dates of September 4, 1975.

12.    The CHARLOTTE RUSSE Mark in Class 18 has a first use date of February 26, 1991.

13.    The CHARLOTTE RUSSE Mark in Class 25 has a first use date of February 26, 1991.

14.    The CHARLOTTE RUSSE Mark in Class 26 has a first use date of August 4, 1995.

15.    The March 19 Letter took the position that all five of the aforementioned CHARLOTTE RUSSE Marks were senior to GMA's use of CHARLOTTE.

16.    Russe's use of CHARLOTTE RUSSE is senior to GMA's use of CHARLOTTE.

17.    The March 19 Letter stated that "[w]hile your letter demands that Charlotte Russe immediately withdraw its trademark applications for CHARLOTTE'S ROOM, these applications are far more similar to our client's earlier registered CHARLOTTE RUSSE marks, than to your client's CHARLOTTE mark.  As such, we do not understand how your client can view CHARLOTTE'S ROOM as confusingly similar to CHARLOTTE, yet apparently see no confusion between the CHARLOTTE RUSSE and CHARLOTTE marks."

18.    The March 19 Letter pointed out that Russe's registrations for the CHARLOTTE RUSSE marks were based on use that commenced more than 20 years prior to when GMA started using its CHARLOTTE mark.

19.    In the March 19 Letter, Russe took the position that as the junior user, GMA had the duty to avoid adopting confusingly similar marks or interfering with Russe's continued development of its product line.

20.    In the March 19 Letter, Russe took the position that GMA knew about the CHARLOTTE RUSSE Marks prior to filing the applications for the GMA CHARLOTTE Marks.

4

21.    GMA knew about the CHARLOTTE RUSSE Marks prior to filing the applications for the GMA CHARLOTTE Marks.

22.    The GMA CHARLOTTE Marks are confusingly similar to the CHARLOTTE RUSSE Marks.

23.    The GMA CHARLOTTE Marks are not confusingly similar to the CHARLOTTE RUSSE Marks.

24.    In the March 19 Letter, Russe took the position that in light of Russe's senior rights in the CHARLOTTE RUSSE marks, GMA should agree to continue to peacefully coexist with Russe, as it has for several years.

25.    The March 19 Letter warned that if GMA should disagree and attempt to enforce its rights in the CHARLOTTE mark against Russe's use and registration of CHARLOTTE'S ROOM, Charlotte Russe intended to vigorously defend any such action and assert its prior rights in the CHARLOTTE RUSSE mark.

26.    In response to the March 19 Letter, Bostany replied on March 20, 2001 (the "March 20 Letter") and took the position that GMA disagreed with many of Russe's conditions as it was GMA's understanding that due to a period of non use Russe's mark would be deemed abandoned and GMA was now the senior user.

27.    In the March 20 Letter, GMA and/or its counsel took the position that "to avoid a costly dispute and conserve legal fees, GMA hereby accepts your invitation to continue to 'peacefully coexist' and we will not pursue commence litigation as we were preparing to do and you will not oppose ["GMA's] trademark registration."

28.    The March 19 and March 20 Letter are the only form of "co-existence agreement" between GMA and Russe.

5

29.  Consumers of GMA Goods are not likely to be confused that Russe is the source or sponsor of, or has an affiliation with, the GMA Goods.

30.  Consumers of Russe Goods are not likely to be confused that GMA is the source or sponsor of, or has an affiliation with, the Russe Goods.

31.  Consumers of GMA Goods are likely to be confused that Russe is the source or sponsor of, or has an affiliation with, the GMA Goods.

32.  Consumers of Russe Goods are likely to be confused that GMA is the source or sponsor of, or has an affiliation with, the Russe Goods.

33.  On February 28, 2005, GMA sent a cease and desist letter to Ronson's predecessor, C. Ronson, Inc. (the "February 28 Letter").

34.  In the February 28 Letter, Christopher Anderson, from the Bostany Law Firm, stated that it had come to their attention that C. Ronson, Inc. had filed an application with the USPTO for the mark CHARLOTTE RONSON and that C. Ronson, Inc. may be engaged in the use in commerce of such mark.

35.  In the February 28 Letter, Anderson stated that GMA was the owner of the trademark CHARLOTTE in classes 9, 18, 25 and 26.

36.  In the February 28 Letter, GMA and/or its counsel demanded that C. Ronson, Inc. immediately cease and desist from what GMA and/or its counsel referred to as any use of the confusingly similar CHARLOTTE RONSON mark and withdraw its trademark application.

37.  In the February 28 Letter, GMA and/or its counsel claimed that C. Ronson., Inc.'s failure to comply with the demands in the February 28 Letter would

6

subject Ronson to liability and damages, including, but not limited to, the payment of attorney's fees.

38.     On July 7, 2006, Bostany sent a cease and desist letter to Bop, LLC and a cease and desist letter to Eminent, Inc. (collectively, the "July 7 Letters").

39.     In the July 7 Letters, Bostany stated that GMA was the owner of the trademark CHARLOTTE in various classes including casual attire.

40.     In the July 7 Letters, GMA and/or its counsel demanded that Bop, LLC and Eminent, Inc. immediately cease and desist from what GMA and/or its counsel referred to as their blatant copying of the CHARLOTTE brand name.

41.     In the July 7 Letters, GMA and/or its counsel asserted that the addressee's failure to comply with the demands in the July 7 Letters would subject the addressees to a lawsuit in the United Stated District Court seeking, *inter alia*, a preliminary injunction, permanent injunction, recovery of all profits that the addressees made, recovery of GMA's damages, attorney's fees, costs and statutory damages as allowed by law.

42.     On May 11, 2007, Andrew Sweeney of the Bostany Law Firm, sent a cease and desist letter to Lisa Kline, Inc. (the "May 11 Letter").

43.     In the May 11 Letter, Sweeney stated that GMA was the owner of the trademark CHARLOTTE in various classes including clothing, handbags, hair accessories, and sunglasses.

44.     In the May 11 Letter, GMA and/or its counsel demanded that Lisa Kline, Inc. immediately cease and desist from what GMA and/or its counsel called its blatant copying of the CHARLOTTE brand name.

7

45.     In the May 11 Letter, GMA and/or its counsel asserted that Lisa Kline, Inc.'s failure to comply with the demands in the May 11 Letter would subject it to a lawsuit in the United Stated District Court seeking, *inter alia*, a preliminary injunction, permanent injunction, recovery of all profits that the addressees made, recovery of GMA's damages, attorney's fees, costs and statutory damages as allowed by law.

46.     On May 21, 2007, Sweeney sent a cease and desist letter to Wink NYC, Inc. (the "May 21 Letter").

47.     In the May 21 Letter, Sweeney stated that GMA was the owner of the trademark CHARLOTTE in various classes including clothing, handbags, hair accessories, and sunglasses.

48.     In the May 21 Letter, GMA and/or its counsel demanded that Wink NYC, Inc. immediately cease and desist from what GMA and/or its counsel called its blatant copying of the CHARLOTTE brand name.

49.     In the May 21 Letter, GMA and/or its counsel asserted that Wink NYC, Inc.'s failure to comply with the demands in the May 21 Letter would subject it to a lawsuit in the United Stated District Court seeking, *inter alia*, a preliminary injunction, permanent injunction, recovery of all profits that the addressees made, recovery of GMA's damages, attorney's fees, costs and statutory damages as allowed by law.

50.     On May 23, 2007, Sweeney sent a cease and desist letter to Intermix New York-Miami (the "May 23 Letter").

51.     In the May 23 Letter, Sweeney stated that GMA was the owner of the trademark CHARLOTTE in various classes including clothing, handbags, hair accessories, and sunglasses.

8

52.     In the May 23 Letter, GMA and/or its counsel demanded that Intermix New York-Miami immediately cease and desist from what GMA and/or its counsel called its blatant copying of the CHARLOTTE brand name.

53.     In the May 23 Letter, GMA and/or its counsel asserted that Intermix New York-Miami's failure to comply with the demands in the May 23 Letter would subject it to a lawsuit in the United Stated District Court seeking, *inter alia*, a preliminary injunction, permanent injunction, recovery of all profits that the addressees made, recovery of GMA's damages, attorney's fees, costs and statutory damages as allowed by law.

54.     On May 27, 2007, Medea Chillemi from the Bostany Law Firm, sent a cease and desist letter to Blue Fly, Inc. (the "May 27 Letter").

55.     In the May 27, 2007 Letter, Chillemi stated that GMA was the owner of the trademark CHARLOTTE in various classes, including clothing, handbags, hair accessories, and sunglasses.

56.     In the May 27 Letter, GMA and/or its counsel demanded that Blue Fly, Inc., immediately cease and desist from what GMA and/or its counsel called its blatant copying of the CHARLOTTE brand name.

57.     In the May 27 Letter, GMA and/or its counsel asserted that Blue Fly, Inc.'s failure to comply with the demands in the May 27 Letter would subject Blue Fly, Inc. to litigation.

58.     On April 20, 2007, GMA sued Bop, LLC, Belmondo and Eminent, Inc., among others in the Southern District of New York, Civil Action No. 07 CV 3219.

59.     On May 7, 2007, GMA filed an amended complaint in the above-referenced action, naming Showroom Seven Studios, Inc. as a party.

60.     On September 26, 2007, GMA filed a second amended complaint in the above-referenced action, naming Lisa Kline, Inc., Intermix, Inc. and Wink NYC, Inc., among others.

Dated: New York, New York
        December 12, 2007

                                        DREIER LLP

                        By: _____
                                        Ira S. Sacks
                                        Mary L. Grieco
                                        Safia A. Anand
                                        Dreier LLP
                                        499 Park Avenue
                                        New York, NY 10022
                                        (212) 328-6100

                                        Lisa T. Simpson
                                        Orrick, Herrington & Sutcliffe LLP
                                        666 Fifth Avenue
                                        New York, NY 10103
                                        (212) 506-5100

                                        *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I, Germain Cruz, hereby certify that:

1.   I am not a party to the action, am over 18 years of age and reside in Queens, New York.

2.   On December 12, 2007, I personally served a true copy of the following documents: 1) Plaintiff's First Set of Interrogatories, 2) Plaintiff's First Set of Document Requests and 3) Plaintiff's Requests to Admit via first class mail and email upon:

   Andrew Thomas Sweeney
   The Bostany Law Firm
   40 Wall Street
   New York, NY 10005
   Email: Andrew.Sweeney@Bozlaw.com


   Germain Cruz

{00258149.DOC;}