UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                                                             :
GMA ACCESSORIES, INC.,                                       :
                                                             :
                           Plaintiff,                        :
                                                             :
        v.                                                   :
                                                             :
CHARLOTTE SOLNICKI, CHARLOTTE B, LLC,                        :
EMINENT, INC., SAKS FIFTH AVENUE, INC.,                      :
INTERMIX, INC., WINK NYC, INC.,                              :     07 CV 3219 (LTS)(DCF)
LISA KLINE, INC., GIRLSHOP, INC.,                            :
SHOWROOM SEVEN STUDIOS, INC.,                                :
ELECTRIC WONDERLAND, INC.,                                   :
SHOWROOM SEVEN INT'L,                                        :
SHOWROOM SEVEN, JONATHAN SINGER,                             :
GOSI ENTERPRISES, LTD., LEWIS TIERNEY,                       :
TIERNEY DIRECT LLC and                                       :
JONATHAN SOLNICKI,                                           :
                                                             :
                           Defendants.                       :
                                                             :
-------------------------------------------------------------x

**MEMORANDUM OF LAW OF SANEI CHARLOTTE RONSON LLC IN OPPOSITION
TO PLAINTIFF'S MOTION FOR CONTEMPT**

Ira S. Sacks
Mary L. Grieco
Safia A. Anand
Dreier LLP
499 Park Avenue
New York, NY 10022
(212) 328-6100

Lisa T. Simpson
Orrick, Herrington & Sutcliffe LLP
666 Fifth Avenue
New York, NY 10103
(212) 506-5100
*Attorneys for Sanei Charlotte Ronson LLC*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

MEMORANDUM OF LAW OF SANEI CHARLOTTE RONSON LLC IN OPPOSITION
    TO PLAINTIFF'S MOTION FOR CONTEMPT .......................................................... 1

BACKGROUND FACTS ................................................................................................... 2

THE CHARLOTTE RONSON MARKS AND THE TTAB OPPOSITION .......................... 2

THE *EMINENT* CASE AND THE BOP Injunction .................................................... 4

THE *SANEI* CASE ....................................................................................................... 5

ONGOING ORDERS ....................................................................................................... 6

ARGUMENT ..................................................................................................................... 6

I.    THE STANDARD FOR CONTEMPT ...................................................................... 6

*Contempt of Consent Decrees* ................................................................................... 7

II.   THE CHARLOTTE RONSON MARK IS NOT CLEARLY  AND
     UNAMBIGUOUSLY WITHIN THE INJUNCTION .................................................... 9

A.   GMA Concedes That the *Eminent* Case and the Injunction Do Not Involve
     CHARLOTTE RONSON Branded Merchandise .......................................... 10

B.   The Injunction Itself Makes Clear That CHARLOTTE RONSON Is Not Similar To or
     Substantially Indistinguishable From CHARLOTTE .................................... 13

C.   Records of the USPTO Estop GMA From Arguing that CHARLOTTE RONSON is
     Similar To CHARLOTTE ............................................................................ 14

*Preexisting Marks* ..................................................................................................... 16

*CHARLOTTE RUSSE* ............................................................................................... 17

*CHARLOTTE SAYVILLE* ........................................................................................... 19

D.   Judge Swain's Order Is Not Determinative .................................................... 21

III.  RONSON WAS NOT IN ACTIVE CONCERT OR PARTICIPATION WITH BOP  22

CONCLUSION ..............................................................................................................25

## TABLE OF AUTHORITIES

**FEDERAL CASES**                                              **PAGE**

*Airship Industrial (UK) Ltd. v. Goodyear Tire & Rubber Co.*,
    643 F. Supp. 754 (S.D.N.Y. 1986) ...................................................................... 11

*Cablevision System Corp. v. Muneyyirci*,
    1995 WL 362541 (E.D.N.Y. June 2, 1995) ......................................................... 23

*Canterbury Belts Ltd v. Lane Walker Rudkin Limited*,
    869 F.2d 34 (2d Cir. 1991) ........................................................................... 7, 21

*Chao v. Gotham Registry, Inc.*,
    514 F.3d 280 (2d Cir. 2008) ........................................................................... 6, 7

*Davis v. Wakelee*,
    156 U.S. 680, 15 S. Ct. 555, 39 L. Ed. 578 (1895) ............................................. 20

*Eskay Drugs, Inc. v. Smith, Kline & French Laboratories*,
    188 F.2d 430 (5th Cir. 1951) ............................................................................. 13

*Forschner Group, Inc. v. New Trends*,
    1994 WL 708129 (D. Conn. Aug. 10, 1994) ....................................................... 24

*H.W. Carter & Sons, Inc. v. William Carter Co.*,
    913 F. Supp. 796 (S.D.N.Y. 1996) ..................................................................... 15

*Hess v. New Jersey Transit Rail Operations, Inc.*,
    846 F.2d 114 (2d Cir. 1988) ............................................................................... 6

*Inwood Laboratories v. Ives*,
    456 U.S. 844 (1982) ........................................................................................... 24

*Jeri-Jo Knitwear, Inc. v. Club Italia, Inc.*,
    94 F. Supp. 2d 457 (S.D.N.Y. 2000) .................................................................... 7

*Larami Corp. v. Amron*,
    1994 WL 369251 (S.D.N.Y. July 13, 1994) ....................................................... 11

*La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc.*,
    495 F.2d 1265 (2d Cir. 1974) ............................................................................. 15

*Latino Officers Association City of New York v. City of New York*,
    519 F. Supp. 2d 438 (S.D.N.Y. 2007) ............................................................... 6, 7

*Levy v. Kosher Overseers Association of America, Inc.*,
   104 F.3d 38 (2d Cir. 1997) ................................................................... 14

*Marshall v. Local 29*,
   1980 WL 2150 (S.D.N.Y. Apr. 14, 1980)............................................. 24

*Mitchell v. Washingtonville Central Sch. District*,
   190 F.3d 1 (2d Cir.1999) ...................................................................... 20

*New Hampshire v. Maine*,
   532 U.S. 742, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001) ................... 20

*Nippon Electric Glass Co., Ltd. v. Sheldon*,
   489 F. Supp. 119 (S.D.N.Y. 1980) .................................................. 11, 12

*People of the State of New York v. Operation Rescue National*,
   80 F.3d 64 (2d Cir. 1996) ............................................................... 23, 24

*Perez, M.D. v. Danbury Hospital*,
   347 F.3d 419 (2d Cir. 2003) ................................................................... 6

*Reed Publishing v. Execulink, Inc.*,
   2000 WL 1023356 (D.N.J. June 8, 2000) .............................................. 13

*Schurr v. Austin Galleries of Illinois, Inc.*,
   719 F.2d 571 (2d Cir. 1983) .................................................................... 8

*SuperShuttle Intern'l Inc. v. Schafer-Schonewill & Associates Inc.*,
   39 U.S.P.Q. 2d 1766 (D. Colo. 1995) .................................................... 13

*United States v. Armour & Co.*,
   402 U.S. 673 (1971) ...................................................................... 7, 8, 21

*United States v. Broadcast Music, Inc.*,
   275 F.3d 168 (2d Cir. 2001) ............................................................. 7, 21

*United States v. ITT Continental Baking Co.*,
   420 U.S. 223 (1975) ...................................................................... 7, 8, 21

*United States v. O'Rourke*,
   943 F.2d 180 (2d Cir. 1991) ............................................................. 7, 21

*Virgin Enterprises Limited v. American Longevity*,
   2001 WL 286753 (S.D.N.Y. March 23, 2001) ...................................... 23

iii

*Vuitton v. Carousel Handbags,*
    592 F.2d 126 (2d Cir. 1979) ................................................................................. 23

*Wella Corp. v. Wella Graphics, Inc.,*
    37 F.3d 46 (2d Cir. 1994) ..................................................................................... 9

*Wella Corp. v. Wella Graphics, Inc.,*
    874 F. Supp. 54 (E.D.N.Y. 1994) .................................................................... 13, 14

*Yeda Research and Development Co. Ltd. v. Imclone Systems Inc.,*
    443 F. Supp. 2d 570 (S.D.N.Y. 2006) ................................................................ 20

## STATUTES, RULES AND MISCELLANEOUS      PAGE

15 U.S.C. § 1052 ......................................................................................................... 14

Federal Rules of Civil Procedure Rule 60 ..................................................................... 4

Federal Rules of Civil Procedure Rule 65 ............................................................. 23-24

Federal Rules of Civil Procedure Rule 68 ......................................................... *passim*

*Handler, Twenty-fourth Annual Antitrust Review,*
    72 Colum. L. Rev. 1 (1972) ................................................................................. 8

## MEMORANDUM OF LAW OF SANEI CHARLOTTE RONSON LLC IN OPPOSITION TO PLAINTIFF'S MOTION FOR CONTEMPT

Sanei Charlotte Ronson LLC ("Ronson") respectfully submits this memorandum of law in opposition to GMA Accessories, Inc.'s ("GMA") motion for contempt against Ronson and BOP LLC ("BOP") (the "Motion"). GMA's Motion must be denied in its entirety, both as to Ronson and BOP. The Motion is a blatant attempt by GMA to circumvent an entire litigation, which is currently pending in the Southern District of New York before Judge Sweet, *Sanei Charlotte Ronson v. GMA Accessories*, 07 Civ. 9578 (RS)(DCF) (the "*Sanei* Case"). Such manipulation of the judicial system cannot be allowed.

Ronson cannot be held in contempt for violation of the injunction at issue for several reasons. First, as demonstrated by the accompanying motion to sever and stay, GMA's Motion should be severed and stayed as to Ronson to avoid the tactical manipulation and avoidance of the *Sanei* Case that the Motion seeks to accomplish. GMA can receive full relief from proceeding at this time solely against BOP; and any issues regarding Ronson can be resolved in – or after – the trial of the *Sanei* Case.

Second, the injunction does not clearly and unambiguously prohibit the use of the CHARLOTTE RONSON mark by BOP. As a result, the injunction was not violated. The injunction (the "Injunction") was entered in response to an offer of judgment made by BOP pursuant to Rule 68 of the Federal Rules of Civil Procedure ("Rule 68"), which was accepted by GMA in an action to which Ronson is not and never was a party – *GMA Accessories v. Eminent et al.*, 07 CV 3219 (LTS) (DCF) (the "*Eminent* Case"). The Injunction merely prohibits BOP from "using the mark CHARLOTTE or any marks similar to or substantially indistinguishable therefrom, including the mark CHARLOTTE SOLNICKI."

Under controlling law, to prevail on its Motion, GMA must prove that the Injunction does not leave any uncertainty in the minds of those to who it is addressed as to whether the use by BOP of CHARLOTTE RONSON merchandise is enjoined.  On the contrary, the Injunction does not clearly and unambiguously include CHARLOTTE RONSON merchandise.

Third, GMA's own statements make plain that CHARLOTTE RONSON is not and cannot be found to be "similar to or substantially indistinguishable from" CHARLOTTE.

Fourth, records of the United States Patent and Trademark Office ("USPTO") and preexisting "Charlotte" marks preclude GMA from arguing that CHARLOTTE RONSON is similar to CHARLOTTE.

Finally, even if the Injunction prohibited BOP from using the CHARLOTTE RONSON mark – which it did not – Ronson, a manufacturer and supplier of CHARLOTTE RONSON products, was not in active concert or participation with BOP, its customer.

## BACKGROUND FACTS

### THE CHARLOTTE RONSON MARKS AND THE TTAB OPPOSITION

Charlotte Ronson ("Ms. Ronson") is a well-known fashion designer who uses her name, CHARLOTTE RONSON, as a trademark for her clothing line.  That clothing line was originally sold by C. Ronson, Inc., and is now being sold by Ronson.  In September 1999, Ms. Ronson began selling her original clothing designs using the mark C. RONSON.  In May 2002, Ms. Ronson opened a clothing boutique in downtown New York City known as C. RONSON, and in 2005, C. Ronson, Inc. began to use Ms. Ronson's full name, CHARLOTTE RONSON, as a trademark.  Ronson acquired the rights to CHARLOTTE RONSON in 2006.  *See* Declaration of Charlotte Ronson, dated April 11, 2008, ¶¶ 1-2 (the "Ronson Decl.").

On October 8, 2004, C. Ronson, Inc. applied for the mark CHARLOTTE RONSON in

2

class 25 for use on clothing, namely, tops, pants, skirts, dresses, hats, caps, jackets, coats, headwear, underwear, sleepwear, and footwear, Serial No. 78/507,236.  *See* Declaration of Mary L. Grieco, dated April 11, 2008, ¶ 4 (the "Grieco Decl.").  On October 11, 2005, C. Ronson, Inc. applied for the mark CHARLOTTE RONSON in class 14 for use on jewelry, namely, necklaces, bracelets, earrings, rings, pins, and watches, Serial No. 78/507,242.  Grieco Decl., ¶ 5.  On October 28, 2004, C. Ronson, Inc. applied for the mark CHARLOTTE RONSON in class 18 for use on handbags, wallets, luggage, backpacks, travel bags, and cosmetic cases sold empty, Serial No. 78/507,248. [1]  GMA opposed these applications based on its federal registrations.[2]  *See* Grieco Decl., ¶ 6. The three oppositions, the earliest of which began on October 31, 2005, have all been consolidated under Opposition No. 91167353 (the "Opposition") before the Trademark Trial and Appeal Board (the "TTAB").  *See* Grieco Decl., ¶ 7.

The Opposition has been hotly contested.  For example, GMA moved for summary judgment, arguing that the TTAB should refuse to register the CHARLOTTE RONSON Marks as a matter of law.  *See* Grieco Decl., ¶ 8.  On November 6, 2006, the TTAB denied GMA's motion for summary judgment, noting the numerous other fashion brands share common personal names:  "applicant's evidence of third-party registrations that share a common name in the fashion industry raises a genuine issue of material fact regarding the perception of

---

[1]  The CHARLOTTE RONSON Marks were assigned to Ronson and the assignments were properly recorded with the USPTO on April 14, 2006.

[2]  The opposition is baseless.  It is very common in the fashion industry for designers to have the same first or last names as other designers as trademarks.  For instance, Christian Dior, Christian Lacroix and Christian Louboutin are all names that are used in the fashion industry as trademarks, as are Tommy Hilfiger and Tommy Bahama.  In addition, the marks Ralph Lauren, Sage Lauren, Dena Lauren, and Lauren Scott also coexist in the fashion marketplace, as do Giorgio Armani, Giorgio Kauten, Giorgio Ferraro and Giorgio Bissoni, as well as Rebecca Beeson and Rebecca Taylor. Similarly, Calvin Klein and Anne Klein both use the same last name as part of their respective trademarks.  Additionally, Emilio Pucci and Emilio Cavallini are famous designers that share the same first name, as do Cynthia Steffe and Cynthia Rowley and Kai Kuhne and Kai Milla.  Moreover, designers such as Brian Reyes coexist in the fashion marketplace with Reyes.  Numerous other fashion designers have the same first or last names.  *See* Grieco Decl., ¶ 9, Ex. A; Ronson Decl., ¶ 6.

prospective consumers of applicant's and opposer's marks." *See GMA Accessories, Inc. v. Sanei Charlotte Ronson, LLC*, Opposition No. 91167353 (TTAB Nov. 6, 2006). Ronson moved for summary judgment and GMA moved for reconsideration; both of those motions are *sub judice*. The Opposition has been suspended pending outcome of the *Sanei* Case. *See* Grieco Decl., ¶ 8.

### THE *EMINENT* CASE AND THE BOP Injunction

GMA filed the *Eminent* Case in April 2007 against BOP, Girlshop LLC, Showroom Seven Studios Inc, Jonathan Solnicki, Belmondo, and Eminent, Inc., alleging that the sale of merchandise using the marks CHARLOTTE and/or CHARLOTTE SOLNICKI infringed upon GMA's federal CHARLOTTE registrations. Notably, Ronson is not a party to that litigation and the CHARLOTTE RONSON trademark is not mentioned in any of the *Eminent* complaints or amended complaints, including the third amended complaint, filed on April 2, 2008. *See Eminent* Case Docket Nos. 1, 9, 71 and 164.

On October 18, 2007, BOP made an offer of judgment pursuant to Rule 68 in the *Eminent* Case, which was accepted by GMA. As a result, in an order dated October 18, 2007, BOP was permanently enjoined from "using the mark CHARLOTTE or any marks similar to or substantially indistinguishable therefrom, including the mark CHARLOTTE SOLNICKI" (as defined above, the "Injunction"). *See Eminent* Case Docket No. 79. The Injunction did not mention the CHARLOTTE RONSON mark.

BOP moved to withdraw, vacate or modify its offer of judgment and/or the Injunction. Treating that as a motion to vacate the Injunction under Rule 60, in an order dated December 20, 2007 (the "Order"), Judge Swain denied BOP's motion in all respects. *See Eminent* Case Docket No. 129. In so doing, Judge Swain did **not** find that CHARLOTTE RONSON branded merchandise was within the scope of the Injunction. Rather, Judge Swain held that (i) there was

4

no basis for vacating the Injunction because of mistake, inadvertence or excusable neglect (Order at 5); (ii) the Injunction was <u>unambiguous</u>, and that even if there was some ambiguity, it should be construed against BOP as the Rule 68 offeror (Order at 6-8); and (iii) mutual assent was present, and the Court would not inquire into BOP's intentions in making the offer (Order at 8). Ronson was never served with the Injunction or the Order.[3]  *See* Ronson Decl., ¶ 4.

## THE *SANEI* CASE

On October 26, 2007, in response to GMA's threats against Ronson and several of Ronson's customers, Ronson brought the *Sanei* Case.  *See* Complaint, *Sanei* Case Docket No. 1. In that case, Ronson seeks a declaration of non-infringement; cancellation GMA's trademark registrations for its CHARLOTTE and CHARLOTTE & FRIENDS Marks based on fraud and trademark misuse; and further asserts claims for tortious interference with prospective business relations and common law unfair competition.  *See* Amended Complaint, *Sanei* Case Docket No. 18.  GMA has asserted counterclaims for infringement against Ronson, and has sought and received permission to add Ronson's retailer customers as counterclaim defendants (but has not yet done so).  *See* GMA's Counterclaims, *Sanei* Case Docket No. 27; Grieco Decl. ¶ 27.

The *Sanei* Case was originally assigned to Judge McMahon, who later recused herself based on GMA's proposed addition of certain retailers as counterclaim defendants.  GMA then attempted to have the *Sanei* Case assigned to Judge Swain as related to the *Eminent* Case; that request was rejected by Judge Swain and the *Sanei* Case has been assigned to Judge Sweet as an unrelated case.  *See Sanei* Case Docket Nos. 23-25.

---

[3]  Service of the Injunction and Order on Dreier LLP, counsel for the retailer defendants in the *Eminent* case, does not constitute service on Ronson simply because Dreier also represents Ronson in a separate litigations.  Ronson is not a party in the *Eminent* Case, and GMA's service on Dreier cannot constitute service on every client in the entire Dreier law firm.   GMA's counsel was well aware of how to locate Ronson if it deemed it necessary to serve the Injunction or Order on Ronson, which it apparently did not.

**ONGOING ORDERS**

Absent service of the Injunction – and given that there was not any mention of CHARLOTTE RONSON in the *Eminent* Case in any way – when BOP placed orders for CHARLOTTE RONSON merchandise for Spring/Summer 2008, Ronson filled those orders.[4] *See* Ronson Decl., ¶ 4.

**ARGUMENT**

## I.  THE STANDARD FOR CONTEMPT

GMA has not met its burden of proving contempt.  A party may be held in civil contempt only where the movant establishes (1) the decree was clear and unambiguous as applied to the conduct at issue; (2) the proof of non-compliance is clear and convincing; and (3) the contemnor has not diligently attempted to comply in a reasonable manner.  *See Perez, M.D. v. Danbury Hospital*, 347 F.3d 419, 424 (2d Cir. 2003)(contempt requires a violation of a clear and unambiguous order that leaves no uncertainty in the minds of those to whom the order is addressed as to what is enjoined); *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 291-92 (2d Cir. 2008) ("[t]o ensure fair notice to the defendant, the decree underlying contempt must be sufficiently clear to allow the party to whom it is addressed to ascertain precisely what it can and cannot do").

The Second Circuit has defined a clear and unambiguous order as one that that leaves "no uncertainty in the minds of those to whom it is addressed."  *Hess v. New Jersey Transit Rail Operations, Inc.*, 846 F.2d 114, 116 (2d Cir. 1988); *Latino Officers Ass'n City of New York v. City of New York*, 519 F. Supp. 2d 438, 443 (S.D.N.Y. 2007).  "The Court's power to hold a defendant in contempt is a 'potent weapon' that should not be exercised 'where there is fair

---

[4]  Those orders totaled $31,715.00 in November 2007 and $64,425.79 in January and February 2008.  *See* Ronson Decl., ¶ 5.

6

ground of doubt as to the wrongfulness of the defendant's conduct.'" *Latino Officers Ass'n,* 519 F. Supp. 2d at 443-444 (citing *California Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618 (1885)).

Contempt cannot lie if the order relied on by the party seeking contempt is ambiguous in its application to the challenged conduct. *Chao*, 514 F.3d at 292; *Jeri-Jo Knitwear, Inc. v. Club Italia, Inc.*, 94 F. Supp. 2d 457, 458-59 (S.D.N.Y. 2000)(defendant with valid foreign trademark, but found to have infringed brand name of plaintiff and enjoined from advertising infringing clothing in the United States, was not in contempt of injunction by continuing to maintain Italian-registered website accessible by users in the United States).

*Contempt of Consent Decrees*

In assessing the scope of an unambiguous **<u>consent</u>** decree for purposes of contempt, the decree is viewed as a contract. *United States v. ITT Continental Baking Co.,* 420 U.S. 223, 236-37 (1975); *Canterbury Belts Ltd v. Lane Walker Rudkin Limited*, 869 F.2d 34, 38 (2d Cir. 1991). The language within the **<u>four corners</u>** of the document must **<u>conclusively prohibit</u>** the activity at issue in order for contempt to be found. *See, e.g., United States v. Armour & Co.*, 402 U.S. 673, 682 (1971) ("the scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it"); *United States v. Broadcast Music, Inc.*, 275 F.3d 168, 175 (2d Cir. 2001)(when the language of a consent decree is unambiguous, the scope of a consent decree must be discerned within its four corners); *Canterbury Belts*, 869 F.2d at 38 (consent decree was entered into after careful negotiation and should be interpreted as a contract); *United States v. O'Rourke*, 943 F.2d 180, 189 (2d Cir. 1991)(the language of a consent decree defines the obligations of the parties to that decree);

7

*Schurr v. Austin Galleries of Illinois, Inc.*, 719 F.2d 571, 574 (2d Cir. 1983)(as a contract, the scope of the consent judgment should be ascertained within the four corners of the instrument).

As the Supreme Court explained in *Armour,* 402 U.S. at 681-82:

Consent decrees are entered into by parties to a case after careful negotiation has produced agreement on their precise terms. The parties waive their right to litigate the issues involved in the case and thus save themselves the time, expense, and inevitable risk of litigation. Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation. Thus the *decree* itself cannot be said to have a purpose; rather the *parties* have purposes, generally opposed to each other, and the resultant decree embodies as much of those opposing purposes as the respective parties have the bargaining power and skill to achieve. *For these reasons, the scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it.*

Thus, in light of Judge Swain's conclusion in the Order that the Injunction is unambiguous, the scope of the Injunction must be assessed from its four corners. To the extent, however, that certain of the terms of the consent injunction are deemed ambiguous, evidence of BOP's intent to exclude CHARLOTTE RONSON from its scope would be admissible. *ITT,* 420 U.S. at 238 n.11 (quoting Handler, *Twenty-fourth Annual Antitrust Review,* 72 Colum.L.Rev. 1, 23 n.148 (1972)( "[a]ssuming that a consent decree is to be interpreted as a contract, it would seem to follow that evidence surrounding its negotiation and tending to explain ambiguous terms would be admissible in evidence")).

In either event, the Injunction does not clearly and unambiguously enjoin the use of the CHARLOTTE RONSON mark by BOP. As we further demonstrate below, the language within the four corners of the Injunction – which was entered into in a case that did not involve Ronson – did not clearly and unambiguously refer CHARLOTTE RONSON. On its face, the Injunction enjoins BOP from "using the mark CHARLOTTE or any marks similar to or substantially indistinguishable therefrom, including the mark CHARLOTTE SOLNICKI". Therefore, this

8

Court is bound by this language, and must determine, from the face of the Injunction, whether CHARLOTTE RONSON is clearly and unambiguously included in the language "similar to or substantially indistinguishable from CHARLOTTE."[5]

## II.   THE CHARLOTTE RONSON MARK IS NOT CLEARLY AND UNAMBIGUOUSLY WITHIN THE INJUNCTION

The Injunction, on its face, does not clearly and unambiguously enjoin the use of the CHARLOTTE RONSON mark by BOP.  There are several reasons supporting that conclusion:

- First, the *Eminent* Case in which the Injunction issued does not even involve the CHARLOTTE RONSON mark, and GMA has conceded that its claims against the retailer defendants in the *Eminent* Case, including BOP, did not involve the sale of CHARLOTTE RONSON branded merchandise.[6]

- Second, at the time GMA first applied for its CHARLOTTE marks, there were several existing registered trademarks using CHARLOTTE in combination with another word – such as CHARLOTTE RUSSE, CHARLOTTE STING, CHARLOTTE HORNETS, UNC CHARLOTTE and CHARLOTTE FORD –

---

[5]  In similar situations, courts have held that the inquiry is to "simply evaluate whether or not the new mark is confusingly similar to the protected mark" and it is not necessary to use the *Polaroid* factors to evaluate whether the mark is similar to or substantially indistinguishable from a protected mark.  *See Wella Corp. v. Wella Graphics, Inc.*, 37 F.3d 46, 48 (2d Cir. 1994) (when enforcing injunctions that enjoin use of any mark confusingly similar to a protected mark, a *Polaroid* analysis should not be employed and the court should simply determine whether the marks are confusingly similar on their face).

[6]  GMA cannot use the fact that the same law firm represents the retailer defendants in the *Eminent* Case and Ronson in the *Sanei* Case as a way of convoluting the brands.  As GMA is well aware, Charlotte Solnicki and Charlotte Ronson are two distinct and separate brands, which are involved in separate lawsuits, involving separate issues, in front of separate Judges.  The *Sanei* Case involves the complex issue of likelihood of confusion between CHARLOTTE RONSON branded merchandise and the GMA CHARLOTTE marks, including factors such as the strength of the CHARLOTTE RONSON marks, unsolicited media attention for CHARLOTTE RONSON, advertising by Ronson and Ronson's good faith in adopting the mark.  Those issues are not involved in the *Eminent* Case.  Further, since Ronson is not even a defendant in the *Eminent* Case, proof on those issues is not directly available to the retailer defendants.  On the other hand, those issues are properly before the Court in the *Sanei* Case. Indeed, GMA filed infringement counterclaims in the *Sanei* Case asserting that CHARLOTTE RONSON branded merchandise and the charlotteronson.com website infringe GMA's marks; and GMA has sought and received consent to add the retailers as defendants in the *Sanei* Case.

9

which estops GMA from arguing that its CHARLOTTE marks reach such uses –
that is, CHARLOTTE preceded or followed by another word.

- Additionally, GMA has admitted that it was aware of the CHARLOTTE RUSSE
  applications before it applied for its CHARLOTTE Marks and that CHARLOTTE
  RUSSE is not similar to CHARLOTTE.  As such, GMA must be estopped from
  asserting that the Injunction covers CHARLOTTE RONSON branded
  merchandise as CHARLOTTE RONSON is more similar to CHARLOTTE
  RUSSE than CHARLOTTE.

- Finally, GMA has represented that the mark CHARLOTTE combined with a
  second word is not similar to the mark CHARLOTTE standing alone.

**A.    GMA Concedes That the *Eminent* Case and the Injunction Do Not Involve CHARLOTTE RONSON Branded Merchandise**

The *Eminent* Case in which the Injunction issued does not involve – and has never
involved – CHARLOTTE RONSON branded merchandise.  Nor has Ronson ever been a party to
that action.  Instead, it is the *Sanei* Case which involves the CHARLOTTE RONSON mark.

Ronson and the CHARLOTTE RONSON brand were well known to GMA and the
Bostany Firm well before the *Eminent* Case was ever filed.  As set forth above, GMA had been
in a heavily litigated opposition proceeding relating to the CHARLOTTE RONSON mark before
the TTAB since **late 2005**.  If the *Eminent* Case involved a claim that CHARLOTTE RONSON
branded merchandised infringed GMA's marks, surely GMA would have sued Ronson and have
used the words CHARLOTTE RONSON in the complaint, but they did not.

The fact that the *Eminent* Case does <u>not</u> involve a claim that CHARLOTTE RONSON
branded merchandise infringes GMA's marks was conceded by GMA when it sought to have the

10

*Sanei* Case assigned to Judge Swain as related to the *Eminent* Case in a March 17, 2008 letter to Chief Judge Wood.  *See* Grieco Decl., ¶ 16, Ex. H.  In that letter, Mr. Bostany described the claims in the *Eminent* Case as follows:  "GMA's registered trademark CHARLOTTE for clothing versus the defendants' use of the unregistered trademark CHARLOTTE SOLNICKI for trendy clothing."  *Id.*  Again, surely, if the *Eminent* Case also involved claims that the retailers were selling infringing CHARLOTTE RONSON clothing, Mr. Bostany would have said so in his letter to Chief Judge Woods in attempting to have the two cases designated as related.  As this Court is well aware, Judge Swain found that the cases were **not even related** and the *Sanei* Case has been assigned to Judge Sweet.  *See Sanei* Case Docket No.  25.

GMA also conceded that CHARLOTTE RONSON is not included in the Injunction in the motion to dismiss it filed in the *Sanei* Case.  It filed that motion on November 19, 2007 – long after the Second Amended Complaint had been filed and after the Injunction had been entered in the *Eminent* Case.  GMA moved to dismiss the *Sanei* Case for, among other reasons, lack of Article III standing.  It did so despite the settled law in this jurisdiction that threats or suit "against the plaintiff's customers or licensees will suffice to establish a reasonable apprehension of suit and an actual case or controversy."  *Larami Corp. v. Amron*, No. 92 Civ. 7323, 1994 WL 369251, at *4 (S.D.N.Y. July 13, 1994); *see Nippon Elec. Glass Co., Ltd. v. Sheldon*, 489 F.Supp. 119, 121-22 (S.D.N.Y. 1980)("[w]hen [an IP] holder complains that a manufacturer's customers are guilty of direct infringement due to their use or sale of plaintiff's products, the [IP] holder is impliedly charging the manufacturer with contributory infringement as well."); *Airship Indus. (UK) Ltd. v. Goodyear Tire & Rubber Co.*, 643 F.Supp. 754, 759 (S.D.N.Y. 1986)("courts have frequently found the existence of an actual controversy where the defendant, although threatening the plaintiff's customers with legal action, had made no threat against the plaintiff

11

and, in fact, had disclaimed any intention of bringing suit against the plaintiff"). "Were this not so, [an IP holder] would be able to avoid suit by an injured manufacturer merely by not threatening him directly with infringement, while threatening his customers with suits. This result would frustrate the remedial purpose of the Act." *Nippon Elec. Glass Co.,* 489 F.Supp. at 122.

Despite that plain law, GMA asserted that there were no threats or suits pending against Ronson's customers and that the **only dispute** between GMA and Ronson was the opposition proceeding before the TTAB. GMA Brief in Support of Motion to Dismiss, at 2, attached to the Grieco Decl. as Ex. I (arguing that a TTAB proceeding "does not, without more, create an actual controversy") (emphasis added; internal quotations and citations omitted). What is more, GMA went on to explain the *Eminent* Case in the Declaration of Andrew Sweeney, accompanying the motion to dismiss: "In conjunction with actively policing infringement of its CHARLOTTE mark, GMA commenced an action against sellers of 'Charlotte Solnicki' goods. GMA Accessories, Inc. v. Eminent, Inc. et al., Civil Action No.: 07cv3219 (LTS)." *See* Declaration of Andrew Sweeney, dated November 19, 2007, ¶ 5, attached to the Grieco Decl., as Ex. J.

BOP was and is a customer of Ronson. Nowhere in GMA's papers in support of the motion to dismiss in the *Sanei* Case is there any suggestion that the *Eminent* Case involved claims against – much less an injunction against – the sale of CHARLOTTE RONSON branded merchandise (as to do so would have acknowledged the existence of a case or controversy). GMA cannot now change its tune to suit its current fancy. That alone demonstrates that the Injunction does not clearly and unambiguously embrace the use of the CHARLOTTE RONSON mark by BOP.

12

B.    **The Injunction Itself Makes Clear That CHARLOTTE RONSON Is Not Similar To or Substantially Indistinguishable From CHARLOTTE**

The Injunction itself makes clear that CHARLOTTE RONSON is not unambiguously included within the Injunction.  The operative phrase of the Injunction reaches BOP's use of "the mark CHARLOTTE or any marks similar to or substantially indistinguishable therefrom, including the mark CHARLOTTE SOLNICKI."   The mark CHARLOTTE RONSON is not similar to or substantially indistinguishable from the mark CHARLOTTE.  Indeed, for purposes of contempt analysis, the types of marks that are **clearly and unambiguously** similar to or substantially indistinguishable from the mark CHARLOTTE are marks such as CHARLOTT, CHARLOT, CHARLOTE, SHARLOTTE, SHARLOTE, CHARLETTE, and variations thereof.

A mark is confusingly similar for contempt purposes when a party "makes[s] **minimal changes** to a mark already found to be infringing." *Wella Corp. v. Wella Graphics, Inc.*, 874 F.Supp. 54, 56 (E.D.N.Y. 1994) (emphasis added)(changing single letter in the mark); *see Reed Publishing v. Execulink, Inc.*, 2000 WL 1023356, at *3 (D.N.J. June 8, 2000) (the mark "WHO'S WHO ON CD-ROM" was confusingly similar to "THE COMPLETE MARQUIS WHO'S WHO ON CD-ROM"); *Eskay Drugs, Inc. v. Smith, Kline & French Laboratories*, 188 F.2d 430, 431 (5th Cir. 1951) ("Enkay" was a colorable imitation of "Eskay"); *SuperShuttle Intern'l Inc. v. Schafer-Schonewill & Associates Inc.*, 39 U.S.P.Q.2d 1766, 1767(D. Colo. 1995)(finding contempt where Defendants violated a preliminary injunction prohibiting their use of SUPERSHUTTLE EXPRESS by using SUPER EXPRESS SHUTTLE).

Here, CHARLOTTE RONSON is not **clearly and unambiguously** similar or substantially indistinguishable from CHARLOTTE.  The addition of the word RONSON to CHARLOTTE is not simply a "minimal change" to the trademark.  To the contrary, the addition

13

of the word RONSON is a substantial difference from the common name "CHARLOTTE."  It is also important to note that the Injunction does not state "including but not limited to" CHARLOTTE SOLNICKI, but rather only uses the phrase "including CHARLOTTE SOLNICKI."  That omission by sophisticated counsel negotiating a consent judgment or a Rule 68 offer is significant.  Furthermore, here, where Ronson was not a party to the Injunction and has not changed its mark since the entry of the Injunction, Ronson is clearly not attempting to test the outer boundaries of the consent judgment.  *See Wella*, 874 F.Supp. at 56.  Ronson, as a non-party to the Injunction, does not have the same duty to "steer clear of the dividing line between compliance and violation."  *See id.*

> **C.**     **Records of the USPTO Estop GMA From Arguing that CHARLOTTE RONSON is Similar To CHARLOTTE**

If the marks CHARLOTTE and CHARLOTTE RONSON were similar, GMA would never have been able to register its CHARLOTTE marks to begin with, because at the time GMA registered its CHARLOTTE mark, there were several pre-existing registered marks utilizing the word "Charlotte."  *See Levy v. Kosher Overseers Ass'n of America, Inc.*, 104 F.3d 38, 40 (2d Cir. 1997) ("[a]n application for registration may be refused if the mark [c]onsists of or comprises a mark which so resembles a mark registered in the Patent and Trademark Office . . . . as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive") (quoting 15 U.S.C. § 1052(d)).  *See* Grieco Decl., ¶ 15, Ex. G.

The earliest GMA applications were on **December 10, 1997** in class 25 for clothing, footwear and headgear, namely hats, scarves, gloves, sunglasses, and socks, in class 18 for sacks and bags, namely, handbags made of textiles and beads, and in class 26 for hair accessories,

namely, hair clips, scrunchees, ribbons and braids.  *See* Applications, Serial Nos. 75/403,210, 74/403,211 and 75/403,212, collectively attached to the Grieco Decl., as Ex. F.  In connection with each of those applications, GMA swore that "no other person, firm, corporation or association has the right to use such mark in commerce, with an identical form or in such near resemblance thereto as may be likely, when applied to the services of such other person, to cause confusion, or to cause mistake, or to deceive."  *See, e.g.,* Altirs Declaration, dated December 10, 1997, Application Serial Nos. 75/403,211, 75/403,212, attached to the Grieco Decl. as Exhibit F.[7]

At that time, several other registered marks existed which used Charlotte in combination with another word.  *See* Grieco Decl., ¶ 15, Ex. G.  As a result, GMA admitted that the use of Charlotte in combination with another word was not similar to the use of Charlotte alone.  That admission – which is publicly available to view and rely upon – is dispositive.  What is more, if GMA asserts that its CHARLOTTE marks reach Charlotte in combination with another word, GMA's marks are invalid.  *See La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc.*, 495 F.2d 1265, 1271 (2d Cir. 1974) (a registered trademark holder has priority over a junior user); *H.W. Carter & Sons, Inc. v. William Carter Co.*, 913 F.Supp. 796, 802 (S.D.N.Y. 1996) (same).

---

[7]  The declaration in support of application serial no. 75/403,210 is not available online and has not yet been produced by GMA.

*Preexisting Marks*

More specifically, as of December 10, 1997 – when GMA's Mr. Altirs swore that there were no similar marks in use on such goods – the following registrations, *inter alia*, were in existence or pending:

- CHARLOTTE RUSSE, filed August 19, 1998, based on first use in commerce of October 26, 1991, which issued as U.S. Registration No. 2,416,273 on December 26, 2000 for clothing, namely dresses, pants, shorts, skirts, blouses, jumpers, overalls, knit and woven tops, sweaters, t-shirts, pajamas, nightgowns, robes, loungewear, lingerie, slips, undergarments, panties, casual and dressy shoes, sandals, boots, sweatpants, sweatshirts, sweatsuits, tights, leggings, and socks; performance wear, namely jerseys, bicycle pants and gymnastic suits; sportswear, namely pants and shirts, swimwear, swimsuit cover-ups and leotards, tights, socks, shorts; outerwear, namely jackets, vests, coats, shells; and headgear, namely hats, caps, headbands, visors, and belts.[8]

- CHARLOTTE STING, filed December 11, 1996, based on a first use in commerce of June 1996, which issued as U.S. Registration No. 2,232,708 on March 16, 1999 for clothings, namely, hosiery, footwear, T-shirts, sweatshirts, sweatpants, pants, tank tops, jerseys, shorts, pajamas, sport shirts, rugby shirts, sweaters, belts, ties, nightshirts, hats, warm-up suits, jackets, parkas, coats, cloth bibs, head bands, wrist bands, aprons, boxer shirts, slacks, caps, ear muffs and gloves.

- UNC CHARLOTTE, filed June 19, 1991, based on a first use in commerce of 1986, which issued as U.S. Registration No. 1,727,518 on October 27, 1992, for, *inter alia*, sweatshirts, T-shirts, polo shirts, shorts,  trunks, hats, sweats, and jackets.

- CHARLOTTE HORNETS, filed July 10, 1987, based on a first use in commerce of June 15, 1987, which issued as U.S. Registration No. 1,650,195 on July 9, 1991, for clothing, namely tee shirts.

- CHARLOTTE FORD, filed January 12, 1977, based on a first use in commerce of September 8, 1976, which issued as U.S. Registration No. 1,098,854 on August 8, 1978, for women's apparel, namely, sweaters, scarves, pants, blouses, skirts,

---

[8]  Indeed, Charlotte Russe had a prior registration for retail store services with a first use date of November 4, 1975 and prior registrations for clothing with first use dates of January 7, 1979 (cancelled October 7, 1987) and August 1, 1986 (cancelled June 19, 1995).  *See* U.S. Registration Nos. 1,150,497, 1,485,692, 1,516,446.

jackets, blazers, handkerchiefs, dresses, sweater coats and suits. (Expired May 11, 1999).

- CHARLOTTE CHECKERS, filed March 20, 1996, based on a first use in commerce in class 25 of October 31, 1993, which issued as U.S. Registration No. 2,090,707, for, *inter alia*, in class 25, shirts; t-shirts; sweatshirts; jerseys; sweaters; hats; jackets.

- CHARLOTTE SAYVILLE, filed October 1, 1993, based on a first use in commerce of December 31, 1965, which issued as U.S. Registration No. 1,860,139 on October 25, 1994, for retail store services in the field of men's, women's and children's clothing, accessories, shoes and general dry goods (expired November 4, 2001), and U.S. Registration No. 1,345,202 which issued on June 25, 1985, for retail store services in the fields of women's clothing and shoes. (Expired April 1, 2006).

- CHARLOTTE, filed August 2, 1996, which issued to Wolf-Peter Schwarz as U.S. Registration No. 2,117,619, on December 2, 1997, for jewelry made of natural, precious and nonprecious materials, namely, of gold, silver, platinum, iron, wood, leather, gemstones, ivory; jewelry, namely, pins, cuff links, earrings, necklaces; jewelry in the nature of hand, arm and leg ornaments made of the above material, namely, rings, bracelets, pins and broaches; watches.

*See* Grieco Decl., ¶ 15, Ex. G**.**

### ***CHARLOTTE RUSSE***

The situation with CHARLOTTE RUSSE is particularly revealing.  GMA has admitted that it was aware of the CHARLOTTE RUSSE marks prior to filing the applications for the GMA CHARLOTTE marks.  *See* GMA's Supplemental Responses to Ronson's Request for Admissions, dated March 25, 2008, ¶ 21, attached to the Grieco Decl. as Ex. M; Ronson's Request for Admissions, ¶ 21, attached to the Grieco Decl. as Ex. K.   GMA also admitted that the GMA CHARLOTTE Marks are not confusingly similar to the CHARLOTTE RUSSE Marks; that consumers of GMA Goods are not likely to be confused that Charlotte Russe Merchandising, Inc. ("Russe") is the source, sponsor of, or has an affiliation with, GMA Goods; and that consumers of Russe Goods are not likely to be confused that GMA is the source of sponsor of, or has an affiliation with, the Russe Goods.  *See* GMA's Responses to Ronson's

17

Request for Admissions, ¶¶ 29-30, attached to the Grieco as Ex. L; GMA's Supplemental Responses to Ronson's Request for Admissions, dated February 28, 2008, ¶ 21, attached to the Grieco Decl. as Ex. M; Ronson's Request for Admissions, ¶¶ 23, 29-30, attached to the Grieco Decl. as Ex. K.

Further, on or about March 9, 2001, a cease-and-desist letter was sent from John Bostany on behalf of GMA, to Russe regarding an application by Russe to register CHARLOTTE'S ROOM as a trademark. *See* Grieco Decl., ¶ 22, Ex. N. In the March 9 letter, Mr. Bostany stated that GMA was the owner of the trademark CHARLOTTE and demanded that Russe immediately withdraw its trademark applications for this mark and provide Bostany with confirmation that Russe had ceased and desisted using the name. *Id*.

On or about March 19, 2001, an attorney from Cooley Godward LLP ("Cooley") responded to Mr. Bostany on behalf of Russe. In the March 19 letter, Cooley explained that Russe had been using its CHARLOTTE RUSSE marks in connection with retail store services in the field of women's clothing and accessories since 1975, which was long before GMA's use of any CHARLOTTE-based mark. The March 19 letter explained that all five of the CHARLOTTE RUSSE marks cited in the letter were senior to GMA's use of CHARLOTTE. *See* Grieco Decl., ¶ 23, Ex. O.

The March 19 letter concluded that "[w]hile your letter demands that Charlotte Russe immediately withdraw its trademark applications for CHARLOTTE'S ROOM, these applications are far more similar to our client's earlier registered CHARLOTTE RUSSE marks, than to your client's CHARLOTTE mark. As such, we do not understand how your client can view CHARLOTTE'S ROOM as confusingly similar to CHARLOTTE, yet apparently see no

18

confusion between the CHARLOTTE RUSSE and CHARLOTTE marks." *See* Grieco Decl., ¶ 23, Ex. O.

In the March 19 letter, Russe asserted – as GMA has now admitted – that GMA knew about the CHARLOTTE RUSSE marks prior to filing the applications for the GMA CHARLOTTE Marks. Russe suggested that in light of Russe's senior rights in the CHARLOTTE RUSSE marks, GMA should agree to continue to peacefully coexist with Russe, as it has for several years, and warned that if GMA should disagree and attempt to enforce its rights in the CHARLOTTE mark against Russe's use and registration of CHARLOTTE'S ROOM, Russe intended to vigorously defend any such action and assert its prior rights in the CHARLOTTE RUSSE mark. *See* Grieco Decl., ¶ 23, Ex. O.

GMA immediately caved. Mr. Bostany replied on March 20, 2001 and explained that "to avoid a costly dispute and conserve legal fees, GMA hereby accepts your invitation to continue to 'peacefully coexist' and we will not pursue commence litigation as we were preparing to do and you will not oppose ["GMA's] trademark registration." *See* Grieco Decl., ¶ 24, Ex. P. CHARLOTTE'S ROOM was registered on October 30, 2001, as Registration No. 2,502,628, and is owned by Russe.

CHARLOTTE RONSON is far closer to CHARLOTTE RUSSE and CHARLOTTE'S ROOM than to CHARLOTTE alone. If CHARLOTTE RUSSE and CHARLOTTE'S ROOM are not similar to CHARLOTTE – as GMA conceded – GMA cannot now argue that CHARLOTTE RONSON is similar to CHARLOTTE.

### *CHARLOTTE SAYVILLE*

Moreover, in connection with the prosecution of GMA's own Application No. 75/857,222 for CHARLOTTE related to clothing, when challenged by the USPTO, GMA argued that its

CHARLOTTE mark was **<u>not</u>** confusingly similar with the registered mark CHARLOTTE SAYVILLE for retail store services, in part, because the CHARLOTTE SAYVILLE mark had to be considered as a whole and would not as a result lead to a likelihood of confusion of the public. *See* Grieco Decl., ¶ 25, Ex. Q.

***

As a result, at the time GMA filed its initial CHARLOTTE applications, it knew it could not obtain protection for CHARLOTTE other than as a stand-alone word; and it swore that CHARLOTTE followed or preceded by another word – such as RUSSE, STING, UNC, HORNETS, SAYVILLE or FORD – was not similar to CHARLOTTE alone.  Not only is GMA estopped from denying such an interpretation, but the public – such as Ronson – has an ongoing right to rely on such an interpretation of the mark CHARLOTTE.

GMA must be judicially estopped from now taking a different position.  It is well established that "where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position." *New Hampshire v. Maine,* 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (quoting *Davis v. Wakelee,* 156 U.S. 680, 689, 15 S.Ct. 555, 39 L.Ed. 578 (1895)) (internal quotation marks omitted); *Mitchell v. Washingtonville Cent. Sch. Dist.,* 190 F.3d 1, 6 (2d Cir.1999) ("[t]he purposes of the doctrine are to preserve the sanctity of the oath and to protect judicial integrity by avoiding the risk of inconsistent results in two proceedings") (internal quotations omitted).  A representation to the USPTO can be the basis for judicial estoppel.  *See Yeda Research and Development Co. Ltd. v. Imclone Systems Inc.*, 443 F. Supp. 2d 570, 624 (S.D.N.Y. 2006).

20

For all of those reasons, GMA cannot now argue that CHARLOTTE RONSON is similar to or substantially indistinguishable from CHARLOTTE, because it has previously represented the opposite. GMA should be precluded from arguing that the Injunction enjoined the sale of CHARLOTTE RONSON branded merchandise.

### D.    Judge Swain's Order Is Not Determinative

Despite GMA's assertions to the contrary, Judge Swain's December 20, 2007 Order is not determinative on this Motion.  As set forth above, in assessing an application for contempt, the language within the four corners of an unambiguous consent injunction must clearly and unambiguously prohibit the activity at issue in order for contempt to be found.  *Armour*, 402 U.S. at 682; *Broadcast Music, Inc.*, 275 F.3d at 175; *Canterbury Belts*, 869 F.2d at 38; *O'Rourke*, 943 F.2d at 189; *Schurr*, 719 F.2d at 574.  Since Judge Swain's Order is outside the four corners of the Injunction, it cannot be used to clarify or interpret the Injunction.  What is more, if the Injunction here is ambiguous, reference to BOP's intent to exclude CHARLOTTE RONSON would make the matter even more clear that the Injunction does not bar BOP's use of the CHARLOTTE RONSON mark.  *ITT,* 420 U.S. at 238 n.11.

Here, as set forth in detail above, the Injunction on its face does not refer to CHARLOTTE RONSON.  Thus, the Court cannot look outside the four corners of that document to interpret the meaning of the Injunction and GMA is bound by the Injunction's language for purposes of its Contempt Motion.  Thus, Judge Swain's Order is irrelevant and does not (and cannot) clarify the Injunction.

However, even if reference to Judge Swain's Order were permitted to clarify the meaning of the Injunction, the Order does not indicate that the Injunction clearly and unambiguously

refers to CHARLOTTE RONSON.  Judge Swain simply did not conclude that CHARLOTTE RONSON was included within the scope of the Injunction.

Judge Swain explained in the Order that BOP "proffered CHARLOTTE SOLNICKI, a two-word term with CHARLOTTE as the first word in the term, as an example of 'any marks similar to or substantially indistinguishable' from the term CHARLOTTE" and rejected any effort to limit the language of the Injunction to CHARLOTTE and CHARLOTTE SOLNICKI. *See* Order at 3.  Judge Swain further held that the Rule 68 offer "clearly encompassed more than just the mark CHARLOTTE SOLNICKI" (*id*. at 6) and that "CHARLOTTE SOLNICKI is listed as a single example of a much broader category:  those marks that are **'similar or substantially indistinguishable'** from the mark CHARLOTTE."  *Id*. at 8 (emphasis added).  The Court did not determine whether CHARLOTTE RONSON was in that broader category.

As set forth above, the words "similar to or substantially indistinguishable" from the mark CHARLOTTE cannot apply to the CHARLOTTE RONSON mark, much less do those words "clearly and unambiguously" apply to the CHARLOTTE RONSON mark.  That is an additional independent reason why GMA's Motion should be denied.

### III.  <u>RONSON WAS NOT IN ACTIVE CONCERT OR PARTICIPATION WITH BOP</u>

Even if the Court finds that CHARLOTTE RONSON is similar to or substantially indistinguishable from CHARLOTTE — which it is not – the **<u>Injunction only bars BOP</u>** from engaging in the enjoined activity.  The Injunction only reaches Ronson if Ronson was in active concert or participation with BOP in the use of the CHARLOTTE RONSON mark.  *See* Fed. R.

Civ. P. Rule 65 ("Rule 65").[9]  Ronson plainly was not in active concert and participation with BOP in BOP's use of the CHARLOTTE RONSON mark.

GMA, as the party seeking enforcement of the Injunction, bears the burden of proof of "demonstrating that the persons to be held in contempt are within the scope of the injunction." *See People of the State of New York v. Operation Rescue Nat.*, 80 F.3d 64, 70 (2d Cir. 1996); Rule 65 (to be bound by an injunction, a person must be either a party to the action or an officer, agent, servant, employee, attorney or in active concert or participation with the party); *Vuitton v. Carousel Handbags*, 592 F.2d 126, 129 (2d Cir. 1979).  However, GMA has not presented **any** evidence that Ronson was in active concert or participation with BOP, except for alleging that Ronson sold CHARLOTTE RONSON goods to BOP.  Ronson's sale of CHARLOTTE RONSON goods to BOP does not establish that Ronson was in "active concert or participation" with BOP.

Unlike here, cases in this Circuit interpret "active concert or participation" to exist where a non-party attempts to help the enjoined party to evade an order without repercussions or where an enjoined party attempts to bypass an injunction with a shell company.  *See, e.g., Virgin Enterprises Limited v. American Longevity*, 2001 WL 286753 (S.D.N.Y. March 23, 2001)(active concert and participation is designed to reach situations where defendants "had in mind obeying the injunction themselves but encouraging entities related to them to continue their own pre-injunction conduct"); *Cablevision Sys. Corp. v. Muneyyirci*, 1995 WL 362541, at *2 (E.D.N.Y. June 2, 1995) (enjoined parties used a non-party corporation to sell enjoined items in

---

[9]  The Injunction does not specifically track the language of Rule 65 to include those in "active concert or participation" with BOP, unlike the other consent injunction entered into in the *Eminent* case by defendant Belmondo.  The logical inference therefore is that when BOP made the offer of judgment and when GMA accepted that offer, the intention was only for BOP to be bound by the Injunction.  Nevertheless, even if the "active concert and participation" language is applicable to the Injunction, GMA has not established that Ronson was in active concert or participation with BOP.

23

order to blatantly contravene the court's order); *S.E.C. v. Platinum Investment Corp.*, 98 Fed. Appx. 33 (2d Cir. 2004) (where non-party grandfather transferred and hid assets for his granddaughter, who was party to an injunction freezing those assets, the grandfather was in active concert or participation under Rule 65) (summary order, a copy of which is attached to the Grieco Decl. as Exhibit R); *Marshall v. Local 29*, 1980 WL 2150, at *3 (S.D.N.Y. Apr. 14, 1980) (union and benefit fund were in active concert where the two entities were so intertwined that they occupied the same office and the fund paid the salary of two union employees); *Forschner Group, Inc. v. New Trends*, 1994 WL 708129, at * 7 (D. Conn. Aug. 10, 1994) (where enjoined corporation simply reconstituted itself under a different name, it could not avoid being bound by the injunction).

Here, on the contrary, Ronson made no effort to help BOP evade the Injunction. Rather, Ronson merely filled orders by BOP. That is not active concert and participation. Indeed, until BOP thereafter offered for sale or sold such goods, there was not even an argument that the Injunction was violated. It cannot – and should not – be that a supplier is in active concert or participation with its customer merely by filling orders. Nor is that an affront to an injunction, since total relief is available by compelling compliance by the retailer.

The cases cited by GMA are completely distinguishable from the present factual situation. The Court in *Inwood Laboratories v. Ives*, 456 U.S. 844 (1982), cited by GMA, did not address the application of an injunction to a non-party under Rule 65. Instead, *Inwood* involved the issuance of a preliminary injunction against an alleged trademark infringer. 456 U.S. at 850-51. *Inwood* does not, as GMA suggests, stand for the proposition that a manufacturer or supplier is in "active concert or participation" with a retailer. GMA's reliance on *People of the State of New York v. Operation Rescue Nat.*, 80 F.3d 64 (2d Cir. 1996) is

24

similarly inapposite and in fact makes Ronson's point.  In *Operation Rescue*, the Court simply determined that a successor to an enjoined company is bound by the injunction.  *See Operation Rescue*, 80 F.3d at 70 ("an organization and  its agents may not circumvent a valid court order merely by making superficial changes in the organization's name or form, and in appropriate circumstances a court is authorized to enforce its order against a successor of the enjoined organization").  That is precisely the type of subterfuge that "active concert or participation" is designed to address, and is totally inapplicable here, where Ronson is clearly not a successor or assignee of BOP.

GMA has failed to present any evidence demonstrating that Ronson was in active concert or participation with BOP's alleged violation of the Injunction.  That is yet a final independent reason why Ronson cannot be held in contempt.

## CONCLUSION

For all of the foregoing reasons, GMA's Motion for Contempt should be denied in its entirety.

Dated: New York, New York
     April 11, 2008

Respectfully submitted,

s/ Ira S. Sacks
Ira S. Sacks
Mary L. Grieco
Safia A. Anand
Dreier LLP
499 Park Avenue
New York, NY 10022
(212) 328-6100

Lisa T. Simpson
Orrick, Herrington & Sutcliffe LLP
666 Fifth Avenue
New York, NY 10103
(212) 506-5100
*Attorneys for Sanei Charlotte Ronson LLC*

25