UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
GMA ACCESSORIES, INC.,

                Plaintiff,      07 Civ. 3219 (LTS) (DCF)

      - against -      ECF Case

EMINENT, INC., SAKS FIFTH AVENUE, INC.,      ORAL ARGUMENT REQUESTED
INTERMIX, INC., WINK NYC, INC.,
LISA KLINE, INC., GIRLSHOP, INC.,
SHOWROOM SEVEN STUDIOS, INC.,
JONATHAN SINGER, LEWIS TIERNEY and
JONATHAN SOLNICKI,

                Defendants.
------------------------------------------------------------------x

**MEMORANDUM OF LAW OF BOP, LLC IN OPPOSITION TO
GMA ACCESSORIES, INC.'S CONTEMPT MOTION**

                FRIEDMAN KAPLAN SEILER &
                  ADELMAN LLP
                Robert J. Lack
                Robert D. Kaplan
                Jeffrey R. Wang
                1633 Broadway
                New York, NY 10019-6708
                (212) 833-1100

                Attorneys for Bop, LLC

April 11, 2008

## **TABLE OF CONTENTS**

*Page*

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT….. ..................................................................................................................... 2

    I.    THE INJUNCTION BARS THE SALE ONLY OF ITEMS WITH A MARK THAT IS "SIMILAR TO OR SUBSTANTIALLY INDISTINGUISHABLE" FROM THE CHARLOTTE MARK, *NOT* ALL ITEMS WITH ANY MARK BEGINNING WITH THE WORD "CHARLOTTE" ............................................................................. 2

    II.    GMA'S CONTEMPT MOTION SHOULD BE DENIED BECAUSE IT IS NOT "CLEAR AND UNAMBIGUOUS" THAT CHARLOTTE RONSON IS "SIMILAR TO OR SUBSTANTIALLY INDISTINGUISHABLE" FROM GMA'S CHARLOTTE MARK ........................................................................................ 7

CONCLUSION ...................................................................................................................... 11

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*City of New York v. Local 28, Sheet Metal Workers' Int'l Ass'n*,
　170 F.3d 279 (2d Cir. 1999) .................................................................................... 7

*Colgate-Palmolive Co. v. J.M.D. All-Star Import & Export, Inc.*,
　486 F. Supp. 2d 286 (S.D.N.Y. 2007) ..................................................................... 3

*Genesco Inc. v. Martz*,
　66 U.S.P.Q.2d 1260 (TTAB 2003) .......................................................................... 3

*Gruner + Jahr USA Publ'g v. Meredith Corp.*,
　991 F.2d 1072 (2d Cir. 1993) ................................................................................. 3

*In re Cosvetic Labs.*,
　202 U.S.P.Q. 842 (TTAB 1979) .............................................................................. 3

*In re Hearst Corp.*,
　982 F.2d 493, 25 U.S.P.Q.2d 1238 (Fed. Cir. 1992) ............................................... 3

*King v. Allied Vision, Ltd.*,
　65 F.3d 1051 (2d Cir. 1995) ........................................................................... 6, 7, 8

*Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*,
　885 F.2d 1 (2d Cir. 1989) ........................................................................................ 8

*Marshall Field & Co. v. Mrs. Fields Cookies*,
　25 U.S.P.Q.2d 1321 (TTAB 1992) .......................................................................... 4

*Monsanto Chem. Co. v. Perfect Fit Prods. Mfg. Co.*,
　349 F.2d 389 (2d Cir. 1965) ................................................................................... 8

*Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*,
　369 F.3d 645 (2d Cir. 2004) ................................................................................... 8

*Paul Sachs Originals Co. v. Sachs*,
　325 F.2d 212 (9th Cir. 1963) .................................................................................. 4

*Perez v. Danbury Hosp.*,
　347 F.3d 419 (2d Cir. 2003) ......................................................................... 5, 7, 10

*Rob Roy Co. v. Thurman Mfg. Co.*,
　173 U.S.P.Q. 31 (CCPA 1972) ................................................................................ 4

*Page(s)*

*Robert Hall Clothes, Inc. v. Studds*,
    128 U.S.P.Q. 542 (CCPA 1961) ................................................................................. 4

*Stern-Slegman-Prins Co. v. Independent Retailers Syndicate*,
    126 U.S.P.Q. 26 (TTAB 1960) ................................................................................... 4

*United States v. Int'l Bhd. of Teamsters,
    Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*,
    723 F. Supp. 203 (S.D.N.Y. 1989) ............................................................................. 3

**PRELIMINARY STATEMENT**

The extreme sanction of contempt is appropriately imposed only where a party has violated a "clear and unambiguous" order of the Court. This is not such a case. Bop, LLC ("Bop") was enjoined from selling clothing with "the mark CHARLOTTE or any marks similar to or substantially indistinguishable therefrom, including the mark CHARLOTTE SOLNICKI." Bop is *not* selling "Charlotte" or "Charlotte Solnicki" items; it is selling Charlotte Ronson products. It is certainly not clear and unambiguous that CHARLOTTE RONSON is similar to or substantially indistinguishable from CHARLOTTE – no court has found it to be so and, as a matter of common sense, the marks are no closer than "George" and "George Washington." It is certainly not clear and unambiguous, therefore, that the injunction bars Bop from selling Charlotte Ronson products.

GMA Accessories, Inc. ("GMA") bases its motion on the theory that the injunction bars Bop from selling any product with a two-word name beginning with Charlotte. That, however, is not what the injunction says. The injunction bars the sale only of items with a mark that is similar to or substantially indistinguishable from CHARLOTTE, and there is no basis in the language of the injunction or in the law for the conclusion that *any* two-word mark including "Charlotte" is *per se* similar or substantially indistinguishable. Such a conclusion would do violence to the well-established meaning of "similar to or substantially indistinguishable from" – trademark terms of art. Such a conclusion also would be unreasonable, capturing, to give a single example, sports clothing with the name of the Charlotte Bobcats basketball team.

600267.5

The question whether CHARLOTTE RONSON is similar to or substantially indistinguishable from CHARLOTTE is anything but clear and unambiguous. Indeed it is the subject of a plenary litigation before Judge Sweet between GMA and the owner of the CHARLOTTE RONSON mark. If Judge Sweet were to hold that the marks *were* substantially indistinguishable, and if Bop were *thereafter* to sell Charlotte Ronson products, GMA would have a predicate for seeking contempt. But in the absence of such a ruling, and in a context where the issue is obviously in dispute, it cannot be said that the injunction at issue here, which bars only the sale of products with similar or substantially indistinguishable marks, "clearly and unambiguously" prohibited Bop from selling Charlotte Ronson products. Accordingly, GMA's contempt motion should be denied.

## ARGUMENT

I. **THE INJUNCTION BARS THE SALE ONLY OF ITEMS WITH A MARK THAT IS "SIMILAR TO OR SUBSTANTIALLY INDISTINGUISHABLE" FROM THE CHARLOTTE MARK, *NOT* ALL ITEMS WITH ANY MARK BEGINNING WITH THE WORD "CHARLOTTE"**

The injunction provides that Bop:

> is permanently enjoined from using the mark CHARLOTTE or any marks similar to or substantially indistinguishable therefrom, including the mark CHARLOTTE SOLNICKI, in connection with the sale, purchase, offering for sale, display, transfer, marketing, advertising or distribution of unauthorized clothing or related merchandise.

(Scott Decl. Ex. A (Oct. 18, 2007 Judgment and Order).) This language is plain; the injunction bars the sale *only* of those items with marks that are "similar to or substantially indistinguishable" from the CHARLOTTE mark.

To determine whether a given product falls within the injunction, then, the Court must decide whether the product's mark – here CHARLOTTE RONSON – is

600267.5                                    2

"similar to or substantially distinguishable" from GMA's CHARLOTTE mark. And because the terms "similar" and "substantially indistinguishable" are terms of art in trademark law, they must be read consistent with that law. *See United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 723 F. Supp. 203, 206 (S.D.N.Y. 1989) (in labor law litigation, court incorporated labor law definition of term of art "supervise"). GMA cannot satisfy that trademark law test simply by noting that the word "Charlotte" is shared by both marks and then arguing that any two-word mark starting with Charlotte is automatically similar to or substantially indistinguishable from its own mark. Rather, the fact-intensive analysis here requires, *inter alia*, evidence of likelihood of customer confusion or the inability of an average consumer to differentiate between the two marks. *See, e.g., Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1078 (2d Cir. 1993) ("In assessing similarity, courts look to the overall impression created by the logos and the context in which they are found and consider the totality of factors that could cause confusion among prospective purchasers."); *Colgate-Palmolive Co. v. J.M.D. All-Star Import & Export, Inc.*, 486 F. Supp. 2d 286, 291 (S.D.N.Y. 2007) ("cases applying the 'substantially indistinguishable' test are inherently fact intensive" and center around whether the marketplace can differentiate between the two items).[1]

---

[1] *Accord In re Hearst Corp.*, 982 F.2d 493, 25 U.S.P.Q.2d 1238, 1239 n.2 (Fed. Cir. 1992) (citing the "fact-dependency" of determinations of whether two marks are similar); *In re Cosvetic Labs.*, 202 U.S.P.Q. 842, 844 (TTAB 1979) ("it is axiomatic that each case must be decided on its own particular facts"). *See also Genesco Inc. v. Martz*, 66 U.S.P.Q.2d 1260, 1269 (TTAB 2003) ("[I]t is well settled that marks must be considered in their entireties, not dissected or split into component parts and each part compared with other parts. This is so because it is the entire mark which is perceived by the purchasing public, and therefore, it is the entire mark that must be compared to any other mark.") (citations omitted).

The case law includes many examples of situations in which marks that share a common word have been found to be dissimilar. For example, in *Stern-Slegman-Prins Co. v. Independent Retailers Syndicate*, 126 U.S.P.Q. 26 (TTAB 1960), a case with facts similar to those here, the registrant of the mark DEBBY ROSE for ladies' coats and suits opposed the registration of the mark A DEBBIE YOUNG EXCLUSIVE for women's apparel. The U.S. Patent and Trademark Office Trademark Trial and Appeal Board ("TTAB") rejected the argument that the use of a common first name (like Charlotte here) rendered the two marks similar:

> The primary resemblance between the marks of the parties lies in the names "DEBBIE" and "DEBBY". Considering, however, that these names are commonplace first names, purchasers would be likely to rely upon the marks here involved in their entireties in identifying and distinguishing the products sold thereunder; and the differences between applicant's mark comprising the notation "A DEBBIE YOUNG EXCLUSIVE" and "DEBBY ROSE" are sufficient to obviate any likelihood of confusion, mistake or deception of purchasers.

*Id.* at 27. *See Rob Roy Co. v. Thurman Mfg. Co.*, 173 U.S.P.Q. 31, 31 (CCPA 1972) (finding ROB SCOT not to be similar to ROB ROY); *Robert Hall Clothes, Inc. v. Studds*, 128 U.S.P.Q. 542, 543 (CCPA 1961) (rejecting similarity based on common surname; ROSE HALL not similar to ROBERT HALL); *see also Paul Sachs Originals Co. v. Sachs*, 325 F.2d 212, 215 (9th Cir. 1963) (SACHS OF CALIFORNIA not similar to PAUL SACHS ORIGINAL or DON SACHS ORIGINAL); *Marshall Field & Co. v. Mrs. Fields Cookies*, 25 U.S.P.Q.2d 1321, 1331-32 (TTAB 1992) (MRS. FIELDS not similar to MARSHALL FIELD'S; "purchasers are accustomed to distinguishing between such common surnames by whatever slight differences may exist in the marks as a whole").

The inclusion of the words "including the mark CHARLOTTE SOLNICKI" in the injunction language does not alter (much less render unnecessary) the

analysis required to determine whether other marks fall within the injunction. GMA's argument that the reference to CHARLOTTE SOLNICKI should be interpreted to mean that any two-word mark starting with Charlotte is captured by the injunction fails for several reasons.

*First*, the injunction simply does not say that. The law is clear that the scope of a consent injunction "must be discerned within its four corners," *see Perez v. Danbury Hosp.*, 347 F.3d 419, 424 (2d Cir. 2003) (citing *United States v. Armour & Co.*, 402 U.S. 673, 682 (1971)), and the injunction here does *not* say that all two-word names containing "Charlotte" are infringing. To read into the injunction a prohibition against *all* two-word names with "Charlotte" in them would reach well beyond the four corners of the injunction.

*Second*, and in a similar vein, GMA's proposed interpretation would eviscerate the operative language of the injunction, which prohibits only the sale of those items with a mark that is "similar to or substantially indistinguishable" from GMA's CHARLOTTE mark. By extending the injunction to all two-word names with "Charlotte" in them – regardless of whether they are "similar to or substantially indistinguishable" from the CHARLOTTE mark – GMA would render the essential language of the injunction meaningless. The law simply does not countenance this sort of rewriting of the parties' agreement. *See Perez*, 347 F.3d at 424 (court must determine scope of the agreement within its four corners, "and not by reference to what might satisfy the purposes of one of the parties to it").

*Third*, the circumstances leading to the inclusion of CHARLOTTE SOLNICKI in the injunction are unique to that mark, and have no bearing whatsoever on

whether Charlotte *Ronson* is "similar to or substantially indistinguishable." The lawsuit in which the instant injunction issued centered around the sale of Charlotte Solnicki products. Notably, unlike Charlotte Ronson products, the Charlotte Solnicki products previously were sold under the single name "Charlotte." *See* Declaration of Jeffrey R. Wang, Apr. 11, 2008 ["Wang Decl."], Ex. A. When the parties resolved the case, they intended to be clear that the consent injunction would reach CHARLOTTE SOLNICKI and, for that reason, they said so explicitly. Thus, the injunction means what it *does* say, that Charlotte Solnicki products are within its scope. It does *not* mean what it does *not* say – that any two-word mark starting with Charlotte is automatically captured as well.

*Fourth*, GMA's proffered interpretation would be absurd. Under GMA's interpretation, the injunction would apply to clothing promoting, for example, the Charlotte Bobcats sports team or the city of Charlotte, North Carolina. And it would bar the sale of other trademarked clothing products like CHARLOTTE RUSSE (U.S. Registration No. 2,416,273); CHARLOTTE STING (U.S. Registration Nos. 2,232,708 & 2,234,946); CHARLOTTE FORD (U.S. Registration No. 1,098,854); and CHARLOTTE CHECKERS (U.S. Registration No. 2,090,707). *See* Wang Decl. Ex. B.

Finally, although the only document relevant to a contempt determination is the injunction itself, *see King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995) (the parties' agreement is the "sole source of the parties' rights"), it bears noting that the Court's opinion in this case confirms the need for a case-by-case determination of infringement, rather than a sweeping inclusion of all two-word names with Charlotte in them. In its December 20, 2007 Order, the Court rejected the notion that the injunction covered only CHARLOTTE SOLNICKI, but it did *not* hold that the injunction extended

to Charlotte Ronson or that all two-word names including Charlotte are covered. Rather, the Court underscored that the question in each case is whether the challenged mark is or is not "similar to or substantially indistinguishable" from the GMA mark:

> In the Rule 68 offer's injunction term, CHARLOTTE SOLNICKI is listed as a single example of a much broader category: those marks that are "similar or substantially indistinguishable" from the mark CHARLOTTE. *To read the offer to encompass only those products with the CHARLOTTE or CHARLOTTE SOLNICKI mark, would be to render meaningless the language surrounding those terms in the Offer of Judgment.* The Court refuses to reduce the Defendant's chosen language: "CHARLOTTE or any marks similar to or substantially indistinguishable therefrom, including the mark CHARLOTTE SOLNICKI" to but four words: CHARLOTTE or CHARLOTTE SOLNICKI.

(Scott Decl. Ex. B (December 20, 2007 Order) at 8 (emphasis added).) In sum, the Court's opinion made clear that the class of "similar or substantially indistinguishable" marks is larger than just CHARLOTTE SOLNICKI, but it did *not* prejudge any other mark or suggest that any two-word mark with Charlotte in it would automatically be deemed part of that class.

**II.   GMA'S CONTEMPT MOTION SHOULD BE DENIED BECAUSE IT IS NOT "CLEAR AND UNAMBIGUOUS" THAT CHARLOTTE RONSON IS "SIMILAR TO OR SUBSTANTIALLY INDISTINGUISHABLE" FROM GMA'S CHARLOTTE MARK**

As even the cases GMA cites acknowledge, the imposition of contempt is a "potent weapon" that courts should not use lightly. *See King*, 65 F.3d at 1058 (cited in GMA Br. at 3); *see also Perez*, 347 F.3d at 423 (district court's contempt power is "narrowly circumscribed"). For that reason, "[a] party may be held in contempt only if it is proven by 'clear and convincing' evidence that the party violated a 'clear and unambiguous' order of the court." *City of New York v. Local 28, Sheet Metal Workers' Int'l Ass'n*, 170 F.3d 279, 282-83 (2d Cir. 1999) (citing *EEOC v. Local 638*, 81 F.3d 1162, 1171 (2d Cir. 1996)); *see also Perez*, 347 F.3d at 423. As the Second Circuit held

in *King*, "a clear and unambiguous order is one that leaves no uncertainty in the minds of those to whom it is addressed . . . , who must be able to ascertain from the four corners of the order precisely what acts are forbidden." 65 F.3d at 1058 (internal citations and quotations omitted).[2] GMA cannot satisfy that test here.

For all of the reasons set forth in Part I, *supra*, the injunction cannot be read to apply to *all* two-word names beginning with Charlotte, and violations of the injunction must be determined on a case-by-case basis. The question thus becomes whether the CHARLOTTE RONSON mark is so "clear[ly] and unambiguous[ly]" "similar to or substantially indistinguishable" from the CHARLOTTE mark that a contempt finding is justified. It is not.

The lack of clarity and existence of ambiguity is especially strong in this case because the TTAB recently observed, in denying summary judgment to GMA in a proceeding between GMA and the owner of the CHARLOTTE RONSON mark:

> [G]enuine issues of material fact exist as to the similarity or dissimilarity of the commercial impressions of the marks at issue and the strength of opposer's [GMA's] pleaded marks and applicant's [Charlotte Ronson's] applied-for marks. In addition, applicant's evidence of third-party

---

[2] The *King* case, which GMA cites, in fact supports Bop's position. In *King*, the Second Circuit found that the District Court had erred in holding the defendant in contempt for failing to undertake efforts not clearly required by the parties' consent decree. 65 F.3d at 1060-61. The other cases cited by GMA similarly provide no support for its argument. *Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1 (2d Cir. 1989), is inapposite because in that case – unlike here – the defendant did not dispute that its actions violated the parties' consent decree. Similarly, in *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655-56 (2d Cir. 2004), the Court found that the contemnor could not seriously dispute that, by failing to dismiss its parallel lawsuit, it failed to comply with the Court's order that it do so. Lastly, although GMA cites *Monsanto Chem. Co. v. Perfect Fit Prods. Mfg. Co.*, 349 F.2d 389 (2d Cir. 1965), for the proposition that "a contempt plaintiff is entitled to defendant's profits without submitting direct proof of injury" (GMA Br. at 3-4), the *Monsanto* case did not even involve a contempt finding.

> registrations that share a common name in the fashion industry raises a genuine issue of material fact regarding the perception of prospective consumers of applicant's and opposer's marks.

*GMA Accessories, Inc. v. Sanei Charlotte Ronson, LLC*, Nos. 91167353, 91168148, 91172117, at 7-9 (TTAB Nov. 6, 2006) (Wang Decl. Ex. C) (footnote omitted).

While Bop believes that the CHARLOTTE RONSON mark is *not* "similar to or substantially indistinguishable" from the CHARLOTTE mark, the Court need not resolve that question. On this contempt motion, the only issue is whether it is "clear and unambiguous" that the marks are, in fact, similar or substantially indistinguishable. GMA's bare-bones motion does not – and cannot – carry the heavy burden of proving that. It offers no evidence to demonstrate that CHARLOTTE RONSON is similar to or substantially indistinguishable from CHARLOTTE, let alone to prove that it is "clearly and unambiguously" so.

It is not sufficient that the Court held that the language of the injunction is "not ambiguous" for the purpose of declining to vacate the injunction as a whole under Rule 60. (*See* Scott Decl. Ex. B, at 6.) The question here is not whether the words "similar to or substantially indistinguishable" have a generally understood meaning, but whether the application of that test to a specific pair of marks – here, CHARLOTTE and CHARLOTTE RONSON – has a clear and unambiguous result. As the Court of Appeals stated in vacating a contempt order:

> In its summary analysis of the first contempt element, the district court reasoned that the consent decree was "clear and unambiguous" because the court had so held in 1996. However, the court appeared to rule in a vacuum and failed to evaluate whether the order was "clear and unambiguous" *with reference to the conduct in question*. In conducting this analysis ourselves, we cannot agree that the Decree "clear[ly] and unambiguous[ly]" prohibited the Hospital from [engaging in the challenged conduct].

*Perez*, 347 F.3d at 424 (emphasis added).  The point here is precisely the same.  The applicable standard – "similar to or substantially indistinguishable" – is clear.  The application of that standard to CHARLOTTE RONSON is not.

GMA has offered no evidence to prove that the marks are clearly and unambiguously similar or substantially indistinguishable and it could not, in any event, make that showing.  CHARLOTTE and CHARLOTTE RONSON are simply not that close.  Moreover, it is telling that Belmondo, another entity that agreed to the same injunctive language as Bop (*see* Wang Decl. Ex. D), has interpreted the injunction in precisely the same way.  Belmondo has removed the Charlotte Solnicki items from its website, www.girldujour.com, but it continues to sell Charlotte Ronson products.  (See Wang Decl. Ex. D (Apr. 10, 2008 printout from Belmondo's Web site, showing Charlotte Ronson products for sale).)  Belmondo's conduct in the face of the same injunctive language is further evidence that a reasonable person would not believe that the Charlotte Ronson items are covered by the injunction, let alone that they are "clear[ly] and unambiguous[ly]" covered.

Finally, although GMA makes no mention of it, there is plenary litigation before Judge Sweet between GMA and Sanei Charlotte Ronson, LLC, the owner of the CHARLOTTE RONSON mark.  *See Sanei Charlotte Ronson LLC v. GMA Accessories, Inc.*, 07 Civ. 9578 (RS) (DCF).  That case specifically addresses whether GMA's CHARLOTTE mark is similar to or substantially indistinguishable from the CHARLOTTE RONSON mark.  The very pendency of that litigation is further proof that that the question remains undecided and is not "clear and unambiguous."

*     *     *

This Court need not and should not decide the issue of the similarity between the two marks in the context of this motion. *First,* for the reasons stated above, contempt would not be warranted even if the Court ultimately found that the marks were similar or substantially indistinguishable because that would not have been "clear and unambiguous." *Second,* the proceedings necessary to decide the issue would be duplicative of the proceedings before Judge Sweet. If it is ultimately determined – in the litigation between GMA and Sanei – that CHARLOTTE RONSON infringes GMA's mark, then, if Bop continues to sell Charlotte Ronson products, a contempt motion might be warranted. For the purposes of this contempt motion, however, it is sufficient that, to date, the application of the injunction to Charlotte Ronson products is anything but clear or unambiguous.

## CONCLUSION

For the reasons set forth above, this Court should deny GMA's contempt motion.

Dated:   New York, New York
        April 11, 2008

Respectfully submitted,

FRIEDMAN KAPLAN SEILER &
  ADELMAN LLP

s/ Robert J. Lack
Robert J. Lack
Robert D. Kaplan
Jeffrey R. Wang
1633 Broadway
New York, NY 10019-6708
(212) 833-1100

Attorneys for Bop, LLC