Ira S. Sacks
Robert J. Grand
DREIER LLP
499 Park Avenue
New York, New York 10022
(212) 328-6100

*Attorneys for Defendants Eminent, Inc.,*
*Saks Fifth Avenue, Inc., Intermix, Inc.,*
*Wink NYC, Inc., Lisa Kline, Inc., Lewis Tierney*
*and Jonathan Singer*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
                                                                               :

GMA ACCESSORIES, INC.,                          :

                                   Plaintiff,                     :        **DECLARATION OF**
                                                                :        **ROBERT J. GRAND IN**
       v.                                    :        **SUPPORT OF MOTION**
                                                                :        **FOR SANCTIONS**

CHARLOTTE SOLNICKI, CHARLOTTE B, LLC, :
EMINENT, INC., SAKS FIFTH AVENUE, INC.,  :
INTERMIX, INC., WINK NYC, INC.,            :
LISA KLINE, INC., GIRLSHOP, INC.,           :        07 CV 3219 (LTS) (DF)
SHOWROOM SEVEN STUDIOS, INC.,          :
ELECTRIC WONDERLAND, INC.,              :
SHOWROOM SEVEN INT'L, SHOWROOM  :
SEVEN, JONATHAN SINGER, GOSI          :
ENTERPRISES, LTD., TIERNEY DIRECT, LLC :
and JONATHAN SOLNICKI,                     :
                               Defendants,          :
                                                      :
---------------------------------------------------------------x

        Robert J. Grand, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury as follows:

        1.      I am an attorney at the firm Dreier LLP, counsel for Defendants Eminent, Inc. ("Eminent"), Saks Fifth Avenue, Inc. ("Saks"), Intermix, Inc. ("Intermix"), Wink NYC, Inc. ("Wink"), Lisa Kline, Inc. ("Lisa Kline"), Jonathan Singer ("Singer") and Lewis Tierney

("Tierney") (collectively, the "Retailer Defendants"). I submit this Declaration in support of the Retailer Defendants' motion for sanctions pursuant to Federal Rule of Civil Procedure Rule 37, 28 U.S.C. § 1927 and the inherent power of the Court (*see Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). Other than as expressly set forth, I have personal knowledge as to all facts set forth herein.

2.      The Motion arises from a number of very serious acts of professional misconduct committed by Plaintiff's counsel, principally in connection with the deposition of third party Charlotte B, LLC ("Charlotte B"), which occurred on March 7, 2008. As detailed below, the conduct of Plaintiff's counsel evidences a considerable fraud perpetrated on this Court and may very well warrant disciplinary action.

**Counsel's Professional Misconduct**

3.      At the discovery conference before Judge Freeman on Friday, March 14, I explained to the Court that, upon reviewing the Charlotte B deposition transcript that morning, I noticed that the last entry on the record is a statement by Plaintiff's counsel, John Bostany, which reads:

> MR. BOSTANY: The time is now 1:00. Mr. Paltrowitz and I are here. Mr. Grand and the witness are not. So we have no choice but to adjourn.

That statement is followed by the reporter's parenthetical:

> (Whereupon, at 1:00 p.m. the Examination of this Witness was adjourned.)

4.      As I further explained to Judge Freeman, this statement on the record by Mr. Bostany was untrue, because the Charlotte B witness, Melina Solnicki, and I were in Mr. Bostany's office at 1:00 p.m. (in fact we were there before 1:00 p.m.). As I stated in Court on March 14, Ms. Solnicki and I returned to the Bostany Law Firm's office building after lunch at

approximately 12:45. Upon entering the building, I proceeded through the small lobby toward the security guard standing before the elevator banks to the upper floors. Ms. Solnicki, who was walking just behind me, was stopped by the security guard and was asked to obtain a new security pass because she had misplaced the pass she obtained earlier that morning. Records from the security desk at 40 Wall Street indicate that Ms. Solnicki obtained her replacement security pass at 12:54 p.m. *See* Exhibit A hereto.

5. Ms. Solnicki and I then proceeded to the elevators and up to Mr. Bostany's office. When we arrived, the time was not yet 1:00 p.m. The reception area was unattended and I observed that the conference room where the deposition had taken place was dark and the reporter and her equipment were not there. I let myself in to the office and walked the halls until I found Mr. Bostany in his office sitting at his desk.

6. I then asked Mr. Bostany where the reporter was and if he intended to continue at 1:00 p.m. with his questioning of the witness. Mr. Bostany told me that he instructed the reporter to leave for the day because he believed that I was not going to return with the witness for the continuation of the deposition at 1:00 p.m.[1] He asked me if the witness had returned to

---

[1] As the transcript from the deposition makes plain, there was no reasonable basis for Mr. Bostany to believe that Ms. Solnicki and I were not going to return at 1:00 p.m. for the continuation of the deposition. Following an off the record conversation, Mr. Bostany stated on the record: "Mr. Grand just indicated that we shouldn't bother waiting around for him because he is definitely not going to be back at 1:00." *See* Excerpts from the Charlotte B Deposition transcript, annexed hereto as Exhibit B, at p. 70, ln. 20. I then stated (Ex. B, pp. 70-71):

> That's not what I said. I didn't tell him not to bother. What I said was, is that we have tried to reach the judge for hours now. It is apparent that the judge is not in chambers and cannot attend to our matters at the moment. And Mr. Bostany has indicated that he has no further questions.
>
> So, because he has no further questions of the witness and is merely waiting for rulings from the judge on the questions he asked, and since the judge is not there, it makes no sense to keep this witness here any longer today to wait for these rulings.
>
> So, I do not think that it makes sense to continue the deposition and take a lunch break and come back for an answer that we don't have.

Mr. Bostany apparently changed his mind about whether he had further questions for Ms. Solnicki and responded, as follows (Ex. B, pp. 71-72):

3

the office with me and I told Mr. Bostany that she had and that she was waiting in the reception area. I then reminded Mr. Bostany that he had stated on the record that he and the court reporter would be in the conference room at 1:00 p.m.² **I asked Mr. Bostany if he had re-opened the record after we broke for lunch and he said that he did not**. This was the first of several lies told to me by Mr. Bostany in his effort to perpetrate a fraud on this Court.

7.   I then asked Mr. Bostany if he had more questions for the witness, as he had stated on the record (*see* Ex. B, pp. 71-72) and he said that he did wish to question her further. I suggested that Mr. Bostany contact the reporter and ascertain whether she could return for the continuation of the deposition. Mr. Bostany asked me and the witness to wait in the reception area while he attempted to reach the court reporter.

8.   After 10 or 15 minutes passed, I asked the receptionist to find out whether Mr. Bostany had been able to reach the court reporter.³ A few minutes later, Mr. Paltrowitz emerged

---

> I am sorry for the confusion. I have further questions and I would like to ask them at 1:00 p.m. Again, when I said I can't force you to stay, what I meant was, is that the court reporter and I are going to be here at 1:00. I can't physically force you to be here at 1:00. All I can say is that at 1:00, we are going to note your non-appearance.

I then asked Mr. Bostany to clarify on the record his apparent change of mind about his desire to ask more questions of Ms. Solnicki and suggested that if indeed he did have more questions that we proceed with the questions then, rather than take a lunch break. Mr. Bostany refused to respond to my request for clarification or my suggestion to proceed with the questioning through the lunch hour. *See* Ex. B, pp. 72-73.

Accordingly, as the record makes plain, although I did not believe that a lunch break was necessary and so indicated my client's preference for proceeding with the questioning through the lunch hour, once Mr. Bostany indicated his intention to further question Ms. Solnicki at 1:00 p.m., there was no indication from me, on or off the record, that neither I nor the witness would not return for the continuation of the deposition at 1:00 p.m.

² *See* Ex. B, pp. 71-72.

³ The receptionist, whom I believe is a woman named Charen Kim, submitted a declaration dated March 19 in which she too made several false statements. A true and correct copy of the Declaration of Charen Kim is annexed hereto as Exhibit C. Ms. Kim states in paragraph 2 of her declaration that she was present at the time the Charlotte B deposition broke for lunch. That statement is false. The only people in the conference room during the deposition were me, Ms. Solnicki, Mr. Bostany, his colleague, Mr. Paltrowitz and the court reporter. Ms. Kim was never in the room. Accordingly, there is no basis for Ms. Kim's patently false statement in paragraph 3 of her declaration that I left and indicated that I was not going to return.

4

from the office hallway and informed me and Ms. Solnicki that neither he nor Mr. Bostany was able to reach the court reporter and that, in any event, Mr. Bostany did not have any further questions for the witness and that we were free to leave. Mr. Paltrowitz spoke a few words in Spanish to Ms. Solnicki and then we left the building.[4]

9. When questioned about this incident by Judge Freeman in Court on March 14, Mr. Bostany said only that Ms. Solnicki and I had returned to his office after 1:00 p.m., and after the court reporter had left for the day. Judge Freeman directed that a telephone conference be held to further discuss this issue.

10. In his Declaration filed on March 17, however, Mr. Bostany admitted that he did, in fact, release the court reporter shortly after we broke for lunch at noon – far before 1 pm. Mr. Bostany also admitted, most critically, that he instructed the court reporter to place a statement on the record with the intention of creating the false impression that he and the court reporter were in his office conference room at 1:00 p.m. for the continuation of the Charlotte B deposition and that Ms. Solnicki and I were not there. A copy of Mr. Bostany's March 17 Declaration is annexed hereto as Exhibit E.

11. Such blatant dishonesty is itself inexcusable, but Mr. Bostany's machinations did not end there.

12. During a telephone conference with the Court on March 19, Judge Freeman asked

---

Further, Ms. Kim's statement in paragraph 5 of her declaration that I showed up with Ms. Solnicki <u>after</u> 1 pm and that I spoke with Mr. Bostany for 10 seconds is also false. As noted above, when Ms. Solnicki and I returned to the Bostany Law Firm's office, the reception area was empty. Ms. Kim was not there. There is, therefore, no basis for Ms. Kim to state that we did not show up until after 1 pm. In addition, Ms. Kim could not have observed the entire conversation between me and Mr. Bostany because, when Mr. Bostany escorted me from his office to the reception area following our conversation, Ms. Kim was seated at her desk in the reception area when I walked through the door with Mr. Bostany. My conversation with Mr. Bostany took place out of sight and hearing of the reception area. In any event, the conversation with Mr. Bostany lasted several minutes, not 10 seconds.

[4] This recitation of the events of March 14, 2008 is corroborated by Melina Solnicki in her March 18, 2008 Declaration, a copy of which is annexed hereto as Exhibit D.

Mr. Bostany to explain the events that transpired at the Charlotte B deposition after Ms. Solnicki and I left for the lunch break. Mr. Bostany again acknowledged that he did indeed instruct the court reporter to leave shortly after we broke for lunch with instructions to insert a "sound bite" into the record at 1:00 p.m. noting my non-appearance. Judge Freeman asked Mr. Bostany to clarify that his plan (which he stated was the court reporter's idea) was for the court reporter to leave the deposition shortly after we broke for lunch and then hold the sound bite until 1:00 p.m., at which time Mr. Bostany was to call the court reporter and confirm that I had not returned to his office for the continuation of the deposition. **<u>Mr. Bostany confirmed to Judge Freeman that that was the plan and then told Judge Freeman that he did call the court reporter at 1:00 p.m., noted my non-appearance and instructed the court reporter to insert the "sound bite" into the record.</u>** As I would later learn, this was yet another lie perpetrated upon the Court by Mr. Bostany.

13.   On March 14, I wrote a letter to the court reporting company seeking an explanation from the court reporter of the events that transpired after I left the deposition for the lunch break on March 7. A copy of my March 14 letter is annexed hereto as Exhibit F. Apparently, the court reporting company sent an email response to my letter on Tuesday, March 18, but because the name of the Dreier firm was misspelled in the "To" line, the email was not delivered to me at that time. The email from the court reporting company indicates that it was sent to Mr. Bostany at 3:11 p.m. on March 18. A copy of the response from the court reporting company is annexed hereto as Exhibit G.

14.   In its response, the court reporting company explained that the reporter went off the record at 12:07 p.m. while both lawyers were present, but that Mr. Bostany placed a statement on the record at 12:09 p.m. after Ms. Solnicki and I had left the office for lunch. The

court reporting company explained that Mr. Bostany's statement was taken correctly, but that the parenthetical in the original transcript following Mr. Bostany's statement was incorrect. In response to my March 14 letter, the court reporter reviewed and revised the transcript. The corrected transcript, which is annexed hereto as Exhibit H, now reads as follows:

> MR. BOSTANY: The time is now 1:00. Mr. Paltrowitz and I are here. Mr. Grand and the witness are not. So we have no choice but to adjourn.

That statement is now followed by the reporter's parenthetical:

> (Whereupon, at **12:09 p.m.** the Examination of this Witness was adjourned.) (emphasis added).[5]

15.  In view of the foregoing, it is apparent that Mr. Bostany has made several misrepresentations to counsel and to the Court, including the following:

- Mr. Bostany lied to me on March 7 when he told me that he did not reopen the record after we broke for lunch at noon. We now know that Mr. Bostany reopened the record and placed a false statement on the record at 12:09.

- Mr. Bostany lied to this Court on March 14 when he knowingly and intentionally determined not to disclose the facts that (i) he reopened the record and placed a statement on the record when I was no longer present in the deposition; (ii) he instructed the court reporter to leave shortly after noon, and not at 1:00 p.m. before I allegedly returned to the office.

- Mr. Bostany lied in his March 17 Declaration wherein he stated that the court reporter "was released with a sound bite to be instituted in the record at 1 p.m." We now know that Mr. Bostany placed this statement on the record in the presence of the court reporter at 12:09 p.m., after Ms. Solnicki and I had left for the lunch break.

- Mr. Bostany lied to the Court during the March 19 telephone conference when, in response to Judge Freeman's request for an explanation of what happened on March 7 during the lunch break, he stated that the plan was to provide a "sound bite" to the court reporter to be inserted into the record at

---

[5] I first learned of the court reporting company's March 18 response during a telephone call with one of its principals that took place on March 19, just <u>after</u> the telephone conference with Judge Freeman. Had I known about the existence of this email and of the corrected transcript, I would have brought those facts to the Court's attention during the March 19 telephone conference call with Judge Freeman.

1:00 p.m., and that he was to call the court reporter at 1:00 p.m. to confirm my non-appearance at that time and authorize the insertion of the "sound bite" into the record.[6] We now know that Mr. Bostany placed this statement on the record in the presence of the court reporter at 12:09 p.m., after Ms. Solnicki and I had left for the lunch break.

- Mr. Bostany lied to the Court during the March 19 telephone conference when he stated that he, in fact, called the court reporter at 1:00 p.m. to confirm my non-appearance and at that time instructed the court reporter to insert the "sound bite" into the record.

- Mr. Bostany lied to me and to the Court during the March 19 telephone conference when he knowingly and intentionally failed to disclose that he had received an email from the court reporting company the previous day which (i) explained, in part, how Mr. Bostany's statement came to appear in the record, (ii) explained how the error in the parenthetical came to appear in the record, and (iii) attached a revised and corrected version of the transcript.[7]

16. Plaintiff's counsel's blatant efforts to falsify the record and thereafter deceive counsel and this Court are clearly at odds with his obligations under the Federal Rules of Civil Procedure and the ethical rules governing attorney conduct during the course of litigation.[8]

17. Indeed, Plaintiff's counsel's intentional bad faith conduct continues unabated to this day, as he has made no effort to apprise the Court of the corrected transcript indicating that the court reporter inserted the so called "sound bite" into the record at 12:09 p.m., not at 1:00

---

[6] In addition, based on my brief conversations with the principal of the court reporting company, with the court reporter herself and with the court reporter's counsel, I understand that the suggestion that Mr. Bostany could place a "sound bite" on the record at 1:00 p.m. outside my presence and after the court reporter had left the deposition, did not emanate from the court reporter, but rather from Mr. Bostany.

[7] Ms. Kim lied yet again in her March 19 Declaration, wherein she stated in paragraph 4 that it was the court reporter who "suggested that if the questioning attorney wanted to place anything on the record at 1 p.m., it could be done by sound bite at that time to be inserted at 1 p.m. if and when Mr. Grand did not return." As set forth above, I understand that this suggestion did not come from the reporter but rather from Mr. Bostany, and that Mr. Bostany did not even follow this "suggested" procedure, but instead placed his statement on the record at 12:09 p.m. in my absence, and not, as the court reporter allegedly suggested according to Ms. Kim, at 1 p.m. upon confirmation that I did not return to the deposition.

[8] DR 1-102(a) provides, in relevant part, that "A lawyer or law firm shall not: (1) Violate a disciplinary rule… (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation… (5) Engage in conduct that is prejudicial to the administration of justice… (7) Engage in any other conduct that adversely reflects on the lawyer's fitness as a lawyer." Mr. Bostany's conduct unquestionably involves dishonesty, fraud, deceit and/or misrepresentation.

p.m. after noting my non-appearance. Plaintiff's counsel has thus knowingly elected to perpetuate his fraudulent story, rather than correct his misconduct and disclose the truth to this Court.

18. The bad faith conduct exhibited by Plaintiff's counsel in connection with the Charlotte B deposition is not an isolated instance of his or his firm's unethical behavior. To the contrary, it is but one example -- albeit an egregious and grave example -- in a long and continuing pattern of unprofessional and sanctionable conduct exhibited by Plaintiff's counsel in this case, in the parallel *Sanei* case, as well as in other litigations not presently before this Court.

19. In this case, despite Judge Freeman's repeated admonitions, Plaintiff's counsel continues to bombard counsel and the Court with letter after letter, each of which completely misrepresents the truth of the matters addressed therein. This unending stream of correspondence has forced the Retailer Defendants to incur needless legal fees attributed to the preparation of adequate responses to these letters.

20. In one particularly flagrant example of Plaintiff's counsel's frivolous conduct, on March 24, 2008, Plaintiff served a notice of its intent to file a motion for sanctions under Rule 11 against the Dreier Law Firm and against my partner, Ira Sacks, and me, personally, unless, within the 21 days allotted by Rule 11, the Retailer Defendants' withdrew its affirmative defense and counterclaim which allege that Plaintiff has committed a fraud upon the trademark office in connection with the application for registration of its CHARLOTTE trademarks. Plaintiff served this utterly frivolous notice of motion and supporting papers notwithstanding the facts that (i) Plaintiff has already filed a motion to dismiss the very same affirmative defense and counterclaim, which motion remains pending before Judge Swain; and (ii) GMA served a motion to dismiss identical claims in the *Sanei* case, which was denied by Judge McMahon. Indeed,

Plaintiff's counsel neglected to even mention the pending motion to dismiss in the papers supporting the sanctions motion, nor did he mention that his identical motion in the *Sanei* case was denied by Judge McMahon. It is patently obvious on its face that there is no legal or factual basis for this sanctions motion (especially in light of Judge McMahon's decision and irrespective of any decision Judge Swain may reach on the merits of the motion to dismiss), and we submit that the service of this preposterous notice of motion and accompanying papers is itself sanctionable under Rule 11. A true and correct copy of the March 24 Notice of Motion and supporting Declaration (without exhibits) is annexed hereto as Exhibit I.

21. Moreover, Plaintiff's counsel has failed and refused to proceed with deposition discovery of GMA's 30(b)(6) witnesses, as well as certain of the Retailer Defendants in this case, despite numerous requests for confirmation of these depositions and a fact discovery cut-off date of April 30. The purported reason for the failure to proceed with those depositions was the addition of new parties in the Third Amended Complaint, in direct contravention to the Stipulation and Order entered by Judge Swain on March 31, 2008. A true and correct copy of the Stipulation and Order is attached hereto as Exhibit J. As a result of GMA's failure to proceed with discovery, the Retailer Defendants were compelled to file a motion for preclusion and sanctions. A true and correct copy of the Declaration of Ira S. Sacks in Support of the Motion for Preclusion and Sanctions, dated April 16, 2008, without exhibits, is attached hereto as Exhibit K.

22. Similarly, as a result of GMA's numerous abuses of the discovery process in the *Sanei* case, Sanei Charlotte Ronson LLC has already been forced to file a motion for sanctions under Rule 37 in that case. A true and correct copy of the Declaration of Ira S. Sacks in Support of Sanctions, dated April 11, 2008, without exhibits, is attached hereto as Exhibit L.

23.     Mr. Bostany's behavior in this case and in the *Sanei* case is apparently typical of his behavior in other cases as Mr. Bostany has been called to task by judges within this Circuit for his dishonorable conduct on several occasions.  In *GMA Accessories, Inc. v. Positive Impressions, Inc.* NYLJ Vol. 223, No. 90 (SDNY May 10, 2000), Magistrate Judge Ellis sanctioned Mr. Bostany and reprimanded him for his behavior in the discovery process.  In that case, Defendants' counsel was required to send a paralegal to New Jersey to inspect 30,000 documents, only to be refused access to inspect said documents upon arriving at the premises.

24.     Judge Ellis described the matter as involving "particularly contentious counsel with an affinity for protracted motion practice." *Id*. at *1.  After describing the factual history of the matter, the court conducted "[a]n examination of Bostany's submissions," which showed "the continual pattern of deception." *Id*. at *7.  After discussing three specific areas of deception, Judge Ellis concluded that "[n]o statement, on its own and on its face, can be said to be an explicit lie by Bostany.  However, counsel continually made statements to the Court regarding these incidents [that] were designed to leave the Court with false impressions, when GMA and Bostany knew facts which contradicted those impressions.  Calculated deception to the Court to this degree is not tolerable and is sanctionable." *Id*.

25.     Specifically, Judge Ellis found:

> [m]ore disturbing to the Court, however, is the behavior of GMA's counsel, John Bostany.  Combining the talents of an old carnival huckster and an ancient Greek sophist, Bostany has undertaken to impose upon the Court a kind of shell game, using language to misdirect and mislead, until finally delivering the invoices to the courtroom.  This dramatic flourish might be appropriate for Madison Square Garden, but not the Southern District of New York.

*Id*. at *6-7.  Attached hereto as Exhibit M is a true and correct copy of the decision in *GMA Accessories, Inc. v. Positive Impressions, Inc.* NYLJ Vol. 223, No. 90 (S.D.N.Y. May 10, 2000).

26.     Moreover, in *Playboy Enterprises, Int'l., Inc. v. On Line Entertainment, Inc.*,

No. CV 00-6618 (DGT), 2004 WL 626807, at *6 (E.D.N.Y. April 1, 2004), annexed hereto as Exhibit N, the Court discussed a previous admonition of defense counsel and reprimanded Mr. Bostany, as follows:

> What do you think, this is a stage? Do you think this is a stage? Do you think I gave you admonitions repeatedly, repeatedly, repeatedly because I don't mean them, because I am trying to make life difficult for you? Do you realize you have some responsibilities here? This is not Vaudeville, this is not stich, this is a court of law. If this happens again you will not be a member of this court of law. I am serious, this is not a game.

27. Mr. Bostany has not amended his ways. As detailed above, his efforts to falsify the record in this case and his continued efforts to perpetuate his fraud upon the Court are plainly sanctionable under Rule 37, 28 U.S.C. § 1927 and/or the Court's inherent authority.

28. Accordingly, based on the foregoing, Retailer Defendants respectfully request that Mr. Bostany and The Bostany Firm be sanctioned for their gross misconduct. The sanctions that should be assessed should be fashioned in light of Mr. Bostany's and his firm (and GMA's) severe misconduct in this case, as well as his prior misconduct.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 18, 2008
        New York, New York

                                /s/ Robert J. Grand
                                Robert J. Grand