UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
GMA ACCESSORIES, INC.

                Plaintiff                    Civil Action No.: 07CV3219 (LTS) (DF)

   - against -

CHARLOTTE SOLNICKI,
CHARLOTTE B, LLC, EMINENT, INC.,
SAKS FIFTH AVENUE, INC.,
INTERMIX, INC., WINK NYC, INC.,
LISA KLINE, INC., GIRLSHOP, INC.,
SHOWROOM SEVEN STUDIOS, INC.,
ELECTRIC WONDERLAND, INC.,
SHOWROOM SEVEN INT'L, SHOWROOM
SEVEN, JONATHAN SINGER, GOSI
ENTERPRISES, LTD., TIERNEY DIRECT
LLC and JONATHAN SOLNICKI,

                Defendants.
-------------------------------------------------------X

## MEMORANDUM OF LAW IN REPLY TO THE OPPOSITION/REQUEST TO SEVER

### PRELIMINARY STATEMENT

This memorandum of law is respectfully submitted in reply to the papers filed in opposition to plaintiff's motion for contempt as to BOP and SANEI. During a briefing schedule phone conference, Magistrate Judge Freeman directed the inclusion of all arguments in opposition to be filed on April 11. SANEI styled its argument concerning the relatedness of the contempt analysis with the Polaroid analysis (which was voiced during the telephone conference) as a motion to sever. There is no Rule which allows for an opposition argument to be filed as a motion. We respectfully ask that it be deemed as part of SANEI's opposition and that this submission be considered the reply.

1

## ARGUMENT

### Point I

**The Opposition papers are a repeat of old arguments rejected by Judge Swain**

The opposition of the instant contempt motion is essentially a regurgitation of the same arguments advanced when BOP applied in October of 2007 for permission to continue using "Charlotte Ronson" after the Oct. 18, 2007 injunction.

On October 19, 2007, BOP filed a motion requesting that the Court acknowledge BOP's view that the injunction "did not imply that Bop would be enjoined from selling any product simply because it contained the word 'Charlotte' in its name, such as 'Charlotte Ronson.'" See p. 1 of BOP Brief in Support of its Motion to Modify Injunction dated October 19, 2007 (hereinafter "BOP October Brief"). BOP was placed on actual notice by GMA of the prospect of "contempt sanctions if BOP continued to sell 'Charlotte Ronson' products". Id.

The voluminous opposition papers filed by SANEI and BOP are for the most part recycled from the BOP October Brief, *i.e.* that "Charlotte Ronson" is not "similar or substantially indistinguishable" from the Charlotte mark; that contract principles apply; that GMA does not specifically mention Charlotte Ronson in the complaint; that BOP did not believe the injunction included a prohibition against Charlotte Ronson products; that the injunction was ambiguous; that marks with the same common name have in some instances been found to be dissimilar; that TTAB initially denied Summary Judgment to GMA; that the Court has discretion to modify an injunction beyond mere contractual considerations. See BOP October Brief.

2

The Court acknowledged that BOP had applied for modification or vacation of the injunction based on the discrepancy as to the injunction including of "all marks with the word 'Charlotte' in them such as the one used on <u>CHARLOTTE RONSON</u> clothing." Order Dec. 20, 2007, p. 3 (emphasis supplied).  The Court does not expand upon, broaden, limit or modify the injunction, though it is crystal clear that the Court disagreed with BOP's contention that ambiguity of the injunction allowed it to traffic in CHARLOTTE RONSON merchandise.  Judge Swain denied the motion in a comprehensive opinion that explains in careful detail why the injunction is not ambiguous.

Instead of complying with or appealing the Court's orders, SANEI and BOP decided to reject them out of hand.  BOP continued to sell Charlotte Ronson products despite knowledge that its ambiguity argument is without merit. SANEI, though fully aware of this, is continuing to profit by selling the products to BOP it knows BOP is not allowed to sell and by promoting on the Charlotte Ronson website, the availability of Charlotte Ronson products at BOP's website.

## Point II
### SANEI's attack on the merits of the case along with its request to sever are misplaced

The question to be decided on this motion is not the one that will determine the likelihood of confusion between the marks CHARLOTTE and CHARLOTTE RONSON which is now the subject of *Sanei v. GMA*, 07cv9578 (RWS).  *Wella Corp. v. Wella Graphics, Inc.*, 37 F.3d 46, 48 (2d Cir. 1994) (the issue before a court deciding contempt of an injunction pertaining to a trademark is far more limited than

the likelihood of confusion standard that tests violation of the Lanham Act). "The Court must simply determine whether the terms of that injunction were violated by the alleged contemnor". *Benham Jewelry Corp. v. Aron Basha Corp.*, 1997 WL 639038 (S.D.N.Y. 1997) (Sweet, J.)

While it is immaterial to the determination of the instant motion, it is respectfully submitted that SANEI will not prevail under a Polaroid analysis as a majority of cases hold that a defendant will not be permitted to "appropriate the entire name of plaintiff" by adding an additional word. *American Optical Corporation v. North American Optical Corporation*, 489 F.Supp. 443, 449 (N.D.N.Y. 1979); *Trident Seafoods Corp. v. Triton Fisheries, LLC.*, 2000 WL 33675750 at *6 (D. Alaska 2000) (String Citing) (likelihood of confusion found despite the addition of a word, and held that KING TRITON was likely to be confused with TRIDENT); *A.C. Legg Packing Co. v. Olde Plantation Spice Co.*, 61 F. Supp.2d 426, 431 (D.Md. 1999)(OLD PLANTATION and OLDE PLANTATION SPICE confusingly similar). *See also, Wynn Oil Company v. Thomas*, 839 F.2d 1183 (6th Cir. 1988) (CLASSIC and CLASSIC CAR WASH); *Tefal v. Products International Company*, 529 F.2d 495, 497 (3d Cir. 1976) (TEPAL –WARE likely to be confused with T-FAL); *In re El Torito Restaurants Inc.*, 9 USPQ2d 2002 (TTAB 1988) ("MACHO" and "MACHO COMBOS"); *In re United States Shoe Corp.*, 229 USPQ 707 (TTAB 1985) ("CAREER IMAGE" and "CREST CAREER IMAGES"); *In re Corning Glass Works,* 229 USPQ 65 (TTAB 1985) ("CONFIRM" and "CONFIRMCELLS"); *In re Riddle,* 225 USPQ 630 (TTAB 1985) ("ACCUTUNE" and "RICHARD PETTY's ACCU TUNE"); *In re Cosvetic Laboratories, Inc.,* 202 USPQ 842 (TTAB 1979) ("HEAD START" and "HEAD START

COSVETIC"). *Lilly Pulitzer, Inc. v. Lilli Ann Corp.*, 376 F.2d 324, 153 USPQ 406 (C.C.P.A 1967)("THE LILY" and "LILY ANN").

"Moreover, the use of a defendant's own name in conjunction with an otherwise similar mark does not generally excuse the infringement..." *Home Shopping Club v. Charles of the Ritz Group*, 820 F.Supp.763, 769 (S.D.N.Y. 1993) (concluding that the addition of defendant's name increases the misappropriation in that it could lead a consumer to believe that there is a connection between the products where none exists).

It is particularly misleading for the Dreier law firm and Ira Sacks to certify that "GMA admitted that the use of Charlotte in combination with another word was not similar to the use of Charlotte alone". This statement is irresponsible, because it is not another way of saying that the existence of other marks with the word Charlotte in them is the type of third party use that weakens a mark. *Scarves by Vera, Inc. v. Todo Imports, Ltd.*, 544 F.2d 1167 (2d Cir. 1976); *Polo Fashions, Inc. v. Extra Special Products, Inc.*, 451 F.Supp. 555, 559 (S.D.N.Y. 1978).

Furthermore, the reasons why the CHARLOTTE SAYVILLE, CHARLOTTE RUSSE and sports teams marks are not likely to cause confusion with GMA's CHARLOTTE mark are not before the Court.

SANEI's mark is highly confusing with the CHARLOTTE mark and <u>SANEI uses it with CHARLOTTE much larger than Ronson and did so before the Trademark Office gave it permission and continues to profit by the mark today after the Trademark Examiner and GMA advised that there was confusion between the marks</u>. SANEI is infringing in bad faith by using GMA's mark CHARLOTTE without

authorization. But again, this question is one that will be resolved pursuant to the Polaroid factors and is not before the Court on this motion.

### Point III

### There is no question that by supplying prohibited goods to BOP, SANEI is aiding and abetting and as such is itself guilty of contempt

Under Rule 65(d), SANEI, a non party that does not dispute that it had notice of both the injunction and Judge Swain's December 20, 2007 Order, is bound by the terms of the injunction to the extent that it may not aid and abet its violation. *Paramount Pictures Corporation v. Carol Publishing Group*, 25 F.Supp.372, 374 (S.D.N.Y. 1998) (Scheindlin, J.) *aff'd* 181 F.3d 83 (2d Cir. 1999)("in order for a non party to be bound, that entity must either aid and abet the defendant or be legally identified with it"); *Spectacular Venture v. World Star International*, 927 F.Supp. 683, 684-685 (S.D.N.Y. 1996) (Kaplan, J.) ("A nonparty may be held in contempt of a court order if the respondent abets the party named in the order in its noncompliance").

SANEI admits having sold CHARLOTTE RONSON products to BOP and continues to do so. It also advertises on the SANEI website, the availability of the goods at BOP. Its claim that this conduct should be condoned based on ambiguity of the injunction is a farce.

### Point IV

### Disgorgement of profits and fees is appropriate

"In determining the sanction appropriate for a contempt, the Court must consider '(1) the character and magnitude of the harm threatened by the continued

6

contumacy, (2) the probable effectiveness of the sanction in bringing about compliance, and (3) the contemnor's financial resources and the consequent seriousness of the sanctions burden.'" Spectacular Venture, supra, quoting New York State NOW v. Terry, 886 F.2d 1339, 1353 (2d Cir. 1989).

Willfulness is defined as where the "contemnor had actual notice of the court's order, was able to comply with it, did not seek to have it modified, and did not make a good faith effort to comply." See New York State National Organization for Women, 952 F.Supp. 1033, 1043 (S.D.N.Y.) (Ward, J.) aff'd 159 F.3d 86 (2d Cir.), *cert denied*, 527 U.S. 1003 (1999). The Court should therefore award damages and fees. *Vuitton v. Carousel Handbags*, 592, F2d 126, 130 (2d Cir. 1979) (it is not appropriate to "withhold an order in civil contempt awarding damages"). To allow the contemnor's to get away without punishment "would not only permit the offendor to violate the court's order with impunity but would leave the party that obtained the order worse off for its efforts to secure compliance with its rights and the Court's command." *Shady Records, Inc. v. Source Enterprises, Inc.*, 71 U.S.P.Q. 1348 (S.D.N.Y. 2004).[1]

Attorneys fees should also be reimbursed to GMA. "Permitting an award of attorney's fees serves a significant purpose where a contempt has been found by providing parties with 'an added incentive to monitor and enforce an opponents'

---

[1] Although Judge Lynch urges the adoption of a non-willfulness standard for the imposition of attorney's fees in contempt cases, the Court need not reach this issue here, inasmuch as SANEI and BOP's contempt is clearly willful and warrants the imposition of fees under either scenario.

compliance with a court order by allowing them to recover their expenses and exposing noncompliance". *Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc.*, 793 F.2d 1529, 1535 (11th Cir. 1986).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the motion be granted and that SANEI and BOP be required to disclose their sales of CHARLOTTE RONSON goods both to BOP and to BOP's customers from October 18, 2007 to the present, that the profits on these sales be disgorged to GMA, that GMA's fees be reimbursed and that a penalty be set to coerce future compliance with the Injunction.

Dated: New York, New York
April 18, 2008

Respectfully submitted,

By: _____
JOHN P. BOSTANY (JB-1986)
THE BOSTANY LAW FIRM
Attorneys for Plaintiff
40 Wall Street
New York, New York
(212) 530-4400

8