UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------X

GMA ACCESSORIES, INC.

Plaintiff,

- against -

CHARLOTTE SOLNICKI, CHARLOTTE B, LLC, EMINENT, INC., SAKS FIFTH AVENUE, INC., INTERMIX, INC., WINK NYC, INC., LISA KLINE, INC., GIRLSHOP, INC., SHOWROOM SEVEN STUDIOS, INC., ELECTRIC WONDERLAND, INC., SHOWROOM SEVEN INT'L, SHOWROOM SEVEN, JONATHAN SINGER, GOSI ENTERPRISES, LTD., TIERNEY DIRECT LLC and JONATHAN SOLNICKI,

Defendants.

---------------------------------------------------X

Civil Action No.: 07CV3219 (LTS) (DF)

**DECLARATION OF JOHN P. BOSTANY**

John P. Bostany hereby declares, under penalty of perjury as follows:

1. I am a member of The Bostany Law Firm, attorneys for Plaintiff GMA ACCESSORIES, INC. ("GMA") in this proceeding, and I make this declaration based upon my review of the files maintained in the firm's offices as well as my personal participation in certain proceedings.

2. This is a straightforward trademark infringement action concerning the GMA mark CHARLOTTE, which is owned by GMA and used by Defendants. The merits of this action are determined pursuant to the *Polaroid* factors. However, after

attorneys for SANIE CHARLOTTE RONSON, LLC ("SANEI") appeared, there has been a series of disputes that has turned this case into a maze of satellite issues.

3. This Declaration is respectfully submitted in support of Plaintiff's motion for penalties for the unreasonable and vexatious multiplication of proceedings by the Dreier law firm and its partner Ira Sacks.

4. First, Dreier repeatedly sought to prevent the deposition of Charlotte B LLC and quash the *Subpoena* of Charlotte B LLC, a copy of the *Subpoena* is respectfully attached as **Exhibit A**. The history of Dreier's recalcitrance spans 4 months prior thereto:

(a) In October 2007, Dreier, counsel for CHARLOTTE B LLC, argued incessantly that the service of a Subpoena upon Charlotte B LLC's registered agent in Delaware was defective service, even though Judges in this district had specifically approved this method of service in prior cases. Accordingly, Judge Freeman rejected this argument and Dreier quickly shifted its position to argue that the *Subpoena* violated the 100 mile rule because it called for the witness to be produced in New York City, which is more than 100 miles from the place of service in Dover, Delaware. Judge Freeman requested during a conference on the matter that the parties discuss having it in a convenient location; Dreier however, refused to confer. *See Letter* dated November 30, 2007 annexed as **Exhibit B**. All Dreier accomplished was to further delay and increase costs because the *Subpoena* was quashed based on the 100 mile objection and was re-served to provide for a location within 100 miles of Dover. Dreier responded by asking

that the deposition be held in New York City, the very location Dreier objected to in its first application. See **Exhibit C**.

(b) Dreier again moved to quash on various technical grounds. After 2 bench orders on February 7th and 21st, documents were produced on March 6 (one week after they were ordered). The deposition was held on March 7 and finally completed by written answers, pursuant to yet another Court order due to Dreier's instructions not to answer questions at the deposition. Copies of Orders dated March 6, 2008 and March 24, 2008 are respectfully annexed as **Exhibit D** and **Exhibit E.**

5. Most recently, the Dreier firm, which also represents SANEI, filed four successive motions in this case[1]:

6. On April 10, 2008, without a meet and confer with this firm, Dreier filed a motion based on GMA's document production. The April 10 motion was not only without merit, but could have easily been avoided had the Dreier firm communicated with this office in a "meet and confer" as required. By way of background, a summary of the dispute is as follows:

(a) In its December 2007, GMA offered its sales orders as they are kept in the ordinary course of business, and Dreier was encouraged to inspect the few thousand orders from recent years as it was not entitled to every single order throughout the history of GMA's mark. Dreier rejected this offer and asked for all sales orders in GMA's possession relating to CHARLOTTE. Though there were approximately 35,000 records, to avoid burdening the court with the dispute, GMA withdrew its objection and made all documents available *See* **Exhibits F, G, H, I, J**. This comes back to haunt GMA as Dreier now argues that the numerosity of the documents (caused by Dreier's insistence

[1] It is not by pure chance that these were filed right after Judge Baer signed an Order to Show Cause why SANEI should not be in contempt for violation of an injunction.

that GMA produce over 10 years of sales orders) was a "document dump."

(b) The electronic production was a law firm agreement that reduced Dreier's copy costs significantly. This firm, in good faith, agreed to supply the sales orders via CD, which had previously been scanned to this firm's computers as part of litigation preparation. *See Id.,* **Exhibit K**. Rather than pay approximately $0.16 per page, counsel for GMA offered to produce all documents at a fraction of the cost. *See Quoted Costs of Copies*, attached as **Exhibit L**. Now, Dreier complains by way of a motion for sanctions that several hundred bates stamp numbers are missing from the discs. These documents were scanned over the years, in part by the Acro Copy Company and in part by staff of this office. Charen Kim of this office burned all of the documents to the CD's that were given to Dreier under cover of letter dated March 14, 2008 – a copy of which is attached as **Exhibit M** – and there was no ambiguity that what was handed to Ira Sacks were the sales orders. Had Dreier approached this office with its problems, we would have first tried to persuade Dreier to overlook the *de minimis* discrepancy, and if it refused, we would have invited Dreier or gone ourselves to the courthouse, at Dreier's option, to find the missing sales orders.

7. The next day on April 11, 2008 Dreier filed another motion based upon the same document production addressed in its April 10 motion for sanctions.

(a) This time, Dreier represents that it cannot determine to which categories of its document request GMA's sales orders pertain. Dreier fails to advise that GMA's advertisements, expenses and all documents other than sales orders were produced to Dreier in February as part of a 2,000 page document production and delivered to Dreier in February based on a discussion with counsel and there was no doubt that this production contained everything but the sales orders and shipping documents. *See* **Exhibits F, N, O**. Dreier misrepresents that all requested documents were dumped on them as part of a 35,000 page production. The copies of sales orders have bills of lading attached in some instances because that is how the sales orders are kept by GMA and were copied precisely how they are stored.

(b) Dreier's complaint that GMA's initial disclosures are overbroad is based

on its contention that discovery motions are contained in the TTAB proceedings. This is not a legitimate complaint inasmuch as the TTAB system specifically identifies each document on file, and Dreier was aware which documents were discovery in nature simply by looking at the on-line docket, a representative copy of which is attached as **Exhibit P**.

(c) Dreier's complaint that some documents are out of place chronologically is largely due to the fact that very early years of use were added to the document production of recent years and therefore very early years contained higher bates numbers.

8. Dreier's next motion filed days later on April 16, 2008 to preclude complains that GMA's request to postpone depositions for two weeks is sanctionable conduct.

(a) The reason behind GMA's request to postpone depositions for two weeks so that they could be taken after newly added defendants appeared was to save time and money. This would dispense with the need to potentially have all of the same witnesses re-deposed. After Dreier filed its motion, we reminded Mr. Sacks that the individuals in question were the same witnesses that GMA was attempting to depose for months but were prevented from doing so either because Dreier "no showed" or canceled the depositions. *See e.g.* **Exhibit Q**. We also reminded Mr. Sacks that he had requested extensions of the three prior deadlines that were originally set by Judge Swain and that we had offered him GMA's depositions in March but that he refused to take him. As such, it is remarkable that Dreier would seek sanctions based on GMA's reasonable request to postpone for 2 weeks when new defendants are about to appear.

(b) Next, Dreier makes the leap that GMA's production is problematic because it doesn't show sales of clothing. It bases its argument on its view that GMA's

sales of slippers, flip flops, mufflers, belts, pajamas, boas, shirts, headbands, robes, stoles, wraps, tights, leggings, shrugs, and tube tops, among others, are not sales of "clothing, footwear and headgear." Its argument is unsupportable, but in any event, it clearly does not belong in a motion for sanctions.

9. Most recently on April 18, 2008, Dreier refiled a previous request for sanctions that Judge Freeman already addressed. Here, Dreier argues that it returned to the CHARLOTTE B, LLC deposition before 1pm, and that all of the affidavits saying that he returned after 1pm are false. This motion is frivolous since Judge Freeman already advised both sides during a conference and in an order that the parties' respective motions for sanctions on this were denied, and if either side wished to pursue the matter, a hearing would be scheduled. *See* **Exhibit D**.

10. All of these motions were filed by Dreier partner, Ira Sacks, while he was himself in violation of both a court order and discovery rules. *See Letter to Judge Freeman* dated April 16, 2008 and annexed as **Exhibit R**. It is noteworthy that on the numerous occasions that GMA had discovery problems with Dreier it would meet and confer with Dreier attorneys and then seek assistance from Judge Freeman by way of a letter designed to resolve the dispute rather than create the hysteria that is clearly calculated by Dreier's actions here. *See e.g. Representative Letters* attached as **Exhibits Q, S, T, U**. This format allowed for many of Dreier's violations to be resolved without the need for protracted motion practice.

11. Dreier has taken advantage of GMA's professionalism by forcing rulings from the court on its objections and by frequently amending its response without penalty.

For example we have so far received three different sets of initial disclosers from Dreier in response to its failure to identify it clients damages because of its realization that its counterclaims necessarily fail without damages. *See* Point V memorandum of law in support of motion to dismiss (Docket # 115). However, amazingly the supplements still fail to set forth a calculation of damages. *See* **Exhibits V** *and* **W.**

12. In summary, the Dreier firm has engaged in a pattern of bad faith litigation tactics including:

(a) Filing of frivolous a counterclaim which it refused to withdraw after being served with a Rule 11 motion.

(b) Obstructed the depositions of a non party calculated to raise GMA's costs.

(c) Filing of four unnecessary motions, the timing of which is more than suspect.

(d) Forcing discovery rulings at every turn and refusing to grant even a two week adjournment on depositions Dreier adjourned for months.

13. Accordingly it is respectfully submitted that in such a case as this, Section 1927 sanctions are appropriate.

Dated: New York, New York
April 24, 2008

Respectfully Submitted,

By: ______________________
John P. Bostany (JB1986)