UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X

GMA ACCESSORIES, INC.

        Plaintiff,

  - against -

CHARLOTTE SOLNICKI,
CHARLOTTE B, LLC,
GIRLSHOP, INC., SHOWROOM SEVEN
STUDIOS, INC., ELECTRIC WONDERLAND,
INC., SHOWROOM SEVEN INT'L,
SHOWROOM SEVEN,

        Defendants.
-----------------------------------------------------X

Civil Action No.: 07CV3219 (LTS) (DF)

## **MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**

Plaintiff respectfully submits the following proposed Conclusions of Law:

1. By virtue of their default, defendants Showroom Seven, Charlotte B, LLC, and Electric Wonderland, Inc., have admitted the allegations in the Third Amended Complaint, *inter alia*, that they willfully and knowingly infringed and counterfeited plaintiff's CHARLOTTE trademark in violation of Section 35 of the Lanham Act, 15. U.S.C. Sections 1114(1) and 1116(d)(1)(B)(i), have improperly caused trade to be diverted from GMA and have caused and will continue to cause irreparable harm and injury to GMA. *U2 Home Entertainment, Inc. v. Fu Shun Wang*, 482 F.Supp.2d 314, 317-18 (E.D.N.Y. 2007); *GMA Accessories, Inc. v. Megatoys, Inc.*, 2003 WL 193507 * 1 (S.D.N.Y. 2003); *Rolex Watch U.S.A. v. Jones,* 2002 WL 596354 *5 (S.D.N.Y. 2002). *See also Transatlantic Marine Claims v. Ace Shipping*, 109 F. 3d 105, 108 (2d Cir. 1997)("It is, of

course, ancient learning that a default judgment deems all well-pleaded allegations in the pleadings to be admitted").

*Trademark infringement is alleged and established*

2. The two part test for a claim of trademark infringement looks to (1) whether or not the plaintiff's mark is entitled to protection; and (2) whether defendant's use of the mark is likely to cause confusion. *Virgin Enterprises Ltd. v. Tahir Nawab, et al*, 335 F.3d 141, 146 (2d Cir. 2003).

3. The first part of this test is satisfied by GMA's registration for clothing to the CHARLOTTE trademark which has been deemed incontestable by the USPTO pursuant to Section 15 of the Lanham Act in the same class of goods trafficked as CHARLOTTE by defendants. GMA's incontestable registration is "conclusive evidence" of GMA's exclusive right to the CHARLOTTE trademark. *See* Third Amended Complaint, ¶47; 15 U.S.C. §1115(b); *24 Hour Fitness USA, Inc. v. 24/7 Tribeca Fitness, LLC*, 277 F.Supp.2d 356, 361 (S.D.N.Y. 2003). The right to exclusive use extends to all goods contained in the registration certificate. *Savin Corp. v. Savin Group*, 391 F.3d 439, 456 (2d Cir. 2004).

4. The Second Circuit has found six nonexclusive *Polaroid* factors to directly relate to the likelihood of consumer confusion analysis. *Virgin Enterprises Ltd. v. Tahir Nawab, et al*, 335 F.3d at 146-47. The six relevant factors are as follows: (1) the strength of the senior mark; (2) the degree of similarity between the two marks; (3) the proximity of the products; (4) the likelihood that the prior owner will "bridge the gap"; (5) actual confusion; and (6) sophistication of the consumers. *Id*.

A.  Strength of the Mark

The strength of a trademark encompasses two concepts, "inherent distinctiveness" and "acquired distinctiveness." *Virgin Enterprises Ltd. v. Tahir Nawab, et al*, 335 F.3d at 147. Inherently distinctive marks are either (1) "arbitrary" ("Camel" cigarettes), (2) "fanciful" ("Kodak" film); or (3) "suggestive" ("Tide" laundry detergent). *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210 (2000) (*Citing* "the now-classic test originally formulated by Judge Friendly" in *Abercrombie & Fitch, Co. v. Hunting World, Inc.*, 537 F.2d 4, 10-11 (2d Cir. 1976)).

Of the four categories that a trademark may be classified as, arbitrariness is afforded the most protection. *The Morningside Group Ltd. v. Morningside Capital Group, L.L.C.*, 182 F.3d 133, 139 (2d Cir. 1999); *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d at 11. When a word is applied in an unfamiliar way, it is deemed arbitrary. *Id*. In *Lane Capital Management, Inc. v. Lane Capital Management, Inc.*, 15 F.Supp.2d 389 (S.D.N.Y. 1998), the Court concluded that a mark is arbitrary when it does not describe the trademark owner's services or anyone actually associated with the company. *Id.* at 394 *aff'd Lane Capital Management, Inc. v. Lane Capital Management, Inc.*, 192 F.3d 337, 346 (2d Cir. 1999). For example, Dana is an arbitrary mark in part because no individual named "Dana" was associated with the company. *Satinine v. Les Parfums de Dana, Inc.*, 1984 WL 830 at * 5 (S.D.N.Y. 1984). Another example is found in *Charles of the Ritz Group Ltd. V. Quality King Distributors, Inc.*, 832 F.2d 1317, 1321 (2d Cir. 1987), where the court concluded that "Opium" as applied to perfume is arbitrary.

It is respectfully submitted that under this standard, this court correctly found that the CHARLOTTE mark deserves to be classified as arbitrary as it pertains to clothing because the word Charlotte is not commonly associated with the products marketed by GMA nor does it

identify a particular individual associated with GMA.  *See GMA Accessories, Inc. v. BOP, LLC*, 507 F.Supp.2d 361 (S.D.N.Y 2007) (Swain, J) (CHARLOTTE mark is "arbitrary," "extensively advertised" and "strong."). The arbitrariness of the mark is evidence of its strength. *Virgin Enterprises Ltd. v. Tahir Nawab, et al*, 335 F.3d at 147; *The Morningside Group Ltd. v. Morningside Capital Group, L.L.C.*, 182 F.3d at 139; *Charles of the Ritz Group Ltd. V. Quality King Distributors, Inc.*, 832 F.2d at 1321; *American Home Products v. Johnson Chemical Co.*, 589 F.2d 103, 106 (2d Cir. 1977).

Acquired distinctiveness lends credence to the strength of the mark where the mark enjoys commercial success. *Virgin Enterprises Ltd. v. Tahir Nawab, et al*, 335 F.3d at 147. GMA's CHARLOTTE trademark has been extensively promoted and advertised and CHARLOTTE brand products have had substantial sales success. *See* Declaration of William Maloof. It is respectfully submitted that this court correctly found that the CHARLOTTE trademark is a very strong mark based upon both its distinctiveness and extensive commercial use.  *See GMA Accessories, Inc. v. BOP, LLC*, *supra*.

B.  Similarity

Defendants' brand of clothing has a confusingly similar name to GMA's CHARLOTTTE trademark. Where both plaintiff's and defendant's marks consist of the same word, minor differences are inconsequential. *Savin Corp. v. Savin Group*, 391 F.3d at 458; *Virgin Enterprises Ltd. v. Tahir Nawab, et al*, 335 F.3d at 149.  *See also GMA Accessories, Inc. v. Eminent, Inc.*, 2008 WL 2355826 (S.D.N.Y. 2008) (Judge Freeman compared the marks in the contempt motion and found them similar).

It is well-settled that a defendant will not be permitted to "appropriate the entire name of plaintiff" by adding an additional word.  *American Optical Corporation v. North American*

*Optical Corporation*, 489 F.Supp. 443, 449 (N.D.N.Y. 1979); *Trident Seafoods Corp. v. Triton Fisheries, LLC.*, 2000 WL 33675750 at *6 (D. Alaska 2000) (String Citing) (likelihood of confusion found despite the addition of a word, and held that KING TRITON was likely to be confused with TRIDENT); *A.C. Legg Packing Co. v. Olde Plantation Spice Co.,* 61 F. Supp.2d 426, 431 (D.Md. 1999)(OLD PLANTATION and OLDE PLANTATION SPICE confusingly similar). See also, *Wynn Oil Company v. Thomas*, 839 F.2d 1183 (6th Cir. 1988) (CLASSIC and CLASSIC CAR WASH); *Tefal v. Products International Company*, 529 F.2d 495, 497 (3d Cir. 1976) (TEPAL –WARE likely to be confused with T-FAL); *In re El Torito Restaurants Inc.,* 9 USPQ2d 2002 (TTAB 1988) ("MACHO" and "MACHO COMBOS")*; In re United States Shoe Corp.,* 229 USPQ 707 (TTAB 1985) ("CAREER IMAGE" and "CREST CAREER IMAGES")*; In re Corning Glass Works,* 229 USPQ 65 (TTAB 1985) ("CONFIRM" and "CONFIRMCELLS")*; In re Riddle,* 225 USPQ 630 (TTAB 1985) ("ACCUTUNE" and "RICHARD PETTY's ACCU TUNE")*; In re Cosvetic Laboratories, Inc.,* 202 USPQ 842 (TTAB 1979) ("HEAD START" and "HEAD START COSVETIC"). *Lilly Pulitzer, Inc. v. Lilli Ann Corp.,* 376 F.2d 324, 153 USPQ 406 (C.C.P.A 1967)("THE LILY" and "LILY ANN")*.*

"Moreover, the use of a defendant's own name in conjunction with an otherwise similar mark does not generally excuse the infringement..." *Home Shopping Club v. Charles of the Ritz Group*, 820 F.Supp.763, 769 (S.D.N.Y. 1993) (concluding that the addition of defendant's name increases the misappropriation in that it could lead a consumer to believe that there is a connection between the products where none exists). Accordingly, it is respectfully submitted that this court correctly concluded that, "the marks are in some instances identical and in all instances share the common, arbitrary term CHARLOTTE, indicating a significant degree of similarity and likelihood of confusion as to source." *GMA Accessories, Inc. v. BOP, LLC* at 364.

C. & D. Proximity of the Products & Bridging the Gap

Both GMA's and defendants' products consist of clothing. "To the extent goods serve the same purpose, fall within the same general class, or are used together, the use of similar designations is more likely to cause confusion." *Savin Corp. v. Savin Group*, 391 F.3d at 458 *quoting Lang v. Ret. Living Pub. Co.*, 949 F.2dd 576, 582 (2d Cir. 1991). Further, if products are sold in different segments of the market, i.e. luxury versus non-luxury, confusion is more likely. *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Company*, 799 F.2d 867, 874 (2d Cir. 1986) (*quoting* Judge Learned Hand, "…unless the borrower's use is so foreign to the owner's as to insure against any identification of the two, it is unlawful." *Yale Electric Corp. v. Robertson*, 26 F.2d 972, 974 (2d Cir. 1928)). In *Bear U.S.A. v. A.J. Sheepskin & Leather*, the court held that there was a heightened sense of confusion where the parties sold the same products even if they did not directly compete. *Bear U.S.A. v. A.J. Sheepskin & Leather*, 909 F.Supp.896, 906 (S.D.N.Y. 1995). This court correctly concluded that, "the products are proximate in nature and are in the same broad category of trendy clothing and accessories." *GMA Accessories, Inc. v. BOP, LLC* at 364.

Similarly, here, there is no gap to bridge. "If the gap is bridged or if consumers would conceive no gap at all, this factor weighs in favor of the trademark owner even if the trademark owner is not targeting the same customers as the alleged infringer." *Cache, Inc. v. M.Z. Burger & Co.*, 2001 WL38283 * 9 (S.D.N.Y. 2001). There is no gap to bridge between GMA and defendants because both sell clothing, marketing young women and any minor difference in market segment causes more, not less confusion.

E. Actual Confusion

"[I]t is black letter law that actual confusion need not be shown to prevail under the Lanham Act, since actual confusion is very difficult to prove and the Act requires only a likelihood of confusion as to source." *Savin Corp. v. Savin Group*, 391 F.3d at 459 (citing *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Company*, 799 F.2d at 875).

F. Sophistication of Consumers

The sophistication of GMA's and defendants' consumers is inconsequential because the products are similar. Where there is a high degree of similarity between the goods, a buyer's sophistication cannot be relied upon to prevent confusion. *The Morningside Group Ltd. v. Morningside Capital Group, L.L.C.*, 182 F.3d at 143. *See also Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Company*, 799 F.2d at 875 (concluding that, with respect to jeans, it is the sophisticated consumer who is most likely to assume an association between the two brands). The similarity of the GMA's CHARLOTTE products and defendants' products weighs against relying on a buyer's sophistication.

*Counterfeiting is alleged, admitted, and proven*

5. A "counterfeit mark" is a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom the relief is sought knew such mark was so registered. 15 U.S.C. 1116(d)(1)(B)(i). There is no dispute that GMA's CHARLOTTE mark is registered on the Principal Register for various goods, sold and distributed and is in use. *See e.g.* Third Amended Complaint, ¶¶41, 45-50; Declaration of Daniel A. Levy; Declaration of Charen Kim; Declaration of

William Maloof.

6. Defendants Showroom Seven, Charlotte B, LLC, and Electric Wonderland, Inc., have used the CHARLOTTE mark in connection with the sale or offering of goods via their respective businesses and websites. *See* Third Amended Complaint, ¶¶ 54, 55, 99, 100; Declaration of John P. Bostany, Exhibits D, H, I, J, O.

7. Defendants Showroom Seven, Charlotte B, LLC, and Electric Wonderland, Inc.'s, use of the CHARLOTTE mark is counterfeiting and the plaintiff has been irreparably damaged, and will continue to be damaged by the sale of the defendants' counterfeit goods and is entitled to relief, pursuant to 15 U.S.C. Sections 1114(1), 1116(d)(1)(B)(i) and 1117(b). *See* Third Amended Complaint, ¶¶ 63, 80, 88, 99, 100.

### *Plaintiff is entitled to an accounting of profits.*

8. Although at one time, an accounting was thought proper only if it bore some relationship to the plaintiff's injury, the modern view of accounting of profits is that it should be awarded even in non competitive relationships under certain circumstances. *See* J. Thomas McCarthy, *McCarthy on Trademarks* § 30:64 (4th ed. 1998). The so called modern view is actually a rediscovery of the Supreme Court's holding in *Hamilton-Brown Shoe, Co. v. Wolfe Brothers & Co.*, 240 U.S. 251 (1916). There, Justice Holmes pointed out that the infringer can act as an agent or trustee for the trademark holder and thereby account to the plaintiff for its profits. *Id*. Consequently, under the modern view, now recognized in most circuits including the Second Circuit, even where parties are not in direct competition for the same customers, the infringer is responsible to the plaintiff for its profits under the theory of unjust enrichment and the deterrence of future

infringements. *See Monsanto Chemical Co. v. Perfect Fit Products Manufacturing, Co.*, 349 F.2d 389 (2d Cir. 1965) *cert. denied* 383 U.S. 942 (1966). In *Monsanto*, The Court held that adequate protection of a trademark owner is not served solely by the issuance of an injunction and an accounting of profits affords the requisite additional protection against infringement that a trademark owner deserves. *Id.* This is consistent with the protection against the harm caused by the trademark owner's loss of control over its mark. *See The Sports Authority, Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 963 (2d Cir. 1996)

9. And so, the settled case law in this Circuit awards an accounting of profits to the plaintiff in a trademark infringement case (1) "if the defendant is unjustly enriched"; (2) "if the plaintiff sustained damages from the infringement"; or (3) "if an accounting is necessary to deter a willful infringer from doing so again". *W. E. Bassett Company v. Revlon, Inc.* 435 F.2d 656, 664 (2d Cir. 1970) (*string citing*).

    A.    <u>Unjust Enrichment</u>

The equitable application of the doctrine of unjust enrichment to a trademark case was enacted in order to prevent the wrongdoer who makes profits from the sales of an infringing mark from benefiting by the infringement. *See Mishawaka Manufacturing Co. v. Kresge, Co.*, 316 U.S. 203, 207 (1942); *Hamilton Brown Shoe, Co. v. Wolfe Brothers,* 240 U.S. 251 (1916). "There may well be a windfall to the trademark owner where it is impossible to isolate the profits which are attributable to the use of the infringing mark. But to hold otherwise would give the windfall to the wrongdoer. In the absence of his proving the contrary, he promotes honesty and comports with experience to assume that the wrongdoer who makes profits from the sales of

goods bearing a mark belonging to another was enabled to do so because he enjoyed the goodwill generated by that mark. *And one who makes profits derived from the unlawful appropriation of a mark belonging to another cannot relieve himself of his obligation to restore the profits to their rightful owner merely by showing that the latter did not choose to use the mark in the particular manner employed by the wrongdoer."* Id.

In *Mishawaka,* Justice Frankfurter held that the infringers' profits should be awarded and that if the trademark holder suffered damages that it could prove beyond the profits then those damages should be awarded in addition to the infringer's profit. *Mishawaka Manufacturing, Co., supra* at 208.

In the case at bar, an accounting based on unjust enrichment grounds is supported under both the old and new law because the defendants' infringed upon the plaintiff's trademark willfully. *See* Third Amended Complaint, ¶¶ 56, 57, 89.

"The rational underlying this holding is not compensatory in nature, but rather seeks to protect the public at large. By awarding the profits of a bad faith infringer to the rightful owner of a mark, we promote the secondary effect of deterring public fraud regarding the source and quality of consumer goods and services". *George Basch, Co., Inc. v. Blue Caral, Inc.*, 968 F.2d 1532, 1539 (2d Cir. 1992). *See also Simon & Schuster, Inc. v. Dove Audio, Inc.*, 970 F.Supp. 279, 302 (S.D.N.Y. 1997). Accordingly, an accounting is proper under both the law before and after the recent amendments to the Lanham Act. *See Cartier v. Aaron Faber, Inc.*, 512 F.Supp.2d 165 (S.D.N.Y. 2007); *Nike, Inc. v. Top Brand Co. Ltd.*, 2005 WL 1654859 at * 10 (S.D.N.Y. 2005).

B.   <u>Treble Damages</u>

"The language of the statute indicates that absent extenuating circumstances, 'federal courts are expected, and not merely authorized' to grant treble profits or damages, whichever is greater, in cases of willful infringement." *Nike, Inc. v. Top Brand Co. Ltd.*, 2005 WL 1654859 at * 10 (S.D.N.Y. 2005) *quoting Fendi S.A.S. Di Paola Fendi E Sorelle v. Cosmetic World, Ltd.*, 642 F.Supp 1143, 1147 (S.D.N.Y. 1986).

We therefore respectfully request a default judgment as to liability for infringement and counterfeiting with an injunction as to CHARLOTTE B, LLC, SHOWROOM SEVEN, AND ELECTRIC WONDERLAND, INC. in the form requested in Part B of the prayer for relief in the 3d amended complaint and treble damages pursuant to 15 U.S.C. 1117(a) and 1117(b) as outlined in the accompanying Declaration of John P. Bostany in the amount of $2,861,252.25, jointly, severally, and alternatively, as to SHOWROOM SEVEN, and ELECTRIC WONDERLAND, INC. and $13,349,658.10 as to CHARLOTTE B, LLC, with attorneys' fees and interest to be determined upon further submissions.

Dated: New York, New York
       August 27, 2008

                              Respectfully submitted,

                      By:    _____
                              John P. Bostany
                              THE BOSTANY LAW FIRM
                              Attorneys for Plaintiff
                              40 Wall Street, 61st Floor
                              New York, New York 10005
                              (212) 530-4400