UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x
GMA ACCESSORIES, INC.,

      Plaintiff,

            v.

CHARLOTTE SOLNICKI,
CHARLOTTE B, LLC,
GIRLSHOP, INC., SHOWROOM SEVEN
STUDIOS, INC., ELECTRIC WONDERLAND,
INC., SHOWROOM SEVEN INT'L,
SHOWROOM SEVEN,

      Defendant.
-----------------------------------------------------------x

07CV3219 (LTS) (DF)

DEFENDANT ELECTRIC
WONDERLAND, INC.'S (D/B/A
SHOWROOM SEVEN INT'L)
MOTION TO VACATE DEFAULT
AND OPPOSITION TO
PLAINTIFF'S MOTION FOR
DEFAULT JUDGMENT

On the present papers, Defendant Electric Wonderland, Inc. d/b/a Showroom Seven International moves the Court to vacate the default entered against Electric Wonderland. Electric Wonderland further opposes Plaintiff's motion for default judgment for the same reasons.

**TABLE OF CONTENTS**

SUMMARY OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    I.      Default is Highly Disfavored and Must be Vacated for Good Cause Shown
          . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    II.     There is Good Cause to Vacate the Default in the Present Case. . . . . . . . . . . . . . . 4

          A.     Electric Wonderland has not Acted with Egregious or Deliberate
                 Conduct – The Default was not "Willful". . . . . . . . . . . . . . . . . . . . . . . . . 4

          B.     There is No Prejudice to Plaintiff . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

          C.     Plaintiff is not Likely to Succeed on the Merits – Electric
                 Wonderland's Defenses are Meritorious. . . . . . . . . . . . . . . . . . . . . . . . . . 6

                1.     Plaintiff Likely has no Trademark Rights to Assert in its
                        Alleged Mark7. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

                2.     Electric Wonderland has not "Used" the Accused Mark and
                        therefore cannot be an Infringer. . . . . . . . . . . . . . . . . . . . . . . . . 9

                3.     The Accused Mark does not Infringe Plaintiff's Alleged
                        Mark. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    III.    The Equities Favor Electric Wonderland.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    IV.    Plaintiff's Motion for Entry of Default Judgment should be Denied for the
          Same Reasons Electric Wonderland's Motion to Vacate should be Granted. . . . 14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**TABLE OF AUTHORITIES**

**Cases**

*1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400 (2d Cir 2005). . . . . . . . . . . . . . . . . . . . 9

*American Alliance Ins. Co., Ltd. v. Eagle Ins. Co.,* 92 F.3d 57 (2d Cir. 1996). . . . . . . . . . . . . . 2-6

*American Express Co. v. Goetz*, 515 F.3d 156 (2d Cir. 2008).. . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Brennan's, Inc. v. Brennan*, 2008 WL 3091759 (5th Cir August 6, 2008). . . . . . . . . . . . . . . . . 12

*Brennan's, Inc. v. Brennan's Restaurant, L.L.C.*, 360 F.3d 125 (2d Cir. 2004). . . . . . . . . . . . . . 11

*Cyril v. Neighborhood Partnership II Housing Dev. Und, Inc.*, 124 Fed.Appx. 26 (2d Cir
    2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4-6, 13

*Enron Oil Corp. v. Diakuhara*, 10 F.3d 90 (2d Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . 3-6, 13

*Holland v. James*, 2008 WL 3884354 (S.D.N.Y. Aug. 21, 2008). . . . . . . . . . . . . . . . . . . . . 3-7, 13

*Hughes v. Design Look Inc.* 693 F.Supp. 1500 (S.D.N.Y. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . 8

*ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135 (2d Cir. 2007).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc.*, 495 F.2d 1265 (2d Cir
    1974)8. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108 (2d Cir. 2006). . . . . . . . . . . . 11

*Natural Organics, Inc. v. Nutraceutical Corp.*, 426 F.3d 576 (2d Cir. 2005). . . . . . . . . . . . . . . 11

*Tactica Intern., Inc. v. Atlantic Horizon Intern., Inc.*, 154 F.Supp.2d 586 (S.D.N.Y 2001). . . . . 8

*Tiffany, Inc. v. eBay, Inc.*, 2008 WL 2755787 (S.D.N.Y. July 14, 2008). . . . . . . . . . . . . . . . . 9, 10

**Statutes and Rules**

Fed. R. Civ. P. 55(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4

## SUMMARY OF FACTS

On April 20, 2007, Plaintiff filed a complaint for trademark infringement and related causes of action, naming six defendants: Bop, LLC, Girlshop, Inc., Showroom Seven Studios, Inc., Jonathan Solnicki, Belmondo and Eminent, Inc. Electric Wonderland, d/b/a Showroom Seven International ("Electric Wonderland"), was not named as a defendant in the original complaint.

On May 7, 2007, Plaintiff filed a First Amended Complaint naming only the six defendants as named in the original complaint.

On September 26, 2007, Plaintiff filed a Second Amended Complaint shuffling significantly the defendants named in the action. In the Second Amended Complaint, the defendants consisted Of: Eminent, Inc., Saks Fifth Avenue, Inc., Intermix, Inc., Wink NYC, Inc., Lisa Kline, Inc., Girlshop, Inc., Showroom Seven Studios, Inc., Jonathan Singer, Lewis Tierney and Jonathan Solnicki. As of September 26, 2007, despite Plaintiff's scattershot approach to naming defendants, Electric Wonderland had still not been named as a defendant.

On or about February 13, 2008, Jean-Marc Flack, shareholder, President and Managing Director of Electric Wonderland was subpoenaed for deposition by Plaintiff in a related case, *Sanei Charlotte Ronson LLC, v. GMA Accessories, Inc.*, 07-cv-9578 (CM). See Exhibit 1.[1] During the deposition, counsel for Plaintiff questioned Mr. Flack extensively regarding Electric Wonderland clients, operations, and banking. Declaration of Flack at ¶ 8.

---

[1] Although Mr. Flack was subpoenaed in the *Sanei Charlotte Ronson* case, the deposition proceed as if subpoenaed in connection with this case, and was captioned as such.

Shortly thereafter, on or about March 18, 2008, Mr. Flack was subpoenaed to produce documents comprising:

> Banking records, evidence of receipts, and bank accounts pertaining to the business of Showroom Seven and/or Showroom Seven Studios, Inc. and/or any company doing business with the term "Showroom Seven" in it in connection with the word CHARLOTTE, or any mark similar thereto, including CHARLOTTE SOLNICKI..

See Exhibit 2. For all intents and purposes, the March 18 document subpoena constituted a subpoena of Electric Wonderland, which does business as "Showroom Seven International". See Exhibit 3 and Declaration of Flack at ¶ 1. In response to the document subpoena, Electric Wonderland made available to counsel for Plaintiff its files, and counsel for Plaintiff made copies of what appeared to be several hundred pages of documents. Declaration of Flack at ¶ 9.

Finally, on April 2, 2008, after Electric Wonderland had provided complete discovery as a non-party to this action, Plaintiff amended its complaint again (the Third Amended Complaint), this time naming, among other new defendants, Electric Wonderland and "Showroom Seven Int'l." Electric Wonderland failed to answer or otherwise move in response to the Third Amended Complaint. Default was entered on July 1, 2008.

## ARGUMENT

### I.  Default is Highly Disfavored and Must be Vacated for Good Cause Shown

After entry of default, a defaulting party may move the court under Fed. R. Civ. P. 55(c) to vacate the default and permit the case to proceed on the merits. *Cyril v. Neighborhood Partnership II Housing Dev. Und, Inc.*, 124 Fed.Appx. 26 (2d Cir 2005); *American Alliance Ins.*

*Co., Ltd. v. Eagle Ins. Co.,* 92 F.3d 57, 59 (2d Cir. 1996); *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993); *Holland v. James*, 2008 WL 3884354 at *2 (S.D.N.Y. Aug. 21, 2008).

[t]he decision to vacate an entry of default is left to the discretion of the trial court; however, the Court's discretion is strictly limited by the clear preference for disputes to be resolved on the merits, not by mere procedural means:

> [t]he circumscribed scope of the district court's discretion in the context of a default is a reflection of our oft-stated preference for resolving disputes on the merits.

*Enron*, 10 F.3d at 95.

The Court's exercise of discretion must carefully consider the strong preference for adjudication on the merits, as even minor unwarranted deviations from this preference will be deemed an abuse of discretion:

> [a]lthough the denial of a motion for relief from a default judgment is reviewed only for abuse of discretion, "we may reverse its exercise even where the abuse of discretion is not glaring." This limitation reflects the strong preference for resolving disputes on the merits.

*American Alliance*, 92 F.3d at 62 (internal citation omitted). As a result,

> because defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party.

*Holland*, 2008 WL 3884354 at *2 (citing *Enron*).

**II.     There is Good Cause to Vacate the Default in the Present Case**

Within the discretionary framework delineated by the Second Circuit in *Enron* and *American Alliance*, the Court must determine whether a moving party has shown good cause for a default to be vacated. *Enron*, 10 F.3d at 95; *Holland,* 2008 WL 3884354 at *2. In analyzing the "good cause" requirement, courts evaluate three factors:

> (1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented.

*Cyril*, 124 Fed.Appx. at 27;  *American Alliance,* 92 F.3d at 59; *Enron*, 10 F.3d at 96; *Holland*, 2008 WL 3884354 at *2.

In the present case, each of these factors favors vacating the default.

**A.     Electric Wonderland has not Acted with Egregious or Deliberate Conduct – The Default was not "Willful"**

Willfulness in the context of Fed. R. Civ. P. 55(c) may only be found where a movant acted egregiously or deliberately:

> A finding of willfulness requires "more than mere negligence," more than "mere administrative or clerical error," and more than "careless or negligent errors." . . . Willfulness may be found where there is "evidence of bad faith," or the default arose "from egregious or deliberate conduct."

*Holland*, 2008 WL 3884354 at *2 (quoting *American Alliance,* 92 F.3d at 60-61).  The purpose of the willfulness inquiry is to ensure that the moving party is not attempting to introduce "undue delay-harassment." *American Alliance,* 92 F.3d at 61.

In the present case, Electric Wonderland has not acted with any intent to introduce "undue delay-harassment," and so the Court cannot find that Electric Wonderland has acted

4

willfully. To the contrary, Electric Wonderland has cooperated fully and timely with all discovery requests (in the form of third party subpoenas) issued by Plaintiff on Electric Wonderland managers and executives prior to Electric Wonderland being joined. Specifically, its President/Managing Director and a principal manager provided approximately nine or ten hours of deposition, answering extensive questions regarding the business of Electric Wonderland, Inc., its clients, operations, and banking details. Declaration of Flack at ¶ 8; Declaration of Erickson at ¶ 2. Electric Wonderland further made its files available to Plaintiff for review pursuant to subpoena, as a result of which Plaintiff copied several hundred pages. Declaration of Flack at ¶ 9.

Electric Wonderland's actions speak loudly and clearly. It has cooperated with Plaintiff in the present action, providing comprehensive discovery prior to ever being added as a party. This conduct does not evidence any intent to introduce "undue delay-harassment." Indeed, it evidences just the opposite: good faith.

### B. There will be No Prejudice to Plaintiff

The second factor the Court must analyze in considering Electric Wonderlands motion is whether or not there would be any significant prejudice to Plaintiff in vacating the default. *Cyril*, 124 Fed.Appx. at 27; *American Alliance,* 92 F.3d at 59; *Enron*, 10 F.3d at 96; *Holland*, 2008 WL 3884354 at *2.

While Plaintiff will undoubtedly argue that it will be prejudiced due to the delay occasioned by Electric Wonderland's late response, the law is clear that delay alone is not "prejudice" in the context of a motion to vacate a default:

5

> delay alone is not a sufficient basis for establishing prejudice. Rather it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud or collusion."

*Holland*, 2008 WL 3884354 at *4 (internal quotation marks and citations omitted). None of the types of prejudice summarized in *Holland* are present here.

Importantly, Plaintiff has already received comprehensive discovery from Electric Wonderland, and so not only is there no possibility of a "loss of evidence," (as Plaintiff already has in its possession the relevant evidence from Electric Wonderland), but it has substantially *completed* discovery from Electric Wonderland, and so there can be no prejudice in the form of an "increased difficulties of discovery." Likewise, Electric Wonderland's full disclosure and cooperative demeanor in connection with the action prior to being named as a defendant suggests strongly that vacating the default will not "provide greater opportunity for fraud or collusion," as Electric Wonderland has shown no inclination to such acts.

Furthermore, Electric Wonderland long ago terminated its relationship with Charlotte Solnicki and discontinued all activities, including sales related activities (i.e., all activities relating to its role as "middle-man" between buyer and seller). Declaration of Flack at ¶ 7. Thus, Plaintiff faces no ongoing alleged infringement.

In sum, vacating the default simply will not prejudice Plaintiff in any cognizable way.

**C.   Plaintiff is not Likely to Succeed on the Merits – Electric Wonderland's Defenses are Meritorious**

The third factor the Court must analyze in considering Electric Wonderlands motion is whether or not Electric Wonderland has presented a meritorious defense to the counts presented in the complaint. *Cyril*, 124 Fed.Appx. at 27; *American Alliance,* 92 F.3d at 59; *Enron*, 10 F.3d

6

at 96; *Holland*, 2008 WL 3884354 at *2. To prevail on this factor, the moving party need not prove its case, but instead merely show that its proposed defenses have sufficient merit to proceed:

> [t]o assess the meritorious defense factor, the Court analyzes "whether the evidence submitted, if proven at trial, would constitute a complete defense." *Enron*, 10 F.3d at 98 (citations omitted). On a motion to vacate the entry of default, the moving party "need not conclusively establish the validity" of the defense presented. *Davis*, 713 F.2d at 916.

*Holland*, 2008 WL 3884354 at *4.

In the present case, each and every cause of action has its foundation in trademark infringement. Plaintiff's trademark-based claims are destined to fail for several reasons, however, and so Electric Wonderland readily satisfies the "meritorious defense" prong.

### 1. Plaintiff Likely has no Trademark Rights to Assert in its Alleged Mark

Axiomatic trademark law holds that trademark rights are established through actual use of a mark and only through actual use:

> [i]t is firmly established that "the right to exclusive use of a trademark derives from its appropriation and subsequent use in the marketplace." *La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc.*, 495 F.2d 1265, 1271 (2d Cir.1974) (Friendly, J.). Thus, there can be no trademark absent goods sold and no service mark without services rendered. *See, e.g., Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1156 (9th Cir.2001) ("[L]ike with trademarks, common law rights are acquired in a service mark by adopting and using the mark in connection with services rendered." (emphasis added)).

*American Express Co. v. Goetz*, 515 F.3d 156 (2d Cir. 2008).

As a consequence, a party who has abandoned use of a mark – or never truly used its purported mark – has insufficient rights to assert against a third party using an allegedly infringing mark:

> [u]nder familiar trademark principles, the right to exclusive use of a trademark derives from its appropriation and subsequent use in the marketplace. The user who first appropriates the mark obtains on enforceable right to exclude others from using it, as long as the initial appropriation and use are accompanied by an intention to continue exploiting the mark commercially.

*La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc.*, 495 F.2d 1265, 1271 (2d Cir 1974); *and see Tactica Intern., Inc. v. Atlantic Horizon Intern., Inc.*, 154 F.Supp.2d 586, 599 (S.D.N.Y 2001) ("It is well established that the standard test of ownership is priority of use."). Token use does not constitute real trademark use, and so is insufficient create rights in a mark. *See, e.g., Hughes v. Design Look Inc.* 693 F.Supp. 1500, 1506 (S.D.N.Y. 1988).

In the present case, upon information and belief, Plaintiff had abandoned its use of its purported "Charlotte" mark years ago. Further upon information and belief, Plaintiff's recent "use" is nothing more than an attempt to establish token continuing use solely for purposes of this litigation. Tellingly, Plaintiff's Third Amended Complaint contains not a single detail regarding its use of the "Charlotte" mark, providing instead only sketchy, generalized pleadings. For example, Plaintiff's entire description of its "Charlotte" branded product line is:

> The GMA Products consist of, among other things, clothing and fashion accessories.

Third Amended Complaint at ¶ 51. Likewise, Plaintiff's entire disclosure of its ongoing use consists of:

> The Mark CHARLOTTE has been continuously used, on a nationwide basis, in connection with GMA's products since at least as early as 1996.

Third Amended Complaint at ¶ 41.

Plaintiff's allegations of fact surrounding its purported trademark use lack all detail because there is no detail to provide, Electric Wonderland believes. Plaintiff is destined to fail in asserting any valid trademark related rights.

### 2. Electric Wonderland has not "Used" the Accused Mark and therefore cannot be an Infringer

Even if Plaintiff has established rights in its purported "Charlotte" mark, Electric Wonderland nonetheless has not "used" the allegedly infringing mark, and therefore cannot be liable for infringement of it.

In order to infringe a mark, an accused party must first be "using" a mark that is likely to cause confusion with a mark owned by another party:

> [n]ot only are "use," "in commerce," and "likelihood of confusion" three distinct elements of a trademark infringement claim, but "use" must be decided as a threshold matter because, while any number of activities may be "in commerce" or create a likelihood of confusion, no such activity is actionable under the Lanham Act absent the "use" of a trademark. 15 U.S.C. § 1114; see *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 364 (4th Cir. 2001). Because 1-800 has failed to establish such "use," its trademark infringement claims fail.

*1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400, 411(2d Cir 2005); *Tiffany, Inc. v. eBay, Inc.*, 2008 WL 2755787 at *25 (S.D.N.Y. July 14, 2008). Where a party acts only as an intermediary between a buyer and a seller, having no control over the seller of the infringing goods and having no reason be believe the goods are infringing, that intermediary has not "used"

9

the mark in question and therefore cannot be held liable for infringement.  *Tiffany, Inc.*, 2009 WL 2755787 at *34-36.

In the present case, Electric Wonderland is in precisely the same position as that of eBay in *Tiffany, Inc.*.  Electric Wonderland cannot be deemed to have "used" the allegedly infringing mark and  therefore cannot be liable for infringement.

Electric Wonderland, like eBay, acts only as an intermediary between buyers and sellers.  Declaration of Flack at ¶ 2.  It was in precisely this capacity that Electric Wonderland operated in connection with the accused Charlotte Solnicki products, steering orders from buyers to the seller for direct fulfilment by the Seller.  Declaration of Flack at ¶ 3.  At no time did Electric Wonderland: (i) buy any allegedly infringing product; (ii) maintain inventory of any allegedly infringing product; (iii) sell any allegedly infringing product; (iv) receive payment for any allegedly infringing product; or (v) control the seller or the branding of any allegedly infringing product.  Declaration of Flack at ¶¶ 3-4.  Electric Wonderland also had no reason to believe that any of the Charlotte Solnicki products potentially infringed any third party's rights.  Declaration of Flack at ¶ 5.

Just as the court in *Tiffany, Inc.*, found that eBay could not be liable for trademark infringement for bringing together buyers and sellers (i.e., because it was not "using" the mark), neither can Electric Wonderland be found liable for doing the same here.

### 3.    The Accused Mark does not Infringe Plaintiff's Alleged Mark

Finally, even if Plaintiff had established rights in its purported "Charlotte" mark, and further even if Electric Wonderland had "used" the mark for purpose of infringement, the

accused mark and Plaintiff's mark are not in conflict, and so infringement ultimately could not be found.

In order to show infringement, a trademark owner must show that there exists a likelihood of confusion between its mark and an accused mark. *See, e.g. ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 154 (2d Cir. 2007) ("To succeed on a section 43(a)(1)(A) claim, a plaintiff must prove (1) that the mark or dress is distinctive as to the source of the good or service at issue, and (2) that there is the likelihood of confusion between the plaintiff's good or service and that of the defendant."); *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 115 (2d Cir. 2006) ("We analyze trademark infringement claims under the familiar two-prong test described in *Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072 (2d Cir.1993). First, we look to see whether plaintiff's mark merits protection, and second, whether defendant's use of a similar mark is likely to cause consumer confusion."); *Natural Organics, Inc. v. Nutraceutical Corp.*, 426 F.3d 576, 577 (2d Cir. 2005).

In the Second Circuit, courts assess the eight "Polaroid Factors" to determine whether a likelihood of confusion exists:

> [i]n analyzing this second prong of the test for trademark infringement, courts apply the non-exclusive multi-factor test developed by Judge Friendly in Polaroid Corp. v. Polarad Electronics Corp., 287 F.2d 492, 495 (2d Cir.1961), and consider: (1) the strength of the mark, (2) the similarity of the two marks, (3) the proximity of the products, (4) actual confusion, (5) the likelihood of plaintiff's bridging the gap, (6) defendant's good faith in adopting its mark, (7) the quality of defendant's products, and (8) the sophistication of the consumers.

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d at 116.

In the present case, Plaintiff will fail to show any likelihood of confusion.

First, marks comprising proper names are inherently weak. *Brennan's, Inc. v. Brennan's Restaurant, L.L.C.*, 360 F.3d 125, 131-32 (2d Cir. 2004) ("While the law recognizes the unfairness of letting one person trade on the reputation or the name of another, at the same time it also recognizes that one's surname given at birth creates associations attached to that name which identify the individual. As a consequence, courts generally are hesitant to afford strong protection to proper names, since to do so preempts others with the same name from trading on their own reputation.")  The "Charlotte" mark comprises a very common given name, and so is inherently very weak.

Second, the marks are distinctively different: "Charlotte" versus "Charlotte Solnicki". While both use the name "Charlotte", consumers readily understand that individuals share proper names.  They therefore look to an entire mark to determine source of goods when one or more marks use proper names (i.e., to avoid confusing two similar proper name marks).  *See, e.g., Brennan's, Inc. v. Brennan*, 2008 WL 3091759 at *1 (5th Cir  August 6, 2008) ("the only similarity in the two marks is the name "Brennan's," and differences in exemplars and *the use of the Appellees' first names sufficiently distinguishes the marks*." (emphasis added)).

Third, fashion consumers have shown sufficient sophistication to distinguish readily between different marks sharing common proper name portions.  For example, all the following marks are presently registered to non-common owners for fashion related products:

| | | |
|---|---|---|
| KC STEVENS | YVES DORSEY | LAUREN EVAN |
| STEVEN LAND | YVES FIGARAU | LAUREN MOFFATT |
| SHAWN STEVENS | YVES DESFARGE | LAUREN ACTIVE |
| MARK & STEVEN | YVES DELORME | LAUREN WOODS |
| STEVEN ALAN | JEAN-YVES | LAUREN AURORA |
| STEVEN CORN FURS | YVES SAINT LAURENT | RALPH LAUREN |
| STEVEN | | LAUREN SCOTT |
| STEVEN M. | | ERICA LAUREN |
| STEVEN STOLMAN | | LAURENCELESTE |
| KS STEVEN KEMI | | LAUREN LEE |
| CHAD STEVENS | | LAUREN EVAN |
| NICOLE STEVENS | | LAUREN SARA |
| LESLIE STEVEN | | LAUREN ROGERS |
| LINDSAY STEVENS | | LAUREN BROOKE |
| ANDREW STEVENS | | LAUREN ALLEN |
| VALERIE STEVENS | | LAUREN EDWARDS |
| STEVEN WINDSOR | | BETSY LAUREN |
| STEVENS STOMPERS | | SAGE LAUREN |
| ELLIOT STEVENS | | ANDREA LAUREN |

See Exhibit 4. Consumers are able to distinguish between different marks having common proper name elements, despite the identical class of goods (clothing).

These factors alone – corroborated by the extensive real world examples above – are sufficient to demonstrate the complete lack of likelihood of confusion between the marks at issue. Plaintiff is not likely to succeed on its infringement claim, assuming, arguendo, that Plaintiff can first meet the threshold showings of trademark rights and "use" by Electric Wonderland.

### III. The Equities Favor Electric Wonderland

In addition to the "good cause" three factor analysis, courts must also assess the equities to determine, for example, "whether the entry of default would bring about a harsh or unfair result." *Enron*, 10 F.3d at 96; *Cyril*, 124 Fed.Appx. at 27.

In the present case, the equities are decidedly one-sided. Denying Electric Wonderland's motion to vacate the default would result in the harshest and most unfair result imaginable:

denying Electric Wonderland the opportunity to defend itself on the merits from unsupportable allegations of infringement.  It is precisely this outcome that the Second Circuit has warned against time and again when stressing its "preference for resolving disputes on the merits." *Enron*, 10 F.3d at 95; *and see Holland*, 2008 WL 3884354 at *2 ("defaults are generally disfavored and are reserved for rare occasions").  By contrast, not a single significant equity weighs in favor of Plaintiff, who would effectively receive a "freebie" through default.

**IV.     Plaintiff's Motion for Entry of Default Judgment should be Denied for the Same Reasons Electric Wonderland's Motion to Vacate should be Granted**

As the foregoing clearly demonstrates, the entry of default against Electric Wonderland should be vacated and the case permitted to proceed on the merits.  It follows, therefore, that Plaitniff's pending motion for entry of default judgment should be denied as moot immediately upon vacation of the entry of default.  For this reason, Electric Wonderland opposes Plaintiff's pending motion for default judgment.

## CONCLUSION

For the foregoing reasons, the Court should vacate the entry of default against Electric Wonderland, deny Plaintiff's motion for default judgment, and allow the case to proceed on the merits.

          Respectfully submitted,
          Electric Wonderland, Inc. d/b/a Showroom Seven Int'l, by its attorney,

          _____
          Jeffrey Sonnabend (JS1243)
          SonnabendLaw
          600 Prospect Avenue
          Brooklyn, NY 11215-6012
          718-832-8810
          JSonnabend@SonnabendLaw.com

          Dated: September 12, 2008