USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8-25-09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
GMA ACCESSORCIES, INC.,

                Plaintiff,          07 Civ. 3219 (PKC) (DCF)

    -against-                        MEMORANDUM
                                               AND ORDER
BOP, LLC, et al.,

                Defendants.
------------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

        This case was reassigned to the undersigned on June 5, 2009. (Docket No. 301.) At that time, two motions were pending: plaintiff's motion for default judgment against Showroom Seven, Electric Wonderland, Inc. ("Electric Wonderland") and Charlotte B, LLC ("Charlotte B"), and defendant Electric Wonderland's motion to vacate entry of default against Electric Wonderland d/b/a Showroom Seven International. For the reasons set forth below, the Court grants Electric Wonderland's motion to vacate and denies plaintiff's motion for default judgment against Electric Wonderland. Although plaintiff filed its motion before the case was reassigned to this Court, the Court will deny plaintiff's motion for default judgment against Showroom Seven and Charlotte B without prejudice to renewal, supplying the information set forth in this Court's Individual Practices for default judgments.

## BACKGROUND

### I. Procedural History

Plaintiff GMA Accessories, Inc. ("GMA") is a New York corporation doing business under the name "Capelli." (Third Amended Complaint (the "Complaint") ¶¶ 1, 2.)[1] GMA sells clothing and fashion accessories, and is the owner of the registered trademark "CHARLOTTE" in International Classes 9, 18, 22, 25 and 26, certain of which have been deemed incontestable. (Id. ¶¶ 45-49.) Charlotte Solnicki is another defendant in this action, but it is not a party to either of the pending motions. Plaintiff alleges that Charlotte Solnicki is a "business entity" that manufactures merchandise that is "advertized and/or offered for sale, and/or sold in connection with the mark CHARLOTTE SOLNICKI." (Id. ¶¶ 9, 18.)

GMA filed the original complaint in this action on April 20, 2007. (Docket No. 1.) It filed amended complaints on May 7, 2007, and again on September 26, 2007. (Docket Nos. 9, 71.) None of those complaints named Electric Wonderland, Showroom Seven or Charlotte B. Electric Wonderland, however, was aware of this ongoing litigation no later than October, 2007. (Declaration of Jean-Marc Flack, dated September 12, 2008 (the "Flack Declaration" or "Flack Decl.") ¶ 6.) In fact, plaintiff served Electric Wonderland's President, Jean-Marc Flack, with a deposition subpoena in February, 2008. (Flack Decl. ¶ 8.) He was deposed on March 18, 2008. (Id.) Plaintiff served Electric Wonderland's manager, Karen Erickson, with a deposition subpoena in November, 2007, and deposed her on May 22, 2008. (Declaration of Karen Erickson, dated September 12, 2008 (the "Erickson Declaration" or "Erickson Decl.") ¶ 2.) Electric Wonderland also received a document subpoena in April, 2008, and made its files available for inspection shortly thereafter. (Flack Decl. ¶ 9.)

---

[1] Because Electric Wonderland, Showroom Seven and Charlotte B did not respond to the Complaint, they are deemed to have admitted the factual allegations concerning liability contained therein. Rule 8(b)(6), Fed. R. Civ. P.; Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992).

Meanwhile, on April 2, 2008, plaintiff filed the Complaint – its fourth complaint in this litigation. (Docket No. 64.) This Complaint named Electric Wonderland, Showroom Seven and Charlotte B as defendants. (Id.) It asserts several claims for, among other things, trademark infringement, unfair competition and counterfeiting goods.

Electric Wonderland was served with the Complaint on April 4, 2008, Showroom Seven was served with the Complaint on April 7, 2008, and Charlotte B was served with the Complaint on April 10, 2008. (Docket Nos. 181, 185, 195.) None of these defendants responded to the Complaint. Pursuant to Rule 55(a), Fed. R. Civ. P., the Clerk of the Court issued certificates of default against Electric Wonderland, Charlotte B and Showroom Seven on April 30, 2008, May 2, 2008, and July 1, 2008, respectively. (Docket Nos. 265-13, 265-15, 265-5.)

On June 30, 2008, the Court authorizes plaintiff to make a motion for default judgment against Electric Wonderland, and Charlotte B. (Docket No. 240.) Plaintiff served a copy of this order on Electric Wonderland and Charlotte B on July 8, 2008, and July 10, 2008, respectively. (Docket Nos. 246, 247.)

On August 8, 2008, plaintiff moved under Rule 60, Fed. R. Civ. P., for an order amending a previous default judgment entered against Showroom Seven Studios, Inc. (Docket No. 250.) Plaintiff sought to change "Showroom Seven Studios, Inc." to "Showroom Seven Studios, Inc., Showroom Seven and Showroom Seven International," thereby obviating the need for plaintiff to make a separate motion for default judgment against Showroom Seven and Showroom Seven International (Electric Wonderland's assumed name). (Id.) On August 19, 2008, the Court denied the motion without prejudice and allowed plaintiff to move for a default judgment against Showroom Seven and Showroom Seven International (Electric Wonderland). (Docket No. 258.)

In the meantime, on August 15, 2008, Electric Wonderland made its first appearance in this case. Jeffrey Sonnabend filed a notice of appearance on behalf of Electric Wonderland and asked the Court for an extension of time to answer the Complaint. (Docket Nos. 256, 257.) The Court denied Electric Wonderland's application, but informed its counsel that Electric Wonderland could renew the application, setting forth the reasons for delay and demonstrating that Electric Wonderland had a meritorious defense. (Docket No. 257.)

On August 27, 2008, plaintiff filed the instant Motion for a Default Judgment against Electric Wonderland, Charlotte B and Showroom Seven. (Docket No. 264.) Electric Wonderland filed its motion to vacate weeks later, on September 16, 2008. (Docket No. 270.)

DISCUSSION

I. Electric Wonderland's Motion to Vacate

A. Standard for Vacating an Entry of Default

Rule 55, Fed. R. Civ. P., provides a two-step process for obtaining a default judgment. When, as here, a party "has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Rule 55(a). "Having obtained a default, a plaintiff must next seek a judgment by default under Rule 55(b)." New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005). The clerk may enter a default judgment if "the plaintiff's claim is for a sum certain or a sum that can be made certain by computation." Rule 55(b)(1). "In all other, cases, the [plaintiff] must apply to the court for a default judgment." Rule 55(b)(2).

Rule 55(c) authorizes a court to "set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." In this case, the clerk issued a certificate

of default as to Electric Wonderland and Charlotte B. No default judgment has been rendered, and, therefore, this Court may set aside the entry of default for "good cause."

The Federal Rules of Civil Procedure do not define "good cause," but, the Second Circuit has set forth three factors that courts should examine to determine if good cause exists: "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." Enron Oil Corp. v. Kiakuhara, 10 F.3d 90, 96 (2d Cir. 1993). Courts also may consider other equitable factors if they exist. Id. The party making the motion to set aside the entry of default bears the burden of demonstrating good cause. Ferrero v. Arthur M. Rosenberg, Co., 156 F.2d 212, 214 (2d Cir. 1946).

"'A defense is meritorious if it is good at law so as to give the factfinder some determination to make.'" Am. Alliance Ins. Co. Ltd. v. Eagle Ins. Co., 92 F.3d 57, 61 (2d Cir. 1996) (quoting Anilina Fabrique de Colorants v. Aakash Chemicals and Dyestuffs, Inc., 856 F.2d 873, 879 (7th Cir.1988)). To demonstrate a meritorious defense, a party does not need to show a likelihood of success on the merits. Enron, 10 F.3d at 98. A party must, however, submit evidence that, "if proven at trial, would constitute a complete defense." Id.

Willfulness does not mean carelessness or negligence. Am. Alliance, 92 F.3d at 61. Negligence, nevertheless, is a factor that courts should consider in determining whether there is good cause, and "[g]ross negligence can weigh against the party seeking relief from a default judgment, though it does not necessarily preclude relief." Id. In addition, a default is willful when it is the result of a strategic decision to default. Id. at 60. Except in extraordinary cases, a client cannot use its attorney's failure to act as an excuse for defaulting. S.E.C. v. McNulty, No. 94 Civ. 7114, 1996 WL 422259, at *4 (S.D.N.Y. July 29, 1996), aff'd, 137 F.3d 732 (2d Cir. 1998) (holding that an attorney who "was aware that the court might enter a default

judgment against his client and took no steps to prevent it," acted willfully, and imputing that willfulness to the client because "the Second Circuit 'has rather consistently refused to relieve a client of the burdens of a final judgment entered against him due to the mistake or omission of his attorney . . . or his inability to efficiently manage his caseload.'") (quoting United States v. Cirami, 535 F.2d 736, 739 (2d Cir.1976)).

To demonstrate prejudice, a party must show something more than mere delay. Davis v. Musler, 713 F.2d 907, 916 (2d Cir. 1983) (discussing prejudice in the context of a Rule 60(b)(1) motion to vacate a default judgment). "Rather, it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud or collusion." Id. (internal quotation marks and citations omitted).

A motion to set aside an entry of default is addressed to the discretion of the district court. Powerserve Int'l, Inc. v. Lavi, 239 F.3d 508, 514 (2d Cir. 2001). The Second Circuit, however, has "expressed a strong 'preference for resolving disputes on the merits.'" New York, 420 F.3d at 104 (quoting Powerserve, 239 F.3d at 514 (citations omitted in original)). The Rule 55(c) analysis below is limited to Electric Wonderland because it is the only defendant seeking to vacate the entry of default.

### B. Electric Wonderland Has Demonstrated a Meritorious Defense

Plaintiff seeks a default judgment against Electric Wonderland on two claims of the complaint; trademark infringement, in violation of section 32 of the Lanham Act, codified at 15 U.S.C. § 1114(1), and counterfeiting, in violation section 34(d) of the Lanham Act, codified at 15 U.S.C. § 1116(d). Plaintiff's section 1116(d) claim is derivative of its section 1114(1)(a) claim because section 1116(d) authorizes courts to issue an order "providing for the seizure of goods and counterfeit marks" involved in violations of section 1114(1)(a). Therefore, if Electric

Wonderland can show a meritorious defense to plaintiff's section 1114(1)(a) claim, it has demonstrated a complete defense.

A party may be liable for direct trademark infringement under section 1114(1)(a) if the plaintiff establishes that "(1) [the plaintiff] has a valid mark that is entitled to protection under the Lanham Act; and that (2) the defendant used the mark, (3) in commerce, (4) 'in connection with the sale . . . or advertising of goods or services,' . . . without the plaintiff's consent." 1-800 Contacts, Inc. v. WhenU.com, Inc., 414 F.3d 400, 406-07 (2d Cir. 2005) (quoting 15 U.S.C. 1114(1)(a)). In addition, plaintiff must demonstrate a likelihood of confusion between its products and the defendant's. Id. at 407.

### 1. Electric Wonderland Has Failed to Show That Plaintiff Did Not Use the CHARLOTTE Mark

Electric Wonderland's first claimed defense is that the CHARLOTTE mark is not entitled to protection because plaintiff has not used it. Electric Wonderland, however, has not offered any evidence of this. Neither of the declarations Electric Wonderland submitted in support of its motion sets forth facts relating to plaintiff's use vel non of the CHARLOTTE mark. Indeed, Electric Wonderland could do no more than to allege this defense "on information and belief." These conclusory allegations do not amount to a meritorious defense. New York, 420 F.3d at 109-10 (holding that defendants' argument, which was not supported by "even a single affidavit or any other evidence . . . amounted to little more than conclusory denials" which were insufficient to show the existence of a meritorious defense).

### 2. Electric Wonderland Has Demonstrated That It May Not Have Used the Marks at Issue

Electric Wonderland's second alleged meritorious defense is that it did not use the CHARLOTTE or CHARLOTTE SOLNICKI marks. A mark is "deemed to be in use in

commerce" when "it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale," and the goods are transported or sold in commerce. 15 U.S.C. § 1127.[2] A mark also can be used in commerce "on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce." Id.

> Electric Wonderland's President described its business as follows:
>
> Electric Wonderland brokers and/or processes orders from wholesale purchasers for fulfillment by clients of Electric Wonderland. Electric Wonderland does not directly sell its clients [sic] products, does not fulfill orders, does not acquire or maintain any inventory for sale, and does not purchase products from its clients for resale. Electric Wonderland does receive commissions on sales it brokers.

(Flack Decl. ¶ 2.) According to the Flack Declaration, these were the services Electric Wonderland provided to Charlotte Solnicki. (Flack Decl. ¶ 3.) "Electric Wonderland did not directly sell Charlotte Solnicki products, did not fulfill orders, did not acquire or maintain any inventory of such products for sale, and did not purchase such products from Charlotte Solnicki for resale." (Flack Decl. ¶ 3.) If this were the extent of Electric Wonderland's role, a fact-finder could find that Electric Wonderland did not "use" the CHARLOTTE or CHARLOTTE SOLNICKI marks, because it did not place the marks on any goods. Likewise, a reasonable fact-finder could determine that Electric Wonderland never used the marks to sell or advertise any of the services Electric

---

[2] In the appendix to its opinion in Rescuecom Corp. v. Google, Inc., 562 F.3d 123, 139-41 (2d Cir. 2009), the Second Circuit acknowledged a lack of clarity concerning whether the "use in commerce" definition contained in 15 U.S.C. § 1127 applies to the trademark infringement section of the Lanham Act. The court, however, applied that definition to the infringement claims in the case, and suggested, in dictum, that in the Second Circuit, the definition of "use in commerce" contained in section 1127 applies to infringement claims. Id. at 140.

Wonderland rendered. Thus, Electric Wonderland would not be liable for direct trademark infringement.

Parties who do not place marks on goods still may be liable for contributory infringement, which extends liability "beyond those who actually mislabel goods with the mark of another." Inwood Labs. Inc. v. Ives Labs. Inc., 456 U.S. 844, 853 (1982). A party is only liable for contributory infringement if it knew or had reason to know about the primary party's infringement. Polymer Tech. Corp. v. Mimran, 975 F.2d 58, 64 (2d Cir. 1992) ("A distributor who intentionally induces another to infringe a trademark, or continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, is contributorially liable for any injury.") (citing Inwood, 456 U.S. at 854). Electric Wonderland's president claims that "[a]t no time while Charlotte Solnicki was a client of Electric Wonderland was Electric Wonderland aware of GMA's 'Charlotte' products nor of any possibility that the Charlotte Solnicki products were potentially infringing any third party's trademark rights." (Flack Decl. ¶ 5.) If true, a reasonable fact-finder could find that Electric Wonderland neither knew, nor had reason to know of the alleged infringement during the period in question.

In addition, the Second Circuit has not decided whether contributory infringement applies to entities like Electric Wonderland, which provide services instead of products. Several courts, however, including courts within the Second Circuit, have found that such contributory infringement may be found. See Tiffany (NJ) Inc. v. eBay, Inc., 576 F. Supp. 2d 463, 502 (2008) (stating that eBay, an online auction site that provides a venue for sales, and entities like it "that provide a marketplace for infringement and maintain direct control over that venue," may be liable for contributory infringement); Polo Ralph Lauren Corp. v. Chinatown Gift Shop, 855 F. Supp. 648, 650 (S.D.N.Y.1994) (denying motion to dismiss contributory infringement claim

against landlords who allowed the alleged infringers to use their property); see also Fonovisa, Inc. v. Cherry Auction, Inc., 76 F.3d 259, 265 (9th Cir. 1996) (holding that plaintiff stated a claim for contributory infringement against the operator of a flea market at which counterfeit recordings were sold, and stating "a swap meet can not disregard its vendors' blatant trademark infringements with impunity"). Thus, Electric Wonderland, as a matter of law, may have a complete defense to contributory infringement liability, a matter which this Court need not decide at this juncture.

Because Electric Wonderland has demonstrated a meritorious defense to both claims for which plaintiff seeks default judgment, the Court need not reach Electric Wonderland's other purported meritorious defense, that there is no likelihood of confusion between plaintiff's marks and the allegedly infringing marks.

### C. Electric Wonderland's Default Was Willful

In his declaration, Flack states that he "first learned of the present law suit [sic] in or about October, 2007," at which point, he conferred with his attorney, Karim Kamal. (Flack Decl. ¶ 6.) According to Flack, Kamal advised him that the "best course of action was not to participate as a party in the action." (Flack Decl. ¶ 6.) Flack contends that "Mr. Kamal's advice did not change; that is, he never advised me that Electric Wonderland should or must respond to the complaint and become a party to the action." (Flack Decl. ¶ 12.) On or about June 23, 2008, however, Kamal's advice did change. He told Flack that plaintiff was going forward with the default and advised Flack "that Electric Wonderland would need to move to vacate the default and actively defend the suit in order to avoid judgment being entered against it." (Flack Decl. ¶ 13.) Kamal, however, told Flack that he could not handle the matter because it was "outside the area of his expertise," and that Electric Wonderland would need new counsel. (Flack Decl.

¶ 14.) According to Flack, Electric Wonderland retained Jeffrey Sonnabend, Electric Wonderland's present counsel, in mid-August, 2008. (Flack Decl. ¶ 14.)

Plaintiff submitted a Reply Declaration of John P. Bostany (the "Bostany Reply Declaration" or "Bostany Reply Decl.") in opposition to Electric Wonderland's motion to vacate. In the declaration, Bostany states:

> Mr. Kamal informed me that he was an attorney for Electric Wonderland, Inc. and that it would not be answering the complaint or the discovery that was served on April 9, 2008[,] unless GMA conceded that the Court's August 29, 2007[,] default order as to "Showroom Seven Studios Inc.," did not apply to "Showroom Seven." A copy of my May 10, 2008[,] email to Mr. Kamal commemorating Electric Wonderland's threat to remain in default unless the issue was conceded is respectfully annexed as Exhibit A.

(Bostany Reply Decl. ¶ 1 (emphasis omitted).) Exhibit A to the declaration purports to be a May 10, 2008, email from Bostany to Kamal, memorializing several "areas of disagreement." According to that email, Kamal was unwilling to stipulate to a vacatur of the default against Electric Wonderland until "GMA consents that SHOWROOM SEVEN and SHOWROOM SEVEN INT'L are not alter ego's [sic] of SHOWROOM SEVEN STUDIO'S [sic] INC." (Id.) Electric Wonderland filed a reply to plaintiff's opposition memorandum, but did not address the Bostany Reply Declaration or the email attached as Exhibit A.

The course of events detailed above demonstrates that Electric Wonderland willfully defaulted. It is undisputed that Electric Wonderland was properly served with the Complaint on April 2, 2008. Electric Wonderland was represented by counsel when it was served. Around this same time, Electric Wonderland and its personnel were served with three subpoenas and, according to Flack and Erickson, they responded to all of them. (Flack Decl. ¶¶ 8, 9; Erickson Decl. ¶ 2.) Erickson's deposition even took place after Electric Wonderland

was served with the Complaint. (Erickson Decl. ¶ 2.) But, Electric Wonderland did not respond to the Complaint.

Electric Wonderland admits that on or about June 23, 2008, it knew plaintiff would seek a default judgment and it knew the consequence of inaction. (Flack Decl. ¶ 13.) Yet, Electric Wonderland did not even enter an appearance until nearly two months later, on August 15, 2008. (Docket No. 256.) On August 18, 2008, Electric Wonderland received permission to file a motion to vacate the entry of default, but it waited another month before actually filing its motion. (Docket Nos. 257, 270.) Electric Wonderland's failure to respond to the Complaint until nearly five months after default was entered, and nearly three months after it knew that plaintiff would proceed with a default judgment, demonstrates that its default was willful. In addition, plaintiff provided evidence that Electric Wonderland's attorney, Kamal, made a strategic decision to continue in default in an attempt to exact several concessions from plaintiff. (Bostany Reply Decl. ¶ 1.) This evidence, to which Electric Wonderland chose not to respond, bolsters the conclusion that Electric Wonderland's default was willful. Am. Alliance, 92 F.3d at 60. To the extent that Electric Wonderland has attempted to shift the blame to its attorney, that argument is unavailing. McNulty, 1996 WL 422259, at *4.

### D. Plaintiff Will Not Be Prejudiced by Vacatur

Plaintiff has not demonstrated that it will be prejudiced if the default is vacated. Plaintiff has deposed Electric Wonderland's president and its manager. (Flack Decl. ¶ 8; Erickson Decl. ¶ 2.) Electric Wonderland has produced to plaintiff some discovery. (Flack Decl. ¶ 9.) This minimizes the chance that evidence will be lost, or that Electric Wonderland or its agents will engage in collusion or fraud. Although the Court recognizes that plaintiff may

have incurred an expense in preparing and filing its motion for a default judgment, it is not sufficient, standing alone, to demonstrate prejudice to the plaintiff.

Despite the fact that Electric Wonderland willfully defaulted, I will grant its motion to vacate because it has demonstrated a meritorious defense and vacating the entry of default will not prejudice plaintiff. I also have considered the equitable factors raised by each party and conclude that they do not alter the outcome. In reaching the decision to vacate the entry of default, I am cognizant of the Second Circuit's repeated statements that in a motion to vacate a default, doubts should be resolved in favor of those parties seeking relief from the default. See, e.g., Davis, 713 F.2d at 915.

## II. Motion for Default Judgment Against Showroom Seven and Charlotte B

Neither Showroom Seven nor Charlotte B opposed plaintiff's motion for default judgment. Although the motion was filed before the case was assigned to me, I will deny plaintiff's motion for default judgment with respect to Showroom Seven and Charlotte B without prejudice to renewal, providing the information described in this Court's Individual Practices for default judgments. If plaintiff seeks damages, it should provide satisfactory evidence and legal support that the amount requested can be readily calculated.

CONCLUSION

Electric Wonderland's motion to vacate (Docket No. 270) is GRANTED. Electric Wonderland must file an answer to the Complaint within twenty (20) days hereof. Plaintiff's motion for a default judgment (Docket No. 264) is DENIED as to Electric Wonderland and DENIED without prejudice as to Showroom Seven and Charlotte B. Plaintiff may file a new motion for default judgment against Showroom Seven and Charlotte B that complies with this Court's Individual Practices.

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
August 24, 2009