UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
GMA ACCESSORIES, INC.,

                                    Plaintiff,                         07 Civ. 3219 (PKC)(DCF)

                  -against-
                                                                       MEMORANDUM
                                                                       AND ORDER
BOP, LLC, et al.,

                                    Defendants.
------------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

         Plaintiff GMA Accessories, Inc. ("GMA") moves for summary judgment on the

issue of liability in this trademark action.  Defendant Electric Wonderland Inc. d/b/a Showroom

Seven International ("Electric Wonderland") opposes GMA's motion and cross-moves for

summary judgment on the issue of damages.


I.       Background

         GMA is the owner of trademark Registration # 2,535,454 for the mark

"CHARLOTTE" in International Class 25, for: "clothing, footwear and headgear, namely hats,

scarves, gloves and socks." (Declaration of Connor Donnelly dated April 28, 2010 ("Donnelly

Declaration") Exhibit H.)  Electric Wonderland is a corporation which supplies showroom

services to the fashion industry, displaying manufacturers' clothing and/or fashion accessories to

prospective wholesale purchasers. (Declaration of Jean-Marc Flack, dated September 12, 2008

(the "Flack Declaration") ¶ 2.)  Electric Wonderland earns a commission on the sales that it

brokers between the manufacturers and wholesale purchasers. (Id.)  From approximately May,

2003 until late 2007, one of Electric Wonderland's clients was a clothing designer/manufacturer

variously called Charlotte B or Charlotte Solnicki ("Solnicki").  (Flack Declaration ¶ 3).  Electric

Wonderland performed the above-described showroom services for Solnicki, earning

commissions on wholesale purchases.  (Id.)  The Solnicki goods in Electric Wonderland's

showroom were labeled "Charlotte Solnicki."  (GMA Rule 56.1 Statement ¶ 5; Electric

Wonderland Opposition 56.1 Statement ¶ 5.)

On April 20, 2007, GMA filed the instant suit naming numerous defendants, but

not Electric Wonderland.  (Docket No. 1.)  It filed amended complaints on May 7, 2007, and

again on September 26, 2007.  (Docket Nos. 9, 71.)  None of those complaints named Electric

Wonderland.  Electric Wonderland, however, was aware of this action no later than October,

2007.  (Flack Declaration ¶ 6.)  In fact, plaintiff served Electric Wonderland's President, Jean-

Marc Flack, with a deposition subpoena in February, 2008.  (Flack Declaration ¶ 8.)  He was

deposed on March 18, 2008.  (Id.)  Plaintiff served Electric Wonderland's manager, Karen

Erickson, with a deposition subpoena in November, 2007, and deposed her on May 22, 2008.

(Declaration of Karen Erickson, dated September 12, 2008 (the "Erickson Declaration") ¶ 2.)

Electric Wonderland also received a document subpoena in April, 2008, and made its files

available for inspection shortly thereafter.  (Flack Declaration ¶ 9.)

Meanwhile, on April 2, 2008, plaintiff filed its fourth complaint in this litigation.

(Docket No. 64.)  This Complaint named Electric Wonderland, and asserts several claims for,

among other things, trademark infringement, unfair competition and counterfeiting goods.

Electric Wonderland was served with the Complaint on April 4, 2008 (Docket No.

181), but did not answer or move.  Pursuant to Rule 55(a), Fed. R. Civ. P., the Clerk of the Court

issued a certificate of default against Electric Wonderland on April 30, 2008.  (Docket No. 265-

13.)  The Court authorized plaintiff to make a motion for default judgment. (Docket No. 240.)

On August 15, 2008, Electric Wonderland made its first appearance in this action. Plaintiff filed a Motion for a Default Judgment August 28, 2008 (Docket No. 264) and Electric Wonderland filed its motion to vacate on September 16, 2008. (Docket No. 270.)

By Memorandum and Order filed August 25, 2009, this Court granted Electric Wonderland's motion to vacate and denied plaintiff's motion for default judgment, finding that although Electric Wonderland's default was willful, it demonstrated a meritorious defense and vacating the default would not prejudice the plaintiff. GMA Accessories, Inc. v. BOP, LLC, No. 07 Civ. 3219, 2009 WL 2634771 (S.D.N.Y. August 25, 2009). GMA moved for reconsideration, which was denied. (Docket No. 322).

The parties subsequently cross-moved for summary judgment. GMA moves for judgment as to Electric Wonderland's liability for trademark infringement and counterfeiting, an injunction pursuant to 15 U.S.C. § 1116, and a hearing on damages. (Docket No. 361). Electric Wonderland opposes, and cross-moves on the issue of damages and on liability for counterfeiting. (Docket No. 356).


DISCUSSION

I.       Summary Judgment Standard

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed.R.Civ.P. It is the initial burden of a movant on a summary judgment motion to come forward with evidence on each material element of his claim or defense, demonstrating that he or she is entitled to relief. A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

3

(1986). The evidence on each material element must be sufficient to entitle the movant to relief in its favor as a matter of law. Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).  In raising a triable issue of fact, the non-movant carries only "a limited burden of production," but nevertheless "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial.'"  Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004) (quoting Aslanidis v. U.S. Lines, Inc., 7 F.3d 1067, 1072 (2d Cir.1993)).

An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. The Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995) (internal quotations and citations omitted); accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).  In reviewing a motion for summary judgment, the court must scrutinize the record, and grant or deny summary judgment as the record warrants. Rule 56(c).  In the absence of any disputed material fact, summary judgment is appropriate.  Rule 56(a).

Mere "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996) (citing Matsushita, 475 U.S. at 587); see also Anderson, 477 U.S. at 249-50 (summary judgment may be granted if the evidence is "merely colorable" or "not significantly probative") (citations omitted).  An opposing party's facts "must be material and of a substantial nature, not fanciful frivolous, gauzy, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor

4

merely suspicions." <u>Contemporary Mission, Inc. v. U.S. Postal Serv.</u>, 648 F.2d 97, 107 n.14 (2d Cir. 1981) (quotation marks omitted).

        II.     Liability

           a.  Direct Liability

Electric Wonderland contends that it cannot be liable for "direct" trademark infringement, because it did not "use" the mark in commerce. A mark is "deemed to be in use in commerce" when "it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale," and the goods are transported or sold in commerce. 15 U.S.C. § 1127. A mark can also be used in commerce "on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce." <u>Id.</u> This definition applies to claims under Section 32 of the Lanham act, 15 U.S.C. § 1114(1)(a). <u>Famous Horse Inc. v. 5th Ave. Photo Inc.</u>, 624 F.3d 106, 110 (2d Cir. 2010). Here, the infringement allegation relates to the alleged sale of goods, rather than any allegation that Electric Wonderland used the Charlotte mark in connection with selling or advertising its showroom services.

There is no evidence that Electric Wonderland placed the mark on any goods. The parties agree that Electric Wonderland "maintained samples in its showroom labeled as 'Charlotte Solnicki.'" (GMA 56.1 Statement ¶ 5; Electric Wonderland Opposition 56.1 Statement ¶ 5.) This is not an allegation that Electric Wonderland actually performed the labeling. Electric Wonderland points out that GMA has "proffered no evidence that Electric Wonderland's *showroom* was labeled as 'Charlotte Solnicki.'" (Electric Wonderland Opposition

56.1 Statement ¶ 5 (emphasis added).)  Jean-Mark Flack, the principal shareholder of Electric

Wonderland, submitted a declaration which affirms that "[a]t not [sic] time did Electric

Wonderland exert any control over the branding of any Charlotte Solnicki product."  (Flack

Declaration ¶ 4.)  Furthermore, GMA has offered no evidence that "the nature of the goods

makes such placement [of the mark] impracticable." 15 U.S.C. § 1127.  Therefore, in this case,

placement of the mark on "documents associated with the goods or their sale" is not "use in

commerce." Id.

          However, even if Electric Wonderland did not manufacture or label the goods, it

is well settled that a retailer's direct sale of an infringing product is sufficient to create liability.

El Greco Leather Products v. Shoe World, 806 F.2d 392, 396 (2d Cir. 1986).  The parties hotly

dispute whether or not the Charlotte Goods were "sold" by Electric Wonderland in Electric

Wonderland's showroom, or whether Electric Wonderland merely "brokered" sales for Charlotte

Solnicki.  GMA claims that Electric Wonderland admitted that Charlotte goods were "sold" at its

showroom.  (GMA 56.1 Statement ¶ 12, citing Donnelly Declaration ¶ 10.)  The deposition

testimony cited in the Donnelly Declaration is ambiguous on the subject of whether GMA

actually "sold" Charlotte-marked goods.  The fact that the deponents may have referred to

brokering a sale as "selling," or having brokered a sale as having "sold," is indicative of little

more than use of loose language.  It is the substance of the transaction and not the short-hand

label that controls.

          What constitutes a "seller" in the trademark context is not clear, but in other

contexts a transactional intermediary is not treated as a seller.  See Drug Mart Pharmacy Corp. v.

American Home Products Corp., 472 F. Supp. 2d 385, 409 (E.D.N.Y. 2007) ("Even though the

case law does not clearly define what constitutes a sale, some parameters are apparent. When

parties act as intermediaries for a transaction and do not buy and resell the commodities, no sale

between them has occurred.") (citing <u>Metro Commc'ns Co. v. Ameritech Mobile Commc'ns</u>, 984

F.2d 739, 746 (6th Cir.1993)).  At times, wholesale purchasers would pay money directly to

Electric Wonderland, who deducted a commission and forwarded the balance to Charlotte

Solnicki.  (Donnelly Declaration ¶ 8.)  Electric Wonderland asserts that it did not "sell" Charlotte

Solnicki goods, but only brokered such sales on behalf of its client, Charlotte Solnicki.  (Flack

Declaration ¶ 2.)  GMA argues that the Flack Declaration should be disregarded as self-serving

and contrary to his deposition testimony.  However, as noted above, mere use of the word

"sales," "sold" or "wholesaler" by a deponent does not prove that Electric Wonderland was a

direct seller.  Furthermore, GMA also submitted as an exhibit a spreadsheet of sales figures

labeled "commission statement."  (Donnelly Declaration, Exhibit G.)  This is consistent with

Electric Wonderland's assertion that it is merely a broker, rather than a direct seller.  There is no

evidence that Electric Wonderland took title to the merchandise, maintained an inventory of

merchandise, bore the risk of loss or other traditional indicia of status as seller.  Rather, Electric

Wonderland submits evidence that it did not "acquire or maintain any inventory for sale."  (Flack

Declaration ¶ 3.)

       Based on the foregoing, GMA's motion for summary judgment as to direct

liability is denied.


       b.  Contributory Liability

       Liability under the Lanham Act may also be premised on a theory of contributory

infringement.  The Second Circuit has stated that "there are two ways in which a defendant may

become contributorially liable for the infringing conduct of another: first, if the service provider

'intentionally induces another to infringe a trademark,' and second, if the service provider 'continues to supply its [service] to one whom it knows or has reason to know is engaging in trademark infringement.'" Tiffany (NJ) Inc. v. eBay Inc., 600 F.3d 93, 106 (2d Cir. 2010) (quoting Inwood Laboratories, Inc. v. Ives Laboratories, Inc., 456 U.S. 844, 845 (1982)).[1] Here, there is no allegation that Electric Wonderland "intentionally induce[d] another to infringe" the Charlotte trademark. However, the parties dispute whether and when Electric Wonderland knew or had reason to know that Charlotte Solnicki, to whom Electric Wonderland was supplying its services, was engaging in trademark infringement.

Electric Wonderland states that it first learned of GMA's alleged trademark rights "in or about October, 2007," had "ceased active representation of Charlotte Solnicki" by approximately August, 2007, and by December 2007 had "ceased all sales related activities for Charlotte Solnicki products." (Electric Wonderland 56.1 Statement ¶¶ 12–14 (citing Flack Declaration ¶¶ 5–7.)) GMA, however, contends that Electric Wonderland knew or had reason to know of the Charlotte trademark "because of constructive notice in 1999 and actual notice in April 2007." (GMA Opposition 56.1 Statement ¶ 7.) GMA's constructive notice argument is based upon its federal trademark registration. However, the mere fact of trademark registration is not sufficient notice to impose contributory liability for infringement. In Tiffany, the Second Circuit held that a distributor's generalized knowledge of infringement was not sufficient to impose contributory liability, where the particular infringers were not identified. 600 F.3d at 107. The Tiffany court did not address constructive notice based upon trademark registration,

---

[1] In Tiffany, the Second Circuit assumed without deciding that Inwood applies to service providers as well as manufacturers and distributors. Tiffany, 600 F.3d at 105-06. At least one court in this District has since applied the Inwood test to service providers. Gucci America, Inc. v. Frontline Processing Corp., 721 F. Supp. 2d 228, 247-48 (S.D.N.Y. 2010). In its submissions, Electric Wonderland applies Inwood as the Tiffany Court did, and GMA does not dispute its application. I will therefore also assume without deciding that Inwood applies to this case.

but rather relied on demand letters and "Notice of Claimed Infringement" forms.  While the issue

here is different, that Court's language is indicative of a narrow test requiring a significant

degree of knowledge.  Id. at 107 ("For contributory trademark infringement liability to lie, a

service provider must have more than a general knowledge or reason to know that its service is

being used to sell counterfeit goods.").  The only post-Tiffany case in this district to face the

issue has held that "Plaintiffs' allegations of knowledge are therefore insufficient to the extent

they rely on . . . [Plaintiff's] federal registration."  Nomination Di Antonio E Paolo Gensini

S.N.C. v. H.E.R. Accessories Ltd., 2010 WL 4968072, 5 (S.D.N.Y. 2010).  This Court agrees.

GMA's allegation of constructive knowledge in April 1999 based upon the federal registration

does not establish that Electric Wonderland knew or had reason to know of the Charlotte

trademark.  To the extent GMA's constructive notice argument is premised on the language in

Inwood imposing liability where a service provider has "reason to know" of trademark

infringement, that prong allows for liability against a defendant where it engages in willful

blindness, an allegation not made here.  See Gucci, 712 F. Supp. 2d at 249.  In this Court's view,

it does not allow for imposition of liability upon a contributory infringer based merely on

constructive notice.  To find otherwise would extend contributory liability to all service

providers in any case involving a federally registered trademark.

   GMA also alleges that Electric Wonderland had actual knowledge in April 2007,

based upon service of the complaint upon Showroom Seven Studios, Inc., a company which

operated at the same address as Electric Wonderland and shared some of the same company

officers. (Declaration of Connor Donnelly in Opposition dated May 19, 2010 ("Donnelly

Opposition Declaration") ¶¶ 3-5.)  However, I note that counsel for Electric Wonderland has

previously provided the court with a printout from the website of the New York State

Department of State, Division of Corporations, showing that Showroom Seven Studios, Inc. was dissolved on September 2, 2003. (See Order of March 17, 2010, at 3 (Document No. 346)). Furthermore, Electric Wonderland provided evidence that it was not aware of the potential infringement until October 2007. (Flack Declaration ¶¶ 5-6.) Therefore, there is a dispute of material fact as to when Electric Wonderland received actual notice of the potential infringement, precluding summary judgment on the contributory infringement claim.

### c.  Polaroid Analysis

Whether based upon direct or contributory liability, to prevail on its claim GMA must show that the Solnicki goods infringed on its Charlotte trademark. First, the plaintiff must demonstrate that its mark is protected. Here, the parties do not dispute that GMA is owner of Registration # 2,535,454 for the mark CHARLOTTE in International Class 25, and that the registration is "incontestable" under Section 15 of the Lanham Act.

To establish trademark infringement under 15 U.S.C. §§ 1114(1), "in addition to demonstrating that the plaintiff's mark is protected, the plaintiff must prove that the defendant's use of the allegedly infringing mark would likely cause confusion as to the origin or sponsorship of the defendant's goods with plaintiff's goods." Starbucks Corp. v. Wolfe's Borough Coffee, Inc. 588 F.3d 97, 114 (2d Cir. 2009). The likelihood of confusion is determined by application of the eight-factor balancing test introduced in Polaroid Corp. v. Polorad Elecs. Corp., 287 F.2d 492 (2d Cir. 1961). Id. at 115. The eight factors are: (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may "bridge the gap" by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that

10

the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market.  <u>Starbucks</u>, 588 F.3d 97, 115 (2d Cir. 2009). No single factor is dispositive, and these factors are non-exclusive of other considerations a court may take into account.  <u>Brennan's, Inc. v. Brennan's Restaurant, L.L.C.</u>, 360 F.3d 125, 130 (2d Cir. 2004).

       i.  Strength of the Mark

     "The strength of a mark refers to its distinctiveness, that is to say, the mark's ability to identify goods sold under it as coming from one particular source."  <u>Streetwise Maps, Inc. v. VanDam, Inc.</u>, 159 F.3d 739, 743 (2d Cir.1998).  The Second Circuit has recognized four categories of marks in terms of trademark protection: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful.  <u>Abercrombie & Fitch Co. v. Hunting World, Inc.</u>, 537 F.2d 4, 9 (2d Cir. 1976).  These categories relate to the distinctiveness of the mark and determine the degree of protection that the mark receives, with generic marks being the weakest and arbitrary the strongest.  <u>Id.</u>  GMA asserts that its "Charlotte" mark is an arbitrary mark, and is therefore strong and deserving of the highest degree of protection.  Electric Wonderland assumes for purposes of its opposition that the mark is strong, but GMA still bears the burden of putting forth sufficient evidence on this issue.  <u>Vt. Teddy Bear</u>, 373 F.3d at 244.

      For the purpose of trademark analysis, personal names "are generally regarded as descriptive terms which require proof of secondary meaning."  <u>815 Tonawanda Street Corp. v. Fay's Drug Co.</u>, 842 F.2d 643, 648 (2d Cir. 1988).  GMA asserts that the Charlotte mark is arbitrary, relying on Judge Swain's prior ruling in this case, on an unopposed motion for default judgment.  <u>GMA Accessories, Inc. v. BOP, LLC</u>, 507 F. Supp. 2d 361 (S.D.N.Y. 2007).  It is not

binding on this Court as against Electric Wonderland.  I note also that on a contested motion for

summary judgment, then-District Judge Lynch found that GMA's "Charlotte" mark was a

"suggestive" mark, and that GMA proffered zero evidence of acquired distinctiveness.  Judge

Lynch found that "[i]n the context of GMA's products, . . . rather than conveying any

'descriptive impression' that a particular individual named Charlotte is or was associated with

GMA, GMA's use of the common female name 'Charlotte' is clearly suggestive of the women's

fashion items and accessories it sells under that mark."  GMA Accessories, Inc. v. Croscill, Inc.,

2008 WL 591803, *4–5 (S.D.N.Y. 2008) (internal citations omitted).  While Judge Lynch's

opinion is also not binding, I independently conclude that "Charlotte" is a suggestive mark.  As a

suggestive mark, it possesses a moderate degree of inherent distinctiveness, but the burden is

upon GMA to proffer evidence to establish commercial recognition of the mark.

Judge Lynch found very little evidence establishing commercial recognition of the

mark, meaning that "as a matter of law, 'Charlotte' is a 'relatively weak mark[ ] in the place

where it counts: the marketplace.'" GMA Accessories, Inc. v. Croscill, Inc., 2008 WL 591803,

*4–5 (S.D.N.Y. 2008) (quoting 2 McCarthy on Trademarks 11:83, at 11-186–11-187)).

Although GMA was party to the actions before Judge Lynch and before me, its counsel failed to

cite to Judge Lynch's opinion.[2]

GMA now states that it has invested over one million dollars in the Charlotte

brand.  However, this includes significant expenditures for showroom space designated for the

---

[2] In fact, counsel for GMA in this case was also counsel for GMA in the Croscill case, and cannot claim ignorance of Judge Lynch's opinion.  Furthermore, Magistrate Judge Freeman cited to that opinion in her Report and Recommendation dated May 29, 2008, in examining whether another defendant in this case had violated a consent injunction.  (Docket No. 223.)  Counsel for GMA is therefore ordered to show cause in writing by February 25, 2011 why he should not be sanctioned for violating Rule 3.3, New York Rules of Professional Conduct, by failing to disclose authority "known to be directly adverse to the position of the client and not disclosed by opposing counsel."

Charlotte brand.  Little weight is accorded to expenses for "rent on a showroom into which no

consumer is claimed to have ventured, rather than advertising or promotional expenses directed

to consumers." Id. at *5 n.6.  GMA has, however, submitted numerous examples of print

advertisements and retail catalogues containing Charlotte goods.  This establishes that the

Charlotte mark is advertised, but alone it does not affirmatively establish consumer recognition.

On this record, reasonable factfinders could reach differing conclusions on whether the

purchasing public recognizes the mark.


ii.  Similarities of the Marks

GMA claims that because the labels on the Solnicki goods included the word

Charlotte, this makes the marks confusingly similar.  However, "an inquiry into the degree of

similarity between two marks does not end with a comparison of the marks themselves." Savin

Corp. v. Savin Group, 391 F.3d 439, 458 (2d Cir. 2004).  The mere fact that the same word was

admittedly used is insufficient to create similarity.  Medici Classics Productions LLC v. Medici

Group LLC, 590 F.Supp.2d 548, 554 (S.D.N.Y. 2008) (parties' common use of the word

"Medici" "does not necessarily make the marks similar for purposes of assessing confusion

under a Polaroid analysis"); SLY Magazine, LLC v. Weider Publications L.L.C., 529 F.Supp.2d

425, 439 (S.D.N.Y. 2007) (Common use of the word "SLY" does not alone make marks similar,

must be viewed in context).  In deciding whether marks are similar, courts in this Circuit do "not

look just at the typewritten and aural similarity of the marks, but how they are presented in the

marketplace." The Sports Authority, Inc. v. Prime Hospitality Corp., 89 F.3d 955, 962 (2d

Cir.1996).

Presumably because the Charlotte mark is registered solely as a word mark, GMA relies on the use of the word "Charlotte" alone, and submits no evidence of the context in which the word Charlotte was used on the labels of the Solnicki goods.  However, even word marks must be viewed in context, and in their entirety.  Brennan's, 360 F.3d at 133 ("When evaluating the similarity of marks, courts consider the overall impression created by a mark. Each mark must be compared against the other as a whole; juxtaposing fragments of each mark does not aid in deciding whether the compared marks are confusingly similar.").

Neither party submitted exemplars of the Solnicki marks which appeared in Electric Wonderland's showroom.  There is no evidence of the font in which the word was written, nor of the color, nor of any other characteristics.  GMA did not submit any pictures, photocopies, or other visual representations of the mark's appearance in Electric Wonderland's showroom.[3]  Simply put, there is not enough evidence upon which the similarity of the marks can be evaluated.  Therefore, there is a dispute of material fact as to which, upon this record, reasonable factfinders could disagree.

### iii.  Other Factors

GMA offers little evidence of the proximity of the products in the marketplace, merely that "[b]oth GMA's and defendant's products consist of clothing."  This is not sufficient

---

[3] Based upon Magistrate Judge Freeman's Report and Recommendation dated May 29, 2008 (Docket No. 223) it appears that photocopy exemplars of Charlotte Solnicki hangtags were previously submitted by a non-party intervenor in this case, Sanei Charlotte Ronson LLC.  Judge Freeman described the Solnicki mark as appearing "in either a distinctive cursive font, or in a stylized and embellished logo design – in both cases, with the words "CHARLOTTE" and "SOLNICKI" equally prominent."  The Court has reviewed these exemplars, and agrees with Judge Freeman's description.  However, there is no evidence that the same designs appeared on the hangtags in Electric Wonderland's showroom.  Therefore, the Court will not consider these as evidence of the similarity, or dissimilarity, of the marks.

14

information for the Court to evaluate the proximity of the products.  Electric Wonderland rightly notes that GMA does not offer any such evidence, but neither does it present evidence in support of its own position.  This factor cannot weigh in favor of either party.

GMA proffers no evidence of actual confusion in this case.  However, "actual confusion need not be shown to prevail under the Lanham Act."  Savin Corp. v. Savin Group, 391 F.3d 439, 459 (2d Cir. 2004).  Still, this factor weighs in favor of Electric Wonderland.

Neither party offers any evidence as to the last three factors: intent in adopting the mark; relative qualities of the products; and sophistication of consumers.  Therefore, those factors cannot be evaluated.

Considering the lack of evidence regarding the similarity of the marks, combined with the relative weakness of the Charlotte mark, a reasonable jury could conclude that there is no likelihood of confusion between the marks.  Therefore, summary judgment must be denied.

III.     Damages

a.  Monetary Damages

The parties dispute whether an award of damages under Section 35(a) of the Lanham Act, 15 U.S.C. 1117(a), requires a showing of either (1) actual confusion; or (2) bad faith, meaning intentional deception or willfulness.

The dispute stems from a 1999 amendment to the Lanham Act, called the Trademark Amendment of 1999 (the "1999 Amendment").  Section 35(a) of the Lanham act currently provides:

> When a violation of any right of the registrant of a mark registered
> in the Patent and Trademark Office, *a violation under section*
> *1125(a)* or (d) of the title, or a *willful violation under section*

15

> *1125(c)* of this title, shall have been established in any civil action
> arising under this chapter, the plaintiff shall be entitled, subject to
> the provisions of sections 1111 and 1114 of this title, and subject
> to the principles of equity, to recover (1) defendant's profits, (2)
> any damages sustained by the plaintiff, and (3) the costs of the
> action . . . .

15 U.S.C. § 1117(a) (emphasis added).  Before the 1999 Amendment, the act provided for a

monetary recovery only for "a violation" of 15 U.S.C. § 1125(a).  In 1999 Congress amended the

statute to allow damages for "a willful violation" of section 1125(c), which provides remedies

for the dilution of famous marks.  Pub. L. 106-43, 113 Stat. 218 (1999).

      Prior to the 1999 Amendment, the law of this Circuit was well settled, that "[i]n

order to recover an accounting of an infringer's *profits*, a plaintiff must prove that the infringer

acted in bad faith."  Int'l Star Class Yacht Racing Assoc. v. Tommy Hilfiger, U.S.A., Inc., 80

F.3d 749 (2d Cir. 1996) (emphasis added).  Also, "[t]o receive an award of *damages* the plaintiff

must prove either actual consumer confusion or deception resulting from the violation, or that the

defendant's actions were intentionally deceptive."  Boosey & Hawkes Music Publishers, Ltd. v.

Walt Disney Co., 145 F.3d 481, 493 (2d Cir. 1998) (emphasis added).

      When Congress amended the statute in 1999, it did not alter the language

concerning a remedy for "a violation" of section 1125(a).  The parties dispute whether the

addition of a remedy for "a willful violation" of section 1125(c) altered the common-law rule in

this circuit that a monetary remedy for violation of section 1125(a) is only available if there was

actual confusion or willful deception (bad faith).

      Judges in this district are split over this issue.  Compare Nike, Inc. v. Top Brand

Co. Ltd., No. Civ. 8179 (KMW)(RLE), 2005 WL 1654859 (S.D.N.Y. July 13, 2005) (willfulness

requirement did not survive the 1999 Amendments), and Cartier v. Aaron Faber Inc., 512

F.Supp.2d 165 (S.D.N.Y. 2007) (Marrero, J.) (same), with Mr. Water Heater Enterprises, Inc. v. 1-800-Hot Water Heater, LLC, 648 F.Supp.2d 576 (S.D.N.Y. 2009) (Pauley, J.) (willful deception or bad faith continues to be a prerequisite to an award of profits or damages until the Second Circuit instructs otherwise), and Life Services Supplements, Inc. v. Natural Organics, Inc., No. 03 Civ. 6030 (SHS), 2007 WL 4437168 (S.D.N.Y. Dec. 17, 2007) (profits cannot be awarded in false designation of origin suits unless willful deception is established), and Malletier v. Dooney & Bourke, Inc., 500 F.Supp.2d 276 (S.D.N.Y. 2007) (Scheindlin, J.) (same), and Mastercard Int'l Inc. v. First Nat'l Bank of Omaha, Inc., No. 02 Civ. 3691 (DLC), 2004 WL 326708 (S.D.N.Y. Feb. 23, 2004) (in order to recover profits or damages, plaintiff must prove bad faith, actual consumer confusion or deception).

When Congress amended the statute, it did not alter the language regarding a remedy for violation of section 1125(a). Congress is assumed to pass or amend legislation "with full knowledge of the existing legal landscape." In re Northwest Airlines Corp., 483 F.3d 160, 169 (2d Cir. 2007) (citing Miles v. Apex Marine Corp., 498 U.S. 19, 32 (1990)). Therefore, "[i]t may be presumed that Congress's inclusion, without alteration, of the language concerning Section 1125(a) incorporates the existing judicial interpretation of that language." Mastercard, 2004 WL 326708, at *11. As Judge Cote points out in Mastercard, this interpretation does not render the language of the 1999 Amendment superfluous. The pre-amendment rule allows recovery of damages for a violation of 1125(a) when a plaintiff is able to prove actual confusion, even where the defendant did not act willfully. Therefore, the 1999 Amendment "provides a more stringent standard for recovery" for a violation of section 1125(c). Id.

Furthermore, the legislative history indicates that Congress intended only to clarify the standard of recovery for a dilution claim (under 1125(c)), and was not considering

17

claims under 1125(a).  The 1999 Amendment describes itself as "An Act To amend the

Trademark Act of 1946 relating to dilution of famous marks, and for other purposes," and the

applicable section of the bill is titled "Remedies in Cases of Dilution of Famous Marks."  Pub. L.

106-43.  The vast majority of the act focuses on dilution cause of action and its remedies.   The

House Report of the Committee on the Judiciary, which considered the bill, stated that the

damages section of the amendment, including the language at issue here, "seeks to clarify that in

passing the Dilution Act, Congress did intend to allow for injunctive relief and/or damages

against a defendant found to have wilfully intended to engage in commercial activity that would

cause dilution of a famous trademark."  H.R. Rep. 106-250.  There is no indication in either the

bill or the house report that Congress intended to alter the existing scheme for damages for

infringement.

The Second Circuit has not directly addressed this issue since the 1999

Amendment.  There have been unpublished summary orders which continue to apply the pre-

1999 rule.  See, e.g., WE Media, Inc. v. Cablevision Systems Corp., 94 Fed. Appx 29 (2d Cir.

2004) ("[Plaintiff did not submit sufficient evidence to establish actual consumer confusion or

intentional deception.  We therefore affirm the district court's dismissal of the claims for

monetary relief." (citations omitted)) (citing Boosey & Hawkes, 145 F.3d 481, 493); Champagne

v. Diblasi, 36 Fed. Appx. 15 (2d Cir. 2002) (applying rule requiring actual confusion or

intentional deception).  These summary orders have no precedential effect.  2d Cir. Local R.

32.1.1.  However, they may have some predictive value in similar cases.  "Denying summary

orders precedential effect does not mean that the court considers itself free to rule differently in

similar cases."  U.S. v. Payne 591 F.3d 46, 58 (2d Cir. 2010) (quoting Order dated June 26,

2007, adopting 2d Cir. Local R. 32.1.); see also Mendez v. Starwood Hotels & Resorts

18

Worldwide, Inc., ___ F.Supp.2d ____, 2010 WL 3958789, 17 (S.D.N.Y. 2010) ("[A] summary

order has no precedential effect on any court, although it has to be deemed some indication of

how the Court of Appeals might rule were it to decide the issue in a binding opinion.").

       This Court agrees with those authorities holding that actual confusion or bad faith

continues to be a prerequisite to an award of profits or damages under 15 U.S.C. § 1117(a).

Therefore, I will examine whether there is any evidence of actual confusion or bad faith.


### i.   Actual Confusion

       Plaintiff GMA admits that it is unaware of any actual consumer confusion

between GMA and any defendant in this action, or between any of GMA's "Charlotte" products

and any product offered or sold by any defendant in this action.  (Electric Wonderland 56.1

Statement, ¶¶ 16-18; GMA Opposition 56.1 Statement, ¶ 11.)  Therefore, actual confusion is not

a basis upon which damages may be awarded in this action.


### ii.   Bad Faith

       The question of bad faith is "generally ill-suited for disposition on summary

judgment." Lang v. Retirement Living Pub. Co., 949 F.2d 576, 583 (2d Cir. 1991).  GMA

contends that summary judgment on damages is inappropriate because there is evidence that

Electric Wonderland had actual and constructive notice of the Charlotte mark, and the failure to

cease brokering sales after receiving notice is evidence of bad faith.  Viewing the evidence in the

light most favorable to GMA, the non-movant on this issue, there is an issue of material fact as to

Electric Wonderland's bad faith.  The parties dispute when Electric Wonderland received actual

notice of the instant lawsuit.  It is undisputed, however, that Electric Wonderland continued sales

activities related to the Solnicki goods after receiving such notice, until December of 2007. (Electric Wonderland 56.1 Statement, ¶ 14.)  A reasonable trier of fact could find that Electric Wonderland therefore acted in bad faith, allowing GMA to recover damages if it proves infringement.  See International Star Class Yacht Racing Ass'n v. Tommy Hilfiger, U.S.A., Inc., 80 F.3d 749, 754 (2d Cir. 1996) ("Hilfiger cannot lay claim to a "good faith" belief that it was not infringing on ISCYRA's mark because it neither fully explored others' rights to "STAR CLASS" nor ceased its infringing behavior when it was sued.").  Therefore, summary judgment on the issue of damages must be denied.


IV.    Counterfeiting

Plaintiff moves for summary judgment as to liability for trademark counterfeiting under 15 U.S.C. § 1117.  Defendant cross-moves, arguing that Plaintiff's counterfeiting claim fails as a matter of law.

Under section 41 of the Lanham Act, a "counterfeit" mark is defined as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark."  15 U.S.C. § 1127.  The parties argue over the meaning of "substantially indistinguishable," which requires a closer degree of similarity than is required for traditional trademark infringement.  As noted by Electric Wonderland, there is "a dearth of case law" exploring exactly what constitutes substantially indistinguishable.  See 4 McCarthy on Trademarks and Unfair Competition § 25.10, n.20.5.  However, it must, at the very least, mean be closer than the traditional standard for infringement, "colorable imitation."  See id. at § 25.10 ("This [counterfeiting] test . . . requires a closer degree of similarity than is required for traditional trademark infringement . . . .");  Yurman Studio, Inc. v. Castaneda, 591 F.Supp.2d

20

471, 498 (S.D.N.Y. 2008) (where counterfeiting is established, no need for traditional likelihood of confusion analysis because a counterfeit will "by [its] very nature, cause confusion").  GMA cannot show that the mark appearing on the goods was "identical with or substantially indistinguishable" from GMA's "Charlotte" mark.  The parties appear to agree that the words "Charlotte Solnicki" were used on the actual labeling of the goods in Electric Wonderland's showroom.  (GMA Opposition 56.1 Statement ¶¶ 2, 4.)  "Charlotte Solnicki" is simply not identical with or substantially indistinguishable from "Charlotte."

Furthermore, the parties fail to address the requirement that a counterfeit mark be a "spurious" mark.  While there appears to be little caselaw directly addressing this requirement, Black's Law Dictionary defines "spurious" as "[d]eceptively suggesting an erroneous origin; fake."  To establish counterfeiting in the case of a word mark, it cannot be enough that one word used in the allegedly offending mark is the same, with no reference to font, color, typeface, or context.  GMA makes no allegation that the products upon which the allegedly counterfeit mark was used were similar in any way to products it produces.  Under these facts, there is no deceptive suggestion of an erroneous origin.

GMA asserts that Electric Wonderland "used the mark CHARLOTTE alone and/or in conjunction with the name CHARLOTTE SOLNICKI to identify their goods."  (GMA Opposition 56.1 Statement ¶ 4.)  The evidence submitted in support of this statement, however, is merely an unnecessarily voluminous series of purchase order slips and credit card authorization forms, upon which an individual (presumably a salesperson for Electric Wonderland) has handwritten either "Charlotte" or "Charlotte Solnicki" to identify the designer of the goods being sold.  (Donnelly Opposition Declaration ¶ 9, exhibit L.)  There is no evidence that the word "Charlotte" alone was placed on any labels or displays in Electric Wonderland's

21

showroom.  GMA proves merely that the word was used alone to "identify" the Solnicki goods on sales slips.  (GMA Opposition 56.1 Statement ¶ 4.)  This will not support GMA's counterfeiting claim.  Electric Wonderland's cross-motion for summary judgment as to the counterfeiting claim is therefore granted.


CONCLUSION

   For the reasons stated above, the plaintiff's motion for summary judgment as to liability (Document No. 356) is DENIED.  The defendant's cross-motion for summary judgment Document No. 361) is DENIED as to damages, and GRANTED as to the counterfeiting claim.

   SO ORDERED.

             P. Kevin Castel
            United States District Judge

Dated: New York, New York
   February 8, 2011